**BRYAN S. WESTERFELD** (S.B.#218253)
bwesterfeld@calemployerlaw.com
**NICOLE E. WURSCHER** (S.B.#245879)
nwurscher@calemployerlaw.com
**WALRAVEN & WESTERFELD LLP**
101 Enterprise, Suite 350
Aliso Viejo, California 92656
Telephone:  (949) 215-1990
Facsimile:   (949) 215-1999

**STEPHEN P. LUCKE** (*pro hac vice*)
lucke.steve@dorsey.com
**TIMOTHY E. BRANSON** (*pro hac vice*)
branson.tim@dorsey.com
**MICHELLE S. GRANT** (*pro hac vice*)
grant.michelle@dorsey.com
**RJ ZAYED** (*pro hac vice*)
zayed.rj@dorsey.com
**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:   (612) 340-2868

Attorneys for Certain Defendants[*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMONT AMBULATORY SURGERY CENTER, LLC, a California limited liability company, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITEDHEALTH GROUP, INC., a Minnesota corporation, UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation, UNITED HEALTHCARE INSURANCE COMPANY, INC., a Minnesota corporation, OPTUMINSIGHT, INC., a Minnesota Corporation, et al., <br><br> Defendants. | Case No. CV14-2139-MWF (VBKx) <br><br> **OPPOSITION OF UNITED AND JOINTLY-REPRESENTED DEFENDANTS TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL** <br><br> Judge:  Hon. Michael W. Fitzgerald <br> Date:   June 16, 2014 <br> Time:   10:00 a.m. <br><br> Trial Date: None Set |

[*] =*See* Attachment A hereto

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTS .............................................................................................................. 2

    I.      Background ...................................................................................... 2

    II.     United's Offer to Provide Joint Representation for Other
           Defendants ...................................................................................... 4

    III.    Responses to Offer ......................................................................... 5

    IV.    Plaintiffs' Factual Assertions ......................................................... 6

ARGUMENT ...................................................................................................... 7

    I.      Standard for Disqualification Motions .......................................... 7

    II.     Plaintiffs Lack Standing to Seek Disqualification for Alleged
           Conflicts that do not Involve Them ............................................. 10

           A.    A party seeking disqualification of opposing counsel must
                demonstrate that it has standing. ........................................ 10

           B.    Plaintiffs are neither current nor former Dorsey or
                Walraven clients and lack standing to seek
                disqualification based on claimed conflicts. ....................... 10

           C.    Plaintiffs completely fail to demonstrate any injury in fact
                or other basis for standing ................................................. 13

    III.    "Tactical" Disqualification Motions such as this are Highly
           Disfavored Under California Law ................................................. 15

    IV.    Plaintiffs Fail to Show any Grounds for Disqualification ............. 16

           A.    There is no basis for disqualification because there is no
                current, actual conflict, and jointly-represented
                Defendants have consented to joint representation ............. 17

            B.    Plaintiffs rely entirely on potential and hypothetical
                 conflicts, which are not a basis for disqualification ............. 18

           C.    Joint representation of multiple ERISA defendants is
                common and appropriate ..................................................... 23

           D.    Defendants are sophisticated entities that have made
                informed decisions to utilize the counsel of their choice ........ 24

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almont Ambulatory v. United*,
    14-cv-03053-MWF (C.D. Cal.), Dkt. No. 15 .................................................. 4, 24

*Am. Medical Assoc. v. United Healthcare Corp.*,
    2007 WL 1771498 (S.D.N.Y. June 18, 2007) ...................................................... 3

*Asdar Group v. Pillsbury, Madison & Sutro*,
    99 F.3d 289 (9th Cir.1996) ................................................................................ 20

*Barron v. Ashland, Inc.*,
    2011 WL 5024590 (C.D. Cal. Oct. 21, 2011) ...................................................... 9

*Bay Area Surgical v. Aetna*,
    13-cv-05430 (N.D. Cal.) ...................................................................................... 9

*Bill Gray Enters. Inc. Emp. H & W v. Gourley*,
    248 F.3d 206 (3rd Cir. 2001) .............................................................................. 22

*Brewer v. Swan Magnetics, Inc.*,
    2004 WL 745689 (Cal. Ct. App. April 8, 2004) ........................................... 17, 18

*Burg v. Brunswick Hosp. Ctr. Inc.*,
    1987 WL 19431 (E.D.N.Y. Oct. 23, 1987) ........................................................ 24

*Charles Virzi Constr., Inc. v. Studer*,
    2010 WL 5209396 (Cal. App. 4 Dist. Dec. 23, 2010) ........................... 11, 13, 14

*Colyer v. Smith*,
    50 F. Supp. 2d 966, 968 (C.D. Cal. 1999) ....................................... 10, 11, 13, 14

*Como v. Commerce Oil Co.*,
    607 F. Supp. 335 (S.D.N.Y. 1985) ..................................................................... 24

*DCH Health Servs. Corp. v. Waite*,
    (2002) 95 Cal. App. 4th 829, 832 ................................................................. 11, 14

*Drag Racing Techs., Inc. v. Univ. City Studios, Inc.*,
    2003 WL 1948798 (S.D.N.Y. Apr. 24, 2003) .................................................... 18

*Fed. Home Loan Mortg. Corp. v. LaConchita Ranch Co.*,
68 Cal. App. 4th 856, 80 Cal. Rptr. 2nd 634 (Cal. Ct. App. 1998).....................24

*Ford v. MCI Commc'ns Corp.*,
399 F.3d 1076-81 (9th Cir. 2005)........................................................22

*Forest Ambulatory v. United*,
2:12-cv-02916 (C.D. Cal.).....................................................................9

*Fox Searchlight Pictures, Inc. v. Paladino*,
89 Cal. App. 4th 294, 106 Cal. Rptr. 2nd 906 (Cal. Ct. App. 2001)...................18

*Gilbert v. Nat'l Corp. for Hous. P'ships*,
71 Cal. App. 4th 1240.........................................................................12

*Great Lakes Constr., Inc. v. Burman*,
(2010) 186 Cal. App. 4th 1347, 1356....................................... 10, 11, 13

*Gregori v. Bank of America*,
207 Cal. App. 3rd 291, 301-02, 254 Cal. Reptr. 853, 859 (Cal. Ct.
App. 1989) .............................................................................. 15, 16

*Havasu Lakeshore Invs., LLC v. Fleming*,
217 Cal. App. 4th 770, 779 n.7, 158 Cal. Rptr. 3rd 311 (Cal. Ct.
App. 2013)
................................................................................ 1, 15, 17, 18

*Kennedy v. Eldridge*,
(2011) 201 Cal. App. 4th 1197...........................................................12

*Klemm v. Sup. Ct. of Fresno Cal.*,
(1977) 75 Cal. App. 3d 893 ...............................................................12

*Lantzy v. Centex Homes*,
31 Cal. 4th 363, 2 Cal. Rptr. 3d 655, 73 P.3d 517 (2003)...................................20

*Larson v. United Healthcare Ins. Co.*,
723 F.3d 905 (7th Cir. 2013) ...............................................................8

*Leonelli v. Pennwalt Corp.*,
887 F.2d 1195 (2d Cir. 1989) ..............................................................8

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmgt Adm'rs*,
703 F.3d 835 (5th Cir. 2013) ...............................................................8

*Lynde v. Blue Cross and Blue Sheild Mut. Of Omaha*,
  1992 WL 49363 (N.D. Ohio Jan. 13, 1992) ....................................................... 12

*M&T Mortg. Corp. v. White*,
  2007 WL 2816186 (E.D.N.Y. Sept. 26, 2007) ................................................... 17

*McPhearson v. The Michaels Co.*,
  96 Cal. App. 4th 843, 849-50 (Cal. Ct. App. 3rd App. Dist. 2002) .......... 8, 10, 11

*Meguerditchian v. Aetna Life Ins. Co.*,
  2014 WL 684688 (C.D. Cal. Feb. 21, 2014) ........................................................ 9

*Metcalf v. Blue Cross Blue Shield of Michigan*,
  2012 WL 2021749 (D. Or. Apr. 20, 2012) ........................................................... 9

*Methodist Hosp. of California v. Blue Cross of California*,
  BC418873 (Sup. Ct. Cal. 2009) ............................................................................ 9

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008) ........................................................................................... 22

*Niagara-Genesee & Vicinity Carpenters Local 280 v. United Bhd. of
  Carpenters & Joiners of Am.*,
  843 F. Supp. 855 (W.D.N.Y. 1994) .................................................................... 12

*Oneida of the Thames Band v. State of New York*,
  757 F.2d 19 (2d Cir. 1985) ................................................................................. 24

*Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.*,
  760 F.2d 1045, 1050 (9th Cir. 1985) ................................................................ 7, 8

*Pergram v. Herdrich*,
  530 U.S. 211 (2000) ........................................................................................... 23

*Perry v. Simplicity Eng'g*,
  900 F.2d 963 (6th Cir. 1990) .............................................................................. 10

*Postley v. Harvey*,
  153 Cal. App. 3d 280 (Cal. App. 2d Dist. 1984) ................................................ 20

*Pressman-Gutman Co., Inc. v. First Union Nat. Bank*,
  2004 WL 2743582 (E.D. Pa. Nov. 30, 2004) ...................................................... 12

*Royal Indem. Group, Inc. v. Travelers Indem. Co.*,
  2005 U.S. Dist. LEXIS 32467 (N.D. Cal. Sept. 6, 2005) ............................... 20, 21

*SEC v. Tang*,
    831 F. Supp. 2d 1130, 1142 (N.D. Cal. 2011) ....................................... 7, 8, 11, 14

*Valley Circle Estates v. VTN Consolidated, Inc.*,
    33 Cal. 3d 604, 189 Cal. Rptr. 871, 659 P.2d 1160 (1983)................................. 20

*Visa U.S.A. v. First Data Corp.*,
    241 F. Supp. 2d 1100 (N.D. Cal. 2004) ................................................................ 8

*Williams-Ilunga v. Gonzalez*,
    2013 WL 57195 (C.D. Cal. Feb. 13, 2013)......................................................... 12

**Statutes**

ERISA § 3(16) ............................................................................................................ 3

**Other Authorities**

California Rule of Professional Conduct 3-310(c)................................................... 17

Civ. L.R. 83-3.1.2 ...................................................................................................... 7

*Identifying the Proper Party Defendant in ERSA Benefits Claims:  A Circuit Survey*, Bloomberg Law (Sept. 27, 2013) at http://www.bna.com/identifying-the-proper-party-defendant-in-erisa-benefits-claims-a-circuit-survey/ (last accessed May 20, 2014) ................. 8

OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

## INTRODUCTION

Plaintiffs seek to disqualify Dorsey & Whitney LLP ("Dorsey") and Walraven & Westerfeld LLP ("Walraven") from representing "any of the ERISA Plan Defendants," claiming an impermissible conflict between United and any Plan Defendant.  There is no disqualifying conflict in joint representation of multiple defendants, either generally in ERISA cases or in this case.  Plaintiffs lack standing to complain about alleged conflicts that do not involve them.  Substantively, they fail to provide either facts or viable legal theories to prove the alleged conflicts.  They ignore the Defendants' right to joint representation, even if potential conflicts exist, with informed consent.  California courts recognize that "disqualification motions can be (and often are) misused as weapons to harass opposing counsel, delay litigation, or force disadvantageous settlement."  *Havasu Lakeshore Invs., LLC v. Fleming*, 217 Cal. App. 4th 770, 779 n.7, 158 Cal. Rptr. 3rd 311 (Cal. Ct. App. 2013).  This is one such motion, and the Court should deny it.

