1  DARON L. TOOCH (State Bar No. 137269)
   ERIC D. CHAN (State Bar No. 253082)
2  BRYCE W. WOOLLEY (State Bar No. 280759)
   **HOOPER, LUNDY & BOOKMAN, P.C.**
3  1875 Century Park East, Suite 1600
   Los Angeles, California  90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
5  E-Mail:  dtooch@health-law.com
   E-Mail:  echan@health-law.com
6  E-Mail:  bwoolley@health-law.com

7  Attorneys for Plaintiffs

8

9              **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12 ALMONT AMBULATORY          CASE NO. 14-CV-2139-MWF (VBKx)
   SURGERY CENTER, LLC;
13 BAKERSFIELD SURGERY        **PLAINTIFFS' OPPOSITION TO**
   INSTITUTE, LLC; CIRO SURGERY   **OMNIBUS MOTION TO DISMISS**
14 CENTER, LLC; EAST BAY
   AMBULATORY SURGERY         Judge:  Hon. Michael W. Fitzgerald
15 CENTER, LLC, *et al.*          Date:    December 8, 2014
                              Time:   10:00 a.m.
16        Plaintiffs,
                              Trial Date:   None Set
17        vs.

18 UNITEDHEALTH GROUP, INC.;
   UNITED HEALTHCARE SERVICES,
19 INC.; UNITED HEALTHCARE
   INSURANCE COMPANY;
20 OPTUMINSIGHT, INC., *et al.*

21        Defendants.

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

14-CV-2139-MWF (VBKx)

## <u>TABLE OF CONTENTS</u> <u>Page</u>

I.   INTRODUCTION ................................................................................1

I.   RELEVANT FACTS ...........................................................................3

II.  PLAINTIFFS HAVE STANDING VIA THEIR ASSIGNMENTS OF BENEFITS TO ASSERT ALL CAUSES OF ACTION UNDER ERISA...............................................................................................6

   A.   Defendants All But Concede that Plaintiffs Have Standing to Pursue ERISA Benefits.....................................................................6

   B.   Plaintiffs' AOBs Cover *All* Rights Under ERISA, Including the Ancillary Causes of Action. ..................................................7

II.  PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS AGAINST THE EMPLOYER DEFENDANTS...............................9

III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS AGAINST THE PLAN DEFENDANTS UNDER *CYR*.................11

IV.  DEFENDANTS PROVIDE INADEQUATE SUPPORT FOR THEIR PLAN-BASED DEFENSES ................................................12

V.   DEFENDANTS FAILED TO COMPLY WITH ERISA'S NOTIFICATION REQUIREMENTS.............................................13

VI.  DEFENDANTS CANNOT RELY ON ANTI-ASSIGNMENT CLAUSES ........................................................................................15

   A.   Estoppel and Waiver Prevent Defendants From Relying Upon Their Anti-Assignment Clauses..............................................15

      1.   Estoppel Applies to the Anti-Assignment Clauses....................15

      2.   Waiver Applies As to the Anti-Assignment Clauses ................19

   B.   The United-Represented Defendants Counsel Fail to Meet Their Burden to Demonstrate Anti-Assignment..............................21

   C.   United's Counsel Cannot Argue Anti-Assignment On Behalf of Defendants Whose Plans Are Implicated in United's Counterclaim ..........................................................................21

   D.   Clauses That Require Consent of the Insurer, As the Majority of Clauses Do Here, Are Ineffective Under California Law....................23

   E.   Anti-Assignment Clauses in Policies Regulated by California's Department of Insurance Are Likewise Ineffective..............................24

   F.   Some Purported "Anti-" Assignment Clauses Expressly Permit Assignment to Providers Without Restriction ...................................25

   G.   "Creditor" Anti-Assignment Clauses Are Not Directed Towards Providers And Cannot Be Enforced Against Them..............................25

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

i

1170880.1

## TABLE OF CONTENTS (cont.)                                    Page

H.    None of the Anti-Assignment Clauses Prevent the Assignment of Ancillary ERISA Causes of Action ................................................... 28

VII.   DEFENDANTS CANNOT RAISE COVERAGE DEFENSES NEVER ASSERTED DURING THE ADMINISTRATIVE PROCESS ..................... 28

A.    Coverage Defenses Were Not Raised During The Administrative Process ........................................................................................... 28

B.    Resolving Coverage Issues Also Implicates Issues of Fact ................. 30

VIII.  TIME LIMITATIONS IN PLANS DO NOT BAR CLAIMS ...................... 32

A.    The Limitation Periods Were Never Triggered Because of Defendants' Failure to Provide Adequate Notice ................................ 32

B.    The Time Limits Were Unreasonable Given United's Delay Tactics ............................................................................................... 34

C.    Waiver and Estoppel Also Apply to Bar Application of the Contractual Limitation Periods ............................................................ 35

D.    Ambiguity and Factual Interpretation Issues Preclude Application of the Contractual Time Limitations ................................. 36

IX.    PLANS' FORUM SELECTION CLAUSES, EVEN IF ENFORCEABLE, DO NOT GOVERN THIS MULTI-DEFENDANT ACTION ............................................................................................... 37

X.     PLAINTIFFS ARE NOT REQUIRED TO PLEAD SPECIFIC PLAN TERMS THAT ARE NOT IN DISPUTE ............................................... 37

A.    Plaintiffs Sufficiently Plead that the Medical Services At Issue Were Covered By the Terms of the Plans ............................................. 37

B.    Unlike in *Sanctuary Surgical*, Coverage Is Not In Dispute ................. 39

C.    Requiring Plan Terms to Be Pled in Detail Would Reward Gross ERISA Violations By Immunizing Defendants from Suit ................... 40

XI.    PLAINTIFFS HAVE ADEQUATELY PLED EXHAUSTION ................... 41

A.    Because Defendants Failed to Meet their Antecedent Duty to Observe ERISA's Regulations, All Appeals Are Deemed Exhausted .......................................................................................... 41

B.    Appeals Would Also Have Been Futile ............................................... 42

XII.   THE FAC SUCCESSFULLY STATES A CLAIM AS TO THE ANCILLARY ERISA CAUSES OF ACTION ...................................... 42

A.    Plaintiffs Are Entitled to Seek Statutory Penalties For Defendants' Failures to Provide Plan Documents Upon Request (Count VII) .......................................................................................... 43

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

**TABLE OF CONTENTS (cont.)**                                    **Page**

B.    Plaintiffs Are Entitled to Reformation Under Section  502(a)(3)
(Count V) ...................................................................................44

C.    Plaintiffs Plausibly Plead Ancillary ERISA Claims (Counts II,
III)..............................................................................................44

XIII.   PLAINTIFFS HAVE PLED AN UNFAIR COMPETITION CLAIM
AGAINST THE PLANS ........................................................................45

XIV.   PLAINTIFFS WILL DISMISS SOME CLAIMS BUT NOT OTHERS........45

A.    Valley Surgical Center .........................................................................45

B.    Defendants For Whom United Was Not the Claims
Administrator ........................................................................................46

1.    Defendants Who Only Used United As the Claims
Administrator in Certain Years....................................................46

2.    Defendants Who Claim Never to Have Used United.................47

XV.    THE COURT SHOULD EXTEND THE TIME FOR RE-SERVICE OF
DEFENDANTS THAT CLAIM THEY WERE IMPROPERLY
SERVED................................................................................................48

XVI.   DEFENDANT PERKINS' PRIOR BANKRUPTCY DOES NOT
DEFEAT LIABILITY OF ITS PLAN .....................................................48

XV.    JOINDER IS PROPER BECAUSE UNITED'S VIOLATIONS OF
ERISA PROVIDE THE NECESSARY COMMON NUCLEUS OF
FACT ....................................................................................................49

XVIII.CONCLUSION .....................................................................................50

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1170880.1                                OPPOSITION TO OMNIBUS MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*,
  698 F.3d 229 (5th Cir. 2012) ................................................................. 18

*Aguilar v. Mission Support Alliance*,
  LLC, CV-11-5123-EFS, 2012 WL 911421 (E.D. Wash. Mar. 16,
  2012) ......................................................................................................... 48

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) ............................................................... 41

*Alexander Mfg., Inc. Employee Stock Ownership Plan & Trust v.
  Illinois Union Ins. Co.*,
  560 F.3d 984 (9th Cir. 2009) ................................................................. 21

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980). ................................................................ 42

*Anderson v. Sun Life Assur. Co. of Canada*,
  CV-12-00145-TUC-CKJ, 2013 WL 6076547 (D. Ariz. Nov. 19,
  2013) ......................................................................................................... 11

*Bauman v. Mila Nat'l Health Plan*,
  342 F.Supp.2d 456 (D.S.C. 2004) .......................................................... 31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 39

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
  831 F. Supp. 2d 651 (S.D.N.Y. 2011) ............................................... 17, 23

*Boone v. Leavenworth Anesthesia, Inc.*,
  20 F.3d 1108 (10th Cir. 1994) ............................................................... 43

*Booton v. Lockheed Med. Ben. Plan*,
  110 F.3d 1461 (9th Cir. 1997) ............................................................... 13

*Bova v. American Cyanamid Co.*,
  662 F. Supp. 483 (S.D. Ohio 1987) ........................................................ 43

*Brown v. Bank of Am., N.A.*,
  __ F.Supp.2d __, 2014 WL 901438 (D. Maine 2014) ........................... 45

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

<u>**TABLE OF AUTHORITIES**</u> **(cont.)** <u>**Page(s)**</u>

*Brown v. J.B. Hunt Transp. Servs., Inc.*,
   586 F.3d 1079 (8th Cir. 2009) ............................................................ 42

*Caffey v. UNUM Life Ins. Co.*,
   302 F.3d 576 (6th Cir. 2002) .............................................................. 31

*Care First Surgical Center v. ILWU-PMA Welfare Plan, et al.*,
   No. 14-cv-1480-MMM-AGR, Doc. No. 31 (slip. op. C.D.Cal. July
   28, 2014) (Morrow, J.)................................................................*passim*

*Chuck v. Hewlett Packard Co.*,
   455 F.3d 1026 (9th Cir. 2006) ............................................................ 33

*Cigna v. Amara*,
   131 S.Ct. 1855 (2011) ....................................................................... 12

*Collins v. Liberty Life Assur. Co. of Boston*,
   988 F. Supp. 2d 1105 (C.D. Cal. 2013) ............................................... 29

*Conowall v. Administrative Committee*,
   1989 WL 79800 (E.D. Pa. July 7, 1989) ............................................. 43

*Cyr v. Reliance Standard Life Ins. Co.*,
   642 F.3d 1202 (9th Cir. 2011) (*en banc*)....................................9, 10, 11

*Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*,
   50 F.3d 1478 (9th Cir. 1995) .............................................................. 42

*Dubaich v. CIGNA*,
   No. CV 11-10570 DMG, 2013 WL 3946108 (C.D. Cal. July 31,
   2013) ............................................................................................... 29

*Eden Surgical Center v. Budco Group, Inc.*,
   No. 09-cv-3991-AHM-E (C.D. Cal. May 27, 2010) .............................. 9

*Eden Surgical Center v. Centric Group, et al.*,
   No. 10-cv-07024 RGK, 2012 WL 3113885 (C.D.Cal. Feb. 8, 2012) ...... 9

*Eden Surgical Ctr. v. B. Braun Med., Inc.*,
   420 F. App'x 696 (9th Cir. Feb. 16, 2011).........................................8, 9

*Ellis v. Met. Life Ins. Co.*,
   126 F.3d 228 (4th Cir. 1997) .............................................................. 42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

**TABLE OF AUTHORITIES (cont.)**    <u>Page(s)</u>

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*,
    775 F.Supp.2d 938 (E.D. Tex. 2011) ................................................................. 38

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ........................................................................................ 39

*Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of
    New Jersey, Inc.*,
    No. 06-0462 (JAG), 2007 WL 4570323 (D.N.J. Dec. 26, 2007) ....................... 19

*Halpin v. W.W. Grainger, Inc.*,
    962 F.2d 685 (7th Cir.1992) ............................................................................... 14

*Harlick v. Blue Shield of Cal.*,
    686 F.3d 699 (9th Cir.2012) ......................................................... 14, 29, 30, 40

*Harris v. Amgen, Inc.*,
    738 F.3d 1026 (9th Cir. 2013) ............................................................................ 32

*Harrow v. Prudential Ins. Co. of Am.*,
    279 F.3d 244 (3d Cir. 2002) ............................................................................... 42

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    134 S. Ct. 604 (2013) ....................................................................... 33, 34, 35

*Hermann Hosp. v. MEBA Med. & Benefits Plan*,
    845 F.2d 1286 (5th Cir. 1988) ........................................................................... 26

*Hermann Hosp. v. MEBA Med. & Benefits Plan*,
    959 F.2d 569 (5th Cir. 1992) ........................................................ 15, 16, 18, 26

*Hermann. LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-
    Mart Stores, Inc.*,
    298 F.3d 348 (5th Cir. 2002) ............................................................................. 26

*Info. Sciences Corp. v. United States*,
    80 Fed.Cl. 759 (2008) ......................................................................................... 28

*Iwata v. Intel Corp.*,
    349 F.Supp.2d 135 (D. Mass. 2004) ................................................................. 44

*Jacobs v. Prudential Ins. Co. of Am.*,
    No. 13-0146, 2014 WL 2807537 (E.D. La. June 19, 2014) ............................... 35

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES (cont.)    Page(s)

*Jebian v. Hewlett–Packard Co. Emple. Benefits Org. Income Prot. Plan*,
349 F.3d 1098 (9th Cir.2003) .......................................................... 6, 14

*Jones v. Bock*,
549 U.S. 199 (2007) ...................................................................... 21, 41

*Kennedy v. Connecticut Gen. Life Ins. Co.*,
924 F.2d 698 (7th Cir. 1991) ................................................................ 21

*La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*,
461 F.3d 529 (5th Cir. 2006) ............................................................... 24

*Lowell v. Drummond, Woodsum & MacMahon Employee Med. Plan*,
No. Civ. 03-244-P-S, 2004 WL 1571793 (D. Maine July 13, 2004) .................. 30

*Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*,
25 F.3d 616 (8th Cir. 1994) ........................................................... 13, 20

*Martin v. Arkansas Blue Cross & Blue Shield*,
299 F.3d 966 (8th Cir. 2002) ............................................................... 13

*Misic v. Bldg. Serv. Employees Health & Welfare Trust*,
789 F.2d 1374 (9th Cir. 1986) ....................................................... *passim*

*Mitchell v. CB Richard Ellis Long Term Disability Plan*,
611 F.3d 1192 (9th Cir.2010) ................................................... 14, 29, 40

*Moyer v. Met. Life. Ins. Co.*,
– F.3d –, 2014 WL 3866073 (6th Cir. 2014) ........................................... 35

*Mozingo v. Trend Personnel Servs.*,
No. 11–3284, 2012 WL 1966227 (10th Cir. May 24, 2012) ............................ 37

*N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*,
No. 13-74 (ES), 2013 WL 5366400 (D. N.J. Sept. 25, 2013) ....................... 20

*Neal v. Christopher & Banks Comprehensive Major Medical Plan*,
651 F.Supp.2d 890 (E.D.Wis., 2009) ..................................................... 32

*Owens v. Rollins, Inc.*,
No. 1:08-cv-287, 2010 WL 3843765 (E.D. Tenn. Sep. 27) ........................... 31

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1170880.1

## TABLE OF AUTHORITIES (cont.)                    Page(s)

*Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge*,
  827 F.2d 1324 (9th Cir. 1987) ............................................................. 34

*Productive MD, LLC v. Aetna Health, Inc.*,
  969 F.Supp.2d 901 (M.D. Tenn. 2013) ......................................... *passim*

*Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Administrators, Inc.*,
  866 F. Supp. 757 (S.D.N.Y. 1994) ..................................................... 23

*Sabatino v. Liberty Life Assurance Co. of Boston*,
  286 F.Supp.2d 1222 (N.D. Cal. 2003)................................................. 32

*Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*,
  10-81589-CIV, 2011 WL 2134534 (S.D. Fla. May 27, 2011)............................. 49

*Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*,
  10-81589-CIV, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013)................... 38, 40, 49

*Simon v. Value Behavioral Health, Inc.*,
  208 F.3d 1073 (9th Cir. 2000) *amended*, 234 F.3d 428 (9th Cir. 2000) ................................................................ 7, 18, 27, 41

*Solien v. Raytheon Long Term Disability Plan #590*,
  CV 07-456 TUC DCB, 2008 WL 2323915 (D. Ariz. June 2, 2008) ................. 35

*Stegelmeier v. Doug Andrus Distrib. Employee Health Benefit Plan*,
  2:02-CV-238 TS, 2007 WL 709301 (D. Utah Mar. 5, 2007)............................. 43

*Sullivan v. Prudential Ins. Co. of Am.*,
  2013 WL 1281861, 56 Employee Benefits Cas. 1033 (E.D. Cal. March 25, 2013) ............................................................. 12

*Thiel v. UNUM Life Ins. Co.*,
  No. 01-0769 WQH (RBB), 2003 WL 25895408 (S.D. Cal. Nov. 18, 2003)............................................................. 32

*Total Renal Care of N. Carolina, L.L.C. v. Fresh Mkt., Inc.*,
  1:05CV00819, 2008 WL 623494 (M.D.N.C. Mar. 6, 2008)............................. 18

*Varsic v. U.S. Dist. Court for Cent. Dist. of California*,
  607 F.2d 245 (9th Cir. 1979) ............................................................. 37

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1170880.1

## TABLE OF AUTHORITIES (cont.)                              Page(s)

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
546 F.3d 620 (9th Cir. 2008) ........................................................... 41, 42

*Vincenzo v. Hewlett-Packard Co.*,
55 Employee Benefits Cas. 2638, 2013 WL 3327892 (N.D. Cal.
June 28, 2013).............................................................................. 10, 11

*Washington Physicians Serv. Ass'n v. Gregoire*,
147 F.3d 1039 (9th Cir. 1998) ......................................................... 24, 25

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
865 F.Supp.2d 1002 (C.D. Cal. 2011)...................................................... 38

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F.Supp.2d 880 (C.D. Cal. 2012) ........................................................ 8

*Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*,
222 F.3d 643 (9th Cir. 2000) ................................................................ 33

*White v. Jacobs Eng'g Group Long Term Disability Benefit Plan*,
896 F.2d 344 (9th Cir. 1989) ............................................................. 33, 34

*Zalduondo v. Aetna Life Ins. Co.*,
941 F.Supp.2d 125 (D.D.C. 2013).......................................................... 12

### STATE CASES

*Amalgamated Transit Union Local 1756, AFL-CIO v. Superior Court*,
46 Cal.4th 993 (2009)......................................................................... 7

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
173 Cal. App. 4th 1179, 93 Cal. Rptr. 3d 479 (2009) ......................................... 24

*Comunale v. Traders & Gen. Ins. Co.*,
50 Cal. 2d 654 (1958) (*in banc*) ............................................................ 24

*Spray, Gould & Bowers v. Assoc. Int'l Ins.*,
Co. 71 Cal.App.4th 1260 (1999) ........................................................... 29, 36

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## __TABLE OF AUTHORITIES__ (cont.)                    __Page(s)__

### __FEDERAL STATUTES__

United States Code

Title 28

   § 1404 ................................................................................. 37

   § 1406 ................................................................................. 37

Title 29

   § 1022(a) ............................................................................ 12

   § 1132(a)(1)(B) ...................................................... 9, 38, 44

   § 1132(a)(2) ....................................................................... 45

   § 1132(a)(3) ....................................................................... 44

   § 1132(c) .......................................................................... 8, 9

   § 1133 ............................................................................. 5, 33

   § 1169 ................................................................................. 26

### __FEDERAL RULES__

Federal Rule of Civil Procedure

   Rule 8(a) ............................................................................ 39

### __REGULATIONS__

Code of Federal Regulations, Title 29

   § 2560.503–1 ........................................................... *passim*

### __STATE STATUTES__

California Code of Regulations, Title 10

   § 2695.4 and 2695.4(a) ............................................... 29, 36

California Code of Civil Procedure

   § 337 ................................................................................. 34

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**TABLE OF AUTHORITIES** (cont.)    **Page(s)**

California Health & Safety Code

§ 1371.35 ..................................................................................................29

California Insurance Code

§ 790.10 ......................................................................................................36

§ 10133(a) ..................................................................................................24

§ 10213.13(a) .............................................................................................29

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1170880.1

xi

14-CV-2139-MWF (VBKx)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

# I. __INTRODUCTION__

The Omnibus Motion to Dismiss presents a major revelation that permits this Court to streamline the case: counsel for United *finally agree that United is a proper defendant* as to all the benefit claims against the *self-funded* ERISA plans.  For years, United has insisted that it is not an appropriate defendant for such claims.  It was for this reason that Plaintiffs elected to bring suit against over eight hundred self-funded ERISA Plan defendants (the "Plans") and their corporate sponsors (the "Employers"), in order to preserve their rights.  Given United's sudden about-face, this Court need not decide the motions to dismiss of over eight hundred Plans and Employer defendants. (*See* Opp. to United Defendants' Motion to Dismiss, Section II.)  Rather, the Court can proceed first on Plaintiffs' claims for ERISA benefits against United under Section 502(a)(1)(B), which is the primary issue in this case, and stay this action as to *all other claims and defendants*.  This will greatly simplify the litigation.  Should the court proceed with resolving the issues in the instant motion to dismiss, it will find Defendants' positions are not meritorious.

Defendants raise for the first time creative defenses to defeat Plaintiffs' claims that **were never raised during the administrative process** -- *.e.g.*, anti-assignment, coverage issues, *etc*. The ERISA regulations and Ninth Circuit law are clear that ERISA Plans are required to state the specific reasons for denial of claims during the administrative process, and that Plans cannot raise new defenses to payment of claims that were not raised during the administrative process.  As alleged in detail in the First Amended Complaint ("FAC"), United, acting as the claims administrator for all the Plans, delayed and denied Plaintiffs' claims and appeals using a wide assortment of pretextual excuses, rather than citing reasons grounded in the specific terms of the plans that the Plan Defendants are now attempting to assert. Plaintiffs' claims should be permitted to proceed because:

- **Plaintiffs have standing**: Plaintiffs have alleged a broad assignment of benefits from their patients in exchange for medical services that were rendered, sufficient to assert even ancillary ERISA claims.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

- **Waiver/Estoppel of Anti-Assignment Clauses**: The FAC alleges that Defendants were presented with direct evidence of Plaintiffs' assignments on hundreds of occasions, yet failed to raise these clauses.

- **Anti-Assignment Clauses Unenforceable:** The vast majority of the anti-assignment clauses are also unenforceable under California regulations of insurance, or are not directed towards health providers.

- **Plan Provisions Not In Evidence**: The vast majority of Defendants submitted Summary Plan Descriptions ("SPDs"), which are not operative plan documents and cannot be relied upon to dismiss Plaintiffs' claims.

- **Defenses Not Raised During Administrative Process Forfeited**: Defendants have forfeited and cannot raise new reasons for denial that they failed to raise during the administrative process.

- **Time Limits Were Never Triggered**: Because Defendants' claim and appeal denial letters were grossly deficient, the Ninth Circuit holds that contractual time limits in the plans never began to run.  Also, such time limits were not disclosed, so Defendants are estopped from raising them.

- **Plan Terms Adequately Pled**:  Plaintiffs have more than adequately pled that all services at issue were covered under the plans, based on representations by United; more is not required at this stage, especially given that Defendants ignored Plaintiffs' requests for documents.

- **Venue Clauses Ineffective**: As more fully explained in the opposition to Aegon's Motion, the Department of Labor consistently interprets such clauses to be ineffective, as they contravene ERISA's core policy of open access to the courts.  A Section 1404 analysis also weighs against transfer where, as here, there are multiple defendants in many venues.

- **Deemed Exhausted / Futility**: Defendants failed to meet their antecedent duty to issue adequate claim and appeal denials, so Plaintiffs were not required to engage in further appeals, which, in any case, would be futile.

- **Penalties Sufficiently Alleged**:  The Plans and Employers can be held liable for requests sent to United.  In addition, a number of request were sent directly to the Plans.

- **Plaintiffs Have Adequately Alleged Ancillary ERISA Claims**: As set forth in the opposition to United's motion to dismiss, Plaintiffs have sufficiently alleged breach of fiduciary duty and equitable relief.

Pursuant to this Court's Master Briefing Schedule (Docs. #949, 1054), this Opposition is submitted in response not only to the Omnibus Motion to Dismiss, but as to all the other Plan and Employer Defendants' Motions to Dismiss.  For the reasons set forth herein, all of the Motions must be denied in their entirety.

1170880.1

I.      **RELEVANT FACTS**

Plaintiffs are network of health providers that specialize in providing laparoscopic adjustable gastric band ("Lap-Band") surgery and other surgical procedures and medical services to individuals who are morbidly obese. (FAC ¶ 16.) Plaintiffs seek, among other things, to recover ERISA benefits due and owing to them via assignments of benefits from their patients. (FAC ¶¶ 871-874 (the patients, who are beneficiaries and/or participants of the ERISA Plans, assigned "all rights" they held under ERISA to Plaintiffs.)

United was delegated responsibility by the Plan Defendants to administer health benefit claims. (FAC ¶ 56, 857.) Prior to performing medical procedures for any of their patients, Plaintiffs telephoned United, both to confirm that their patients had benefits, that particular procedures would be covered, and that United would pay the providers' usual, reasonable and customary charges. (*Id.* ¶ 34.) Plaintiffs also requested authorization for the medical services that their patients wished to receive. (*Id.* ¶ 5, 953.) United either authorized these services, or confirmed for Plaintiffs that there was no need to obtain preauthorization. (*Id.*) After performing the services, Plaintiffs submitted the claims to United. (*Id.* ¶ 22-25.)

Rather than properly paying the claims, however, United relied on pretextual reasons to prolong the administrative process and to obscure its intent never to pay Plaintiffs' claims. (*Id.* ¶ 26-30.) The most common of these pretexts was that United needed unspecified records from Plaintiffs. (*Id.* ¶ 8.) This was used solely as a tactic to obscure and to delay, and was never a legitimate request for more information. For one, United nearly always requested the same set of ten identical, generic categories of medical records:

> [S]ubmitted information was received, however we are unable to process the claim, as one or more of the following items are missing: History and physical; findings on examination; lab, radiology, pathology, and anesthesia test results; consult reports; operative/procedure report; daily progress/ treatment/medication notes; physician orders for DME along with a copy of invoice and delivery statement.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

14-CV-2139-MWF (VBKx)
OPPOSITION TO OMNIBUS MOTION TO DISMISS

1170880.1

1  (FAC ¶ 953, Patient 2(D) (language set forth in Explanation of Benefits (EOB)

2  form, denying claim). Some of the documents sought, such as DME (durable

3  medical equipment) are not used for the types of services Plaintiffs provide.

4      Further, even though United acknowledged the receipt of medical records

5  from Plaintiffs, it would insist that the same categories of medical records were still

6  missing.  However, its representatives were consistently unable to specify *which* of

7  these generic categories it needed, or why:

8      CALLER: Okay. Now why was this claim denied? . . . .

9      INGENIX: **And sir, I can check your claim was denied due to
       incomplete medical notes.**

10     CALLER: Okay. What medical documentation do you have there?

11     INGENIX: Sir as I can check **we have received 9 pages from your
       side as medical notes** and... the first 2 pages contained the claim
12     form...your 4th page contains preoperative **report,** your 5th, 6th page
       contains **anesthesia pre and post-operative [reports]** and next page
13     contain **operating room records** and after that is **preop pending** order
       and your last page contain **4 clinical surgical room records**.

14

15     CALLER: Okay, now can you explain to me why that isn't sufficient
       enough or what other medical documentation that you are needing?

16     INGENIX: **Sir I don't have exact reason what you need to submit**.
       There is a general reason given ... that they need the complete medical
17     notes like ... finding on examination, lab, radiology results, and [] test
       results, consult report, operative procedure report and daily progress
18     treatment notes. So you can check your medical notes and you can
       submit these medical notes... which are missing.

19

20  (FAC ¶ 888 (emphasis added/removed); *see also* FAC ¶¶ 889, 890, 953 (allegations

21  relating to Patients 2, 3, 4 and 5).)

22      United doubled down on this tactic by forwarding claims to its subsidiary,

23  Ingenix (now OptumInsight) in the Philippines for further review.  United did not

24  forward the medical records with the claims.  As a result, Ingenix would re-request

25  the same records.  (*Id.* ¶ 9, 889-890.)[1]  United then used this same rationale to

26  _____

27  [1] "[T]he thing is, we just need those medical records. I know you have submitted
    them perhaps to a different department of United Healthcare, but as you can see
28  (footnote continued)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   ultimately deny many of the claims.  (*Id.* ¶¶ 888, 953.)

2        That was not the only excuse in United's book, however.  United sometimes

3   denied Plaintiffs' claims due to a purported failure to provide surgery center

4   "licenses" (surgery centers are not 'licensed' in California); or supposedly because

5   certain Plaintiffs were not listed in United's provider database; or because Plaintiffs

6   billed using supposedly incorrect 'modifier' codes (though no such modifiers were

7   billed).  (FAC ¶ 884; see also *id.* ¶ 953, Patient 1 allegations (reflecting the variety

8   of excuses employed).)  Other common excuses were that Plaintiffs were not

9   authorized representatives of the patients, and therefore not entitled to appeal; that

10  Plaintiffs had failed to obtain pre-authorization, when United had already stated that

11  no pre-authorization was necessary; or that claims submitted were "in excess of

12  allowed expense," without defining that term or explaining why the allowed expense

13  was zero.  (*Id.* ¶ 953, Patient 1.)

14       By electing to rely exclusively on these spurious reasons for denial,

15  Defendants failed to comply with ERISA's regulations that require all claimants to

16  be provided with full and fair review.  *See* 29 C.F.R. § 2560.503-1(f) (promulgated

17  pursuant to 29 U.S.C. § 1133).  They failed, for instance, to cite specific reasons for

18  denial, or specific terms of the plan.  As a result, Plaintiffs were deprived of the

19  information they needed to perfect their claims, or to effectively appeal the denials.

20  Another consequence of United's exclusive reliance on these false reasons for denial

21  is that the myriad plan-based defenses that Defendants now raise **were never raised**

22  during the administrative process.  Defendants cannot now argue that

23  reimbursement for Plaintiffs' medical services should be denied for these reasons.

24

25

26  _____

27  here, whatever goes to us are the only ones that was reviewed, and I do see here a
    one page of lap band follow up visits, office visits."  (FAC ¶ 890.)
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## II.   PLAINTIFFS HAVE STANDING VIA THEIR ASSIGNMENTS OF BENEFITS TO ASSERT ALL CAUSES OF ACTION UNDER ERISA

The Amended Complaint alleges that the assignment of benefits forms (AOBs) that Plaintiffs obtained from each of their patients covers "**all rights** and benefits under my contract with INSURANCE COMPANY, to any and all PROVIDERS."  (FAC ¶ 873 (emphasis added).)  This language unambiguously assigns all rights that the patient may have had as a participant and/or beneficiary of a Plan—including, but certainly not limited to, the right to bring an ERISA lawsuit to recover benefits.  Plaintiffs therefore have standing to assert all of the ERISA claims pled in the FAC.