Plaintiffs lack standing.  They allege conflicts of interest between and among various defendants, but Plaintiffs themselves are neither clients nor former clients of Dorsey or Walraven.  As such, the alleged conflicts do not threaten Plaintiffs' confidential information or violate any duties owed to them.  California courts repeatedly deny motions to disqualify where the moving party is neither a client nor former client of the law firm in question.  Moreover, Plaintiffs' attempt to avoid this result by showing harm to Plaintiffs themselves fails completely.  The alleged "harm" falls into two categories:  (1) legitimate decisions by the jointly-represented Defendants as to how to defend the case and (2) completely unfounded concerns that the jointly-represented Defendants will not comply with discovery obligations.  Neither of these is supported by the record nor provides Plaintiffs with standing.

Plaintiffs' lack of standing reveals the motion for what it really is, a classic "tactical" disqualification motion.  If granted, it would force over 200 defendants to forego their counsel of choice and retain new counsel.  The vast majority would be

1    required to pay that counsel under the terms of their administrative services

2    agreement ("ASA") with United[1], even though their current defense is paid for by

3    United.  While Plaintiffs say nothing about this, they quite candidly admit that one

4    reason for pursuing the motion is to pursue early settlements with parties that have

5    just lost their chosen lawyers and now face considerable new costs.  Such

6    unjustified settlement leverage is one of the primary reasons why disqualification

7    motions are so strongly disfavored.

8         On the merits, Plaintiffs completely fail to demonstrate any basis for

9    disqualification.  The law is clear that mere potential or hypothetical conflicts do

10   not warrant disqualification, and that is all that Plaintiffs can show.  Plaintiffs

11   present various hypotheticals, but similar scenarios could be conjured up in

12   virtually every lawsuit involving joint representation of multiple parties and are

13   simply not sufficient to warrant the drastic remedy of disqualification.  The factual

14   material Plaintiffs do provide actually contradicts their claims of conflict.

15        Even if Plaintiffs had presented a more serious risk of future conflict, that

16   *still* would not warrant disqualification.  Parties can decide to put aside or defer

17   potential conflict to pursue joint representation.  Here, Defendants are sophisticated

18   entities that considered their situation and concluded that it is in their best interest

19   to be jointly represented by Dorsey and Walraven.  Parties are entitled to the

20   counsel of their choice unless there is an extremely good reason why that cannot be

21   allowed.  Plaintiffs have provided no basis to veto that considered decision.

22                                    **FACTS**

23   **I.    Background**

24        Plaintiffs are a group of health care providers who claim they were not

25   properly paid for bariatric surgery and related services to patients covered by the

26   health plans at issue.  On March 20, 2014, Plaintiffs filed this lawsuit against

27   

28   _____
[1]   The ASAs contain a variety of provisions regarding payment of defense costs by
      the Plans and/or United.  *See*, *e.g.*, Declaration of Daron L. Tooch in Support of
      Plaintiffs' Motion to Disqualify Counsel ("Tooch Decl."), Ex. A.

1   Defendants UnitedHealth Group Incorporated, United Healthcare Services Inc.,

2   United Healthcare Insurance Company, OptumInsight, Inc. (together, "United") and

3   over 800 of United's customers and the ERISA health benefit plans that they

4   sponsor.

5        United is an insurer and third party claims administrator for its customers'

6   employee health benefit plans, which are sponsored by employers and provide

7   health benefits to their members.  For those benefit plans that are insured directly

8   by United ("insured plans"), benefit payments are made from United's own funds.

9   For those benefit plans for which United acts as a third party claims administrator

10  ("self-funded plans"), benefit payments are made from plan funds provided by the

11  employer-sponsor of the self-funded plans.

12       United acts as "claims administrator," not "plan administrator," for the health

13  plan defendants.  *See* Tooch Decl. Ex. A, Sec. 2.2 (United is "not the Plan

14  Administrator").  An ERISA "plan administrator" (typically the plan sponsor) has

15  general fiduciary responsibility, *see* ERISA § 3(16), while a "claims administrator"

16  (a term not defined under ERISA) is merely a commonly used term to define a

17  party that administers claims under a delegation of authority from the plan.  *See*

18  *Am. Medical Assoc. v. United Healthcare Corp.*, 2007 WL 1771498 (S.D.N.Y.

19  June 18, 2007).

20       Plaintiffs sue as alleged assignees of their patients and seek benefits under

21  many hundreds of different ERISA benefit plans and other relief for alleged

22  violations of ERISA's fiduciary provisions.  Plaintiffs also claim violations of the

23  Americans with Disabilities Act (ADA), and related California laws.  (Compl.

24  ¶¶ 15, 1004-1121).

25       Around the same time that Plaintiffs filed this action, they also filed a related

26  case in California state court against United only.  United removed the case to this

27  Court.  *See* Case No. 2:14-cv-03053-MWF (VBKx).  In that related action, United

28  filed a Counterclaim for fraud, conspiracy to commit fraud, and unfair business

practices against Plaintiffs and other members of the now-infamous 1-800-GET-THIN network.  United and the Plan Defendants have a common interest in the Counterclaim.  United seeks in that case, on behalf of its self-funded plan customers, to recoup monies paid to Plaintiffs as a result of their fraudulent and excessive billing practices, including manipulation of bills to secure payment for uncovered services, submission of highly-inflated charges, and routine waiver of patient copays/coinsurance that increased utilization and induced patients to forego the cost-savings of using in-network providers.  *See Almont Ambulatory v. United*, 14-cv-03053-MWF (VBKx) (C.D. Cal.), Dkt. No. 15.

## II.  United's Offer to Provide Joint Representation for Other Defendants.

United has offered to defend all Co-Defendants in this lawsuit.  The defense, for those who accept the offer, is at United's expense, which greatly benefits Plan Defendants who would normally be responsible for some or all of those defense costs under their Administrative Services Agreement ("ASA") with United.[2] Declaration of Michelle S. Grant ("Grant Decl.") ¶ 4; *See, e.g.*, Tooch Decl. Ex. B, Sec. 5.1.  This benefit is particularly significant for any Plan Defendants whose exposure is disproportionate to the costs of litigation.

The ASA envisions using "joint defense counsel" if there is no actual conflict.  Tooch Decl., Ex. A at pp. 5.  The ASA provides for the parties to "cooperate fully with each other in the defense."  *Id.*  It gives United discretion to resolve the litigation "to the extent that Section 12.2 grants such discretion."  *Id.*  Section 12.2 is the section of the ASA describing United's authority to "determine the validity of charges submitted to us under the Plan" and to review initial appeals from claim denials.  *Id.* at pp. 8-9.

Under the terms of the joint defense, Plan Defendants retain the right to contest the allocation or terms of any settlement entered into with the Plaintiffs.

---

[2]  Plaintiffs have submitted the ASA between United and Aegon as Ex. A to the Tooch Declaration.  The ASAs are not all identical, but the Aegon version is representative of common terms found in the contracts.

1   Grant Decl. ¶ 5.  Neither the Dorsey nor Walraven firms will represent United in

2   connection with such a dispute, without consent at that time.  *Id.*  Co-Defendants

3   agree to cooperate and assist in the defense of this matter, and any self-funded

4   health plans remain responsible to pay any benefits ultimately awarded to Plaintiffs

5   (just as they are under the ASA).  *Id.* ¶ 7; Tooch Decl., Ex. A at pp. 5.

6          Before offering to defend all Co-Defendants, Dorsey and Walraven

7   considered the ethical implications of representing all 800 of them.  Grant Decl. ¶ 3.

8   They concluded that there was no conflict of interest that would preclude the

9   proposed joint representation.  *Id.*  All Co-Defendants that have retained Dorsey

10  and Walraven have been advised of the possibility of future potential conflicts

11  among jointly-represented parties.  *Id.* ¶ 6.  If such a conflict arises, Dorsey and

12  Walraven will notify the Co-Defendant, and the Co-Defendant is free at any time to

13  leave the joint defense.  *Id.*  Before accepting United's offer and entering into an

14  engagement with Dorsey and Walraven, Co-Defendants were required to consult

15  other counsel and review the terms of the offer to defend.  By signing the

16  engagement letter, Co-Defendants confirmed, after consultation with other counsel,

17  that they were not aware of a current conflict of interest in the joint representation.

18  *Id.* ¶ 8.