### A.   Defendants All But Concede that Plaintiffs Have Standing to Pursue ERISA Benefits.

Defendants suggest throughout the Omnibus brief that Plaintiffs may not have standing to sue for ERISA benefits.  In reality, they have all but conceded the issue.  In a short blurb buried deep in their brief, Defendants halfheartedly argue that because the AOB refers to "PROVIDERS," it is therefore ineffective because it fails to identify which parties obtain the assignment.  (Mot. at p. 23:1-8.)  But this nitpick fails to acknowledge that the AOB does not refer to providers in the abstract.  Rather, it defines the term "PROVIDERS" as encompassing any or all healthcare providers who render medical services to the patient, including "their designated associates or assignee(s)."  (Am. Compl. ¶¶ 873.)  Such assignment of ERISA rights to providers in exchange for healthcare services rendered is both permitted and encouraged by the Ninth Circuit's seminal decision in *Misic*:

> Assignment of trust monies to health care providers results in **precisely the benefit** the trust is designed to provide and **the [ERISA] statute is designed to protect**.  Such assignments also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.

*Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th

1170880.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Cir. 1986) (emphasis added).  The Ninth Circuit subsequently observed that this

2  practice not only "consistent with Congressional intent in enacting ERISA," but has

3  also "simplified the billing structure among the patient, his care provider, and his

4  benefit plan in a way that enhanced employee health benefit coverage."  *Simon v.*

5  *Value Behavioral Health, Inc*., 208 F.3d 1073, 1081 (9th Cir. 2000) *amended*, 234

6  F.3d 428 (9th Cir. 2000).

7      Defendants also fail to account for the reality of how patients were treated at

8  Plaintiffs' medical facilities.  The FAC alleges that patients received services from

9  many types of providers at the surgery centers—treating physicians,

10  anesthesiologists, surgeons—at multiple surgical facilities, for many different types

11  of services—lab tests, sleep studies, endoscopies, surgeries—often on many

12  different dates.  This made it impractical for patients to assign the benefits to

13  specific surgeons, anesthesiologists, radiologists, pathologists, and other

14  professionals when the patients first presented at the surgery centers, and it was not

15  yet determined what services they would receive, on what dates, and whether

16  specific providers were available on those days.  It does not make sense to require

17  patients to sign a new assignment of benefits every time they received additional

18  medical services; the law certainly does not require it.[2]

19  **B.     Plaintiffs' AOBs Cover *All* Rights Under ERISA, Including the**

20  **Ancillary Causes of Action.**

21      Defendants argue that Plaintiffs may not bring "ancillary" causes of action

22  under ERISA, other than for benefits—for example, for penalties for the failure to

23  produce documents, for breach of fiduciary duty, or for equitable relief.  Not so.

24  "[C]ourts must look to the language of an ERISA assignment itself to determine the

25  _____

26  [2] California law confirms that the assignment of causes of action "requires very little

27  by way of formalities and is essentially free from substantive restrictions."
Amalgamated Transit Union Local 1756, AFL-CIO v. Superior Court, 46 Cal.4th
993 (2009) (also noting that "interests may be assigned orally").

28

1170880.1

1   scope of the assigned claims." *In re WellPoint, Inc. Out-of-Network UCR Rates*

2   *Litig.*, 903 F.Supp.2d 880, 896 (C.D. Cal. 2012) (citing *Eden Surgical Ctr. v. B.*

3   *Braun Med., Inc.*, 420 F. App'x 696 (9th Cir. Feb. 16, 2011)).  Defendants

4   conveniently ignore that Plaintiffs' AOB covers "**all** rights and benefits" that may

5   arise under their patients' ERISA health plans—not merely "some rights," with

6   other rights reserved.  (Am. Compl. ¶¶ 873 (emphasis added).)  In contrast, the

7   assignment of benefits at issue in *Eden Surgical* was limited to "any legal process []

8   **necessary** to collect claims . . . for health insurance benefits."  420 F. App'x at 697

9   (emphasis added).  The AOB at issue here is explicitly set forth in the FAC and is

10   subject to no such limitations.

11       Despite this, Defendants claim that Plaintiffs lack standing as to their

12   "ancillary" causes of action under ERISA, such as their claims for ERISA penalties

13   for failure to produce documents, because the AOB fails to explicitly name such

14   causes of action individually.  But Defendants cannot point to anything in Ninth

15   Circuit law that requires more than an assignment of all rights (if such a thing were

16   possible).  Indeed, *Misic* teaches that "if the assignment is valid, [the provider] has

17   standing to assert **whatever rights the assignor possessed**."  789 F.2d at 1378 n.4

18   (emphasis added).  The only limitation is "the familiar principle that an assignment

19   cannot create rights in the assignee not held by the assignor."  *Id.*

20       Consistent with this, Plaintiffs have obtained an assignment of "**all rights**"

21   held by their patients as beneficiaries and participants of the ERISA Plans.  Further,

22   the language of Plaintiffs' assignment reflects the specific intent to assign, as one of

23   those rights, right to seek penalties against a plan administrator for the failure to

24   provide plan documents.  The AOB gives "express right to PROVIDERS to **obtain**

25   **the insurance and benefits policy booklet**, **and ALL policy information from**

26   **INSURANCE COMPANY, employer or any of their associates or agents**"—in

27   other words, precisely the kinds of documents that give rise to a Section 502(c)

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1 cause of action if Defendants ignore such requests.  (*See* FAC ¶ 873 (emphasis

2 added).)  Plaintiffs' AOB was not limited to "benefits."

3     This court should follow the lead of other courts in this district that hold

4 providers may assert ancillary ERISA causes of action.  *See, e.g., Care First*

5 *Surgical Center v. ILWU-PMA Welfare Plan, et al*., No. 14-cv-1480-MMM-AGR,

6 Doc. No. 31 (slip. op. C.D.Cal. July 28, 2014) (Morrow, J.), at 19, attached as

7 Exhibit A to Plaintiffs' Request for Judicial Notice (RJN); *Eden Surgical Center v.*

8 *Centric Group, et al*., No. 10-cv-07024 RGK (MANx), 2012 WL 3113885

9 (C.D.Cal. Feb. 8, 2012) (Klausner, J.); *Eden Surgical Center v. Budco Group, Inc.*,

10 No. 09-cv-3991-AHM-E (C.D. Cal. May 27, 2010) at *7 n.6; see also *Eden*

11 *Surgical*, 420 F. App'x 696 (assuming without deciding that provider could assert a

12 Section 502(c) claim for penalties via assignment).

13     As a district court in this District recently held, permitting providers to assert

14 ancillary ERISA claims "would further ERISA's purpose," consistent with *Misic*:

15     **Allowing health care providers to request that plans make the disclosures mandated by ERISA, to seek penalties in the event of**

16 **non-disclosure, and to sue for breach of fiduciary duty for misrepresentations concerning the scope of coverage** would not

17 "transform[ ] health benefit claims into a freely tradable commodity," which was the *Simon* court's concern, but **would instead "facilitate**

18 **the receipt of health care benefits by beneficiaries,"** which was the basis on which the *Misic* court determined that health care providers

19 have standing to seek benefits.

20 *Care First*, RJN Exh. A, at 19:12-17 (emphasis added).  The same policy concerns

21 apply here, where the FAC alleges that the Defendants worked to obscure the true

22 reasons for denying Plaintiffs' claims outright and made misrepresentations during

23 the verification and authorization process.

24 ## II.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS AGAINST

25 THE EMPLOYER DEFENDANTS

26     The Omnibus Defendants make two arguments with respect with *Cyr v.*

27 *Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (*en banc*)

28 ("potential defendants in actions brought under § 1132(a)(1)(B) should not be

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   limited to plans and plan administrators . . . .").  First, as discussed in Plaintiffs'

2   Opposition to United's motion to dismiss, United admits that, as the claims

3   administrator, it is a proper defendant for all the self-funded claims.  This permits

4   the Court to significantly streamline this litigation.

5   Second, Defendants argue that *Cyr* requires the dismissal of all of the

6   Employer defendants.  This is a misreading of *Cyr*.  *Cyr* sets forth two **independent**

7   tests as to who is a "logical defendant" for a claim for benefits: first, whether an

8   entity has the "authority to resolve benefit claims"; and second, whether they have

9   "**any** responsibility to pay" for benefits.  642 F.3d at 1207 (emphasis added).  Even

10  if an entity lacks authority to resolve benefit claims, if it is ultimately responsible for

11  paying them, under *Cyr* they are a proper defendant.

12  While Defendants do not contest this characterization of the *Cyr* test, they

13  baldly assert that the only entities with "any responsibility to pay" are the Plan

14  Defendants, and that the Employers do not have any such responsibility.  This

15  makes no sense, given that it is the <u>employer</u> is ultimately responsible for paying for

16  a self-funded plan that has been established for the benefit of its <u>employees</u>.  *See,*

17  *e.g.*, *Vincenzo v. Hewlett-Packard Co*., 55 Employee Benefits Cas. 2638, 2013 WL

18  3327892 (N.D. Cal. June 28, 2013), at *17-18 (holding that the Hewlett-Packard

19  Company was "a proper defendant" because "[n]othing in *Cyr* limits potential

20  defendants to entities which administer, rather than fund, an ERISA plan").[3]  Indeed,

21  counsel for United and most of the Employers and Plans admits that "[b]ecause

22  nearly all of the Defendant Plans at issue are 'self-funded,' **the Employers, not**

23  **United, are responsible for the payment of any benefits due**."  (United

24  Defendants' Motion, Doc. #1061-1, at p.1.)  Because this prong of *Cyr* is satisfied, it

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

---

[3] Hewlett-Packard Company is one of the Employer Defendants named in this case.

14-CV-2139-MWF (VBKx)

OPPOSITION TO OMNIBUS MOTION TO DISMISS

1170880.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  does not matter whether any of the Employers (or the Plans, for that matter) retained

2  the discretion to resolve claims, or delegated it to United.

3        Defendants rely upon a case in which an employer had purchased an

4  insurance policy, for which it was only responsible for paying <u>premiums</u>, not

5  <u>benefits</u>.  *See Anderson v. Sun Life Assur. Co. of Canada*, CV-12-00145-TUC-CKJ,

6  2013 WL 6076547, at \*7 (D. Ariz. Nov. 19, 2013).  Plaintiffs do not wish to pursue

7  defendants who have fully-funded insurance policies with United.  In fact, they have

8  readily dismissed such defendants when it has become apparent that United is

9  responsible for paying benefits.  (Declaration of Eric D. Chan Supp. Opp'n to

10  Omnibus Mot. to Dismiss ("Chan Decl.") ¶ 2.)  Several months ago, Plaintiffs asked

11  United's counsel for a list of Employers and Plans who are fully-funded and offered

12  to dismiss them from the case, but have yet to receive the list.  (*Id*. ¶ 3.)

13  **III.**   **<u>PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS AGAINST</u>**

14  **<u>THE PLAN DEFENDANTS UNDER *CYR*</u>**

15        Many of the individual defendants' motions to dismiss argue that the FAC

16  fails to sufficiently allege a claim for ERISA benefits because the FAC does not

17  provide specific details as to those defendants.  (*See, e.g*., Baker Hughes Motion to

18  Dismiss, Doc. # 728, at p.6).  *Cyr* principles explain why this is not the case.

19  Plaintiffs have sufficiently alleged that these Defendants have established self-

20  funded health benefit plans that are governed by ERISA and that they are financially

21  responsible for the benefit claims Plaintiffs submitted to those plans.  This is

22  sufficient to show Defendants have "responsibility to pay" benefit claims.  *See*

23  *Vincenzo*, 2013 WL 3327892, at \*18.[4]  The fact that the plans delegated numerous

24  claims processing and adjudicatory functions to United – and that United is

25

26  _____

27  [4] Likewise, Defendant Edison International admits that it is the parent corporation of
the plan sponsor, Southern California Edison, and therefore is a proper Cyr

28  defendant as it is ultimately responsible for paying for benefits.  (See Doc # 1070).

therefore a proper defendant – does not somehow absolve these plans from liability under ERISA. Further, the Plan and Employer defendants are well aware that they are fiduciaries of their respective plans, and may also have co-fiduciary liability for improper delegation to United, who was admittedly a fiduciary for all or nearly all of the plans.[5] For these reasons, Plaintiffs need not plead more about actions that these Defendants took or failed to take with respect to their benefit claims.

## IV. DEFENDANTS PROVIDE INADEQUATE SUPPORT FOR THEIR PLAN-BASED DEFENSES

At the outset, nearly all of the Defendants fail to provide adequate evidence that their plan-based defenses are actually grounded in the language of the plans. The vast majority of submissions by Plan Defendants consist of selective excerpts from their Summary Plan Descriptions (SPDs), **rather than the operative plan documents that govern the plans**. *See generally* 29 U.S.C. § 1022(a) (governing content of SPDs); *Cigna v. Amara*, 131 S.Ct. 1855 (2011) (holding that SPDs are not part of ERISA benefit plan). Accordingly, "[i]f the plan document itself is not available to validate statements in the SPD . . . *Amara* suggests that reliance on language in the SPD alone in denial of benefits claims may be unwarranted." *Zalduondo v. Aetna Life Ins. Co.*, 941 F.Supp.2d 125 (D.D.C. 2013) ) (citing *McCravy v. Metro. Life Ins. Co*., 690 F.3d 176, 182 n.5 (4th Cir. 2012)); *Sullivan v. Prudential Ins. Co. of Am*., 2013 WL 1281861, 56 Employee Benefits Cas. 1033 (E.D. Cal. March 25, 2013) (refusing to credit representations made by plan as to provisions of plan based solely on SPD submitted where operative plan document was not in evidence) (granting summary judgment for claimant). For this reason alone, these Defendants cannot prevail on their plan-specific defenses. Without the

_____

[5] In its Counterclaim in the removed State Action, United alleges that it acted as the claims fiduciary for "all (or virtually all)" of the plans in this lawsuit, with "discretionary authority to resolve participants' claims for benefits under the Plan." (Almont, No. 14-cv-3053, First Amended Counterclaim (FACC) ¶ 318, Doc.# 45.)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

actual plans, Plaintiffs are unable to determine, for instance, if more favorable language exists in the plans that does not exist in the SPDs, or vice versa. *See, e.g.*, *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994) (inconsistency between SPD and plan as to anti-assignment clause) abrogated on other grounds by *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002).

## V.      DEFENDANTS FAILED TO COMPLY WITH ERISA'S NOTIFICATION REQUIREMENTS

   *"What we got here . . . is a failure to communicate."* *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997) (citing Cool Hand Luke (Warner Bros. 1967)). ERISA's regulations require plan administrators that deny a claim or an appeal to adhere to strict procedural requirements for written notice, including the following:

> (i) setting forth **specific reasons for the denials** of the claims;
>
> (ii) **referencing the specific plan provisions** on which the determination were based;
>
> (iii) describing any additional material or information **necessary for the claimant to "perfect the claim,"** and explaining why such material or information is necessary;
>
> (iv) explaining "**the plan's review procedures and the time limits applicable** to such procedures, including a statement of the claimant's right to bring a civil action . . ." and
>
> (v) "stat[ing] whether any **internal rule, guideline, protocol, or other similar criterion**" was utilized in making their denials, or offer to provide such internal guidance free of charge."

*See* 29 C.F.R. § 2560.503-1(f) (emphasis added); *Booton*, 110 F.3d at 1467 (noting regulations were designed to encourage "meaningful dialogue" with beneficiaries).