19  **III.    Responses to Offer**

20         To date, over 250 Co-Defendants have accepted United's offer for a full joint

21  defense, and many others have accepted for the limited purpose of obtaining an

22  extension of time to respond to the Complaint.  *Id.* ¶ 8.  Some of the remaining Co-

23  Defendants have indicated they intend to accept United's offer, and Dorsey and

24  Walraven continue to receive executed engagement letters.  *Id.*  Co-Defendants that

25  have accepted the offer reviewed the memorandum and engagement letter carefully

26  and consulted with other counsel.  *See*, *e.g.*, Declaration of Cort Business Services

27  Corporation and Cort Business Services Corporation Group Insurance Plan ¶ 3;

28  Declaration of Ernst & Young, LLP and The Ernst & Young Medical Plan ¶ 3;

Declaration of Flextronics International USA, Inc. and Flextronics Employee Benefits Plan ¶ 3; Declaration of Peter Kiewit Sons', Inc. and The Peter Kiewit Sons', Inc. Health and Welfare Plan ¶ 3 (collectively "Co-Defendant Decls.").

The Co-Defendants who have executed the engagement agreement considered various factors, including the advantages of receiving a defense paid for by United, the experience and expertise of the Dorsey and Walraven law firms, and the advantages of coordinating the defense among multiple defendants in the action. Co-Defendant Decls. ¶3.  They also understand the potential for conflicts that might arise in the future, but do not believe there are any currently existing conflicts.  *Id.*  In light of these factors, these entities decided that it was in their best interest to accept United's offer to defend and retain Dorsey and Walraven to represent them. *Id.* ¶ 4.

## IV.   <u>Plaintiffs' Factual Assertions</u>

Plaintiffs' primary factual basis for their disqualification motion is the Declaration of Daron L. Tooch, one of the attorneys representing plaintiffs. Mr. Tooch claims to have been in communication with counsel for various ERISA plan defendants, but he does not provide the names of any such defendants.  Tooch Decl. ¶ 4.  Nor does he provide the date or any specific content of such conversations.  *Id.*  He generally asserts that some Plan Defendants have been more willing to engage in an informal exchange of information and documents, leading in some occasions to settlements.  *Id.* ¶ 6.  None of the Plan Defendants engaged in such an informal exchange are identified.  *Id.*

Mr. Tooch also claims that some of the Plan Defendants "have expressed surprise and shock at United's behavior."  *Id.* ¶ 4.  Mr. Tooch does not identify such Defendants, provides no specifics and does not claim that any of the Defendants expressing "surprise and shock" are represented by Dorsey and Walraven.  *Id.*

Mr. Tooch further states that "United's counsel" (presumably referring to Dorsey and Walraven) have declined to engage in pre-discovery "exchange" of

documents.  *Id.* ¶ 3.  Mr. Tooch then speculates as to the reasons why the defendants have declined to exchange documents prior to the opening of discovery, but provides no evidence in support of his speculation.  *Id.* ¶ 6.

Mr. Tooch purports to identify "very different positions taken by United and the plan defendants," noting the motion to dismiss by Aegon USA, LLC and its affiliated plan, which are separately represented.  *Id.* ¶ 7.  He also claims that United, when dealing with Plaintiffs, never raised the anti-assignment provisions upon which some of the Plan Defendants may seek to rely, but again provides no specific information or documentation.  *Id.*

## ARGUMENT

### I.    Standard for Disqualification Motions

Whether to disqualify counsel is within the discretion of the Court.  *SEC v. Tang*, 831 F. Supp. 2d 1130, 1142 (N.D. Cal. 2011).  However, because of the potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny."  *Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

California state law governs motions to disqualify.  *Tang*, 831 F. Supp. 2d at 1141.  The Civil Local Rules of this Court require attorneys practicing in this district to comply with "the standards of professional conduct required of members of the State Bar of California," contained in "the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any court applicable thereto."  Civ. L.R. 83-3.1.2.

For a disqualification motion based on claimed conflicts of interest, the Court applies a balancing test:

> The court must weigh the combined effects of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our

1    adversary system requires vigorous representation of parties by
2    independent counsel unencumbered by conflicts of interest.

3    *Tang*, 831 F. Supp. 2d at 1141.

4          Motions to disqualify are strongly disfavored and subjected to "particularly

5    strict judicial scrutiny" because they are often tactically motived and are disruptive

6    to the litigation process.  *Id.* at 1142 (quoting *Optyl*, 760 F.2d at 1050); *Visa U.S.A.*

7    *v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2004).  "Where persons

8    who are personally concerned with the alleged conflict of interest are not objecting,

9    and disqualification is sought by a litigation adversary who is not personally

10   interested in the alleged conflict, courts must be skeptical."  *McPhearson v. The*

11   *Michaels Co.*, 96 Cal. App. 4th 843, 849-50 (Cal. Ct. App. 3rd App. Dist. 2002).

12         Notably, there is no basis – in law or in fact – for disqualifying counsel on

13   the ground that they represent both a third party claims administrator as wells as an

14   ERISA plan and its sponsoring employer.  As is common in employee benefits

15   litigation, the plans, the employer-sponsors, and United, as insurer or third party

16   administrator, all have a common interest in defending against claims that are not

17   covered under the plans.  Indeed, their interests are so similar that there is no

18   consensus among circuits as to precisely which of them is a proper defendant in a

19   claim for ERISA benefits:  the plan or plan administrator, *Leonelli v. Pennwalt*

20   *Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989), whichever entity is ultimately

21   responsible for benefits, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 915-

22   16 (7th Cir. 2013), or whichever entity made the claims decision, *LifeCare Mgmt.*

23   *Servs. LLC v. Ins. Mgmgt Adm'rs*, 703 F.3d 835, 844-45 (5th Cir. 2013).  *See also*

24   Jeffrey S. Russell and Carrie E. Byrnes, *Identifying the Proper Party Defendant in*

25   *ERSA Benefits Claims:  A Circuit Survey*, Bloomberg Law (Sept. 27, 2013) at

26   http://www.bna.com/identifying-the-proper-party-defendant-in-erisa-benefits-

27   claims-a-circuit-survey/ (last accessed May 20, 2014) (discussing Circuit split on

28   this issue and noting that plaintiffs often take "kitchen sink" approach to naming

1    defendants).

2    What is clear, however, is that the basic nature of ERISA benefit claims

3    presents no actual conflicts that preclude joint representation.  These entities have

4    common, not adverse, interests.  Not surprisingly, joint representation of

5    plans/employer and claims administrators in employee benefits litigation is

6    commonplace.  *See Metcalf v. Blue Cross Blue Shield of Michigan*, 2012 WL

7    2021749 (D. Or. Apr. 20, 2012) (same counsel represented third party

8    administrator, benefits plan, and benefits plan sponsor in ERISA case); *Bay Area*

9    *Surgical v. Aetna*, 13-cv-05430 (N.D. Cal.); *see also Forest Ambulatory v. United*,

10   2:12-cv-02916 (C.D. Cal.) (same counsel represents the claims

11   administrator/insurer and all 114 co-defendant benefit plans and plan sponsors);

12   *Barron v. Ashland, Inc.*, 2011 WL 5024590 (C.D. Cal. Oct. 21, 2011) (same

13   counsel represented claims administrator, plan administrator, and plan);

14   *Meguerditchian v. Aetna Life Ins. Co.*, 2014 WL 684688 (C.D. Cal. Feb. 21, 2014)

15   (same counsel represented Plan and claims-paying administrator).[3]  Joint

16   representation is no less appropriate when ancillary claims, such as claims for

17   fiduciary breach or failure to produce plan documents that frequently accompany

18   claims for benefits, especially where, as here, there is informed consent about

19   *potential* conflicts.

20   To require the plan and the claims administrator to incur the burden of

21   separate counsel would serve no useful purpose and would undermine ERISA's

22   goal of promoting the efficient, cost-effective and streamlined adjudication of

23

24   [3]  Interestingly, Plaintiffs' law firm, Hooper, Lundy & Bookman, P.C., represents
     the plaintiffs in the *Meguerditchian* litigation, but has filed no disqualification

25   motion, although that case has progressed further than this litigation.  Plaintiffs'
     counsel are also aware that joint representation is common practice in claims

26   regarding the denial of medical benefits outside the ERISA context.  They
     recently brought a very similar motion in *Methodist Hosp. of California v. Blue*

27   *Cross of California*, BC418873 (Sup. Ct. Cal. 2009).  When the defendants
     responded with arguments similar to those raised in this brief, Plaintiffs

28   withdrew that motion.

benefits disputes.  *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990) (noting that ERISA's claims procedures exist to "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously").

Disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.  *McPhearson*, 96 Cal. App. 4th at 849.  A client deprived of the attorney of his choice suffers a particularly heavy penalty where his attorney is highly skilled in the relevant area of law.  *Id.*  Disqualification motions can be used to harass opposing counsel, delay the litigation, to intimidate an adversary into accepting settlement on otherwise unacceptable terms, or for other strategic purposes.  *Id.* at 850.

## II.   Plaintiffs Lack Standing to Seek Disqualification for Alleged Conflicts that do not Involve Them.

### A.   A party seeking disqualification of opposing counsel must demonstrate that it has standing.

Plaintiffs must have standing to bring a disqualification motion.  *Colyer v. Smith*, 50 F. Supp. 2d 966, 968 (C.D. Cal. 1999) (standing is a jurisdictional prerequisite to seeking disqualification); *Great Lakes Constr., Inc. v. Burman*, (2010) 186 Cal. App. 4th 1347, 1356 ("A 'standing' requirement is implicit in disqualification motions.").  The critical requirement for Article III standing (which Plaintiffs lack) is that the party have personally suffered an "injury in fact."  *Colyer*, 50 F. Supp. 2d at 968.  There is a general prohibition on a litigant's raising another person's legal rights, and the burden is on Plaintiffs to establish standing.  *Id.*

### B.   Plaintiffs are neither current nor former Dorsey or Walraven clients and lack standing to seek disqualification based on claimed conflicts.

The conflict of interest scenario, which is often used by plaintiffs to try to obtain disqualification, presents a clear example of the need for robust application

of the standing requirement to prevent abuse.  Simply put, a plaintiff has no "injury in fact" based on alleged conflict issues among defendants and their counsel.  The conflict, if there is one, does not harm the plaintiff.  Therefore, California follows the majority view that only a current or former client of an attorney has standing to complain of a conflict of interest unless "the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims."  *Tang*, 831 F. Supp. 2d at 1142.