   Defendants violated each and every one of these requirements. Defendants never provided the specific reasons for denial that they are now asserting, never referenced the specific plan provisions, and never described the specific information necessary to perfect the claim. Even when United supposedly asked for medical

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 records, it was invariably unable to explain what specific records were needed or

2 why such information was necessary for Plaintiffs to perfect their claims.  Nor did

3 Defendants raise any internal rules or guidelines that were being used.  While some

4 of the denial notices contained generic information appeal rights, Defendants'

5 failure to raise any of the substantive defenses that they now raise meant that

6 Plaintiffs were unable to adequately appeal the denied claims.  (FAC ¶ 880-85.)

7        By failing to comply with the ERISA regulations, Defendants are precluded

8 from raising new reasons for denial at this time.  The Ninth Circuit has explained:

> An ERISA plan administrator who denies a claim must explain the
> "specific reasons for such denial" and provide a "full and fair review"
> of the denial. 29 U.S.C. § 1133. The administrator must also give the
> claimant information about the denial, including the "specific plan
> provisions" on which it is based and "any additional material or
> information necessary for the claimant to perfect the claim." 29 C.F.R.
> § 2560.503–1(g). **A plan administrator may not fail to give a reason
> for a benefits denial during the administrative process and then
> raise that reason for the first time when the denial is challenged in
> federal court**, unless the plan beneficiary has waived any objection to
> the reason being advanced for the first time during the judicial
> proceeding. (Emphasis added).

16 *Harlick v. Blue Shield of Cal.,* 686 F.3d 699, 719 (9th Cir.2012). The Ninth Circuit

17 has stated that this requirement "parallels the general rule that 'an agency's order

18 must be upheld, if at all, on the same basis articulated in the order by the agency

19 itself,' not a subsequent rationale articulated by counsel." *Jebian v. Hewlett–*

20 *Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th

21 Cir.2003) (*quoting Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397

22 (1974)).  This rule is necessary because "[r]equiring that plan administrators provide

23 a participant with specific reasons for denial enable[s] the claimant to prepare

24 adequately for any further administrative review, as well as appeal to the federal

25 courts." *Mitchell v. CB Richard Ellis Long Term Disability Plan,* 611 F.3d 1192,

26 1199 n.2 (9th Cir.2010); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689

27 (7th Cir.1992) ( "'[D]escribing additional information needed and explaining its

28 relevance, as required by subsection (3) of 29 C.F.R. § 2560.503–1, enables a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  participant both to appreciate the fatal inadequacy of his claim as it stands and to

2  gain a meaningful review by knowing with what to supplement the record.'").

3      After failing to communicate the reasons for denial in the administrative

4  process, Defendants cannot now attempt to deny the claims based on anti-

5  assignment provisions, coverage or exclusion provisions, time limitations, etc.

6  **VI.   DEFENDANTS CANNOT RELY ON ANTI-ASSIGNMENT CLAUSES**

7      Roughly 115 of the Defendants represented by United's counsel and an

8  additional 40 Defendants who have filed separate motions to dismiss assert that their

9  plans contain anti-assignment clauses that prevent Plaintiffs from bringing suit

10  under ERISA.  Defendants have largely failed to provide proof that their plans

11  contain anti-assignment clauses, relying instead on SPDs.  Further, Defendants

12  attempt to assert these clauses now despite conceding that they <u>never</u> raised these

13  clauses as a reason not to pay during the administrative process.  (*See, e.g.*, Omnibus

14  Br. at 14:24-15:1; *accord* FAC ¶¶ 875-879.)  Having induced Plaintiffs' reliance on

15  the absence of any challenges to their assignments, Defendants may not benefit from

16  these hidden provisions when it is convenient for them.

17  **A.   Estoppel and Waiver Prevent Defendants From Relying Upon**
18       **Their Anti-Assignment Clauses**

19          1.   Estoppel Applies to the Anti-Assignment Clauses

20      Because Defendants engaged in a consistent course of conduct that affirmed

21  the presumptive validity of Plaintiffs' assignments, and Plaintiffs relied on this to

22  their detriment, Defendants are estopped from raising any anti-assignment clauses to

23  defeat Plaintiffs' standing.  The Court should follow the growing number of courts

24  that have held that defendants that fail to raise anti-assignment prior to litigation,

25  and who induce in providers a belief and reliance on the validity of the providers'

26  assignments of benefits, are **estopped** from raising anti-assignment clauses after the

27  fact.  *See, e.g.*, *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574

28  (5th Cir. 1992) (holding plan was estopped, as it had an affirmative duty to "notify

1  [the provider] of that clause if it intended to rely on it to avoid any attempted

2  assignments"); *Productive MD, LLC v. Aetna Health, Inc*., 969 F.Supp.2d 901, 926

3  (M.D. Tenn. 2013) (finding "even more compelling circumstances [for estoppel]

4  than those at issue in *Hermann,*" where reliance interest was based upon "hundreds

5  of claims spread across several years.");*Care First*, RJN Ex. A, at 27-39 (C.D.Cal.

6  July 28, 2014) (clarifying requirements for pleading such waiver and estoppel).

7       "[A] medical provider that asserts an administrator is estopped from relying

8  on an anti-assignment provision in the plan will be deemed to have reasonably relied

9  on the administrator's statements concerning the assignability of rights under the

10  plan so long as the plan agreements were not furnished or made available to the

11  provider, either by the plan or the participant-assignors."  *Care First*, RJN Ex. A at

12  34:5-9 (emphasis added) (synthesizing principles from *Hermann*, *Productive M.D.*,

13  and other key cases).  Here, the FAC alleges that Defendants' course of dealing

14  "plausibly amounted to a representation that [the] patient assignments were

15  acceptable both generally and under the specific plan terms. " *Productive M.D*., 969

16  F. Supp. 2d at 923.  It also establishes that Plaintiffs had no access to the underlying

17  plan documents, and that their repeated requests for such documents were ignored.

18  (FAC ¶¶ 31, 869.)  Defendants, as the drafters and administrators of the respective

19  ERISA plans, had full knowledge of the anti-assignment clauses.  Plaintiffs relied on

20  Defendants' consistent course of conduct, and had no access to underlying plan

21  documents containing such clauses.

22       As alleged in the FAC, Defendants dealt consistently dealt with Plaintiffs in

23  connection with thousands of benefit claims, yet they **never declined to process**

24  **Plaintiffs' claims on the basis of any anti-assignment clause**. (*Id*. ¶ 875.)  And

25  Defendants **never asserted such clauses as a reason not to communicate directly**

26  **with Plaintiffs.**  (*Id*.)  Defendants **never claimed the patients could not assign**

27  **their benefits to Plaintiffs**, despite innumerable opportunities during phone calls

28  and written communications with them.  (*Id*. ¶ 878.)  Plaintiffs also made thousands

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1    of requests for the relevant plan documents, all of which were ignored.  (*Id*. ¶¶ 31,

2    869).  In fact, Plaintiffs believed that the plans did not contain anti-assignment

3    clauses, since Defendants never challenged their assignments. (*Id*. ¶¶ 875-879.)

4    *Accord Productive MD*, 969 F.Supp.2d at 925 (finding continuous course of conduct

5    sufficient to support estoppel where administrator "strung [the provider] along" by

6    "paying  some claims . . . denying some claims, settling others, and permitting [the

7    provider] to pursue the claims through the administrative remedial process for at

8    least several years . . . .").

9         Defendants do not deny that they failed to raise the anti-assignment clauses.

10   Instead, they attempt to argue that they have not waived this defense because

11   Plaintiffs were merely acting as "authorized representatives" of the patients, not as

12   assignees.  This glib assertion is not supported by the facts.  Defendants do not

13   identify any allegations in the FAC that demonstrate that Plaintiffs were acting

14   solely as authorized representatives.  Nor does anything in the FAC suggest that

15   Defendants ever informed Plaintiffs that they were not assignees.  To the contrary:

16   **the FAC actually demonstrates that Plaintiffs, proceeding as full assignees,**

17   **repeatedly raised the issue of assignments during the administrative process**.

18   Even if Plaintiffs had authorized representative status, that did not deprive them of

19   their status as assignees.  The two represent parallel methods of proceeding under

20   ERISA.  *See, e.g.*, *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc*., 831 F.

21   Supp. 2d 651, 665 (S.D.N.Y. 2011) (as assignee, provider "was not required to

22   submit either an 'authorized representative' or 'designated representative form'").

23        Plaintiffs specifically allege in connection with at least *154* of the benefit

24   plans[6], that they actually "demonstrated that they held a valid assignment of

25   _____

26   [6] (See FAC ¶ 953, Patients 1, 2, 6 (subparagraphs (H)); Appendix, Patients 9-11, 14-
     16, 26-28, 31 34, 36, 37, 40-42, 44, 46, 51, 54, 56, 58, 63, 64, 66-68, 71, 73, 75, 78,
27   82, 83, 85, 87, 92, 93, 97, 99, 100, 101, 109, 112, 114, 118, 125, 127, 129, 130, 134,
     138, 140, 141, 143, 148, 153, 154, 155, 161, 168, 171-173, 175, 176, 183, 186, 188,
28   (footnote continued)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

17

OPPOSITION TO OMNIBUS MOTION TO DISMISS

1  benefits" to United.  Further, United's representatives had the ability to view and

2  access assignments of benefits that Plaintiffs submitted.  (FAC ¶ 890 ("**I can see**

3  **that, um the . . . [assignment of] benefits as indicated there**.").)  Thus, despite

4  having "full information and every opportunity to raise the assignment issue before

5  this litigation," *Productive MD*, 969 F. Supp. 2d at 923, Defendants chose to keep

6  silent, prejudicing Plaintiffs.[7]

7         Defendants attempt to argue that there was no reason to raise anti-assignment

8  clauses before litigation.  This ignores case law which discusses why the presumed

9  validity of assignments are important to out-of-network providers.  Such providers

10  are willing to give care without first requiring payment **precisely** because they

11  believe that they will be able to seek reimbursement later—through the legal

12  process, if necessary.  *Accord Simon*, 208 F.3d at 1081 (affirming role of provider

13  assignment in enhancing employee benefit coverage); s*ee also Hermann Hosp. v.*

14  *MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 (5th Cir. 1992) overruled on other

15  grounds by *Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co*., 698 F.3d 229

16  (5th Cir. 2012).  Had Defendants informed Plaintiffs that the rights to payment they

17  had received from certain of their patients were unenforceable, Plaintiffs might have

18  demanded payment up front from their patients, for instance.  Or they might have

19  simply declined to provide care to such patients, because there would be no

20  guarantee that they could seek payment for care provided.

21

22  _____

23  189, 191, 194 198, 201, 207, 208, 214, 217, 220, 225, 227, 230, 233, 234, 240, 246-
249, 251, 253, 260, 264, 265, 267, 269, 270, 272, 274, 276, 278, 281, 286, 290, 296,

24  300-302, 304, 306, 308, 316-318, 321-323, 326, 332, 333, 335, 337, 344, 348, 350,
351, 353, 355, 358-362, 365, 368, 369, 371, 373, 377, 380, 383, 385, 387, 390-392,

25  400-402, 405, 406, 416, 418, 422 (respective subparagraphs (H))).

26  [7] The FAC's allegations thus present a different situation than in Total Renal Care,
because the providers there filled out administrator's authorized representative form

27  and did not apparently submit actual evidence of their assignments. Total Renal
Care of N. Carolina, L.L.C. v. Fresh Mkt., Inc., No. 1:05-CV-00819, 2008 WL

28  623494, at *5 (M.D.N.C. Mar. 6, 2008).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

18

14-CV-2139-MWF (VBKx)

OPPOSITION TO OMNIBUS MOTION TO DISMISS

1     Similarly, United's default anti-assignment language purports to allow

2  provider assignment only with the consent of the plan administrator and/or United.

3  The Plans now assert that Plaintiffs failed to obtain the required consent.  Yet

4  Plaintiffs were not made aware that the clauses existed before now and had no

5  opportunity to do so.  If they had been so informed, Plaintiffs might have altered

6  their patient-intake procedures and worked with patients to obtain such consent.

7  *Accord Productive M.D.*, 969 F.Supp.2d at 923 (detailing "at least three different

8  ways" that provider might have acted differently had it known of such clauses).

9     Instead, without any knowledge that their assignments might later be

10 challenged, and in reliance upon Defendants' consistent course of dealing over

11 several years, Plaintiffs provided free medical services to beneficiaries of

12 Defendants' plans.  (FAC ¶¶ 5, 875-879, 934).  Plaintiffs had no opportunity to

13 work around the arbitrary obstacles that Defendants raise for the first time here.

14 Because Defendants' actions induced Plaintiffs to provide care to provide care to the

15 patients on the belief that their assignments were valid, Defendants are estopped

16 from now claiming the assignments were not valid.

17              2.     Waiver Applies As to the Anti-Assignment Clauses

18     "A party may waive an anti-assignment provision 'by a written instrument, a

19 course of dealing, or even passive conduct, i.e., taking no action to invalidate the

20 assignment vis-à-vis the assignee.'"  *Gregory Surgical Servs., LLC v. Horizon Blue

21 Cross Blue Shield of New Jersey, Inc.*, No. 06-0462 (JAG), 2007 WL 4570323, at *3

22 (D.N.J. Dec. 26, 2007).  Courts routinely find waiver in this context where the

23 administrator failed to invoke the clause during the administrative process.  *See

24 Care First*, RJN Ex. A at 36:12-17 (determining that waiver principle is not limited

25 to "a plan's substantive arguments concerning denial of an ERISA benefits claim,

26 but extends to the right to assert an anti-assignment clause) (collecting authority).

27 Waiver operates even where estoppel will not, where plan terms are unambiguous.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1  *See Productive MD*, 969 F.Supp.2d at 926 (case for waiver may be "enhanced"

2  where anti-assignment clause is clearly applicable).

3      The same course of conduct that causes Defendants to be estopped also

4  results in waiver.  *See Productive MD*, 969 F.Supp.2d at 926 (finding that same set

5  of facts supported both); *see also N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ.*

6  *Hosp.*, No. 13-74 (ES), 2013 WL 5366400, at *6 (D. N.J. Sept. 25, 2013) (finding

7  waiver where administrator "interacted voluntarily and repeatedly with Plaintiff

8  [including by answering telephone calls and accepting appeals] without once

9  invoking the anti-assignment clause"); *accord Lutheran Med. Ctr. of Omaha,* 25

10  F.3d at 619 (finding waiver where "the Plan's actual practice [of paying providers]

11  [was] not in conformity with its strict anti-assignment provision").  That is exactly

12  what happened in this case.  Defendants had thousands of communications with

13  Plaintiffs over a number of years without ever raising the anti-assignment clauses as

14  a reason not to deal with Plaintiffs or to deny payment.

15      Numerous Defendants suggest that they were entitled to pay providers

16  directly for "convenience" only, and without waiving their rights to raise anti-

17  assignment. This makes no sense, because Defendants' direct payments to Plaintiffs

18  were part of a larger, continuous course of conduct that affirmed the validity of the

19  assignments.  As the *Care First* court observed in considering an identical argument,

20  "[t]his argument is **_illogical_** as it necessarily relies on the fact that the plan

21  agreements contained anti-assignment provisions **_and implies that_** the reason for

22  the plan's denial [] was that [the provider] was not entitled to payment under the

23  [anti-assignment] provisions."  RJN Ex. A at p.39:15-24 (emphasis added).  Here,

24  the FAC makes clear that Defendants never raised anti-assignment.