Clients and former clients of a law firm have legitimate expectations of loyalty and confidentiality.  That is why conflicts of interest are very important matters *for the clients and former clients themselves*.  But absent an attorney-client relationship, the moving party must show a "personal stake" in the alleged breach of loyalty, which California courts have interpreted as an expectation of confidentiality.  *Coyler*, 50 F. Supp. 2d at 972-73; *Burman*, 186 Cal. App. 4th at 1356 (party to whom opposing counsel owed no duty of loyalty lacked standing to bring a motion to disqualify counsel for representing clients with conflicting interests); *DCH Health Servs. Corp. v. Waite*, (2002) 95 Cal. App. 4th 829, 832 ("only a party with an expectation of confidentiality can disqualify a lawyer").  Lack of standing alone is sufficient for this Court to deny Plaintiffs' motion to disqualify.  *Burman*, 186 Cal. App. 4th at 1359.

Where there is no confidential or fiduciary relationship between the moving party and opposing counsel, an attempt to disqualify fails for lack of standing.  *See Tang*, 831 F. Supp. 2d 1130 (third-party lacked standing to disqualify opposing counsel); *Coyler*, 50 F. Supp. 2d at 793 (same); *McPhearson*, 96 Cal. App. 4th (same); *Waite*, 95 Cal. App. 4th at 832 (same); *Burman*, 186 Cal. App. 4th at 1359 (same); *Charles Virzi Constr., Inc. v. Studer*, 2010 WL 5209396, at *3 (Cal. App. 4 Dist. Dec. 23, 2010) (same).  A third-party, even if interested in the litigation, has no "legally cognizable interest" in the duty of loyalty owed to clients by their attorney.  *Coyler*, 50 F. Supp. 2d at 793; *Burman*, 186 Cal. App. 4th at 1359.

No California case holds to the contrary.  Indeed, Plaintiffs fail to cite any on-point, contrary authority from California or anywhere else.  Each case cited in the Disqualification Motion involves an attorney who had confidential information about the moving party or was representing parties *on opposite sides* of the case.[4]

To the extent Plaintiffs attempt to create a duty of loyalty between Dorsey and Walraven and the Plaintiffs (as alleged plan beneficiaries via assignment of benefits), this theory as grounds for disqualification has already been rejected by this Court.  *See Williams-Ilunga v. Gonzalez*, 2013 WL 57195, at *5 (C.D. Cal. Feb. 13, 2013) (denying motion to disqualify counsel based on beneficiary's allegation that Plan should be representing her interests in the litigation).  To allege that the plans should be acting in the interests of their beneficiaries in this litigation creates the untenable situation where "there could be no case in which a Plan beneficiary and a Plan were on opposing sides." *Id.*

Here, it is undisputed that Plaintiffs have never had an attorney-client relationship or confidential relationship with Counsel.  The premise underlying Plaintiffs' motion to disqualify is that Counsel's duty of loyalty to the ERISA Plan Defendants will be compromised because they have interests that may, at some point in the future, become adverse to United.  *See* Disqual. Mot. at 8.  Even if this

---

[4] *Kennedy v. Eldridge*, (2011) 201 Cal. App. 4th 1197 (attorney representing his son had confidential information about moving party from his personal relationship with her and his previous representation of movant's father); *Klemm v. Sup. Ct. of Fresno Cal.*, (1977) 75 Cal. App. 3d 893 (under certain circumstances, attorney may represent both husband and wife in divorce, with informed consent); *Gilbert v. Nat'l Corp. for Hous. P'ships*, 71 Cal. App. 4th 1240 (attorney had represented other employees against same defendant in a previous settled case and could not call previous clients to testify without potentially breaching confidentiality of the settlement agreements); *Pressman-Gutman Co., Inc. v. First Union Nat. Bank*, 2004 WL 2743582 (E.D. Pa. Nov. 30, 2004) (attorney simultaneously represented plaintiffs and third party defendant); *Lynde v. Blue Cross and Blue Sheild Mut. Of Omaha*, 1992 WL 49363 (N.D. Ohio Jan. 13, 1992) (current client had claims against previous client that attorney could not bring); *Niagara-Genesee & Vicinity Carpenters Local 280 v. United Bhd. of Carpenters & Joiners of Am.*, 843 F. Supp. 855, 856 (W.D.N.Y. 1994) (one partner cannot represent a beneficiary where his partner represents the plan in all litigation matters except for current case).

were true, it is simply not "a legally cognizable interest" of Plaintiffs because the only injury that results from a breach of loyalty is personal to the Plan Defendants. *See Coyler*, 50 F. Supp. 2d at 793.  As some California courts have put it, any harm to the ERISA Plan Defendants is "of no concern" to Plaintiffs.  *See Burman*, 186 Cal. App. 4th at 1358; *Studer*, 2010 WL 5209396, at * 3.

The risks of potential conflicts and the benefits of joint representation are considerations to be weighed by the Plan Defendants (and United).  They are all sophisticated entities that chose a joint defense after independent legal review. California law does not give the Plaintiffs standing to second guess that decision.

## C.   <u>Plaintiffs completely fail to demonstrate any injury in fact or other basis for standing</u>.

Plaintiffs claim that they are in fact harmed by the joint representation, but they completely fail to show any legally cognizable harm.  To establish an "injury in fact" for standing purposes, Plaintiffs "must show an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Coyler*, 50 F. Supp. 2d at 972-73 (internal quotations omitted).  Plaintiffs have not alleged (let alone proven) an injury to satisfy this standard.

Plaintiffs claim three supposed injuries:  (1) jointly-represented Defendants have not (yet) engaged in informal discovery, prior to formal discovery (Disqual. Mot. at 2-3); (2) such Defendants have not engaged in early settlement discussions (*id.*); and (3) the jointly-represented Defendants will supposedly hide or misrepresent facts once discovery commences (*id.* at 3, 11, 13-14, 21).  The first two of these merely represent legitimate strategic choices by the jointly-represented Defendants, while the third is an unfounded accusation with no basis in reality.

As to the first two points, Plaintiffs' alleged injury is essentially that the jointly-represented Defendants have adopted a different strategy than the one Plaintiffs would prefer.  The only concrete example Plaintiffs provide is that Dorsey

and Walraven have refused to provide them with plan documents or information regarding claims.  (*Id.* at 2-3.)  Plaintiffs' request for discovery at this stage of the litigation is premature, and Counsel's refusal is entirely appropriate and in compliance with the California Rules of Professional Conduct, the Federal Rules of Civil Procedure, and all other applicable rules.  Plaintiffs' inability to open discovery at their whim and strong-arm defendants into quick settlements is not evidence of a current or future ethical violation.  Not surprisingly, the failure to obtain a favorable early settlement has never been recognized as an "injury in fact" that would support standing.  *See Coyler*, 50 F. Supp. 2d at 973.  Plaintiffs' "abstract interest in winning or losing their case is not legally cognizable." *Id.*  All plaintiffs have a stake in winning (or favorably settling) the cases they file, but this tactical interest cannot independently satisfy Article III. *Id.*

With regard to the third alleged harm, the imaginary future cover-up of information, Plaintiffs cite no supporting evidence, only vague and ominous-sounding insinuations.  Plaintiffs say they "may never" know how United conducted its business with regard to Plaintiffs, (Disqual. Mot. at 3, 11), and that Counsel will "likely" prevent Plaintiffs from eliciting the testimony to prove their case (*id.* at 13, 21).  The truth is directly to the contrary. The Defendants will fairly and honestly provide legitimate discovery.  Plaintiffs' willingness to make insulting and false accusations against the jointly-represented Defendants and their chosen counsel is no substitute for an actual showing of constitutional standing.

It is well-established in California jurisprudence that neither a generalized interest in the integrity of the legal system nor the appearance of impropriety confers standing to seek counsel's disqualification.  *Tang*, 831 F. Supp. 2d at 1142-43 (quoting *Coyler*, 50 F. Supp. 2d at 972); *Studer*, 2010 WL 5209396, at *3; *Waite*, 95 Cal. App. 4th at 833.  These "lofty values" do not implicate any personal right of Plaintiffs' which is burdened by the alleged conflict of interest.  *Coyler*, 50 F. Supp. 2d at 973.  Therefore, the alleged conflicts among the jointly-represented

1   Defendants do not threaten Plaintiffs' individual rights to a just determination of
2   their claims.  Accordingly, the Court should deny the motion based on lack of
3   standing.

4   **III.    "Tactical" Disqualification Motions such as this are Highly Disfavored**
5         **Under California Law**.

6         California courts vigorously condemn the tactical use of disqualification
7   motions.  *Havasu*, 217 Cal. App. 4th at, 779 n.7, ("disqualification motions can be
8   (and often are) misused as weapons to harass opposing counsel, delay litigation, or
9   force disadvantageous settlement."); *Gregori v. Bank of America*, 207 Cal. App. 3rd
10  291, 301-02, 254 Cal. Reptr. 853, 859 (Cal. Ct. App. 1989) ("such motions can be
11  used to harass opposing counsel … to delay the litigation … or to intimidate an
12  adversary into accepting settlement on terms that would not otherwise be
13  acceptable") (citations omitted throughout).

14        Here, the "tactical" nature of the disqualification motion could not be more
15  obvious.  First, as described above, Plaintiffs are not seeking to protect any loyalty
16  or confidentiality interest that an actual current or former client has in a conflict of
17  interest situation.  Their wild assertions about threats to the integrity of the system
18  are wholly unsupported.  As the *Gregori* Court noted, it actually tactical
19  disqualification motions such as this that "pose the very threat to the integrity of the
20  judicial process that they purport to prevent."  254 Cal. Reptr. at 859.

21        Each of the specific concerns noted in *Gregori* are presented by this motion.
22  It certainly serves the purpose of "harass[ing] opposing counsel."  *See id.*  Even
23  responding to the motion has been a significant distraction at a time when counsel
24  could have been more effectively engaged in preparing and organizing the defense.
25  If the motion were granted (which it should not be), the impact on counsel's efforts
26  to defend the case would be substantial.  Communicating with separately
27  represented defendants and coordinating strategy would become a much more
28  cumbersome and difficult task.

Granting the motion would certainly "delay the litigation." At one stroke, over 200 defendants would have to (1) locate suitable new counsel, (2) arrange for their retention, and (3) bring them up to speed on everything that has occurred to date. Presumably, new counsel would require additional time to review and respond to the Complaint. At a minimum, months would be lost in this effort.