25      Lastly, Defendants contend that waiver requires knowing intent.  This

26  standard is met here.  The FAC alleges that on hundreds of discrete occasions,

27  Plaintiffs "demonstrated [to United] that they held a valid assignment of benefits

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  from the patient," (FAC ¶ 953, Patients 2, 6; Appendix, *passim*), and further, that

2  United confirmed receipt of this assignment from Plaintiffs. (FAC ¶ 890.)

### B.  The United-Represented Defendants Counsel Fail to Meet Their Burden to Demonstrate Anti-Assignment

5  None of the 115 Plan Defendants represented by United's counsel show how

6  the language of their particular anti-assignment clauses defeats standing. These

7  Plans merely present the purported anti-assignment language in excerpts of their

8  SPD, without analysis or explanation. As discussed above, SPDs are insufficient to

9  demonstrate that anti-assignment clauses exist in the **operative plan documents**.

10  Further, Plaintiffs' claims cannot be dismissed for lack of standing unless the

11  language of a given anti-assignment clause is "so clear" that it renders the provider's

12  claim to assignment completely "frivolous." *Kennedy v. Connecticut Gen. Life Ins.*

13  *Co.*, 924 F.2d 698, 700 (7th Cir. 1991). In contrast, where an ERISA plan's anti-

14  assignment clause is ambiguous, it must be construed against the drafter, and in

15  favor of standing. *Alexander Mfg., Inc. Employee Stock Ownership Plan & Trust v.*

16  *Illinois Union Ins. Co.*, 560 F.3d 984, 989 (9th Cir. 2009). Because the United-

17  represented Plans provide no justification or analysis, they fail to meet their burden

18  as to anti-assignment clause. *See Jones v. Bock*, 549 U.S. 199, 212 (2007).

### C.  United's Counsel Cannot Argue Anti-Assignment On Behalf of Defendants Whose Plans Are Implicated in United's Counterclaim

21  United's counsel cannot take two conflicting positions regarding the validity

22  of Plaintiffs' assignments. Here, United's counsel argue here that the assignments

23  of benefits are invalid to defeat Plaintiffs' claims. In the parallel *Almont* case,

24  however, they rely on the validity of those assignments to pursue its "overpayment"

25  claims against Defendants. In its Counterclaim, United alleged: "Defendants

26  submitted claims of Plan Members of ERISA Plans pursuant to contractual

27  assignments received from those Plan Members. By doing so, Counterclaim

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Defendants [many of which are Plaintiffs in this case] **stood in the shoes of the**

2   **plan members** . . . .") (No. 14-cv-3053-MWF-VBKx, Dkt. No. 25, ¶ 186.)

3          In ruling on Plaintiffs' Motion to Disqualify United's counsel, the Court

4   recognized that the issue presented "a close call, given United's position in the

5   counterclaim," but stated that it was "unclear" whether a conflict existed then given

6   that information about which plans would assert anti-assignment clauses was not

7   then before the Court.  (Doc. #839 at p. 12.)  That information is now before the

8   Court.  United has provided Plaintiffs with a list of the claims that they seek to

9   recoup, which makes clear that United seeks to recover <u>every payment ever made</u> to

10  Plaintiffs.  (Chan Decl. ¶ 4-5.)  Given the sheer breadth of United's counterclaim, it

11  is highly likely that United seeks to recover payments on behalf of every plan that

12  raises anti-assignment in this case.

13         In fact, by matching up the names of patients that United has provided to

14  Plaintiffs' counsel in connection with its counterclaim, it appears that at least two of

15  the example patients alleged in United's First Amended Counterclaim (FACC)

16  belong to Plans who seek to assert anti-assignment clauses in this litigation: Patient

17  5 (Enterprise Holdings), and Patient 14 (AT&T). There are likely others, but

18  United's counsel have not provided information about the plans at issue for each

19  claim in their FACC.  (*See* FACC, *Almont*, No. 14-cv-3053-MWF-VBKx, Doc. #45;

20  Omnibus Motion to Dismiss, Ex. B (Doc.#1062-4) (AT&T in list of plans asserting

21  anti-assignment); Enterprise Motion to Dismiss (Doc.# 1149-6) (asserting anti-

22  assignment).)  (*See* Chan Decl. ¶ 6-7.)

23         Thus, United's counsel is conflicted from raising this argument.  Also, no

24  Defendant should be permitted to assert an anti-assignment clause, yet benefit from

25  the validity of the assignments in the parallel *Almont* suit.  United's counsel attempts

26  to claim that its positions are not inconsistent because Plaintiffs were *authorized*

27  *representatives*, not assignees.  (*See* June 16, 2014 Tr. of Hrg. on Mot. to Disqualify

28  at 10:8-11 ("Even if there's not an assignment there may have been a payment [] to

1  the plaintiffs as authorized representatives to direct payment to them.") (statement of

2  Mr. Lucke).)  United also modified its FACC so that it alleges that Plaintiffs were

3  authorized representatives, not assignees.  (*See* FACC ¶¶ 314, 328.)  As explained

4  above, even if Plaintiffs were authorized representatives, that does not mean they

5  were not also assignees.  *Biomed*, 831 F.Supp.2d at 665.  More importantly, a

6  patient's authorized representative is not entitled to direct payment of benefits.

7  Such an individual is authorized only to "pursu[e] a benefit claim or appeal of an

8  adverse benefit determination" on behalf of another.  29 C.F.R. 2560.503-1(b)(4);

9  *Biomed*, 831 F.Supp.2d at 664 (defining representative as "a person to act on your

10  behalf").  **There is a clear conflict here**.

### D.   Clauses That Require Consent of the Insurer, As the Majority of Clauses Do Here, Are Ineffective Under California Law

13  The most common variant of anti-assignment clause is contained in the

14  majority of SPDs states: "You may not assign your Benefits under the Plan to a non-

15  Network provider without our consent.  The Claims Administrator may, however, in

16  their discretion, pay a non-Network provider directly for services rendered to you."

17  (*See, e.g.*, Decl. of Heather McCann Supp. Omnibus Mot. Dismiss, Doc.# 1062-12,

18  Ex. 1 (AARP), at p. 47 (emphasis added).)  Interestingly, this language contemplates

19  that a provider assignment can be valid.  Also, as explained above, if Defendants

20  had made Plaintiffs aware of this provision during the administrative process,

21  Plaintiffs would have worked with the patients to obtain consent.

22  It is also unclear whose consent is needed; Plaintiffs cannot tell, as the actual

23  plan documents are not in evidence.  *See also Protocare of Metro. N.Y., Inc. v. Mut.*

24  *Ass'n Administrators, Inc.*, 866 F. Supp. 757, 762 (S.D.N.Y. 1994) (holding that

25  similar reservation of discretion did not bar assignment because "[i]f the Plan had

26  intended to prevent all assignments, as defendants claim, then it would not have

27  preserved the discretion to pay [the provider] directly.")

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   This clause is also invalid under California law.  It is well established in

2   California that the right to bring a suit to recover benefits under an insurance policy

3   can be assigned even where an anti-assignment clause contained in the policy states

4   that assignment is not valid without the consent of the insurer.  *See, e.g.*, *Comunale*

5   *v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 662 (1958) (*in banc*).  Here, Plaintiffs

6   obtained their contractual assignments of rights from their patients in California, so

7   assignability is governed under California law.

8   This principle is not preempted by ERISA as it is not specifically directed

9   towards ERISA plans.  Rather, it operates as a general state regulation of insurance.

10  *Accord La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529,

11  541 (5th Cir. 2006) (state law prohibiting anti-assignment clauses was enforceable

12  against ERISA plans and did not "relate to" ERISA); *Washington Physicians Serv.*

13  *Ass'n v. Gregoire*, 147 F.3d 1039, 1045 (9th Cir. 1998) (upholding application of

14  state statute regulating insurance to ERISA plans as not preempted); *Coast Plaza*

15  *Doctors Hosp. v. Blue Cross of California*, 173 Cal. App. 4th 1179, 1187, 93 Cal.

16  Rptr. 3d 479, 485 (2009) (similar).  Thus, because consent is not required for an

17  assignment to be effective, plans containing this clause do not bar assignment.

18   **E.    Anti-Assignment Clauses in Policies Regulated by California's**

19        **Department of Insurance Are Likewise Ineffective**

20  Similarly, anti-assignment clauses contained in plans that are governed by the

21  California Department of Insurance ("DOI") are not effective. The California

22  Insurance Code provides: "Upon written consent of the insured first obtained with

23  respect to a particular claim," an insurer covered by the Insurance Code "**shall pay**

24  group insurance benefits" for "hospitalization or medical or surgical aid," contingent

25  on certain conditions.  Ins. Code § 10133(a) (emphasis added).  This statute trumps

26  any anti-assignment clause contained in any DOI-governed policy, and as a general

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  regulation of insurance not directed towards ERISA Plans, is not preempted.[8]  *See*

2  *Gregoire*, 147 F.3d at 1045. Most or all of the 30+ plans in Exhibit B to the

3  Omnibus Brief that have "COC," or Certificate of Coverage, as the document type,

4  and that are insured by United, are very likely governed by the DOI.

### F.   Some Purported "Anti-" Assignment Clauses Expressly Permit Assignment to Providers Without Restriction

7  Even if the anti-assignment clauses have not been waived, the Court must

8  carefully examine their language to determine if they are sufficiently clear to bar

9  assignment.  In fact, some of the "anti-assignment" clauses in fact **expressly permit**

10  **assignment to providers**.  Credit Suisse's SPD contains a provision that states,

11  "[g]enerally, you cannot assign your rights under the plan, **but you may assign**

12  **benefit payment directly to your health care provider**."  (McCann Decl., Ex. 60,

13  at p. 792 (emphasis added).)  GenOn's SPD contains a detailed 'authorized

14  representative' clause, followed by the statement that "[a]n assignment for purposes

15  of payment (e.g., to a health care professional) does not constitute appointment of an

16  authorized representative under these claims procedures."  (*Id.*, Ex. 91, at p. 1168.)

17  But GenOn SPD's does not otherwise prevent assignment to a provider in any way.

18  As to these, and others like them, assignment is expressly permitted.

### G.   "Creditor" Anti-Assignment Clauses Are Not Directed Towards Providers And Cannot Be Enforced Against Them

21  Further, certain anti-assignment clauses are not directed towards healthcare

22  providers at all.  For instance, Defendant Allstate's plan states:

> The right of any Participant to receive any benefits under the Plans
> **shall not be subject to any claims by any creditor of or claimant**
> **against the Participant**; and any attempt to reach such amounts by any
> such creditor or claimant, or any attempt by the Participant to confer on
> any such creditor or claimant any right or interest with respect to such

---

[8] Plaintiffs note that DOI-governed policies are virtually always insured by United. Plaintiffs are willing to dismiss Plans / Employers who have such policies, and pursue United for payment.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

amounts, shall be null and void, except as provided in ERISA section 609 with respect to QMCSO.[9]

(Doc.# 1108-2, Ex. A-3.)  As the exception provided for child support (QMCSO) shows, this language is directed towards potential creditors who may seek to garnish plan benefits in order to satisfy personal debts incurred by a plan beneficiary.  The clause therefore does not bar assignment of benefits to healthcare providers, which are not mentioned, nor does it explain why such providers would be considered "creditor[s] of" or "claimant[s] against" a plan participant.

The Fifth Circuit determined that a similar clause[10] was primarily designed to prevent others from obtaining plan benefits, "such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits." *Hermann*, 959 F.2d at 575.  It therefore held that such a clause did not bar assignment to a provider. *Id.* (granting summary judgment in favor of provider). *See also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988) (observing that anti-assignment clause makes sense with respect to <u>pension</u> benefits, to ensure benefits are "actually available for retirement purposes," but frustrating the assignment of <u>health care</u> benefits might "hamper[] the employee's receipt of health benefits").[11]

_____

[9] 29 U.S.C. § 1169 requires health plans to "provide benefits in accordance with the applicable requirements of any qualified medical child support order." See also Qualified Medical Child Support Orders, DOL Employee Benefits Security Administration, http://www.dol.gov/ebsa/publications/qmcso.html.

[10] The clause in Hermann stated, "No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims." 959 F.2d at 574.

[11] Defendants invariably cite a later decision, LeTourneau, to counter Hermann.  But LeTourneau did not analyze a "creditor" anti-assignment clause; nor, for that matter, did it analyze the estoppel arguments set forth in Hermann. LeTourneau Lifelike *Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.,* 298 F.3d 348 (5th Cir. 2002).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    While the Ninth Circuit has not directly ruled upon "creditor" anti-

2  assignment clauses, it <u>has</u> repeatedly emphasized that medical providers who

3  provide their patients with medical care have the strongest possible nexus to plan

4  benefits.  In *Simon v. Value Behavioral Health*, the Ninth Circuit refused to allow

5  "third parties with no relationship to the beneficiary" to be assigned ERISA claims

6  via assignment "solely for the purpose of litigating them."  208 F.3d at 1081.  Yet at

7  the same time, Simon emphatically affirmed the vitality of *Misic*, explaining that

8  "permitting health care providers to sue in place of the beneficiaries they had treated

9  was consistent with Congressional intent in enacting ERISA."  *Id.*  Thus, the Ninth

10  Circuit treats providers differently than mere 'creditors.'

11    Other Defendants' "creditor" anti-assignment clauses support this conclusion,

12  because they include the same anti-alienation language, but state that benefits **may**

13  **be assigned to providers**.  For instance, the Petsmart Defendants' plan states:

> The benefits payable hereunder shall not be subject in any manner to
> anticipation, alienation, sale, or transfer.  **Notwithstanding the**
> **foregoing . . . . Covered Persons may direct the Administrator to**
> **pay any non-preferred provider benefits directly to the provider**,
> and such payment directly to the provider shall release the
> Administrator and the Plan of its obligation to provide such payment to
> the Covered Person.

18  (Doc.# 1091-3, Ex. B, Section 11.4.)  Petsmart cites the very first sentence of this

19  clause, but conveniently ignores the rest.  But this clause clearly permits the

20  assignments of benefits to providers in connection with medical care.  Likewise,

21  Defendant Brighthouse Networks submitted an SPD that states that "Plan benefits

22  cannot be sold, transferred or assigned for any reason <u>except as provided by law</u>."

23  (Doc. # 1062-13, Ex. 5 to McCann Decl, at p. 94.)  A few pages earlier, the SPD

24  also states that "You **may** have your out-of-network [] claims . . . **assigned to your**

25  **doctor**.  If benefits are assigned to your doctor, you must submit a claim form for

26  each bill . . . ."  (*Id.* at 93 (emphasis added).)  The specific provision that explicitly

27  allows provider assignment prevails over the more general provision which states

28  that no assignment will be allowed.  "Where specific and general terms in a contract

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   are in conflict, those which relate to a particular matter control over the more

2   general language." Rest. (Second) of Contracts § 203 (1981); *see also Info. Sciences*

3   *Corp. v. United States*, 80 Fed.Cl. 759, 792 (2008) (citing *Hills Materials Co. v.*

4   *Rice*, 982 F.2d 514, 517 (Fed. Cir. 1992)).

5        Thus, assignment is valid even in light of such "creditor" type language.

6   Alternatively, whether clauses like these apply to providers, creates an ambiguity

7   and issue of fact that is inappropriate to resolve at this stage.

8   **H.     None of the Anti-Assignment Clauses Prevent the Assignment of**

9        **Ancillary ERISA Causes of Action**

10        Lastly, the anti-assignment clauses would not affect Plaintiffs' ability to bring

11   causes of action under ERISA for breach of fiduciary duty, equitable relief, and

12   statutory penalties for the failure to produce documents – statutory rights that arise

13   under ERISA, rather than under the terms of the benefit plans.  At the very least, the

14   anti-assignment clauses before the Court are silent on the issue.  For this reason,

15   these clauses do not bar assignment as to Plaintiffs' ancillary ERISA claims.  *See*

16   *Care First*, RJN Ex. A, at 26 n.50 ("The language of the anti-assignment provisions

17   appears only to prevent the assignment of a participant's or beneficiary's claim for

18   benefits, not his or her right to request disclosure of documents, seek penalties for

19   non-disclosure, or sue for breach of fiduciary duty").