Finally, and perhaps most importantly to Plaintiffs, the motion presents Plaintiffs with an opportunity "to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable." *See id.* at 859.

Plaintiffs are fairly candid about this strategy. They repeatedly refer to the opportunity to obtain early settlements with Plan Defendants as a reason for bringing the motion. Disqual. Mot. at 2-3. What Plaintiffs do not mention, however, is the real impact that granting the motion would have on the settlement process. Hundreds of Plan Defendants (many subject to fairly modest claims) would suddenly be faced with (1) losing their chosen counsel, (2) losing the opportunity to have their defense paid for by United, and (3) having to start over from scratch with new lawyers, in a case with 800 co-defendants. These Plan Defendants would also lose easy access to Dorsey's and Walraven's knowledge about defenses and potential counterclaims. Plan Defendants in that situation might well be easier targets for Plaintiffs to pressure into settlements "that would not otherwise be acceptable."

Effectively, Plaintiffs seek to take control of the defense strategy away from Defendants. This is precisely the type of abuse that California courts regularly recognize as an improper motivation for disqualification motions.

## IV.   **Plaintiffs Fail to Show any Grounds for Disqualification**.

As described above, the Court can and should deny this tactical disqualification motion based on lack of standing. If the Court considers the merits of the motion, it should deny the motion on that basis as well. There are no *current*, *actual* conflicts among the jointly-represented Defendants. Given the informed,

written consent provided by these sophisticated entities, the hypothetical possibility of future conflicts is no bar to the joint representation.  Defendants have every right to pursue a coordinated defense against Plaintiffs in this case.  If potential conflicts ever materialize in the future, Defendants could still either (1) decide not to assert cross-claims or adverse positions among themselves or (2) defer the resolution of such claims until after this lawsuit is concluded.  In either event, Dorsey and Walraven can vigorously and consistently defend all of their clients by opposing Plaintiffs' claims in this case.

A.   **There is no basis for disqualification because there is no current, actual conflict, and jointly-represented Defendants have consented to joint representation**.

The fundamental flaw in Plaintiffs' conflict of interest analysis in this case is the failure to recognize the difference between (1) an actual conflict, (2) a potential conflict, and (3) a hypothetical or speculative conflict.  Only the first can justify disqualification, and Plaintiffs have completely failed to demonstrate that any such conflict exists here.  The governing ethical rule, California Rule of Professional Conduct 3-310(c), only prohibits "representation of more than one client in a matter in which the interests of the clients potentially conflict" where there has been no "informed written consent."

Conversely, as courts recognize, with informed written consent one law firm can represent multiple parties with a *potential* conflict.  Unless and until adverse claims are actually asserted by jointly-represented parties, the conflict remains potential, and not grounds for disqualification.  *See Brewer v. Swan Magnetics, Inc.*, 2004 WL 745689, at 6 (Cal. Ct. App. April 8, 2004) (" So long as defendants' interests in this litigation remain aligned against plaintiff, at most only a potential conflict of interest between them exists."); *Havasu*, *supra* at 778 (noting that a "potential conflict" is not an automatic basis for disqualification of joint counsel).  *See also M&T Mortg. Corp. v. White*, 2007 WL 2816186, at *4 (E.D.N.Y. Sept. 26,

2007) (potential for inconsistent defenses was insufficient grounds to grant motion to disqualify counsel); *Drag Racing Techs., Inc. v. Univ. City Studios, Inc.*, 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003) (allowing parties to present a united defense despite potential indemnification claims against each other).

Courts also look beneath the moving party's labeling of a conflict to determine whether there is a genuine, fact-based risk of adversity or merely the eager speculation of an adversary anxious to disrupt its opponent.  It is well-settled under California law that speculation and hypothetical scenarios are not grounds for disqualification.  *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 106 Cal. Rptr. 2nd  906 (Cal. Ct. App. 2001) ("A motion to disqualify will not be granted when only a hypothetical conflict exists. "); *Havasu*, *supra* at 779 ("we recognize that a mere *hypothetical* conflict is insufficient") (emphasis in original).

Such judicial skepticism is necessary, because potential or hypothetical conflicts can be conjured up in almost any case.  *Havasu*, *supra* at 779 n.7 ("Absent a somewhat restrictive interpretation of the term 'potential conflict,' *potential conflicts of interest would be inherent in every case of multiple representation*.") (emphasis added).  Here, Plaintiffs have no evidence of any actual conflict.

**B.**    **Plaintiffs rely entirely on potential and hypothetical conflicts, which are not a basis for disqualification**.

The claimed "conflicts" upon which Plaintiffs base their motion are nothing more than the hypothetical possibilities that virtually any co-defendants in litigation might face.  *See Havasu*, *supra* at 779.  The five claimed conflicts argued in Plaintiffs' Motion are each addressed below, but they all share certain fatal flaws.

Critically, all of them are potential or hypothetical conflicts, not actual conflicts.  An actual conflict exists when co-defendants are actually making claims against each other or actually asserting adverse positions.  *See Brewer*, *supra*.  That has not occurred with any of the jointly-represented Defendants.  Plaintiffs confidently assert that Plan Defendants "will" take certain legal positions in the

case, but no answers or motions to dismiss have yet been filed by jointly-represented Defendants, so there is no way to determine what legal positions each Defendant will or will not take.  Indeed, the one example cited by Plaintiffs, the motion to dismiss brought by the two Aegon Defendants, is not adverse to United and involves Defendants with separate counsel.

Plaintiffs provide no factual basis to support their claims of conflicts, relying instead on speculation.  As discussed further below, the meager evidence that Plaintiffs do provide directly contradicts rather than supports their theories.  Indeed, Mr. Tooch's declaration does not even attempt to identify which Plan Defendants allegedly have conflicts with United.  This is vital, because many of the Defendants in the case are not currently represented by Dorsey and Walraven.  Conflicts involving those separately-represented parties would be irrelevant.  Instead, Plaintiffs lump all of the Plan Defendants together, as though each will present identical facts and identical legal issues.  This is obviously not the case.

The five reasons that Plaintiffs allege United and the Plan Defendants at odds with each other also fail as follows:

"**United and the Plan Defendants "already disagree" regarding United's Authorization of Claims**":  Under this heading, Plaintiffs raise two issues.  First, Plaintiffs contend that a conflict is demonstrated by the fact that the Aegon defendants (a plan and plan sponsor) filed a separate motion to dismiss, using separate counsel.  Disqual. Mot. at 10-11.  Of course, what positions *separately-represented* Defendants choose to take has no relevance to the *jointly-represented* Defendants who are the subject of this motion.  Second, nothing about the Aegon motion to dismiss is adverse to United.  *See* Dkt No. 489.  It is based primarily on a choice of forum clause in the Aegon plan requiring Plaintiffs to sue, if at all, in Cedar Rapids, Iowa.  The additional theories in the Aegon motion to dismiss assert no claims against United and do not accuse United of any wrongdoing.  The fact that Aegon chose to prioritize and rely on certain unique defenses does not show an

1  actual conflict at all.  Aegon's experience simply demonstrates that the Plan

2  Defendants are perfectly capable of assessing whether to retain separate counsel

3  and doing so if they believe it is in their best interests.

4      Under this same heading, Plaintiffs allege that United failed, during the

5  underlying events, to properly assert the effect of "anti-assignment" clauses in the

6  various plan documents.  As with Plaintiffs' other assertions, no evidence

7  whatsoever is provided to support this claim.  Nor does it necessarily create a

8  conflict.  United and the Plan Defendants will have a shared interest in asserting

9  whatever defenses are appropriate, including the anti-assignment clauses.  If a Plan

10  Defendant decides (presumably *after* reviewing specific facts which are developed

11  during discovery) that it has a contribution or indemnity claim against United based

12  on failure to assert the anti-assignment clause, it can retain new counsel at that time.

13      Defendants are not required to bring cross claims against each other *during*

14  *the primary lawsuit*, even if those cross claims have arguable merit.  Cross claims

15  are permissive, not mandatory.  In particular, cross claims for indemnity and

16  contribution, whether based on tort, contract or otherwise, do not even accrue until

17  one defendant has been forced to pay the claim for which it will then seek

18  reimbursement.  *See Royal Indem. Group, Inc. v. Travelers Indem. Co.*, 2005 U.S.

19  Dist. LEXIS 32467, *34 (N.D. Cal. Sept. 6, 2005) (citing *Lantzy v. Centex Homes*,

20  31 Cal. 4th 363, 378 n.12, 2 Cal. Rptr. 3d 655, 73 P.3d 517 (2003); *Valley Circle*

21  *Estates v. VTN Consolidated, Inc.*, 33 Cal. 3d 604, 611, 189 Cal. Rptr. 871, 659

22  P.2d 1160 (1983)); *Postley v. Harvey*, 153 Cal. App. 3d 280, 284-285 (Cal. App. 2d

23  Dist. 1984).  The same rule applies for contribution claims.  *Asdar Group v.*

24  *Pillsbury, Madison & Sutro*, 99 F.3d 289, 295-296 (9th Cir.1996).  Any risk of

25  disagreement among the Defendants based on the anti-assignment clauses is mere

26  speculation about the future.  That does not support disqualification.

27      "**United and the Plan Defendants Will Further Disagree As To Whether**

28  **United is Liable**":  Plaintiffs contend that the Plan Defendants and United will

necessarily disagree about whether United's role as claims administrator makes it liable for the non-payment of certain claims.  *Id.* at 11-13.  Once again, Plaintiffs do not cite any supporting facts.  Plaintiffs assume, without demonstrating, that (a) Plaintiffs will successfully prove that a claim should have been paid; (b) the facts will create a genuine dispute between United and Plan Defendants as to who is liable for non-payment; and (c) United and the Plan Defendants will *not* decide to defer disputes as to their respective responsibility until after the conclusion of this case.  None of those assertions are warranted at this time, particularly in the complete absence of any evidence.  Even if that hypothetical scenario comes to pass, moreover, the Plan Defendants can decide to defer any such disputes until after this litigation, or simply seek separate counsel at that time, as both United and the Plan Defendants recognize.  Plaintiffs have not offered any rational reason why the Defendants cannot simply defer possible disputes between them for a later day.