20   **VII.  DEFENDANTS CANNOT RAISE COVERAGE DEFENSES NEVER**

21        **ASSERTED DURING THE ADMINISTRATIVE PROCESS**

22   **A.     Coverage Defenses Were Not Raised During The Administrative**

23        **Process**

24        United and the Plan Defendants attempt to raise coverage base defenses that

25   were not raised during the administrative process.  Having elected to "hide the ball"

26   from the Plaintiffs during the administrative process, Defendants are precluded from

27   raising these excuses in litigation.  "[I]n this circuit and in others . . . a court will not

28   allow an ERISA plan administrator to assert a reason for denial of benefits that it

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  had not given during the administrative process." *Harlick, supra*, 686 F.3d at 719-

2  20; *Mitchell, supra*, 611 F.3d at 1199 n.2.[12]

3      In *Mitchell*, an ERISA plan attempted to argue for the first time that no

4  benefits were available under the language of the plan.  611 F.3d at 1200.  But

5  because "[n]othing in the voluminous  record" supported the newly raised excuse,

6  the plan was required to pay benefits.  *Id*.  Similarly, in *Harlick*, a plan was barred

7  from raising medical necessity where the only prior reason given for denial was lack

8  of coverage.  686 F.3d at 720; *see also Dubaich v. CIGNA*, No. CV 11-10570 DMG,

9  2013 WL 3946108, at *9 (C.D. Cal. July 31, 2013) (barring medical necessity

10  defense where only prior reason given for denial was exclusion for experimental

11  treatment); *Collins v. Liberty Life Assur. Co. of Boston*, 988 F. Supp. 2d 1105, 1125

12  (C.D. Cal. 2013) (plan could not belatedly raise temporal coverage limitation).  The

13  rationale for this rule is clear: "a contrary rule would allow claimants . . . to be

14  sandbagged by a rationale the plan administrator adduces only after the suit has

15  commenced.'"  *Harlick*, 686 F.3d at 720.

16      Therefore, Defendants are not entitled to raise any coverage-based defenses

17  that were not raised during the administrative process, whether that all conditions

18  for coverage were not met, or whether certain kinds of procedures (e.g., bariatric

19

---

20  [12] This is also true under California's Insurance Code and Health and Safety Code,

21  which both require health insurers to identify in the EOB "the portion of the claim that is contested or denied and the **specific reasons including for each reason the factual and legal basis** known at that time by the insurer for contesting or denying

22  the claim."  Cal. Health & Safety Code § 1371.35; Cal. Ins. Code §10213.13(a). Regulations further explain that insurers must disclose "**all benefits, coverage, time**

23  **limits or other provisions of any insurance policy** issued by that insurer that may apply to the claim presented by the claimant."  10 Cal. Code Regs. § 2695.4(a); *see*

24  *also* 10 Cal. Code Regs. 2695.7(b) ("Where an insurer's denial . . . , in whole or in part, is based on a specific statute, applicable law or policy provision, condition or

25  exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provisions, condition

26  or exclusion to the claim.").  If an insurer fails to do so, it is estopped from later raising such policy provisions.  *See, e.g., Spray, Gould & Bowers v. Assoc. Int'l Ins.*

27  Co. (1999) 71 Cal.App.4th 1260, 1268 (finding estoppel for failure to comply with Section 2695.4(a)).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    surgery) were excluded from coverage entirely.  The FAC alleges these issues were

2    simply not invoked during the administrative process.  (FAC ¶ 953, pg. 368.)  For

3    instance, in connection with Patient 5 (who was covered under Defendant AT&T's

4    plan), United issued an appeal denial letter that denied the claim based on a

5    Plaintiffs' purported failure to submit a lengthy list of medical records.  The letter

6    clarified that it was not denying the claim on grounds of medical necessity, or for

7    any other substantive reason.  (FAC ¶ 953 (Patient 5, subparagraph (J).)  No other

8    substantive reasons were provided.  (*Id*.)

9    Recognizing this deficiency, Defendants argue that for at least 300 of the 422

10   plaintiffs alleged in the Appendix, no claims were actually denied by United, such

11   that new defenses can still be raised.  (*See, e.g*., Declaration of Michelle S. Grant

12   Supp. United Defendants' Motion to Dismiss, Doc. #1180-1.)  This is not a

13   plausible reading of the FAC.  Each patient allegation specifically lists the request

14   for records as <u>a reason for denial of the claim</u>.  (*See* Appendix, paragraph (D) of

15   each allegation; *see also* FAC ¶ 888 ("your claim was <u>denied</u> due to incomplete

16   medical notes") (emphasis added).  Plaintiffs are entitled to all plausible inferences.

17   **B.    <u>Resolving Coverage Issues Also Implicates Issues of Fact</u>**

18   Moreover, applying defendants' coverage limitations and exclusions to

19   Plaintiffs' claims will necessarily involve issues of fact, and therefore cannot be

20   resolved at this stage.  For instance, a number of plans argue that there is no

21   coverage based on an exclusion for "weight-related treatment."  (*See, e.g*., Bupa

22   Worldwide, Doc. #1130.)  But it is impossible to determine at this stage what

23   services should be deemed "weight-related" and which should not.  This can be

24   done only when all the facts are before the Court.  *See Lowell v. Drummond,*

25   *Woodsum & MacMahon Employee Med. Plan*, No. Civ. 03-244-P-S, 2004 WL

26   1571793 (D. Maine July 13, 2004) (holding that "weight reduction" exclusion

27   referred to lifestyle enhancements such as dietary counseling, <u>not</u> to bariatric

28   surgery, as the latter clearly met the plan's definition of "covered expense").

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Similarly, many plans attempt to stretch limitations or exclusions pertaining

2 to bariatric surgery to services that have nothing to do with surgery at all, including

3 doctor's visits, ultrasound and laboratory tests, EGDs, and other kinds of surgery.

4 Again, whether these services are excluded can only be determined once the

5 administrative record is before the Court and Defendants prove that such defenses

6 were timely raised. *See Bauman v. Mila Nat'l Health Plan*, 342 F.Supp.2d 456,

7 467-68 (D.S.C. 2004) (holding, based on review of administrative record, that plan

8 abused discretion in denying coverage for bariatric surgery).[13]

9   Indeed, there appears to be a fundamental disconnect between the coverage

10 exclusions asserted by the Plans and the actual medical services alleged.  For

11 instance, the Ensign Defendants move to dismiss in part on the ground that Plaintiffs

12 supposedly fail to show that "the lap-band procedures at issue were covered" by

13 Ensign's benefit plan.  (Doc # 1088.)  But the allegations relating to Ensign (Patient

14 126) states that the Ensign plan failed to pay for an ultrasound.  Of course, the

15 Appendix was <u>not intended</u> to serve as a comprehensive list of all services at issue

16 for all patients under each plan, nor does it purport to be; there may be other

17 services and other patients at issue for this particular plan.  But Ensign's motion

18 fails to explain how its plan's morbid obesity provision excludes ultrasounds, or

19 excludes ultrasounds only for the morbidly obese.  It merely recites the requirements

20 of that provision—without explaining whether these requirements were adequately

21 raised during the administrative process.  This is fairly representative of the motions

22 to dismiss.  Defendants therefore fall far short of their burden of proof to plead

23 coverage exclusions, which are affirmative defenses under ERISA.  *See Caffey v.*

24 *UNUM Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002); s*ee also Owens v. Rollins,*

25 _____

26 [13] As explained more fully in Plaintiffs' opposition to United's motion to dismiss,
where Defendants have not applied exclusions equally, but only apply a bariatric
27 exclusion, for instance, to services that were rendered to disabled and morbidly
obese individuals, this conduct gives rise to discrimination under the ADA.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

31   14-CV-2139-MWF (VBKx)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   *Inc.*, No. 1:08-cv-287, 2010 WL 3843765, at *2 (E.D. Tenn. Sep. 27 (holding

2   defendants had burden to show affirmative defense of "limitations on benefits for

3   Mental and Nervous conditions"); *Thiel v. UNUM Life Ins. Co.*, No. 01-0769 WQH

4   (RBB), 2003 WL 25895408, at *1 (S.D. Cal. Nov. 18, 2003) ("the burden of proof is

5   on the defendant to establish the applicability of a plan coverage exclusion");

6   *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F.Supp.2d 1222, 1232 (N.D.

7   Cal. 2003) (similar).  Plaintiffs need not plead or prove the absence of these

8   affirmative defenses.  *Harris v. Amgen, Inc.*, 738 F.3d 1026, 1045 (9th Cir. 2013).

9   **VIII.  <u>TIME LIMITATIONS IN PLANS DO NOT BAR CLAIMS</u>**

10       **A.    <u>The Limitation Periods Were Never Triggered Because of
       Defendants' Failure to Provide Adequate Notice</u>**

11

12       Some Defendants argue that Plaintiffs' claims are time-barred based upon

13   shorter contractual limitations periods in their plans.  They are not, because none of

14   these contractual limitations periods began to run.  In some cases, the FAC alleges

15   that United simply never issued a final denial.  But even where a final denial issued,

16   Defendants failed to provide proper notice under ERISA explaining *why* they denied

17   the claim, *how* it could be perfected, and *how* it could be appealed.   "Courts have

18   generally held that a notice of denial which fails to comply with 29 C.F.R.

19   § 2560.503-1 does not trigger a time bar contained within the plan." *Neal v.*

20   *Christopher & Banks Comprehensive Major Medical  Plan*, 651 F.Supp.2d 890,

21   899-900 (E.D.Wis., 2009) (collecting cases); *White v. Jacobs Eng'g Group Long*

22   *Term Disability Benefit Plan*, 896 F.2d 344, 349–50 (9th Cir. 1989) (same).

23       In *White*, the Ninth Circuit held that a 60-day contractual bar was not

24   triggered where the plan's adverse benefit notice failed to provide full and fair

25   review.  *Id.* at 350 (holding that benefit termination notice failed to meet Section

26   503 and 29 C.F.R. § 2560.503-(f)).  The court reasoned:

27       The statutory mandate to plan administrators to "afford a reasonable
       opportunity to any participant whose claim for benefits has been denied
28       for a full and fair review" supports this result. 29 U.S.C. § 1133(2). The

1170880.1

legislators regarded claimants' awareness of the specific reasons for denial of their benefits as sufficiently important to their ability to obtain full and fair reviews of their claims to require explicitly that plans enumerate the reasons in the written notice of the right to appeal. 29 U.S.C. § 1133(1). **To allow plan appeal boards to bar a claimant's untimely appeal when the claimant was improperly notified of his or her right to appeal would circumvent this policy.** Plan boards could with impunity deter claimants from timely appealing by sending **vague and inadequate appeal notices, withholding information claimants need to appeal effectively**.

896 F.2d at 350-351 (emphasis added). *White* also rejected defendants' argument that preventing time bars from running would lead to a buildup of old, unresolved claims against the plan. Rather, the court reasoned that "[p]lan administrators have the power, and will have the incentive, to avoid the contingent liability of stale claims by ceasing to rely on benefit termination **form letters** and giving **adequate, specific notice**." *Id*. at 352 (emphasis added). *Accord Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1033 (9th Cir. 2006) (affirming rule set forth in *White* because "a plan's compliance with § 1133 serves crucial information-providing and signaling functions that lend certainty to a claimant's understanding whether a given denial is final or appealable").[14]

Here Defendants issued form denial letters that omitted any reference to relevant terms of the plans and any information about how to perfect the claim. *See* 29 C.F.R. § 2560.503-1(f). The many denials alleged in the FAC and Appendix also reflect that these denial letters likewise failed to inform Plaintiffs of relevant time limits contained within the plan for filing appeals or bringing suit.

For instance, for Defendant American International Group, Plaintiffs allege that United sent an EOB to Plaintiffs stating: "Your claim was not submitted within

---

[14] The Supreme Court's ruling in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604 (2013), did not alter the law in the Ninth Circuit. The Ninth Circuit had previously recognized that contractual limitations could be enforced. See, e.g., *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 650 (9th Cir. 2000) (remanding for consideration of whether contractual time bar applied, though statute of limitation did not). *White* does not govern whether time bars are enforceable, but rather, whether they are triggered in the first place.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   the time frame specified in you plan documents or contract." (Appendix, Patient

2   29(D).) The EOB did not refer to the specific plan provisions on which the

3   determination were based, and did not provide a description of the plan's review

4   procedures and the time limits applicable to such procedures. (*Id.*) Despite repeated

5   requests from Plaintiffs, neither AIG nor United has produced the plan documents,

6   other than the *de minimis* excerpts from an SPD that are attached to the McCann

7   Declaration, which do not even contain the purported time limitation clause that is

8   set forth in Omnibus Appendix E. (*Id.* (F).) Plaintiffs did not know if there is even

9   a timely filing provision in the plan, and even now, are unable to verify its existence.

10   Because none of the contractual limitation periods ever began to run, it is

11   irrelevant whether the Appendix lists every date that a claim was submitted, denied,

12   or appealed. Certainly, that information, which pertains only to an affirmative

13   defense that Defendants seek to raise, is not required to put Defendants on notice of

14   the claims against them. The only limitation that is applicable here is the four-year

15   statute of limitation for contractual causes of action.[15]

16   **B.    The Time Limits Were Unreasonable Given United's Delay Tactics**

17   Even had the contractual limitation periods *had* been triggered, the limitation

18   periods are unenforceable because they are unreasonably short in view of the

19   obstacles that United has injected into the administrative process. *Heimeshoff v.*

20   *Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 612-613 (reaffirming that time

21   limitations may be extended where obstacles exist to normal resolution of a claim)

22   (citing *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355 (1977)).

23   Here, the FAC alleges that United attempted to draw out the claims process

24   indefinitely by constantly asking for non-existent claims documents and by

25
26   [15] As ERISA does not contain a statute of limitations provision, courts "borrow the
       forum state's statute of limitations governing breach of contract claims for ERISA
27   collection actions." *Pierce County Hotel Employees and Restaurant Employees*
       *Health Trust v. Elks Lodge*, 827 F.2d 1324, 1328 (9th Cir. 1987). California has a
28   four-year limitations period for breach of contract. Cal. Civ. Proc. § 337.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   repeatedly referring claims to OptumInsight for further review.  (FAC ¶ 26-30, 888-

2   890.)  In some cases, Plaintiffs' claims languished in the administrative process for

3   years, with United never issuing a final denial (though in other cases, United did

4   issue eventually issue deficient final denials.) (*Id.*)  Indeed, United even admits that

5   one of its goals in pretending to ask for medical records was to buy themselves more

6   time (which was probably why this was their preferred excuse).  *See* United's

7   Motion to Dismiss, Doc. #1061-1, at p. 3 ("In fact, ERISA's claims regulations

8   contemplate that time limits can be suspended where the administrator waits for

9   additional requested information . . . .")  These are precisely the kinds of obstacles

10  anticipated by the Supreme Court.  They render the time limits unreasonable.

### C.   Waiver and Estoppel Also Apply to Bar Application of the Contractual Limitation Periods

13      Plaintiffs are further entitled to assert waiver and estoppel, which "may

14  prevent the administrator from invoking the limitations provision as a defense."

15  *Heimeshoff*, 134 S. Ct. 615.  The application of these defenses necessarily involve

16  questions of fact that are properly not before the Court.  *See Jacobs v. Prudential*

17  *Ins. Co. of Am.*, No. 13-0146, 2014 WL 2807537, at *5-6 (E.D. La. June 19, 2014)

18  (waiver and estoppel sufficient to preclude dismissal at the pleading stage).