"**United and the Plan Defendants Will Disagree Regarding Who Is Responsible for ERISA Penalties**":  Plaintiffs contend that there will necessarily be a dispute between United and the Plan Defendants regarding ERISA penalties for failure of the "plan administrator" to produce plan documents upon request.  *Id.* at 13-14.  This theory is not merely unsupported; it is directly contradicted by Plaintiffs' evidence.  As Plaintiffs note, only a plan administrator can be held liable under this theory, so Plaintiffs claim "that there will likely be a dispute" about the identity of the plan administrator.

Actually, based on the only relevant document Plaintiffs provided, nothing is less likely.  The Aegon ASA states that United is "not the Plan Administrator." Tooch Decl., Ex. A § 2.2.  Conversely, the Aegon plan documentation, submitted by Aegon with its motion to dismiss, confirms that Aegon acknowledged its own role as "plan administrator."  Dkt. No. 489-3, Ex. 1 at 33.  There is thus no record evidence to suggest that United was a plan administrator for any Plan Defendant. Nor is there ever likely to be any such evidence.  To the best of United's

knowledge, each plan and summary plan description ("SPD") explicitly identifies the "plan administrator," and the plan administrator is never United.  Certainly Plaintiffs offer no evidence to the contrary.[5]  In any event, as with any other hypothetical liability dispute, the Plan Defendants and United can decide to defer any such disputes until after this litigation.

"**A Direct Conflict Exists With Respect to Plans Which Had Stop Loss Insurance from United**":  Plaintiffs allege that (a) some of the Plan Defendants had United "stop loss" insurance, which provided coverage for medical benefit claims above a defined threshold; (b) this improperly incentivized United to deny legitimate claims; and (c) "stop loss" insurance is an automatic, *per se* violation of ERISA.  Disqual. Mot. at 15-17.  But Plaintiffs cite no facts to support (a) and (b), and no law to support (c).  To the contrary, stop loss insurance is a perfectly legitimate insurance product commonly used by ERISA plans, and no case holds that stop loss coverage, or any other insurance purchased by an ERISA Plan, somehow violates ERISA.  *See*, *e.g.*, *Bill Gray Enters. Inc. Emp. H & W v. Gourley*, 248 F.3d 206 (3rd Cir. 2001) (discussing use of stop loss insurance purchased by an ERISA Plan); *see also e.g.*, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (recognizing that an insurer can act as a fiduciary under an ERISA plan without per se violating their fiduciary duties).   Moreover, even if there was any support for Plaintiffs' attacks on stop loss insurance, Plaintiffs still fail to show why it creates an actual conflict, or why the Defendants could not simply agree to defer any disputes on that issue until after this case.

"**A Conflict Of Interest Exists Regarding United's Self Dealing With Respect to Charge Reduction**":  Plaintiffs claim that United improperly denied claims because of fees available to United under its Shared Savings Program

---

[5]   To the extent plaintiffs attempt to rely on the discredited theory that United could be a "de facto" plan administrator, the Ninth Circuit has rejected that theory.  *See Ford v. MCI Commc'ns Corp.*, 399 F.3d 1076-81 (9th Cir. 2005) , overruled on other grounds in *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011).

("Program").  *Id.* at 17-18.  This is another instance in which the documents Plaintiffs rely on actually refute their theory.  Plaintiffs grossly misstate the nature of the Program, claiming that it is a "kickback" scheme which rewards United for *denying* claims on pretextual grounds.  As Plaintiffs are well aware (because the Program is described in Exhibit A to the Tooch Declaration), that is simply false.  The Program applies to discounted rates, negotiated by United, from certain providers for services actually provided.  This is a common feature of managed care health coverage, which (as the Supreme Court has recognized) is a critical, and appropriate, tool in controlling health care costs.  *Pergram v. Herdrich*, 530 U.S. 211, 219 (2000) ("These cost-controlling measures are commonly complemented by specific financial incentives to physicians, rewarding them for decreasing utilization of health-care services, and penalizing them for what may be found to be excessive treatment.").  It has nothing to do with *denial* of claims.  Rate discounts only apply when services are paid for, not when claims are denied.  Plaintiffs' theory of conflict of interest is based on a blatant falsehood.

Plaintiffs' flawed, unsupported and wildly speculative theories of conflict do not even come close to meeting their heavy burden on a disqualification motion.

C. **Joint representation of multiple ERISA defendants is common and appropriate**.

Given the lack of specific facts Plaintiffs provide, the only possible way their motion could succeed is if there is a *per se* bar against representation of multiple defendants in an ERISA case.  But of course that is not the law, and no authority cited by Plaintiffs even suggests such a rule.  Nor can Plaintiffs argue that the nature of ERISA benefits claims somehow makes joint representation inappropriate.  As discussed above at pp. 8-10, the opposite is true.

The facts of this case confirm the logic of that alignment.  The Plan Defendants retained United to determine the validity of benefit claims.  This litigation is, in large part, a continuation of that task.  Indeed, the ASA expressly

accords United the same discretion in settling litigation as it has in normal benefits processing (and reaffirms the parties' agreement to "cooperate fully" in defending such litigation).  United and the Plan Defendants can utilize the same counsel because they have a common interest in avoiding payment of invalid claims.  Indeed, as noted, counsel that jointly represents United and Plan Defendants in this litigation are also prosecuting a counterclaim on their behalf against Plaintiffs in a related matter.  *See Almont Ambulatory v. United*, 14-cv-03053-MWF (VBKx) (C.D. Cal.), Dkt No. 15.  This is another benefit of joint representation.

Multiple defendants, in ERISA cases as in other types of litigation, are quite often represented by the same counsel, despite the hypothetical possibility that the defendants may develop a conflict.  There is nothing wrong with that.

### D.   Defendants are sophisticated entities that have made informed decisions to utilize the counsel of their choice.

Finally, the Defendants here have all provided informed, written consent, which permits joint representation.  *Fed. Home Loan Mortg. Corp. v. LaConchita Ranch Co.*, 68 Cal. App. 4th 856, 80 Cal. Rptr. 2nd 634 (Cal.  Ct. App. 1998) (affirming denial of motion to disqualify where plaintiff "is highly sophisticated" and "[i]f it decides to waive a right or concede an issue in order to be able to retain counsel of its choice, we know of no policy that would prevent it from doing so."). *See also Oneida of the Thames Band v. State of New York*, 757 F.2d 19, 22 (2d Cir. 1985) (fully-informed clients permitted to consent to multiple representation where one client's fallback position was in conflict with another client's primary position on the merits); *Burg v. Brunswick Hosp. Ctr. Inc.*, 1987 WL 19431 (E.D.N.Y. Oct. 23, 1987) (consent to multiple representation permitted where defendant doctors in malpractice suit had potential cross-claims for contribution against one another, but chose to pursue a unified defense); *Como v. Commerce Oil Co.*, 607 F. Supp. 335, 342-43 (S.D.N.Y. 1985) (plaintiffs who had potential claim against another plaintiff allowed to consent to joint representation).

The Plan Defendants are sophisticated entities perfectly capable of making informed, intelligent decisions about how best to protect their interests in this lawsuit. They have access to independent counsel, and United insisted that each Plan Defendant consult with independent counsel before agreeing to joint representation. Co-Defendant Decls. ¶ 3. Many of the Plan Defendants accepted the offer of joint representation, after careful consideration. *Id.* ¶ 3-4. Some, such as Aegon, chose to retain separate counsel. Others are still in the process of making a final decision as to whom to retain. Grant Decl. ¶ 8. But for all of the Defendants, no matter who represents them, the choice of defense counsel lies with Defendants, not with Plaintiffs.

The Plan Defendants also all understand that they are free, in the event that a future conflict does arise, to change counsel. They are also free to decide, after this litigation is concluded, to bring contribution or indemnification claims against United. *Id.* ¶ 4. Co-Defendant Decls. ¶ 5. They have made a considered decision to proceed with joint representation, and there is no basis for allowing Plaintiffs to nullify that decision.

## **CONCLUSION**

Plaintiffs no doubt perceive a tactical advantage when Defendants are unable to provide a unified defense. But Defendants are in no way *obligated* to provide Plaintiffs with that advantage. Instead, Defendants can decide to jointly oppose the merits of the Plaintiffs' claims, leaving for another day the possibility of reallocation of any liability through contribution or indemnification.

For the reasons expressed herein, United and the jointly-represented Defendants respectfully request that Plaintiffs' motion for disqualification be denied in its entirety.

///

///

///

1   Dated: May 23, 2014

2     By: /s/ Bryan S. Westerfeld          By:    /s/ Stephen P. Lucke

3   Bryan S. Westerfeld                Stephen P. Lucke

4   Nicole E. Wurscher                 Michelle S. Grant
    **WALRAVEN &**                     **DORSEY & WHITNEY LLP**

5   **WESTERFELD LLP**                 Suite 1500, 50 South Sixth Street

6   101 Enterprise, Suite 350          Minneapolis, MN 55402
    Aliso Viejo, CA  92656             Telephone: (612) 340-2600