19      Here, Defendants have waived their rights to raise their contractual limitation

20  periods because the deficient adverse benefit determinations that they issued failed

21  to disclose the time limitations upon which Defendants now rely.  *See, e.g*., *Moyer v.*

22  *Met. Life. Ins. Co*., – F.3d –, 2014 WL 3866073, at *3-4 (6th Cir. 2014) (holding

23  that time bar contained with an ERISA plan was not triggered where denial notices

24  failed to explicitly disclose 3-year contractual limit on filing suit); *Solien v.*

25  *Raytheon Long Term Disability Plan #590*, CV 07-456 TUC DCB, 2008 WL

26  2323915 (D. Ariz. June 2, 2008) (similar) (observing that administrator had

27  affirmative duty to disclose plan's time limit, "especially since the consequence of

28  an untimely request is to foreclose all external review of [the] claim").  They are

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

35                          14-CV-2139-MWF (VBKx)

OPPOSITION TO OMNIBUS MOTION TO DISMISS

1  also estopped.  Defendants' blanket denial of Plaintiffs' claims provides the

2  "extraordinary circumstances" required for estoppel.  Also, as in the anti-assignment

3  context, Plaintiffs' ignorance of and lack of access to information about plan time

4  limits relieves any requirement that the time limitations be ambiguous.

5  Plaintiffs are also entitled to estoppel as to any time limitations contained in

6  policies regulated by the California DOI.  Under regulations promulgated by the

7  DOI pursuant to Ins. Code § 790.10, insurers have an affirmative obligation to

8  disclose "time limits or other provisions . . . that may apply to the claim presented

9  by the claimant."  10 C.C.R. § 2695.4; *see also Spray, Gould & Bowers v. Assoc.*

10  *Int'l Ins*. Co. (1999) 71 Cal.App.4th 1260, 1268 (finding estoppel applied to policy

11  time limit where insurer violated Section 2695.4).

12  **D.**  **Ambiguity and Factual Interpretation Issues Preclude Application**

13  **of the Contractual Time Limitations**

14  Were the Court were to attempt to apply the contractual limitations to each

15  benefit claim at issue in this action, ambiguities in some of the contractual

16  limitations create factual issues will arise that cannot be resolved now.  For instance,

17  Defendant Union Bank seeks to enforce a time limitation that requires any ERISA

18  action to be "commenced within two years after the occurrence of the loss for which

19  a claim is made."  (Doc. # 1134.)  Defendant Arora Group requires lawsuits to be

20  filed "within 3 years of the 'date written proof of loss is required to be furnished.'"

21  (Doc. # 1107.)  Similarly, the Darden Defendants contend that suit must have been

22  brought within two years of "when written proof of loss is required to be furnished

23  to the Plan Administrator."  (Appendix E to Omnibus Brief, at p. 1.)  Defendants

24  contend that all of these limitations have expired, but do not even attempt to explain

25  what a "proof of loss" means in the context of medical benefits, or when, in the

26  context of their respective plans, such proof was required to be furnished.  Time

27  limits, especially ambiguous ones, simply cannot be enforced at this stage.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

36                                                14-CV-2139-MWF (VBKx)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## IX.   PLANS' FORUM SELECTION CLAUSES, EVEN IF ENFORCEABLE, DO NOT GOVERN THIS MULTI-DEFENDANT ACTION

For the reasons explained in Plaintiffs' opposition to the Aegon Defendants' Motion to Dismiss (which is incorporated herein by reference), a transfer of venue is not warranted as to those Plan Defendants whose plans contain clauses specifying another venue. The Secretary of the Department of Labor (DOL), who has primary authority to interpret and enforce ERISA, consistently maintains that such clauses are invalid because they impede ERISA's strong policy goal of providing open access to the courts.[16] Further, Defendants cite no cases suggesting that dismissal for improper venue under 28 U.S.C. § 1406 is warranted, rather than transfer. But even if such clauses are valid and may be considered as part of the Section 1404 transfer analysis, such analysis weighs against transfer, especially where there are numerous defendants, and where venue is already proper in this district.

## X.   PLAINTIFFS ARE NOT REQUIRED TO PLEAD SPECIFIC PLAN TERMS THAT ARE NOT IN DISPUTE

Next, Defendants insist that Plaintiffs plead the literal terms of each plan that it is at issue in this lawsuit. But neither ERISA nor Ninth Circuit precedent requires Plaintiffs to enumerate every single possible plan term relating to coverage.

### A.   Plaintiffs Sufficiently Plead that the Medical Services At Issue Were Covered By the Terms of the Plans

As detailed above, Defendants failed to comply with the ERISA regulations requiring detailed notice of every reason for the denial of the claim, including citations to specific provisions of the plan. Defendants also refused to provide any

---

[16] *See, e.g.*, Brief for the Sec'y of Labor as Amicus Curiae, *Mozingo v. Trend Personnel Servs.*, No. 11–3284, 2012 WL 1966227 (10th Cir. May 24, 2012), available at http://www.dol. gov/sol/media/briefs/main.htm), at p. 19; *Varsic v. U.S. Dist. Court for Cent. Dist. of California*, 607 F.2d 245, 247-48 (9th Cir. 1979) (interpreting ERISA's venue provision broadly in light of legislative intent).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  of the plan documents to Plaintiffs despite  thousands of requests.  (*See, e.g.*, ¶ 953,

2  Patient 2, subparagraph (J); ¶ 1068.)  Having refused to inform Plaintiffs of the

3  relevant plan terms, Defendants ironically now attempt to argue that Plaintiffs'

4  claim should be dismissed because they failed to cite to the plan terms that

5  Defendants hid from them.  For this proposition, Defendants rely heavily on an

6  unpublished outlier decision.  *See Sanctuary Surgical Ctr., Inc. v. UnitedHealth*

7  *Grp., Inc*., 10-81589-CIV, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013).  Other courts

8  have recognized, however, that plausible allegations that merely describe the

9  relevant plan provisions in general terms are more than sufficient to put defendants

10  on notice as to the benefits sought.  *See, e.g*., *Encompass Office Solutions, Inc. v.*

11  *Ingenix, Inc*., 775 F.Supp.2d 938, 969 (E.D. Tex. 2011), *In re WellPoint, Inc. Out-*

12  *of-Network UCR Rates Litig*., 865 F.Supp.2d 1002, 1040-42 (C.D. Cal. 2011).

13      In *Encompass*, a district court rejected an argument made by several of the

14  same United Defendants that the plaintiff had to plead the specific terms of the plan.

15  775 F.Supp.2d. at 969.  It found that the plaintiff's allegations were sufficient "to

16  make its § 1132(a)(1)(B) claim plausible and **to give United notice as to which**

17  **provisions it allegedly breached**." *Id*. (emphasis added).  United's arguments were

18  rejected again a few months later in *In re Wellpoint*, even though the plaintiffs there

19  had not pled the actual terms of the plans, but merely described them generally.  865

20  F.Supp.2d at 1040-42.

21      Here, the FAC alleges that Plaintiffs called United to verify that each patient

22  had valid coverage and also that benefits were available under each plan for the

23  procedures that they performed for each of their patients: doctor's visits,

24  ultrasounds, EGDs, sleep studies, lap band adjustments, etc.  (FAC ¶ 5, 34.)

25  Further, before Plaintiffs performed medical procedures, Plaintiffs received

26  authorization from United, or an indication that no authorization was necessary.

27  (*Id*.).  Plaintiffs relied in good faith on United's representations before it provided

28  medical services to Defendants' beneficiaries and insureds.  It would be *implausible*

1  to conclude, in light of such representations, that the Plaintiffs' hundreds of benefits

2  claims all relate to non-covered patients or procedures.  This level of granular detail

3  is more than sufficient to demonstrate a plausible case for benefits for each plan.

4   Further, Defendants' insistence that every possible plan term be pled amounts

5  to disfavored fact pleading, which *Twombly* does not require.  *See, e.g.*, *Bell Atl.*

6  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("**[W]e do not require heightened**

7  **fact pleading of specifics**, but only enough facts to state a claim to relief that is

8  plausible on its face.")  As another court in this district recently observed, a

9  provider's claims under ERISA "are not subjected to a heightened pleading

10  standard, such that it must allege the who, what, when, where and how of []

11  communications [with the plan].  Rather, it need only satisfy Rule 8(a)." *Care First*,

12  RJN Ex. A at 30:10-14 (citing *Twombly*).  Here, Plaintiffs have plausibly pled the

13  communications with United that demonstrate that procedures were covered.[17]

### B.  <u>Unlike in *Sanctuary Surgical*, Coverage Is Not In Dispute</u>

15   *Sanctuary* is also distinguishable because it was a dispute over coverage that

16  <u>necessarily</u> required the interpretation of terms of many individual benefit plans,

17  administered by many different claims administrators.  2013 WL 149356 at *1.  It

18  involved a class of specific, novel medical procedures, called manipulation under

19  anesthesia (MUA), which would only be covered if each particular MUA procedure

20  met the appropriate benefit plan's definition of "medically necessary" treatment and

21  was not excluded as "unproven" or "experimental." *Id.* at *6.  This was the key

22  issue in the case, because there did not appear to be any language in the plans that

23  specifically covered or excluded MUA.

---

[17] Defendants also claim that the Supreme Court's recent decision in an insider trading lawsuit brought under ERISA somehow heightens the pleading standard in lawsuits for ERISA benefits.  *See Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014).  But *Dudenhoeffer* merely affirmed that *Iqbal* and *Twombly* applied, subject to guidance specific only to that particular kind of lawsuit.  *Id.* at 2471.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

14-CV-2139-MWF (VBKx)

1170880.1

Unlike in the coverage fight in *Sanctuary*, Defendants assured Plaintiffs before Plaintiffs provided free medical care to their plan beneficiaries and participants that the services were covered.  Further, they failed to raise any conditions of coverage, coverage exclusions, or issues of medical necessity during the administrative process, which they would be expected to do if coverage was genuinely at issue.  Indeed, because of the massive scale on which Defendants violated ERISA's basic procedural requirements, this case presents simple and straightforward issues that are virtually identical for each plan.  There is no requirement that Plaintiffs plead the ins and outs of specific coverage provisions where in fact United itself failed to cite those provisions during the administrative process, and continues to deny Plaintiffs access to the relevant plan documents.

Further reinforcing that coverage is not at issue, none of the Defendants claim that the services rendered by Plaintiffs, i.e. diagnostic procedures (ultrasound, EGDs), sleep studies, or surgical procedures, are not <u>covered</u> by the terms of the plan.  At most, some Defendants argue that such services, despite falling within generally covered categories of services, must be denied pursuant to <u>exclusions</u> set forth in certain plans.  As noted above, it is Defendants' responsibility to plead and prove that such exclusions apply.  And because these exclusions were not raised, the principles established in *Mitchell* and *Harlick* constrain the scope of review of the administrative process that this Court is required to undertake.  No Defendant can plausibly argue that they are not on notice of the claims against it.

## C.   <u>Requiring Plan Terms to Be Pled in Detail Would Reward Gross ERISA Violations By Immunizing Defendants from Suit</u>

Ultimately, requiring Plaintiffs to engage in a mind-numbing recitation of plan terms (to which they still do not have access) would reward Defendants for their systematic violations of ERISA.  Defendants could immunize themselves simply by choosing *not* to cite to specific and relevant plan provisions when denying a claim, and by choosing *not* to provide plan documents upon request.  Defendants

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

OPPOSITION TO OMNIBUS MOTION TO DISMISS

1   counter that it is Plaintiffs' obligation to track down hundreds of their patients from

2   the past four to six years and ask each one for the plan documents that were

3   operative at the time services were rendered.  Not only would that be logistically

4   impossible, but such an outcome would defeat the policies underlying *Misic*, i.e., to

5   "simplif[y] the billing structure among the patient, his care provider, and his benefit

6   plan in a way that enhance[s] employee health benefit coverage."  *Simon v. Value*

7   *Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000) *amended*, 234 F.3d

8   428 (9th Cir. 2000).  The Court should not allow it.

9   ## XI.   <u>PLAINTIFFS HAVE ADEQUATELY PLED EXHAUSTION</u>

10      A handful of the Plan and Employer defendants argue that Plaintiffs have not

11   adequately pled they exhausted each individual plan's appeal requirements.

12   Exhaustion is an affirmative defense for which Defendants, not Plaintiffs, bear the

13   burden to plead and prove.  *See generally Jones v. Bock*, 549 U.S. 199, 212 (2007);

14   *cf. Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (holding that exhaustion

15   under various statues must be raised on summary judgment, not motion to dismiss).

16      In any case, the FAC alleges that Plaintiffs appealed claim denials for <u>each</u>

17   <u>and every Plan</u>.  For the vast majority of these, Plaintiffs have even provided dates

18   on which the appeals were made.  Defendants attempt to spin isolated allegations

19   from the FAC so as to shift the blame to Plaintiffs for "fail[ing] to respond to

20   requests for information."  But the FAC shows that United simply used such

21   requests as a pretext to deceive and delay.  Not only Plaintiffs have pled adequately

22   exhaustion, but due to Defendants' pervasive violations of ERISA, any remaining

23   appeals must be deemed exhausted, and are also futile.  (*See, e.g.*, FAC ¶¶ 936-950).

24   ### A.   <u>Because Defendants Failed to Meet their Antecedent Duty to</u>
25   <u>Observe ERISA's Regulations, All Appeals Are Deemed Exhausted</u>

26      Failure to comply with ERISA's claims processing regulations "create[s] an

27   exception to the judge-made exhaustion requirement."  *Vaught v. Scottsdale*

28   *Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008); *see also* 29

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

41

OPPOSITION TO OMNIBUS MOTION TO DISMISS

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

C.F.R. § 2560.503-1(l) ("a claimant <u>shall be deemed to have exhausted the administrative remedies</u> under the plan . . . .") (emphasis added).  In addition, "[t]he notice requirement for the decision **on review** must be every bit as explicit as an initial denial notice . . . ."  *Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) (emphasis added).  Compliance with § 2560.503-1 is considered an "antecedent duty," so if defendants have failed to comply, Plaintiffs had no obligation to engage in the administrative process.  *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009).  Thus, to the extent all appeals were not exhausted, Defendants' failure to comply with relieves Plaintiffs of any remaining obligation to do so.

Defendants' authority is not to the contrary.  For instance, *Diaz* determined, on the facts of case, that denial was not insufficient under § 2560.503-1.  *Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995).  Likewise, *Amato v. Bernard* was a case in which the claimant had not bothered to appeal at all.  618 F.2d 559 (9th Cir. 1980).  Nothing more is required.

### B.     <u>Appeals Would Also Have Been Futile</u>

A plaintiff is also excused from exhausting administrative remedies under ERISA upon a clear and positive showing that the plan administrator would have denied its appeals.  *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002); *Vaught*, 569 F.3d at 626-27 (failure to waive exhaustion would be an abuse of the district court's discretion).  Plaintiffs clearly meet this standard.  The FAC plausibly alleges that United was determined to deny Plaintiffs' claims at any cost, and that further appeals would have been worthless.  (*See* FAC ¶¶ 936-950.)

### XII.   <u>THE FAC SUCCESSFULLY STATES A CLAIM AS TO THE ANCILLARY ERISA CAUSES OF ACTION</u>

As explained above, Plaintiffs have standing to assert <u>all</u> their claims under ERISA, not only the claim for benefits.  Plaintiffs have also plausibly stated a claim for relief under each of these ancillary claims.