7   Telephone:  (949) 215-1990         Facsimile: (612) 340-2868

8   Facsimile:  (949) 215-1999         *Attorneys for Certain Defendants\**
    *Attorneys for Certain*

9   *Defendants\**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

Attachment A — Certain Defendants

1  UNITEDHEALTH GROUP INCORPORATED

2  UNITED HEALTHCARE SERVICES, INC.

3  UNITEDHEALTHCARE INSURANCE COMPANY

4  OPTUMINSIGHT, INC.

5  AARP

6  AARP EMPLOYEES WELFARE PLAN

7  ACUSHNET COMPANY

8  UNITEDHEALTH GROUP INCORPORATED

9  UNITED HEALTHCARE SERVICES, INC.

10  UNITEDHEALTHCARE INSURANCE COMPANY

11  OPTUMINSIGHT, INC.

12  AARP

13  AARP EMPLOYEES WELFARE PLAN

14  ACUSHNET COMPANY

15  ACUSHNET COMPANY CONSOLIDATED HEALTH AND WELFARE  PLAN

16  AEGIS MEDIA AMERICAS, INC.

17  AEGIS MEDIA NORTH AMERICA WELFARE BENEFIT PLAN

18  ALCON LABORATORIES, INC.

19  ALCON LABORATORIES INC. VOLUNTARY EMPLOYEES BENEFICIARY

20      ASSOCIATION TRUST

21  ALPHA MECHANICAL INC.

22  ALPHA MECHANICAL HEATING & AIR CONDITIONING HEALTH

23      INSURANCE PLAN TRUST

24  ALTEGRITY, INC.

25  ALTEGRITY, INC. HEALTH AND WELFARE PLAN

26  ANHEUSER-BUSCH COMPANIES, LLC

27  THE GROUP INSURANCE PLAN FOR CERTAIN EMPLOYEES OF

28      ANHEUSER-BUSCH COMPANIES, LLC AND THE GROUP INSURANCE

1   PLAN FOR CERTAIN RETIREES OF ANHEUSER-BUSCH COMPANIES,
2   LLC
3   APPLE AMERICAN GROUP, LLC
4   APPLE AMERICAN GROUP, LLC WELFARE BENEFIT PLAN
5   ARDENT SERVICES, L.L.C.
6   ARDENT SERVICES, L.L.C WELFARE BENEFIT PLAN
7   AT&T CORP. and AT&T MOBILITY, LLC
8   AT&T UMBRELLA BENEFIT PLAN and CINGULAR WIRELESS MEDICAL
9   PLUS PLAN
10   ATI SYSTEMS INTERNATIONAL, INC.
11   ATI SYSTEMS - A GARDA COMPANY GROUP HEALTH PLAN
12   AUCTION.COM, LLC
13   AUCTION.COM EMPLOYEE BENEFIT PLAN
14   BAYSIDE MANAGEMENT COMPANY, LLC
15   BAYSIDE MANAGEMENT COMPANY LLC EMPLOYEE BENEFIT PLAN
16   BELMONT VILLAGE, L.P.
17   BELMONT VILLAGE L.P. HEALTHCARE BENEFITS PLAN
18   BEST BUY CO., INC.
19   BEST BUY FLEXIBLE BENEFIT PLAN
20   BOAT AMERICA CORPORATION
21   BOAT U.S. HEALTH PLAN
22   BRADY CORPORATION
23   W.H. BRADY CO. INSURED BENEFITS PLAN
24   BUCA RESTAURANTS 2, INC.
25   BUCA INC. HEALTH CARE BENEFIT PLAN
26   CALIFORNIA CHARTER SCHOOLS ASSOCIATION
27   CBIZ MHM, LLC
28   CBIZ GROUP HEALTH AND WELFARE PLAN

C.H. ROBINSON COMPANY, INC.

C.H. ROBINSON COMPANY GROUP HEALTH MAJOR MEDICAL PLAN

CHARLOTTE RUSSE HOLDING, INC. WELFARE BENEFIT PLAN

CHARLOTTE RUSSE HOLDING, INC.

CHARMING SHOPPES, INC.

CHARMING SHOPPES, INC. MEDICAL PLAN

CHILD DEVELOPMENT INCORPORATED

CDI GROUP WELFARE PLAN

CNA FINANCIAL CORPORATION

CNA FINANCIAL CORPORATION HEALTH AND GROUP BENEFITS PROGRAM [correct name of plan is CNA Medical Plan]

CONMED CORPORATION

CONMED CORPORATION HEALTHCARE PLAN

CORT BUSINESS SERVICES CORPORATION

CORT BUSINESS SERVICES CORPORATION GROUP INSURANCE PLAN

CYTEC INDUSTRIES, INC.

CYTEC INDUSTRIES INC.'S HEALTH AND WELFARE PLAN

DARDEN GROUP LIFE AND HEALTH BENEFIT PLAN FOR SALARIED EMPLOYEES [correct name is Darden Restaurants Group Life and Health Plan for Salaried Employees]

DARDEN RESTAURANTS, INC.

DEERE & COMPANY

JOHN DEERE FLEXIBLE BENEFITS PLAN

DENSO PRODUCTS AND SERVICES AMERICAS, INC. [f/k/a DENSO sales California, Inc.]

DENSO SALES CALIFORNIA, INC. GROUP INSURANCE PLAN

DISCOVERY COMMUNICATIONS WELFARE BENEFIT PLAN

DISCOVERY COMMUNICATIONS, LLC

1   EMCOR GROUP, INC.

2   EMCOR GROUP, INC. EMPLOYEE WELFARE PLAN

3   EQUITY RESIDENTIAL SERVICES, LLC

4   EQUITY RESIDENTIAL GROUP INSURANCE PLAN

5   ERNST & YOUNG MEDICAL PLAN

6   ERNST & YOUNG, LLP

7   ESSILOR OF AMERICA, INC.

8   ESSILOR OF AMERICA, INC. EMPLOYER WELFARE BENEFIT PLAN

9   EXPRESS JET AIRLINES, INC.

10  ATLANTIC SOUTHEAST AIRLINES WELFARE BENEFIT PLAN [w/ Express Jet]

11  EXPRESS MESSENGER SYSTEMS, INC. d/b/a ONTRAC

12  EXPRESS MESSENGER SYSTEMS, INC. d/b/a ONTRAC (Affiliated Health

13      Plan)

14  FARMERS GROUP, INC.

15  FARMERS GROUP, INC. EMPLOYEE PREPAID BENEFIT PLAN

16  FINRA DISPUTE RESOLUTION, INC.

17  FINRA EMPLOYEE GROUP MEDICAL, DENTAL, LIFE, DISABILITY,  AD&D &

18      VISION PLAN

19  FLEXTRONICS EMPLOYEE BENEFITS PLAN

20  FLEXTRONICS INTERNATIONAL USA, INC.

21  FOOT LOCKER RETAIL, INC.

22  FOOT LOCKER WELFARE BENEFIT PAYMENT PLAN

23  FUTURE ELECTRONICS CORP.

24  FUTURE ELECTRONICS CORP. GROUP INSURANCE PLAN

25  GENERAL PARTS, INC. [correct name is General Parts International, Inc.]

26  GENERAL PARTS, INC. EMPLOYEE BENEFITS PLAN MEDICAL

27      INSURANCE [correct name is General Parts International, Inc. Self-Funded

28      Health and Welfare Benefit Plan]

1  GENON ENERGY SERVICES, LLC

2  GENON ENERGY GROUP WELFARE BENEFITS PLAN

3  GEORG FISCHER SIGNET, LLC

4  GEORG FISCHER EMPLOYEE BENEFIT PLAN

5  GENPACT PROCESS SOLUTIONS, LLC

6  GENPACT WELFARE BENEFIT PLAN

7  GF HEALTH PRODUCTS INC.

8  GF HEALTH PRODUCTS, INC. [correct name of plan is GF Health Products, Inc.

9      (Enrolling Group]

10  GTECH CORPORATION

11  GTECH CORPORATION PARTICIPANT BENEFIT PLAN

12  HONEYWELL INTERNATIONAL, INC.

13  HONEYWELL INTERNATIONAL INC. BENEFIT PLAN AND HONEYWELL

14      INTERNATIONAL, IN. RETIREE MEDICAL PLAN

15  HOTELS AB, LLC

16  THE STANDARD/HOTELS AB WELFARE BENEFIT PLAN

17  IMORTGAGE.COM, INC.

18  IMORTGAGE.COM, INC. CAFETERIA PLAN

19  INFORMA USA, INC.

20  INFORMA USA, INC. AND SUBSIDIARIES INSURANCE PLAN

21  INSPERITY GROUP HEALTH PLAN

22  INSPERITY HOLDINGS, INC., f/k/a ADMINISTAFF OF TEXAS, INC.

23  INTEGRA LIFESCIENCES CORPORATION

24  INTEGRA LIFESCIENCES CORP. MEDICAL/PRESCRIPTION, DENTAL

25      AND STD PLAN

26  INTERNATIONAL BUSINESS MACHINES CORPORATION

27  IBM MEDICAL & DENTAL PLAN FOR REGULAR AND PART-TIME

28      EMPLOYEES

1  INTERNATIONAL SPEEDWA Y CORPORATION'S WELFARE BENEFIT
2      PLAN
3  INTERNATIONAL SPEEDWAY CORPORATION
4  INX INTERNATIONAL GROUP MEDICAL/DENTAL PLAN
5  INX INTERNATIONAL INK CO.
6  JP MORGAN CHASE NATIONAL CORPORATE SERVICES, INC. [correct
7      name is JPMorgan Chase Bank, N.A.]
8  THE JPMORGAN CHASE HEALTH & INCOME PROTECTION PLAN FOR
9      ACTIVE EMPLOYEES
10  JACK IN THE BOX INC.
11  JACK IN THE BOX INC. CREW EMPLOYEES HEALTH & WELFARE PLAN
12  JACKSON LEWIS LLP WELFARE PLAN [now known as JACKSON LEWIS
13      P.C. CHOICE PLUS PLAN]
14  JACKSON LEWIS LLP [now known as JACKSON LEWIS P.C.]
15  JETBLUE AIRWAYS CORPORATION
16  JETBLUE AIRWAYS GROUP HEALTH INSURANCE PLAN
17  KELLOGG, BROWN & ROOT, LLC.
18  KELLOGG, BROWN & ROOT, INCORPORATED HOURLY EMPLOYEES
19      HEALTH & WELFARE PLAN
20  KELLY MITCHELL GROUP INC. MEDICAL PLAN
21  KELLY MITCHELL GROUP, INC.
22  KLA-TENCOR CORPORATION
23  KLA-TENCOR CORPORATION GROUP INSURANCE PLAN
24  KONICA MINOLTA BUSINESS SOLUTIONS USA, INC. [correct name   Konica
25  Minolta Business Solutions U.S.A., Inc.]
26  KONICA MINOLTA BUSINESS SOLUTIONS USA, INC. LIFE, DISABILITY,
27      ACCIDENT, MEDICAL AND DENTAL PLAN [correct name Konica Minolta
28      Business Solutions U.S.A., Inc. Life, Disability, Accident, Medical & Dental