A.   **Plaintiffs Are Entitled to Seek Statutory Penalties For Defendants' Failures to Provide Plan Documents Upon Request (Count VII)**

Defendants argue that the claims for ERISA penalties must be dismissed because the FAC fails to allege that Plaintiffs sent demands for plan documents to the Plan and Employer Defendants, as opposed to United.  But Plaintiffs' requests to United were more than sufficient to put the plans on notice.  *See, e.g.*, *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1110 (10th Cir. 1994) ("A letter may be a sufficient written request even if not sent directly to the plan administrator.") (observing that actions of others may be imputed to plan administrator); *Stegelmeier v. Doug Andrus Distrib. Employee Health Benefit Plan*, 2:02-CV-238 TS, 2007 WL 709301 (D. Utah Mar. 5, 2007) (holding *plan administrator* was liable for letter to *claim administrator* requesting documents); *see also Bova v. American Cyanamid Co.*, 662 F. Supp. 483, 491 (S.D. Ohio 1987) (awarding penalties even though plaintiff failed to address request to plan administrator, as SPD directed such requests to the employee benefits department); *Conowall v. Administrative Committee*, 1989 WL 79800 (E.D. Pa. July 7, 1989) (granting MSJ on penalties against plan administrator, even though document request was made to company's benefits manager).

Further, the Plaintiffs here repeatedly provided the Defendants with evidence of their assignments of benefits, which included express authorization from the patients to obtain relevant plan documents.  (*See* Am. Compl. ¶¶ 873 (emphasis added).)  Thus, Defendants had no legitimate reason not to release the plan documents to Plaintiffs.

Dismissal of the penalties claim is therefore improper at this stage.  Plaintiffs believe that both the Plans and United directed and encouraged all requests for documents and information to be directed solely to United, as the claims administrators, and are entitled to discovery in order to verify this.  Further, Defendants' own brief acknowledges that numerous Plan and Employer have

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1   received demands for plan documents <u>directly from Plaintiffs</u>, which Defendants

2   discuss at length.  (Omnibus Br. at p. 46-47.)  Such requests, even aside from the

3   thousands of requests for documents alleged in the Complaint, independently

4   support Plaintiffs' cause of action for statutory penalties.  Of course, to the extent

5   the Court finds the existing allegations in the Complaint insufficient, Plaintiffs

6   request leave to amend the FAC so as to add these allegations.

7       **B.    Plaintiffs Are Entitled to Reformation Under Section  502(a)(3)**

8       **(Count V)**

9           As discussed above, Defendants failed to invoke policy exclusions that many

10  of them now raise.  Plaintiffs' reformation cause of action alleges that, in the

11  alternative, even if these coverage limitations had been timely raised, the limitations

12  unlawfully discriminate against the morbidly obese by restricting, or in many cases,

13  wholly eliminating, any coverage for bariatric surgery.

14          Section III.A.3 of the Plaintiffs' Opposition to United's Motion to Dismiss

15  explains, in detail, how Plaintiffs intend to demonstrate that the purported coverage

16  limitations asserted by Defendants here violate the Americans with Disabilities Act

17  ("ADA") and California's Fair Employment and Housing Act.  Where a plaintiff

18  can establish that plan terms violate the ADA, then enforcement of the plan without

19  the offending term is "appropriate equitable relief" available under 29 U.S.C.

20  § 1132(a)(3), which is precisely what Plaintiffs seek by means of this cause of

21  action.  *See Iwata v. Intel Corp.*, 349 F.Supp.2d 135, 142 (D. Mass. 2004) ("If the

22  Plan, read without the offending term, entitles [the plaintiff] to benefits, then she

23  should have a claim for benefit due under 29 U.S.C. § 1132(a)(1)(B) for benefits

24  due [or for] . . . 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3), but in

25  either case, [the plaintiff] would be stating a claim for relief under ERISA.").

26      **C.    Plaintiffs Plausibly Plead Ancillary ERISA Claims (Counts II, III)**

27          As set forth in Plaintiffs' opposition to United's Motion to Dismiss, which is

28  incorporated by reference in its entirety, Plaintiffs have more than sufficiently pled

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1  claims for breach of fiduciary duty and for equitable relief against the Plan and

2  Employer defendants.  Plaintiffs clarify that they do not intend to plead a claim

3  under Section 502(a)(2) (Count II) against the Plans themselves, nor do they plead

4  Count IV against the Plans or Employers.

5  **XIII.  PLAINTIFFS HAVE PLED AN UNFAIR COMPETITION CLAIM**

6  **AGAINST THE PLANS**

7       Defendants' argument that Plaintiffs have failed to plead an unfair

8  competition claim must be denied for the reasons set forth in Plaintiffs' Opposition

9  to United's Motion to Dismiss, which is incorporated herein.  While the Plan and

10  Employer Defendants argue that Plaintiffs have not sufficiently alleged the UCL

11  claim, this is not the case.  It may very well be that they are liable for United's

12  actions, because United was their agent in engaging in discriminatory behavior.

13  *See Brown v. Bank of Am.*, N.A., __ F.Supp.2d __, 2014 WL 901438, at *10-12 (D.

14  Maine 2014).  At this point, and without further discovery, Plaintiffs cannot

15  determine which is the case, and therefore, should be permitted to proceed on their

16  UCL claim against all the Defendants, not only United.  *Id.* at *12 ("If a defendant

17  contends that it is neither the employer nor agent, the wiser course is for the parties

18  to engage in discovery, isolate undisputed and disputed facts, and present the issue

19  as a matter of law based on a fully developed factual record.").

20  **XIV.  PLAINTIFFS WILL DISMISS SOME CLAIMS BUT NOT OTHERS**

21       **A.    Valley Surgical Center**

22       A handful of Defendants contend the only claims against them relate to

23  Valley Surgical Center ("Valley"), which is not presently a plaintiff.  (Omnibus Br.

24  at 19.)  In most cases, this assertion is inaccurate.  For instance, Defendants BMW

25  of North America LLC and its affiliated Health and Welfare Plans move to dismiss

26  on this ground.  But the Appendix' allegations as to Patient 61, who was insured

27  under BMW's plan, reveals that Plaintiff IMS also submitted claims for professional

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  services rendered that were not paid.  Plaintiffs clarify that they are not presently

2  seeking to recover as to any claims submitted by Valley.

3       At this point, the only defendants for whom Valley was the only provider

4  claims are Southwest Airlines Co. and its Welfare Benefit Plan.  Plaintiffs agree to

5  dismiss these two defendants from the case without prejudice to re-naming them

6  once Valley Surgical Center is added as a plaintiff.  Plaintiffs further ask that the

7  Court provide leave to add Valley as a plaintiff in this litigation.  Valley has

8  submitted an application to the California Secretary of State to revive its corporate

9  status, which will hopefully be completed soon.  (Chan Decl. ¶ 8.)

10       **B.**    **Defendants For Whom United Was Not the Claims Administrator**

11       A number of Defendants ask to be dismissed because that United was not

12  their claims administrator during the time period for which Plaintiffs seek

13  reimbursement for services rendered.  In some cases, the Defendants had a

14  relationship with United, but only for certain years; another couple Defendants

15  claim to never had had a relationship with United at all.  Plaintiffs clarify that they

16  are not seeking reimbursement through this lawsuit for claims that were not

17  submitted to, and processed by, United.  That being said, it all of the Defendants

18  who make this argument should remain in this lawsuit:

19       1.    Defendants Who Only Used United As the Claims Administrator
             in Certain Years

20       In many cases, it appears that the allegations relating to these Defendants

21  were incomplete, and in some cases contained incorrect dates of service.  This is not

22  fatal, as the Appendix does not purport to be a comprehensive list of every medical

23  service for every patient who is at issue under each plan.

24    •   The ESRI Defendants (Doc.# 1062-9) assert that United was not their
         claims administrator until January 1, 2012.  The Appendix (Patient 128)
25       alleges claims only for 2010 and 2011.  This appears to be in error.
         Plaintiffs seek reimbursement only for later services, which occurred in
26       2012 and 2013.  (Chan Decl. ¶ 10.)

27    •   The Performance Food Defendants (Doc.# 1062-10) contend that
28       Anthem Health Plans of Virginia was the claims administrator in 2011,

the year of the services alleged in the Appendix for Patient 277.  Again, the Appendix allegations appear to be incomplete; Plaintiffs seek reimbursement only for services which occurred in 2012 and early 2013. (Chan Decl. ¶ 11.)

- The Shaw Group Defendants (Doc.# 1145) contend that BCBS of Louisiana was their claims administrator in 2012 and 2013, the dates alleged in the Appendix for Patient 289.  Plaintiffs clarify that they seek reimbursement only for services that were submitted for reimbursement in 2010, when those Defendants admit that United was the claims administrator.  (Chan Decl. ¶ 12.)

### 2.   Defendants Who Claim Never to Have Used United

A number of defendants claim to have no relationship with United. Defendants appear to make this assertion liberally, *i.e.*, even where United is the administrator for one of their plans, but not another.  The Aegon Defendants are a perfect example of this.  (*Compare* Doc.# 489-1 (claiming Aegon's plan had no relationship with United) with Doc.#1066 (admitting that different Aegon plan *did* have a relationship with United).)  While the exact issue for each of these defendants is not yet clear, dismissal is not warranted at this stage.

- The Union Pacific defendants claim that they have not used United since 2000.  (Doc.#1149-19.)  However, Plaintiffs have received at least one EOB from United in connection that lists the Group Name as "Union Pacific Corporation." (*See* Chan Decl. ¶ 13, Ex. 1.)

- The Hoffman-La Roche defendants claim to have no ties with United. However, Plaintiffs have received EOBs from United that lists the Group Name as "ROCHE." (*See* Chan Decl. ¶ 14, Ex. 2.)

- The CareFusion Defendants (Doc. #1149-2) contend that their plan did not exist until 2011, whereas the services alleged in the Appendix were performed in 2009.  As the FAC makes clear, the patient at issue was a beneficiary or participant of Medegen MMS, which later was acquired, or became, CareFusion.  Plaintiffs received at least one EOB reflecting that the Medegen plan was, indeed, administered by United.  (Chan Decl. ¶ 15, Ex. 3.)

Thus, these Defendants are all properly included in this lawsuit, and at the very least, further discovery is needed.  Plaintiffs are happy to update the allegations of the Appendix to conform to their representations here, if the Court requires it.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**XV.  THE COURT SHOULD EXTEND THE TIME FOR RE-SERVICE OF DEFENDANTS THAT CLAIM THEY WERE IMPROPERLY SERVED**

The Ensign Defendants (Doc.#1088) and the Sodexo Defendants (Doc.# 1138) purport to move to dismiss this action because service upon them was improper upon their respective plans.  While Plaintiffs disagree that service was improper, Plaintiffs are willing to enact service again to resolve any doubt.  The Court should find good cause to extend the time period for service, given that those parties have actual notice of this lawsuit, and would not be prejudiced.  *Accord Aguilar v. Mission Support Alliance*, LLC, CV-11-5123-EFS, 2012 WL 911421 (E.D. Wash. Mar. 16, 2012) (finding good cause and no prejudice).  Plaintiffs further request that counsel for the plans return appropriate waivers of service.

**XVI.  DEFENDANT PERKINS' PRIOR BANKRUPTCY DOES NOT DEFEAT LIABILITY OF ITS PLAN**

Defendant Perkins & Marie Callender's, LLC, argues that the case against it should be dismissed because it underwent voluntary Chapter 11 reorganization proceedings between 2009 and 2011.  It contends that because plan benefits were paid directly from its assets, the resolution of bankruptcy absolved *its benefit plans* of having to pay past benefits.  Perkins cites no authority for this proposition.  There is insufficient evidence at this stage to permit dismissal of Perkins and its plan.  For instance, Perkins has not demonstrated that its health care plans were part of the bankruptcy estate.  Likewise, Perkins does not contend that its health plans were wound down as part of any bankruptcy proceedings.  Unlike in a Chapter 7 bankruptcy, in which health benefit plans <u>must</u> be wound down, an employer's benefit plans may continue throughout a Chapter 11 bankruptcy.  Indeed, Perkins' yearly filings with the Department of Labor from both before and after the bankruptcy demonstrate that its ERISA benefits plan has been in continuous existence since January 1, 1990.  (RJN, Exh. B.)

1170880.1

## XVII. JOINDER IS PROPER BECAUSE UNITED'S VIOLATIONS OF ERISA PROVIDE THE NECESSARY COMMON NUCLEUS OF FACT

Nearly ten pages of the Omnibus Brief is devoted to the argument that the Defendants have been misjoined, and that Plaintiffs should instead be required to bring several hundred separate ERISA lawsuits. This ignores that this lawsuit rises and falls on a common set of issues of both law and fact as to each plan: namely, whether United's indiscriminate denials of Plaintiffs' claims violated the full and fair review requirements of ERISA. If the answer is yes, then this Court need not consider the plan-specific coverage limitations and exclusions that Defendants attempt to raise for the first time here. Precisely because United gave false reasons for denying Plaintiffs' claims and failed to provide the information required by the ERISA regulations, the Court will not have to examine vastly different "processing histories" for each of the claims at issue.

Defendants' authorities do not support severance here. For instance, in *Sanctuary Surgical*, plaintiffs sued <u>five separate insurance companies</u>, each of whom acted as the claims administrator for numerous ERISA plans. *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, 10-81589-CIV, 2011 WL 2134534 (S.D. Fla. May 27, 2011). The court severed the portion of the lawsuit against each insurance company, but did not further sever the lawsuit based on the individual ERISA plans involved, as Defendants request here. *Id.* Similarly, *Patient One v. UnitedHealth Group, Inc.*, No. CV 13-7369 (PJWx) was brought by two different patients seeking individual injunctive relief. None of the Plaintiffs were parties there, nor are any patients named in this case as parties.

Even more importantly, United has *already conceded* that it is a proper defendant as to each and every benefit claim for which it was the claims administrator—even for self-funded claims. The question of whether United's behavior was appropriate can therefore be litigated directly against United, as it should be. The FAC makes clear that United was determined to delay and deny all

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

49

OPPOSITION TO OMNIBUS MOTION TO DISMISS

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   of Plaintiffs' claims, no matter which self-funded plan or patient was at issue, so the

2   issues will be the same for each and every claim.  United itself agrees that staying

3   this case as to the Plans and Employers "**will allow the 'first-string players' to**

4   **grapple** with the primary disputes and allegations in the case without the

5   complexity that is present in this action given the number of defendants."  (United's

6   Motion, Doc.# 1061-1, at 23:7-9.)  Given that United has stepped up to the plate,

7   there is no need to sever the Defendants and force Plaintiffs to file over four

8   hundred separate lawsuits—all which would also be primarily against United.  It is

9   also worth noting that United's Counterclaim in the parallel *Almont* action seeks to

10  recover purported overpayments based upon the language of hundreds of individual

11  self-funded ERISA plans.  Any arguments that support severance in this case will

12  apply with at least equal force to United's Counterclaim.

13          Nor is there any need to transfer the claims against certain benefit plans to

14  scattered venues all over the country.  Even if the Court did so, Plaintiffs would still

15  be litigating primarily against United in each venue, which would defeat judicial

16  efficiency and result in unnecessarily duplicative lawsuits in a variety of fora.

17  Given that the parties are in agreement that most of this proceeding can be stayed,

18  this Court can streamline this proceeding accordingly.

19  **XVIII.      CONCLUSION**

20          For the reasons explained herein, Defendants' various Motions to Dismiss,

21  including the Omnibus Motion to Dismiss, should be denied in their entirety.

22

23  DATED:  September 22, 2014          HOOPER, LUNDY & BOOKMAN, P.C.

24

25                                      By:      */s/ Eric D. Chan*

26                                               ERIC D. CHAN
                                        Attorneys for Plaintiffs

27

28