1     Plan]

2  L BRANDS, INC., f/k/a LIMITED BRANDS, INC. [correct name is L Brands

3     Service Company, LLC]

4  L BRANDS, IN. HEALTH AND WELFARE PLAN

5  LARSON-JUHL US LLC WELFARE PLAN

6  LARSON-JUHL US, LLC

7  LA-Z-BOY INCORPORATED

8  LA-Z-BOY INCORPORATED MEDICAL PLAN AND LA-Z-BOY

9     INCORPORATED MEDICAL PLAN FOR RETAIL EMPLOYEES

10 LEVY RESTAURANTS, INC.

11 EMPLOYEE BENEFIT PLAN OF THE COMPASS GROUP USA, INC. [w/

12    Levy]

13 LEAVIT GROUP AGENCY ASSOCIATION, LLC [LGAA]

14 LEAVIT GROUP AGENCY ASSOCIATION, LLC HEALTH & WELFARE

15    EMPLOYEES BENEFIT PLAN

16 LINDE NORTH AMERICA INC. INSURANCE PLAN

17 LINDE NORTH AMERICA, INC.

18 MCM CORPORATION

19 HEALTH CARE PLAN OF THE EMPLOYEES OF MCM CORP

20 MCNICHOLS COMPANY

21 MCNICHOLS COMPANY HEALTH BENEFIT PLAN

22 MEDICAL SPECIALITIES DISTRIBUTORS LLC

23 MEDICAL SPECIALITIES DISTRIBUTORS, LLC GROUP BENEFITS PLAN

24 MIDAMERICAN ENERGY COMPANY

25 MIDAMERICAN ENERGY COMPANY WELFARE BENEFIT PLAN

26 MILLARD REFRIGERATED SERVICES

27 MILLARD REFRIGERATED SERVICES WELFARE BENEFIT PLAN

28 MONAVIE, LLC

1   MONAVIE, LLC FRINGE BENEFIT PLAN

2   MONROVIA NURSERY COMPANY

3   MONROVIA NURSERY COMPANY EMPLOYEE BENEFIT PLAN

4   MULTIPLAN, INC.

5   HEALTH INSURANCE PLAN OF MULTIPLAN, INC.

6   MYRIAD GENETICS, INC.

7   MYRIAD GENETICS, INC. WELFARE BENEFIT PLAN

8   NATIONAL CAPTIONING INSTITUTE, INC.

9   NATIONAL CAPTIONING INSTITUTE, INC. HEALTH & WELFARE

10      BENEFITS PLAN

11  NATIONAL MENTOR HOLDINGS, LLC

12  NATIONAL MENTOR HOLDINGS, LLC FLEXIBLE BENEFIT PLAN

13  NATIONSTAR MORTGAGE GROUP HEALTH AND WELFARE BENEFIT

14      PLAN

15  NATIONSTAR MORTGAGE, LLC

16  NCH CORPORATION

17  NCH CORPORATION EMPLOYEE LIFE AND HEALTH BENEFIT PLAN

18  NESTLE USA NESCARE PLAN

19  NESTLE USA, INC.

20  NOVARTIS PHARMACEUTICALS CORP. WELFARE BENEFITS PLAN

21  NOVARTIS PHARMACEUTICALS CORPORATION

22  OSRAM SYLVANIA, INC.

23  OSRAM SYLVANIA, INC. PLAN FOR GROUP INSURANCE [correct name of

24      plan is Osram Sylvania Inc. Health and Welfare Benefits Plan]

25  PARKER-HANNIFIN CORPORATION

26  GROUP INSURANCE PLAN HOURLY AND SALARIED EMPLOYEES OF

27      PARKER HANNIFIN CORP.

28  PECHINEY PLASTIC PACKAGING, INC.

1   ALCAN SALARIED WELFARE BENEFITS PROGRAM  [w/ Pechiney]

2   PERFORMANCE FOOD GROUP INC. EMPLOYEE BENEFITS PLAN

3   PERFORMANCE FOOD GROUP, INC.

4   PETER KIEWIT SONS', INC.

5   PETER KIEWIT SONS', INC. HEALTH AND WELFARE PLAN

6   PFIZER, INC. [correct name is Pfizer Inc]

7   PFIZER MEDICAL PLAN

8   PLATINUM HOME MORTGAGE CORPORATION

9   PLATINUM HOME MORTGAGE CORPORATION ( Affiliated Health Plan)

10   PRADA USA CORP.

11   PRADA USA CORPORATION WELFARE BENEFIT PLAN

12   PRECYSE SOLUTIONS, LLC

13   WELFARE BENEFIT PLAN FOR EMPLOYEES OF PRECYSE SOLUTIONS

14   QBE FIRST GROUP HEALTH AND WELFARE PLAN [Correct name is QBE

15       Financial Institution Risk Services, Inc.]

16   QBE FIRST INSURANCE AGENCY, INC. [Correct name is QBE First Group

17       Health and Welfare Plan]

18   S & A COMPUTER SERVICES, INC.

19   S AND A COMPUTER SERVICES WELFARE BENEFIT PLAN

20   SEASONS HOSPICE & PALLIATIVE CARE OF CALIFORNIA, INC.  [correct

21       name Seasons Hospice, Inc.]

22   SEASONS HOSPICE FLEXIBLE BENEFIT PLAN

23   SHELL OIL COMPANY

24   SHELL OIL COMPANY COMPREHENSIVE WELFARE BENEFITS PLAN

25   SKYWEST AIRLINES, INC.

26   SKYWEST, INC. CAFETERIA PLAN

27   SMURFIT KAPPA ORANGE COUNTY, LLC, f/k/a ORANGE COUNTY

28       CONTAINER GROUP LLC

1  ORANGE COUNTY CONTAINER GROUP MEDICAL PLAN

2  STEIN MART, INC.

3  STEIN MART, INC. & SUBSIDIARIES GROUP DISABILITY AND VISION

4      PLAN

5  SUNSTATE EQUIPMENT COMPANY, LLC

6  SUNSTATE EQUIPMENT COMPANY, LLC EMPLOYEE BENEFIT PLAN

7  TEXTRON BARGAINED INSURED BENEFITS PLAN

8  TEXTRON, INC.

9  TGI FRIDAY'S, INC.

10 CRW FLEXIBLE BENEFIT PLAN [w/ TGI Friday's]

11 THE PROCTER & GAMBLE COMPANY [Incorrectly named in the Complaint    as

12 Proctor & Gamble RHD, Inc.]

13 THE PROCTER & GAMBLE HEALTH CARE PLAN [n/k/a PROCTER &

14     GAMBLE MEDICAL PLAN FOR ACTIVE EMPLOYEES and PRCTER &

15     GAMBLE RETIREE WELFARE BENFITS PLAN

16 THE TRAVELERS COMPANYES, INC. (Companies?)

17 THE TRAVELERS TRUSTEED EMPLOYEE BENEFIT PLAN

18 THE TURNER CORPORATION

19 THE TURNER CORPORATION WELFARE BENEFITS PLAN

20 TIC HOLDINGS, INC.

21 TIC HOLDINGS, INC. WELFARE BENEFIT PLAN

22 TIME WARNER CABLE BENEFITS PLAN

23 TIME WARNER CABLE, INC.

24 TRINET HR CORPORATION, F/K/A GEVITY HR, INC. [correct name of plan

25     sponsor is TriNet Group, Inc.]

26 GEVITY HR INC. SECTION 125 PLAN [correct name of plan is TriNet Group,    Inc.

27 Section 125, Section 129, and Flexible Spending Account Plan]

28 U.S. AUTO PARTS NETWORK, INC.

1  US AUTO PARTS NETWORK INC. HEALTH AND WELFARE BENEFIT

2      PLAN

3  UPM-RAFLATAC, INC.

4  UPM-RAFLATAC, INC. HEALTH AND WELFARE BENEFIT PLAN

5  USA TRUCK INC. WELFARE BENEFIT PLAN

6  USA TRUCK, INC.

7  VELOCITY EXPRESS, LLC

8  VELOCITY EXPRESS, LLC FLEXIBLE BENEFITS PLAN

9  VIA TECHNOLOGIES, INC.

10  VIA TECHNOLOGIES, INC. HEALTH AND WELFARE PLAN

11  VOLT INFORMATION SCIENCES, INC.

12  VOLT INFORMATION SCIENCES, INC. AND AFFILIATES EMPLOYEE

13      WELFARE BENEFITS PLAN

14  VULCAN MATERIALS COMPANY

15  HEALTH & WELFARE PLAN OF VULCAN EMPLOYEES

16  W.W. GRAINGER, INC.

17  W.W. GRAINGER INC. GROUP BENEFIT PLAN I

18  WESTWAYS STAFFING SERVICES HEALTH PLAN

19  WESTWAYS STAFFING SERVICES, INC.

20  WHOLE FOODS MARKET CALIFORNIA, INC.

21  WHOLE FOODS MARKET, INC. CAFETERIA PLAN [correct name of plan is

22      Whole Foods Market Group Benefit Plan]

23  WIPRO LIMITED

24  WIPRO HEALTH AND WELFARE PLAN

25  WORLEYPARSONS CORPORATION

26  GROUP BENEFITS PLAN FOR EMPLOYEES OF WORLEYPARSONS

27      CORPORATION

28  YUM! BRANDS, INC.

1  YUM! BRANDS, INC. RESTAURANT EMPLOYEES GROUP INSURANCE

2     PLAN

3  ZALE DELAWARE, INC.

4  ZALE CORPORATION BENEFITS PLAN

OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

# PROOF OF SERVICE

STATE OF CALIFORNIA            )
                               )  ss
COUNTY OF ORANGE               )

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 101 Enterprise, Suite 350, Aliso Viejo, CA 92656.

On May 23, 2014, I served the foregoing document(s) described as

**OPPOSITION OF UNITED AND JOINTLY-REPRESENTED DEFENDANTS TO PLAINTIFF's MOTION TO DISQUALIFY COUNSEL**

on all interested parties in this action as follows (or as on the attached service list):

DARON L. TOOCH
BRYCE WOOLLEY
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517

E-Mail:
dtooch@health-law.com
bwoolley@health-law.com

☒       BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the *CM/ECF* system. Participants in the case who are registered *CM/ECF* users will be served by the *CM/ECF* system. Participants in the case who are not registered *CM/ECF* users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 23, 2014, at Aliso Viejo, California.

Jessica M. Ridley