UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV-14-02139-MWF (VBKx)          **Date:  April 10, 2015**

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
|  |  |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING EMPLOYER AND PLAN DEFENDANTS' OMNIBUS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6), AS WELL AS 12(B)(2), (4), AND (5), 20(A) AND 28 U.S.C. § 1404(A) [1062] [1070] [1071] [1072] [1075] [1077] [1078] [1080] [1081] [1082] [1083] [1084] [1085] [1086] [1088] [1089] [1090] [1091] [1092] [1093] [1094] [1095] [1096] [1097] [1098] [1100] [1101] [1105] [1106] [1107] [1108] [1109] [1110] [1112] [1113] [1114] [1115] [1116] [1117] [1118] [1119] [1121] [1123] [1124] [1128] [1130] [1131] [1132] [1133] [1134] [1135] [1136] [1137] [1138] [1139] [1140] [1141] [1142] [1144] [1145] [1146] [1147] [1149] [1152] [1154] [1155] [1156] [1157] [1159] [1160] [1161] [1162] [1163] [1164] [1165] [1168] [1182] [1203] [1298] [1377] [1378]

        Before the Court is the Employer and Plan Defendants' Omnibus Motion to Dismiss Plaintiffs' Amended Complaint Under Fed. R. Civ. P. 12(b)(6), as well as 12(b)(2), (4), and (5), 20(A) and 28 U.S.C. § 1404(a).  (Docket No. 1062).  The Court notes that this master memorandum simply addresses arguments common to many of the Employer and Plan Defendants.  However, the Court will refer to this document as the "Omnibus Motion," and will apply the reasoning expressed herein to the pending

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)**          **Date:  April 10, 2015**

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                Inc., et al.

motions submitted by individual Employer and Plan Defendants. The Court read and
considered the papers on the Omnibus Motion (as well as Employer and Plan
Defendant Supplemental Memoranda), and held a hearing on **April 1, 2015**.   For the
reasons stated below, the Court **GRANTS** the Motion.

        The Omnibus Motion is **GRANTED** *with leave to amend*.

        Count I is brought pursuant to 29 U.S.C. § 1132(a)(1)(B) (also referred to as
ERISA § 502(a)(1)(B)) to recover benefits under the terms of the various plans
implicated in this action (in addition to related relief under this provision).  The Court
rules that Count I fails to adequately state a claim for benefits under the terms of the
relevant plans.  However, it is quite likely that the deficiencies in Count I can easily be
corrected; it is a close call whether the First Amended Complaint ("FAC") is sufficient.
Therefore, the Omnibus Motion as to this Count is **GRANTED** *with leave to amend*.

        Count II is brought pursuant to 29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)),
alleging various breaches of fiduciary duty and seeking removal of United as a plan
administrator and/or claims administrator for the plans at issue or, alternatively, an
order compelling United to honor the terms of the plans.

        Count III is brought pursuant to 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) for
injunctive and other equitable relief to address Defendants' purported breaches of
fiduciary duties; among the relief sought in connection with this Count is an order
requiring the Defendants to timely re-process claims and provide a full and fair review
of both past and future claims.

        Count V is brought pursuant to 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) and
seeks plan reformation to correct purported discrimination against morbidly obese
participants.

        Count VI is brought pursuant to 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3))
and seeks the equitable remedy of surcharge due to purported breaches of fiduciary
duty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015**
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

Count VII is brought for production of documents pursuant to 29 U.S.C. §§ 1024(b), 1104, 1133(2), as well as statutory and injunctive relief pursuant to 29 U.S.C. § 1132(c)(1) (ERISA § 502(c)(1)), and equitable relief pursuant to 29 U.S.C. §1132(a)(3) (ERISA § 502(a)(3)).

As a jurisdictional issue, the Court rules that Plaintiffs' alleged assignment does not confer standing for these ERISA Counts.  Consequently, the Omnibus Motion as to Counts II, III, V, VI, and VII is **GRANTED *with leave to amend*.**  Although the Court is not convinced that Plaintiffs could plead additional facts to alter this conclusion, they will be provided an opportunity to do so.

Count IV, based on estoppel, is brought against United only.  It is therefore not addressed in this Order except to help explain the Court's reasoning in regard to standing.

The Omnibus Motion as to Count VIII is **GRANTED *with leave to amend*.** Count VIII is brought pursuant to the UCL.  This Count purportedly seeks to redress, *inter alia*, United's allegedly discriminatory behavior against members of ERISA plans, as well as United's improper payment methods and violations of ERISA.  The Count also seeks redress for misrepresentations United allegedly made to Plaintiffs regarding payment for claims.  The relief sought in connection with this Count is an injunction enjoining Defendants from engaging in further unfair business practices, as well as disgorgement of any money that has been acquired from Plaintiffs by virtue of the unfair practices.  However, even if Plaintiffs allegedly suffered their own injuries, it is clear that they are seeking to recover derivatively on behalf of their assignors in a way that contravenes the holding of *Amalgamated Transit Union, Local 1756 v. Superior Court ("Amalgamated Transit")*, 46 Cal.4th 993, 95 Cal. Rptr. 3d 605 (2009), that such derivative UCL actions must be brought as class actions.  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,* 903 F. Supp. 2d 880, 897-98 (C.D. Cal. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

The Omnibus Motion as to Count IX is **GRANTED *with leave to amend***. Count IX seeks declaratory relief.  The Court rules that this Count is completely preempted by ERISA.  As such, this Count is converted into an ERISA Count and will rise and fall with the asserted ERISA Counts that it duplicates.

In the process of granting the Omnibus Motion, the Court has rejected or declined to adjudicate particular arguments.  For instance, the Court has rejected arguments that: the Employer Defendants are not proper defendants at this stage in the litigation for an ERISA benefits Count; particular forum selection clauses mandate transfer at this time; and joinder is improper.

In general, the Court does not view most plan terms as having been presented in a way that renders them cognizable at present.  The Court is quite sympathetic to Defendants' argument that Plaintiffs did not object to presentation of summary plan descriptions ("SPDs") when this was discussed in a colloquy with the Court on August 6, 2014.  The Court also notes that some of the SPDs here may constitute the terms of the plans themselves.  However, pursuant to the Supreme Court's decision in *CIGNA Corp. v. Amara*, --- U.S. ---, 131 S.Ct. 1866 (2011), the Court does not have power to consider the SPDs as plan terms without evaluating whether the SPDs constitute the plan in each instance.  The Court further observes that some Defendants arguably have presented the relevant plan documents for consideration.  However, for the reasons discussed below, it is largely unnecessary at present to rely on these terms.

## I.    BACKGROUND

On March 20, 2014, Plaintiffs initiated this action by filing a Complaint (Docket No. 1).  Plaintiffs subsequently filed  the FAC on June 16, 2014 (Docket No. 840), which is the current operative pleading.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                 Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

### A.   Parties

Plaintiffs in the present action consist of: (1) thirteen ambulatory surgery centers that provide Lap-Band surgeries and services; and (2) Independent Medical Services, Inc., which is a physicians' medical group.  (FAC ¶¶ 15, 48-49).

Defendants include: (1) UnitedHealth Group, Inc., a health insurance company that allegedly did business in California through its subsidiaries; (2) UnitedHealthcare Insurance Company; and (3) United HealthCare Services, Inc.  (*Id*. ¶¶ 50-52). Defendant OptumInsight, Inc. (also called "Optum" or "Ingenix") is also a wholly-owned subsidiary of UnitedHealth, and served as a "Special Investigations Unit" for the claims at issue.  (*Id*. ¶¶ 53, 915).  The FAC refers to these four Defendants collectively as "United" or the "United Defendants."  (*Id*. ¶ 54).

The other Defendants are ERISA plans (the "Plan Defendants") and the employers (the "Employer Defendants") who sponsor those ERISA plans.  (*Id*. ¶¶ 58-848).  The FAC refers to these Defendants, along with "the Administrators of the ERISA Plans," as the "ERISA Plan Defendants."  (*Id*. ¶ 849).

### B.   Plaintiffs' Standing

Plaintiffs allegedly have standing as assignees of their patients' benefits.  (*Id*. ¶ 871).  Every patient purportedly signed an "Assignments of Rights and Benefits," assigning the patients' health insurance benefits and an array of related rights to their providers (*i.e.*, Plaintiffs).  (*Id*. ¶¶ 871-73).  The Assignment allegedly authorizes Plaintiffs to "take all action necessary to pursue benefits claims on the patient's behalf."  (*Id*. ¶ 871).

Plaintiffs believe that Defendants' plans do not preclude assignment because during Plaintiffs' course of dealings with Defendants, "neither United nor Defendants ever referenced any anti-assignment provisions of any plan, ever refused to communicate with Plaintiffs based on any such anti-assignment provisions, ever

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                    Date:  April 10, 2015

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

refused to process any of Plaintiffs' claims based on any such anti-assignment provisions, or ever refused to pay any of Plaintiffs' claims based on any such anti-assignment provisions." (*Id.* ¶ 875).  Plaintiffs also allege that, to the extent the plans have anti-assignment provisions, Defendants have waived the right to assert those provisions.  (*Id.* ¶ 879).

### C.      United Defendants and ERISA Plan Defendants

The FAC alleges that the United Defendants acted as agents for each other and for the ERISA Plan Defendants with regard to processing the claims at issue for Lap-Band services, including authorizing, receiving, pricing, and approving those claims.  (*Id.* ¶ 852).

The FAC alleges that United acted as an administrator for both (1) the fully funded ERISA plans (*i.e.*, fully insured by United), and (2) the self-funded ERISA plans.  (*Id.* ¶¶ 856-59).  With regard to the fully funded ERISA plans, United is allegedly responsible for both administering and paying the claims, and is the plan administrator and an ERISA fiduciary for these plans.  (*Id.* ¶ 856).  With regard to self-funded ERISA plans, the plan pays the claims, but the FAC alleges that United typically administered these plans pursuant to an administrative service agreement.  (*Id.* ¶¶ 857-858).  Pursuant to the administrative service agreement, the self-funded ERISA plans delegated to United the "authority and responsibility to administer claims and make final benefits decisions."  (*Id.* ¶ 857).  Among the administrative responsibilities delegated to United would be "providing plan members with plan documents, interpreting and applying the plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment in the form of medical reimbursements." (*Id.* ¶ 857).  Some self-funded ERISA plans did not specifically designate a plan administrator, but Plaintiffs believe that United functioned as the de facto plan administrator and was "specifically designated by the plan sponsor as the Claims Administrator."  (*Id.* ¶¶ 859- 60).  As the plan administrator and/or claims administrator, United had fiduciary duties under

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
               Inc., et al.

ERISA "to ensure that out-of-network claims are properly priced and paid according to
the terms of the members' plans."  (*Id.* ¶ 859).

The FAC alleges that the ERISA Plan Defendants knew or should have known
about United's unlawful practices, and that by failing to prevent them, they "ratified
and/or participated" in them.  (*Id.* ¶ 880).

### D.      **Primary Allegations**

The cover page of the FAC lists thirteen Counts, but the body of the FAC alleges
only nine Counts.  The omitted Counts listed on the cover page are: (1) breach of
implied-in-fact contract—authorized services/no authorization needed services; (2)
breach of implied-in-fact contract—authorized services/no authorization needed—
covenant of good faith and fair dealing; (3) estoppel; and (4) recovery for services
rendered.  The nine Counts set forth in the body of the FAC are for: failure to pay
ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B); enforcement for breach of
fiduciary duty under 29 U.S.C. § 1132(a)(2); enforcement for injunctive and other
appropriate equitable relief, and full and fair review of ERISA claims under 29 U.S.C.
§ 1132(a)(3); estoppel under 29 U.S.C. § 1132(a)(3); reformation of plan terms under
29 U.S.C. § 1132(a)(3); equitable remedy of surcharge/unjust enrichment under 29
U.S.C. § 1132(a)(3); failure to produce documents under 29 U.S.C. §§ 1024(b), 1104,
and 1132(2); violation of the California Business and Professions Code section 17200,
*et seq.* (the "UCL"); and declaratory relief.

The core allegations in the FAC are that United engaged in a "deliberate, willful,
and concerted effort . . . to indefinitely avoid paying for Lap-Band" surgeries and
related services for patients who were morbidly obese.  (*Id.* ¶¶ 2-3, 20).

Pursuant to the FAC, all of the patients relevant to this action had PPO insurance
allegedly administered by United, which allowed them to select out-of-network health
care providers.  (*Id.* ¶ 4).  The plaintiff surgery centers were out-of-network health care
providers, and thus, were "free to charge whatever amounts they deem[ed] appropriate

---

**CIVIL MINUTES—GENERAL**                                      7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)             Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

for their services."  (*Id.* ¶ 863).  The FAC alleges that ERISA plans usually provide that out-of-network providers will be paid at the usual, customary, and reasonable rate (the "UCR rate"), or a percentage of the UCR rate.  (*Id.* ¶ 864).

United allegedly either authorized Lap-Band-related procedures for these patients or informed Plaintiffs that no authorization was needed.  (*Id.* ¶ 5).  Where United authorized these procedures, it purportedly informed Plaintiffs "for nearly every claim" that the cost of the procedure would be reimbursed at the providers' UCR rates. (*Id.* ¶ 22).  The patients then allegedly underwent months of pre-operative tests. (*Id.* ¶ 5).

The FAC alleges that United initially paid the claims for these services "according to the terms of the health plans that it administered."  (*Id.* ¶ 23).  However, in 2010 it purportedly began to substantially underpay and then subsequently stopped paying claims for a majority of pre-operative tests and the Lap-Band surgeries.  (*Id.* ¶¶ 6-7, 23).  As a result of United's alleged failure to pay for these services, the FAC claims that some patients feared that United would fail to pay for future services. (*Id.* ¶¶ 11-12).  Accordingly, some patients have purportedly been afraid to have the Lap-Band surgeries, and some patients who had the surgeries have purportedly been afraid to conduct necessary follow-up medical procedures.  (*Id.* ¶¶ 11-12).  The FAC also alleges that in the rare instances that Defendants paid Plaintiffs' claims, "they paid far less than Plaintiffs' usual and customary fees."  (*Id.* ¶ 870).

The FAC alleges that the refusal of United and the defendant employers to pay for these procedures violates ERISA and constitutes discrimination against morbidly obese individuals.  (*Id.* ¶ 13).

The FAC alleges that Defendants violated ERISA in numerous ways, including: (1) providing pretextual excuses for refusing to pay claims, namely that they needed additional medical records; (2) failing to provide specific reasons for non-payment of claims (and, in some cases, refusal to process claims) or the plan provisions on which the denial was based; (3) failing to state explicitly what additional records were needed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

to perfect the claims; (4) failing to provide all requested plan and other documents used to deny the claims; and (5) failing to provide a timely decision on Plaintiffs' claims (*i.e.*, within 90 days of United Healthcare's receipt of claim submission).  (*Id.* ¶¶ 8-9, 13, 23-26, 29-30, 882, 884).

Plaintiffs allege that in "almost all instances," Plaintiffs explicitly demanded that Defendants produce specific plan documents justifying the denial of payment, but Defendants refused to do so.  (*Id.* ¶ 31).  On information and belief, Plaintiffs also allege that the terms of the health benefit plans administered by United do not permit it to deny Plaintiffs' claims.  (*Id.* ¶ 32).  However, United allegedly conveyed fabricated rationales of denials to Plaintiffs by issuing Explanation of Benefits forms or appeal denial letters, which contained no actual reasons for denial.  (*Id.* ¶ 882 (listing rationales for denial)).  The FAC alleges that Defendants owe hundreds of millions of dollars for the services that Plaintiffs provided, and hundreds of millions of dollars in ERISA penalties.  (*Id.* ¶ 14).

## E.    Pending Motions to Dismiss

A Briefing Schedule was issued (Docket No. 929, amended slightly by Docket No. 1054) establishing an Omnibus motion to dismiss schedule.  This Schedule allows for one master 50-page memorandum to be filed on behalf of the employers and the plans (collectively referred to as the "Plan Defendants" in the Briefing Schedule) by lead counsel (Dorsey & Whitney LLP and Walraven & Westerfeld LLP)—the Omnibus Motion.  The Briefing Schedule also permits another memorandum from the United Defendants—referred to herein as the "United Motion."  Moreover, it allows for employers/plans to file their own three-page briefs ("Supplemental Memoranda") applying the arguments in the other motions to dismiss to their particular circumstances.

Prior to the Briefing Schedule, a motion to dismiss was filed by Defendants Aegon USA, LLC and Aegon Companies Flexible Benefits Plan (the "Aegon Motion").  (Docket No. 489).  Another was filed by Defendants Baker Hughes Inc. and

---

CIVIL MINUTES—GENERAL                                                            9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

Baker Hughes Inc. Welfare Benefits Plan (the "Baker Hughes Motion").  (Docket No. 728).  The Court permitted these Motions to remain, notwithstanding the Briefing Schedule.

In addition to the Aegon and Baker Hughes Motions, the Omnibus Motion (Docket No. 1062) and United Motion (Docket No. 1061) have been filed, as well as a number of Supplemental Memoranda from individual Defendants.  All of the various motions to dismiss will collectively be referred to herein as the "Motions."

Plaintiffs submitted Oppositions to the Omnibus (Docket No. 1201), United (Docket No. 1202), Aegon (Docket No. 1204), and Baker Hughes (Docket No. 1205) Motions.  The United Defendants filed a Reply (Docket No. 1218), and a Master Reply (Docket No. 1216) was filed in support of the Omnibus Motion.  The Briefing Schedule also permitted Defendants to file one-page supplements to the Master Reply, which many have done.

## II.   EVIDENTIARY ISSUES

### A.   Incorporation by Reference

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."  *Van Buskirk v. Cable New Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  However, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (footnote omitted), *superseded by statute on unrelated grounds*.

Defendants have submitted various plan-related documents for the Court to consider in adjudicating the Omnibus Motion.  (*See*, *e.g.*, Declaration of John Christopher Nowlin (the "Nowlin Declaration"), Exs. A & B (Docket No. 1062-9); Declaration of Brenda Rodenburgh (the "Rodenburgh Declaration"), Ex. A (Docket No. 1062-10); Declaration of Bryan Westerfeld (the "Westerfeld Declaration"), Exs. 1-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:         Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

4 (Docket No. 1062-11); Declaration of Heather M. McCann (the "McCann Declaration"), Exs. 1-244 (Docket Nos. 1062-12 – 1062-30)).  The FAC refers to and relies on the plans.  (*See, e.g.*, FAC ¶ 880 ("Specifically, United manufactured various pretextual rationales unrelated to the actual benefits available under the plans in order to unlawfully prolong the claims administration process and ultimately deny Plaintiffs' claims outright on grounds not justified by the terms of the benefit plans.")).  Additionally, Plaintiffs have not challenged the authenticity of the plan-related documents.  Plaintiffs do challenge the propriety of relying on the terms of documents that are not demonstrably reflective of the terms of the plans themselves.  (Opp. to Omnibus Mot. at 12-13)  However, as discussed below, the Court will only consider as determinative those terms that are contained in documents that demonstrably reflect the terms of the plans during the relevant timeframe for each claim.  Accordingly, the Court can consider such plan-related documents that are germane to adjudication of the Omnibus Motion under the doctrine of incorporation by reference.

## B.     **Requests for Judicial Notice**

Plaintiffs also submit a Request for Judicial Notice in Support of Opposition to Defendants' Motion to Dismiss (the "Request").  (Docket No. 1203).  Plaintiffs ask the Court to take judicial notice of an order issued by another court in this District: Order Granting Defendants' Motion to Dismiss, *Care First Surgical Center v. ILWU-PMA Welfare Plan, et al.*, Case No. CV 14-01480-MMM (AGRx) (C.D. Cal. July 28, 2014) (the "*Care First* Order").  (Request, Ex. A (Docket No. 1203-1)).  Plaintiffs also ask the Court to take judicial notice of Form 5500 filings made by Defendant Perkins & Marie Callender's, Inc., filed with the United States Department of Labor for the years 2009 through 2013.  (Request, Ex. B (Docket No. 1203-2)).

The Court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Courts may take judicial notice of public records, including court records from another case.  *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (taking judicial notice of court

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

records in another case).  The *Care First* Order is a court record, and thus, it is taken from sources whose accuracy cannot reasonably be questioned.  Therefore, the Court may take judicial notice of the *Care First* Order and does so now.  But the Court "can only take judicial notice of the *existence* of those matters of public record . . . but not of the *veracity* of the arguments and disputed facts contained therein."  *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (emphasis in original).  With regard to the persuasiveness of the legal reasoning in the *Care First* Order, the Court will give it its due weight.

Similarly, as to the public Form 5500 filings, the Court "may take judicial notice of the existence of certain matters of public record . . . [but] may not take judicial notice of one party's opinion of how a matter of public record should be interpreted."  *S. Cal. Edison*, 300 F. Supp. 2d at 974.  *See also In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 875 (E.D. Tenn. 2005) (taking judicial notice of forms filed with the SEC, but noting that the court was "only taking judicial notice of the existence of these documents and the specific statements and/or allegations contained within the documents," because "[i]t would be improper for the Court to rely upon these documents to determine disputed factual issues and by taking judicial notice of these documents at this time the Court in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves").  As such, the Court may take judicial notice of the existence of these Form 5500 filings, and does so now.

Moreover, Defendants Perkins and Marie Callender's LLC ("PMC") and Perkins Flexible Benefits Plan (the "PMC Plan") have submitted a Request for Judicial Notice in Support of Defendants Perkins and Marie Callender's LLC and Perkins Flexible Benefits Plan's Motion to Dismiss Plaintiffs' Amended Complaint (the "PMC Request").  (Docket No. 1160).  The PMC Request asks this Court to take judicial notice of: Findings of Fact, Conclusions of Law, and Order under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (PMC Request, Ex. A (Docket No. 1160-1)); and Debtors' Second Amended Joint Plan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
               Inc., et al.

of Reorganization under Chapter 11 of the Bankruptcy Code (PMC Request, Ex. B
(Docket No. 1160-2)).  For the reasons expressed above, the Court may take judicial
notice of the existence of these documents, and does so now.

         Accordingly, the Request and the PMC Request are **GRANTED**.

III.   **MOTION TO DISMISS**

         Defendants seek to dismiss the ERISA and state law Counts pursuant to Federal
Rules of Civil Procedure 12(b)(6), (4), (5), 20(A) and 28 U.S.C. § 1404(a).

         In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court
follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,
556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
its face.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "'All allegations of material fact
in the complaint are taken as true and construed in the light most favorable to the
plaintiff.'"  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (quoting
*Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007))
(holding that a plaintiff had plausibly stated that a label referring to a product
containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable
consumer).

         "The motions authorized by Federal Rules 12(b)(4) and 12(b)(5) permit the
defendant to challenge departures from the proper procedure for serving the summons
and complaint and the contents of the former for purposes of giving notice of the
action's commencement."  5B Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal
Practice and Procedure* § 1353 (3d ed. rev. 2014) (footnote omitted).  "An objection
under Rule 12(b)(4) concerns the form of the process rather than the manner or method
of its service.  Technically, therefore, a Rule 12(b)(4) motion is proper only to
challenge noncompliance with the provisions of Rule 4(b) or any applicable provision
incorporated by Rule 4(b) that deals specifically with the content of the summons."  *Id.*
(footnote omitted).  In contrast, Federal Rule of Civil Procedure 12(b)(5) permits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

dismissal of an action based on insufficient service of process.  The line between a Rule 12(b)(4) and 12(b)(5) motion often becomes blurred in practice, such that "[s]everal courts that have dealt with this problem simply have treated a combination of the two motions as a proper procedure."  5B Charles Alan Wright, Arthur R. Miller, *et al*., *Federal Practice and Procedure* § 1353 (3d ed. rev. 2014) (footnote omitted).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (3d ed. 2002 & Supp. 2003)).  "[S]ervice of process is the means by which a court asserts its jurisdiction over the person."  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."  *Id.* at 1138-39.

Federal Rule of Civil Procedure 20(a) permits the joinder of claims against multiple defendants if the claims against each defendant arise out of the same transaction or occurrence and any question of fact or law is common to all parties.  Fed. R. Civ. P. 20(a).  Even if these requirements are met, however, the district court must evaluate whether allowing joinder would "'comport with the principles of fundamental fairness' or would result in prejudice to either side."  *Visendi v. Bank of Am., N.A*., 733 F.3d 863, 870 (9th Cir. 2013) (quoting *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1296 (9th Cir. 2000)) (internal quotation marks omitted).  While "[m]isjoinder of parties is not a ground for dismissing an action," it is within the discretion of the district court to "add or drop a party."  Fed. R. Civ. P. 21; *see also Visendi*, 733 F.3d at 870 (9th Cir. 2013) ("Standing alone, '[m]isjoinder of parties is not a ground for dismissing an action.' Fed. R. Civ. P. 21.  Rather, 'the court may at any time, on just terms, add or drop a party.' *Id*.").

Finally, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," an action may be transferred to another "district or division" where it may have been initially brought or a "district or division to which all parties have consented."  28 U.S.C. § 1404(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

A.     **Plaintiffs' Standing for ERISA Counts**

Plaintiffs' First and Seventh Counts can be brought only by a participant or beneficiary, according to ERISA.  *See* 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action to recover benefits (*i.e.*, Count I) may be brought by "a participant or beneficiary"); 29 U.S.C. § 1132(c)(1) (providing that an administrator who fails to comply with a document request (*i.e.*, Count VII) may be personally liable to "such participant or beneficiary").  Plaintiffs' Second Count may be brought "by the Secretary [of Labor], or by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(a)(2), and Plaintiffs' Third, Fourth, Fifth, and Sixth Counts may be brought "by a participant, beneficiary, or fiduciary," 29 U.S.C. § 1132(a)(3).

Plaintiffs are neither participants nor beneficiaries in the plans, but rather are health care providers.  (FAC ¶¶ 15, 48-49).  However, as discussed above, Plaintiffs claim to have standing for their ERISA Counts by virtue of assignments received from the relevant patients.  (*Id.* ¶ 871).

Defendants argue that the assignments themselves are invalid, as they are insufficiently definite:

> Initially, all of Plaintiffs' ERISA claims (including the claim for benefits under ERISA § 502(a)(1)(B)) must be dismissed because they have failed to allege they received a proper assignment from their patients.  The assignment that Plaintiffs quote states only that the patient assigns their rights to "PROVIDERS," without naming the providers or otherwise identifying which party obtains the assignment.  Am. Compl. ¶873.  Without any allegations demonstrating that these particular Plaintiffs received assignments from their patients, all of Plaintiffs' ERISA claims must be dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

(Omnibus Mot. at 23).  Further, Defendants argue that, even if the assignments are
sufficiently definite, they would not confer "the right to sue for anything other than a
claim for benefits under ERISA § 502(a)(1)(B)."  (*Id.*).

        The key question becomes, therefore, whether the alleged assignments provide
Plaintiffs with standing to bring their ERISA Counts.

### 1.  ERISA Benefits Count (Count I)

#### a.  Assignment of Rights to Benefits Under ERISA

        A health care provider may have derivative standing to pursue ERISA benefits if
he or she was assigned the right to reimbursement by an ERISA plan beneficiary.  *See
Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir.
1986) (per curiam) (concluding that a health care provider had standing to sue in place
of his assignors, pursuant to valid assignments of the right to reimbursement under a
health care plan).  *See also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.
("WellPoint II")*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012) ("The Ninth Circuit has
long recognized that assignments of benefits are sufficient to convey standing on an
assignee to sue a plan directly under § 1132(a)(1)(B).").

#### b.  Whether Alleged Assignments Confer Standing for ERISA
####     Benefits Count (Count I)

        Although many cases discuss the nuances of assignment breadth, Defendants fail
to cite any authority that explicitly addresses the issue of an allegedly indefinite
assignee.  (*See* Omnibus Mot. at 23).

        The "Assignment of Rights and Benefits" Plaintiffs allegedly secured from
"each patient" purportedly provides as follows:

        I authorize my insurance company and/or my healthcare contract with
        my employer (collectively, the "INSURANCE COMPANY") to direct

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015**
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

all payments for all professional and medical benefits under my current policy as payment for services rendered directly to PROVIDER(s) and/or FACILITY(s) providing services or their designated associates or assignee(s) (collectively "PROVIDERS"). I assign, whether signing as patient or patient's agent, **all rights and benefits under my contract with my INSURANCE COMPANY**, to any and all PROVIDERS. **I give express right to PROVIDERS to obtain the insurance and benefits policy booklet, and ALL policy information from INSURANCE COMPANY, employer or any of their associates or agents**. I also provide express consent and give full rights to PROVIDERS to appeal on my behalf to INSURANCE COMPANY or my employer or any of their associates or agents for any reason. I also authorize the release of any information pertinent to my case to any insurance company, adjuster, attorney or other party(s) involved in this case.

I authorize PROVIDERS to initiate complaint(s) to the Insurance Commissioner or any other agency for any reason on my behalf.

**The assignment further permits PROVIDERS to obtain from INSURANCE COMPANY and employer or any of their agents or associates all information necessary for the determination of benefits allowed under the contract and permits the direct disclosure to PROVIDERS of all information including benefits provided including benefits & payments made on my behalf, limits and exclusions of benefits and reasons for denial of benefits or reduction in charges for services rendered.**

**The assignment shall allow PROVIDERS to take all action necessary to obtain the benefits I have, in good faith, been promised by INSURANCE COMPANY and/or employer on my behalf.** All benefits are to be paid directly to PROVIDERS and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

mailed directly to 269 S. Beverly Drive, Suite 353, Beverly Hills, CA 90212. A photocopy of this assignment shall be considered as effective and valid as the original.

I understand that my insurance carrier may disallow certain diagnoses or services as medically uncovered, medically unnecessary, cosmetic or excluded. I agree to be responsible for payment of all such services rendered to the patient.

. . .

**This is a direct assignment of my rights and benefits under this policy.**

(FAC ¶ 873 (emphasis in original)).

        In opposing Defendants' contention that an assignment to "PROVIDERS" is insufficient to provide Plaintiffs with standing, Plaintiffs allege first that this "nitpick" does not reflect the fact that the assignment "does not refer to providers in the abstract," but rather defines "PROVIDERS" in the context of "any or all healthcare providers who render medical services to the patient, including 'their designated associates or assignee(s).'"  (Opp. to Omnibus Mot. at 6 (citing FAC ¶ 873)). Plaintiffs later discuss how impractical it would be to receive assignments from patients for specific surgeons and other professionals when patients would receive services from a number of providers at the surgery centers, at multiple surgical facilities, and often on different dates.  (*Id*. at 7).  Plaintiffs further maintain that such an assignment is "both permitted and encouraged" by *Misic*:

        Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the [ERISA] statute is designed to protect.  Such assignments also protect beneficiaries by making it unnecessary for health care providers to

CIVIL MINUTES—GENERAL                                                    18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.

(*Id*. at 6 (quoting *Misic*, 789 F.2d at 1377)).

The discussion of the assignment's context provided by Plaintiffs in the Opposition to the Omnibus Motion seems to be overreaching, as a strict reading would open the assignment up to seemingly innumerable providers who had nothing to do with the transactions at issue here.  However, for purposes of adjudicating the Omnibus Motion, it follows from the allegations in the FAC that the Plaintiffs who performed the procedures corresponding to the claims at issue (for which the assignments were allegedly received) were the providers given the right to seek out benefits on the patient's behalf, even if the name provided in the assignment is somewhat indefinite in the abstract.

As it stands, Plaintiffs have provided the text of the assignments that purportedly gave them various rights.  (*See* FAC ¶¶ 871 ("Prior to receiving treatment, every patient of the Plaintiffs signs an 'Assignments of Rights and Benefits' form agreeing to, *inter alia*, assign his or her health insurance benefits, as well as broad array of related rights, to their providers, who are the Plaintiffs in this case."), 872 ("Plaintiffs received an assignment of benefits for every claim at issue in this litigation."), 873 ("This form, which was titled 'Assignment of Rights and Benefits,' contained an exhaustive list of the rights that each patient conveyed to Plaintiffs.")).  The alleged assignments mention explicitly that they convey "rights and benefits" under the relevant insurance policy.  While there are certainly areas for more definiteness, the Court rules that the alleged assignments are sufficiently definite to survive a motion to dismiss on the issue of standing for Count I (for ERISA benefits pursuant to § 502(a)(1)(B)).

However, the Court does perceive that the "on my behalf" language in the alleged assignment could create ambiguity.  In discussing an argument that an

CIVIL MINUTES—GENERAL                                                   19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)             Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. *-v-* UnitedHealth Group, Inc., et al.

assignment was void on its face because it contained seemingly conflicting language regarding designation of an assignee and authorized representative, the court in *Care First Surgical Center v. ILWU-PMA Welfare Plan* ("*Care First II*"), Case No. 14-CV-01480-MMM (Dec. 26, 2014) noted that, "the interpretation of an assignment clause, like the interpretation of contract terms generally, is a question of the intent of the parties and is typically a question of fact for the jury."  *Care First II* at 18 (quoting *Orion Tire Corp. v. Goodyear Tire & Rubber Co*., 268 F.3d 1133, 1138 (9th Cir. 2001).  Similarly, *Care First II* observed that "[i]f from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place."  *Id*. (quoting *McCown v. Spencer*, 8 Cal. App. 3d 216, 225, 87 Cal. Rptr. 213 (1970)).

        The purported assignment here does include the following language: "I assign, whether signing as patient or patient's agent, all rights and benefits under my contract with my INSURANCE COMPANY, to any and all PROVIDERS."  (FAC ¶ 873).  As mentioned above, "[t]he Ninth Circuit has long recognized that assignments of benefits are sufficient to convey standing on an assignee to sue a plan directly under § 1132(a)(1)(B)."  *WellPoint II*, 903 F. Supp. 2d at 896.   At this early stage in the proceedings, the Court rules that the language of the assignment is sufficient to confer standing for Count I, as the possible ambiguity discussed would seemingly be an inappropriate issue to resolve at present.

### 2.  Ancillary ERISA Counts

#### a.  Assignability of Right to Pursue Ancillary ERISA Counts

        Defendants also contend that, even if the assignment is sufficient to confer standing for purposes of benefits recovery, it cannot confer standing for the ancillary ERISA Counts (such as those for statutory penalties, breach of fiduciary duty, equitable relief).  (Omnibus Mot. at 23-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

The Ninth Circuit has not explicitly stated that a beneficiary can assign the rights to sue for breach of fiduciary duty and recover penalties for non-disclosure under 29 U.S.C. § 1132(c).  *See Eden Surgical*, 420 F. Appx. at 697 ("[A]ssuming (without deciding) that the right to bring claims under § 1132(c) is free-standing and may be assigned . . . .").  *See also Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*. *("Spinedex")*, 770 F.3d 1282, 1292 (9th Cir. 2014) (holding that patients did not assign their rights to bring claims for breach of fiduciary duty in light of the wording and context of purported assignment, though not discussing whether rights might otherwise have been assignable).

However, the Ninth Circuit's rationale in *Misic* for concluding that ERISA does not prohibit the assignment of ERISA benefits extends to the ERISA Counts for breach of fiduciary duty and non-disclosure.  In *Misic*, the Ninth Circuit's holding was driven by its determination that assignment of ERISA benefits would "facilitate the receipt of health care benefits by beneficiaries."  *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000) *amended*, 234 F.3d 428 (9th Cir. 2000) and *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) (summarizing the reasoning in *Misic*); *see also Misic*, 789 F.2d at 1377 (reasoning that "[h]ealth and welfare benefit trust funds are designed to finance health care," and the "[a]ssignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect").  As the *Care First* Order noted, the assignment of claims for breach of fiduciary duty and non-disclosure would facilitate ERISA's purposes.  *Care First* Order at 19-20 (concluding that the assignment of both rights would facilitate ERISA's purposes).  The Court applies this same logic to all of the ancillary ERISA Counts at issue here.

Additionally, the Fifth Circuit has upheld derivative standing to sue for breach of fiduciary duties under ERISA.  *See Texas Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 216 (5th Cir. 1997).  Notably, in support of its conclusion, the Fifth Circuit reasoned that derivative standing for a breach of fiduciary duty claim "does not frustrate ERISA's purposes," but rather helps ensure that funds are available for the plan.  *Id.* at 214-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                 Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

    In light of the above cases, the Court is persuaded that the rights to pursue ancillary ERISA Counts, such as those for breach of fiduciary duties and non-disclosure, may be assigned.

## b.  Whether Alleged Assignments Confer Standing for Ancillary ERISA Counts

    With regard to whether the language in the alleged assignments covers the ancillary ERISA Counts, "[t]he Court's task in interpreting the scope of an assignment is to 'enforce the intent of the parties.'" *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983).  "[T]he Ninth Circuit has recently reiterated that courts must look to the language of an ERISA assignment itself to determine the scope of the assigned claims." *WellPoint II*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012) (citing *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 Fed. Appx. 696, 697 (9th Cir. 2011)).  "Once a claim has been assigned . . . the assignee is the owner and the assignor generally lacks standing to sue on it." *Id.* at 897.

    In the *Care First* Order, the court determined that the assignment at issue was sufficiently broad to cover claims for benefits, as well as claims for breach of fiduciary duty by the plan administrator and penalties for non-disclosure. *Care First* Order at 23.  In *Care First*, the assignment not only discussed "ERISA rights and plan benefits," but also states that the assignee "stands in the shoes" of the member, and explicitly references an assignment of rights to sue for penalties and sue for benefits under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 22-23.  Similarly, the *Care First* court found that the assignment was sufficiently definite to cover claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) because they granted the provider all of the patients' "ERISA rights," including the right to commence "any legal process relating to a claim submitted on [the patients'] behalf for health insurance benefits" and "all causes of action for judicial review." *Id*. at 23.  Pursuant to *Misic*, and distinguishing the assignment in *WellPoint II*, the *Care First* Order grounded its decision of assignability regarding rights to sue for benefits, penalties for non-disclosure, and breach of fiduciary duty in the assignments' grant of rights to bring claims under civil

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

enforcement provisions of ERISA § 502 and the "stands in the shoes" language.  *Care First* Order at 24.

　　　While this Court is not bound by the reasoning of *Care First* Order, it is instructive to compare the alleged assignments in this case to that in *Care First*.  Here, the assignment is not as explicit as the one discussed in the *Care First* Order. Although it grants "all rights and benefits" under the insurance contract, it does not specifically make reference to any ERISA provisions, does not mention claims for breach of fiduciary duty, and does not reference "standing in the shoes" of the patient. The assignment does, however, mention "direct disclosure to PROVIDERS of all information including benefits provided including benefits & payments made on my behalf, limits and exclusions of benefits and reasons for denial of benefits or reduction in charges for services rendered."  Defendants argue, though, that the "all rights and benefits *under my contract with my INSURANCE COMPANY*" and "all action necessary to *obtain the benefits I have, in good faith been, promised*" language cuts against Plaintiffs' standing on the ancillary ERISA Counts.  (Omnibus Reply at 33 (emphasis in original)).

　　　As mentioned briefly above, the Ninth Circuit recently evaluated an assignment in *Spinedex* that provided for plan payments to be made directly to the provider (Spinedex), and noted that such payments would be considered:

　　　　[P]ayment toward the total charges for the professional services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. This payment, will not exceed my indebtedness to the above mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment.

*Spinedex*, 770 F.3d at 1292.  The court reasoned that "[t]he entire focus of the Assignment is payment for medical services provided by" the relevant provider.  *Id*. Within this context, the court did not consider the "rights and benefits" language

CIVIL MINUTES—GENERAL                                                      23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                  Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

sufficient to confer standing for a fiduciary duty claim.  *Id.*   Admittedly, *Spinedex* was
reviewing a summary judgment decision, but its analysis is instructive despite the
differing procedural postures of that case and this one.

        The alleged assignment here purports to convey "all rights and benefits under"
the patient's contract with his or her insurance company, just as the assignment in
*Spinedex* did.  (FAC ¶ 873 (emphasis removed)).  Nowhere is there any mention of a
transfer of rights that can be read to contemplate the right to bring suit to redress
purported breaches of fiduciary duty.  In short, "[t]he Assignment nowhere indicates
that, by executing the assignment, patients were assigning to [the providers] rights to
bring claims for breach of fiduciary duty."  *Spinedex*, 770 F.3d at 1292 (citing *Britton
v. Co–op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) ("[I]t is essential to an
assignment of a right that the [assignor] manifest an intention to transfer the right to
another person. . . ." (quoting Restatement (Second) of Contracts § 324 (1981))).  As
such, the Court rules that Plaintiffs lack standing for their breach of fiduciary duty
Count.

        The Court also fails to see a manifestation of intent to assign the right to bring
many of the other ancillary ERISA Counts.  For example, Count VII seeks, in large
part, statutory penalties pursuant to § 502(c) for Defendants' alleged failure to produce
particular documents.  The alleged assignment here gives Plaintiffs the "express right
to . . . obtain the insurance and benefits policy booklet, and ALL policy information
from" the insurance company.  (FAC ¶ 873 (emphasis removed)).   Although the
purported assignment discusses receipt of documents, even this is clearly within the
context of the receipt of benefits under the contract ("[t]he assignment further permits
PROVIDERS to obtain from INSURANCE COMPANY and employer or any of their
agents or associates all information *necessary for the determination of benefits
allowed under the contract*") and, moreover, seems only to authorize Plaintiffs to
receive these documents, rather than effecting any transfer of rights.  Again, without
such indication that the right to sue for penalties was assigned, the Court rules that
Plaintiffs lack standing to bring Count VII.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

Similarly, the Court sees no indication that any transfer of rights was effected with respect to the majority of Plaintiffs' equitable Counts brought under § 502(a)(3). Count III seeks equitable relief and Count VI seeks surcharge; both Counts are premised upon alleged breaches of fiduciary duties.  Count V seeks plan reformation, which essentially asserts what Plaintiffs think the plans ought to say, not what they do say.  The plain text of the alleged assignments provides no indication that the parties intended a transfer of the right to bring these Counts.

At the hearing, Plaintiffs discussed the fact that, to their knowledge, none of the individual patient-assignors had brought suit under ERISA §§ 502(a)(2) or (a)(3), presumably in an effort to demonstrate further that the intent of the assignors was that their assignment be complete.  In *WellPoint II*, the Court did note that the ERISA Subscribers brought their own claims under §§ 1132(a)(2) and (a)(3), which it listed as one factor in its analysis that Plaintiffs' allegations were insufficient to demonstrate that the provider plaintiffs were assigned the right to pursue those claims.  *WellPoint II*, 903 F. Supp. 2d at 897.  Admittedly, the Court does not have the same situation before it, but it nevertheless concludes that the wording of the alleged assignments themselves is sufficient to support the Court's ruling.

Finally, Plaintiffs' § 502(a)(3) estoppel Count (Count IV) presents a more viable standing argument.  Although this Count is brought only against United, the Court analyzes it here in the context of its other assignment rulings.  At the hearing, United argued that what Plaintiffs are really seeking via this Count is payment outside of the plan terms (based on purported representations made by United), and, as such, this does not seek to vindicate rights or benefits under the insurance contracts.

It is true that some allegations point to more of a claim predicated upon what United allegedly said it would pay Plaintiffs for services (and not contingent on plan terms).  (*See* FAC ¶ 1043 (" . . .[T]he United Defendants are estopped from contending that the services it authorized are not payable due to lack of authorization, and are estopped from refusing to pay the reasonable and customary value for these services.")).  However, as discussed below, in the Ninth Circuit, the core of a federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

estoppel claim brought in the ERISA context is that the claimant is seeking benefits
based on representations made interpreting purportedly ambiguous plan terms.  *See
Pisciotta v. Teledyne Indus., Inc*., 91 F.3d 1326, 1331 (9th Cir. 1996) (stating that, in
the Ninth Circuit, when the additional prerequisites of plan ambiguity and
representations made involving an oral interpretation of the plan are also alleged, "[a]n
ERISA beneficiary may recover benefits under an equitable estoppel theory upon
establishing a material misrepresentation, reasonable and detrimental reliance upon the
representation and extraordinary circumstances" (citations omitted)).  The alleged
assignment here includes mention of the benefits "promised" to a participant: "The
assignment shall allow PROVIDERS to take all action necessary to obtain the benefits
I have, in good faith, been promised by INSURANCE COMPANY and/or employer on
my behalf."  The Court rules that the alleged assignment confers standing for
Plaintiffs' Count for estoppel pursuant to § 502(a)(3).  Of course, to the extent that this
Count ultimately seeks relief that is not based on the plan terms (and an interpretation
of an ambiguous provision therein), it will be unsuccessful under Ninth Circuit
authority for reasons unrelated to standing.

The Court notes that construing this alleged assignment in general presents some
difficulties.  It is neither as manifestly all-encompassing as the assignment in *Care
First*, nor as cursory as those discussed in *WellPoint II*.  Ultimately, however, the
Court considers its decision to be consistent with *Spinedex* and in keeping with the
intent of the parties, as expressed in the terms of the alleged assignment itself.

### 3.  Anti-Assignment Clauses

Notwithstanding any plausible allegations regarding standing, Plaintiffs may still
lack standing if Defendants can demonstrate that the relevant plans contain valid and
unambiguous anti-assignment provisions: "ERISA welfare plan payments are not
assignable in the face of an express non-assignment clause in the plan."  *Davidowitz v.
Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

Defendants argue that many plans contain anti-assignment language, such that "Plaintiffs lack standing to sue for benefits under the terms of [those] plans." (Omnibus Mot. at 13).  Plaintiffs, however, contend that the anti-assignment clauses should not be given effect because: estoppel and waiver preclude application of the provisions; clauses that require consent of the insurer are void under California law, as are anti-assignment clauses contained in policies regulated by the California Department of Insurance; United's counsel cannot take purportedly opposite views regarding anti-assignment clauses in this case and a related action; some purported anti-assignment clauses are ineffective to bar provider standing for some or all Counts in this case; and the United-Represented Defendants have failed to present the actual plan documents such that the plan terms can be evaluated.  (Opp. to Omnibus Mot. at 15-28).  As to the last of these contentions, the Court will evaluate the effect of the documents presented in connection with the Defendants' arguments against Plaintiffs' § 502(a)(1)(B) Count.  Regarding the rest of the arguments, the Court takes them in turn in the following sections.

### a.  Anti-Assignment Provisions and Estoppel

### i.  Estoppel and ERISA Benefits Decisions

As the *Care First* Order discusses, "[t]he Ninth Circuit has recognized that estoppel principles can apply to an ERISA beneficiary's substantive claim for recovery of benefits."  *Care First* Order at 27-28 (citing *Gabriel v. Alaska Elec. Pension Fund*, 755 F.3d 647, 655-58 (9th Cir. 2014) (noting that "appropriate equitable relief" pursuant to 29 U.S.C. § 1132(a)(3) may include holding the fiduciary "to what it had promised" (quoting *CIGNA Corp. v. Amara*, --- U.S. ---, 131 S.Ct. 1866, 1879 (2011))).

However, in order for estoppel to apply to a substantive claim for ERISA benefits, the Ninth Circuit requires that several elements be pleaded.  First, the party invoking estoppel must demonstrate the traditional elements of estoppel: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the
former's conduct to his injury."  *Gabriel v. Alaska Elec. Pension Fund,* 773 F.3d 945,
955 (9th Cir. 2014) (quoting *Greany v. W. Farm Bureau Life Ins. Co*., 973 F.2d 812,
821 (9th Cir. 1992) (internal quotation marks omitted).  In addition, the party asserting
estoppel "must also allege: (1) extraordinary circumstances; (2) 'that the provisions of
the plan at issue were ambiguous such that reasonable persons could disagree as to
their meaning or effect'; and (3) that the representations made about the plan were an
interpretation of the plan, not an amendment or modification of the plan."  *Id.* at 957
(quoting *Spink v. Lockheed Corp*., 125 F.3d 1257, 1262 (9th Cir. 1997)).  *See also
Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam)
(explaining that the Ninth Circuit has required an ERISA beneficiary seeking to
recover benefits under a theory of equitable estoppel to plead material
misrepresentation, reasonable and detrimental reliance, and extraordinary
circumstances, as well as the additional prerequisites that the plan terms were
ambiguous and representations were made to the claimant involving an oral
interpretation of the plan).

### ii.     Estoppel and Anti-Assignment Clauses in ERISA
Plans

The Ninth Circuit "has not expressly addressed how estoppel applies to the
threshold question of derivative standing."  *Care First* Order at 28.  However, as the
*Care First* Order points out, "[t]hose courts that have considered the question have
applied estoppel in addressing standing, although, . . . they have not required that
plaintiff make the additional showing the Ninth Circuit mandates in the context of
recovery of benefits."  *Id.* at 28 (citing *Riverview Health Inst. LLC v. Med. Mut. Of
Ohio*, 601 F.3d 505, 521-22 (6th Cir. 2010); *Hermann Hosp. v. MEBA Med. and
Benefits Plan ("Hermann II")*, 959 F.2d 569, 574-75 (5th Cir. 1992), *overruled on
other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co*., 698 F.3d 229
(5th Cir. 2012) (en banc) (per curiam); *Productive MD, LLC v. Aetna Health, Inc*., 969
F. Supp. 2d 901, 918-23 (M.D. Tenn. 2013); *N. Jersey Brain and Spine Ctr. v. Saint
Peter's Univ. Hosp*., Civil Action No. 13-74 (ES), 2013 WL 5366400, at *7 (D.N.J.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015**

Title:      Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

Sept. 25, 2013); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, Civil Action No. 06-0462 (JAG), 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007)).

   In *Riverview*, medical providers seeking to bring derivative claims argued that under *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc), a plan was estopped from relying on an anti-assignment provision when it failed to demonstrate that it affirmatively informed participants and beneficiaries about the provision or provided documentation of the anti-assignment provision to any of them. *Riverview*, 601 F.3d at 521-22.  In support of this argument, the providers submitted affidavits from insureds which stated that they were never advised/informed/told that their benefits were not assignable; the affidavits did not, however, state that the plan had failed to make plan documents available.  *Id*. at 522.  However, the court rejected providers' argument, holding instead that *Sprague* did not support the providers' contention, but rather that "*Sprague* merely says that a party's reliance can rarely, if ever, be reasonable or justifiable if such reliance is 'inconsistent with the clear and unambiguous plan terms of plan documents *available to or furnished to the party*.'" *Id.* at 522 (emphasis in original) (quoting *Sprague*, 133 F.3d at 404).

   Similarly, in *Productive MD*, the court held that Aetna was estopped from asserting that a provider's (Productive MD) assignment was rendered invalid by operation of a plan's anti-assignment clause when "Aetna was on notice that Productive MD sought payment pursuant to a patient assignment, Productive MD was not privy to and had no legal right to access the underlying plan terms, Aetna possessed the underlying plans (and therefore knew their terms), Aetna denied Productive MD's technical component claims in whole or in part (purportedly) based on Aetna's interpretation and application of the plan terms—for reasons other than validity of assignment—and, relative to the same underlying tests based on the same insurance plans, Aetna *paid* the physicians who sought payment for the professional component pursuant to assignments from the same patients."  *Productive MD*, 969 F. Supp. 2d at 922.  Moreover, for a period of time, "Aetna regularly paid Productive MD's claims made pursuant to patient assignments."  The court stated that these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

circumstances led to Productive MD's reasonable reliance that its assignments were valid.  *Id*. at 922-23.  The court noted that, "[h]ad Aetna challenged Productive MD's assignments at any stage . . . Productive MD might have acted differently," such as by changing their assignment form to contain language acceptable Aetna, ensuring that patients gave notice to Aetna when required to do so, or not performing tests "without having the patients first confirm that they could assign their rights to Productive MD." *Id*. at 923.  The *Productive MD* court found that these circumstances satisfied the five-factor estoppel test articulated in *Sprague*:

> (1) Aetna's conduct plausibly amounted to a representation that Productive MD's patient assignments were acceptable both generally and under the specific plan terms; (2) Aetna, in purporting to administer the underlying policies, was presumptively aware of the underlying policy terms; (3) Productive MD reasonably construed Aetna as indicating that Productive MD could continue to receive payment from Aetna for any medically necessary tests covered by the applicable insurance plan; (4) to the extent that any policies restricted or prohibited assignment, Productive MD was not aware—either actually or constructively—of the underlying plan terms; and (5) Productive MD reasonably relied upon Aetna's conduct to its potential detriment in performing tests without demanding payment up front or requiring its patients to inquire about their right to assign before receiving tests.

*Productive MD*, 969 F. Supp. 2d at 923-24.

Finally, in *Hermann II*, the court held that a plan was estopped from asserting an anti-assignment provision in its plan agreement when the documentation containing the anti-assignment clause was never provided to the plaintiff, and it was the plan's duty to notify the plaintiff if it intended to rely on the provision, which it did not do.  *Hermann II*, 959 F.2d at 574.  The plaintiff in *Hermann II* was a hospital that had provided service to a patient and had received an assignment of rights from this same patient.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
               Inc., et al.

*Id*.  The hospital called the plan when the patient was first admitted and was informed
by the plan that the patient was covered.  *Id*.  The patient was in the hospital for six
months and, during this time, the hospital repeatedly tried to receive payment for the
services provided; the plan, however, repeatedly postponed payment, but asserted that
it was merely "investigating" the claim.  *Id*.  The *Hermann II* court, in effect, imposed
on the plan an affirmative duty to inform the hospital of the anti-assignment clause if it
intended to rely upon it, and found that the plan's "protracted failure to assert the
clause when [the hospital] requested payment pursuant to a clear and unambiguous
assignment of payments for covered benefits" resulted in the plan being estopped from
asserting the provision.  *Id*. at 574-75.

       The *Care First* Order notes that "*Sprague*, *Riverview*, *Hermann [II]*, and
*Productive MD* all recognize – explicitly or implicitly – that the principle that a
representation that conflicts with the unambiguous terms of a plan agreement will not
support estoppel does not apply in the derivative standing context if the assignee can
show that it did not have, and could not have gained, access to the plan agreements."
*Care First* Order at 34.

                           iii.    **Estoppel and Anti-Assignment Clauses in the
                                    Present Case**

       Plaintiffs argue that "[b]ecause Defendants engaged in a consistent course of
conduct that affirmed the presumptive validity of Plaintiffs' assignments, and Plaintiffs
relied on this to their detriment, Defendants are estopped from raising any anti-
assignment clauses to defeat Plaintiffs' standing."  (Opp. To Omnibus Mot. at 15).

       Defendants combat the estoppel argument, *inter alia*, by asserting that *Hermann
II*, relied upon by Plaintiffs (and evaluated in the *Care First* Order), is distinguishable
since it "involve[ed] arguments raised by plans or claims administrators for the first
time in litigation *as a reason for the adverse benefits determination*."  (Omnibus Reply
at 19 (emphasis in original) (citing *Hermann II*, 959 F.2d at 574)).  Defendants,
therefore, argue that the instant case is distinguishable because Defendants here are not

_____

                              **CIVIL MINUTES—GENERAL**                              31

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

asserting the anti-assignment provisions as a basis for claim denial, but rather invoke them to "preclude Plaintiffs from obtaining derivative standing to sue for benefits." (*Id.*).  As such, Defendants argue, they "are not estopped from asserting the anti-assignment clauses merely because they were not raised during the claims adjudication process."  (*Id.*).

        It is true that Plaintiffs' allegations include mention of their lack of access to relevant plan documents, such that they would presumably have been ignorant of the true facts.  (*See, e.g.*, FAC ¶ 1077 ("Plaintiffs have suffered prejudice by Defendants' [sic] to provide the documents that Plaintiffs requested of them because Plaintiffs were unable to identify – and are still unable to identify – the specific plan provisions upon which the Defendants purportedly based their denials. Thus, Plaintiffs are unable to effectively appeal Defendants' denials of their claims.  Moreover, Plaintiffs lacked access, and continue to lack access to, documents explaining or justifying United's internal claims review procedure, and the time limits applicable to such procedures.")).  At the hearing, Defendants argued that the FAC fails to allege that Plaintiffs lacked access to these documents from the patient-assignors, and, therefore, Plaintiffs' estoppel argument fails.  However, reading the FAC in the light most favorable to Plaintiffs, the Court cannot agree.  Although the allegations in the FAC that Plaintiffs lacked access to or knowledge of the anti-assignment provisions focus more on Defendants' alleged behavior, rather than categorical assertions that they did not have knowledge of the provisions from any source, the Court is reading the FAC as a whole.  The above-cited language sufficiently alleges that Plaintiffs lacked access to the underlying plan documents.  *Cf. Care First II* at 31 ("Because Care First does not allege that it did not review the pan [sic] agreements, or that the documents were not available to it, e.g., through CC and DC, it has not sufficiently pled that it was ignorant of the true facts and reasonably relied on defendants' alleged representation that the plan agreements did not contain anti-assignment provisions.").

        As to the other elements of traditional estoppel, the Court would presume that United had the relevant knowledge regarding plan terms, as United was allegedly tasked with claims administration.   This presumption is supported by the allegations in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

the FAC.  (*See, e.g.,* FAC ¶ 881 ("Defendants knew full well that the terms of Plaintiffs' benefit plans obligated it to pay Plaintiffs for the valuable medical services they had provided to beneficiaries and participants of those plans.  As the claims administrator, the plans delegated to United the discretion to interpret and apply the terms of the plans.")).

Ultimately, however, for the reasons discussed in connection with the waiver analysis below, the Court is not convinced that the pre-suit claims administration process involved activity that entitled Plaintiffs to believe that any anti-assignment provisions in the plans would not be relied upon.

The Court does not, at present, address whether the Ninth Circuit's additional requirements for estoppel in the context of ERISA benefits (including the ambiguity requirement) also apply to estoppel on the anti-assignment issue.

### b.  Anti-Assignment Provisions and Waiver

#### i.    Waiver and Anti-Assignment Clauses in ERISA Plans

"Waiver is often described as the intentional relinquishment of a known right." *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014) (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991)).  The Ninth Circuit has previously held that when an insurer communicates a denial of a claim, it must state a reason for the denial and it will not be permitted to later rely on alternate reasons not presented in the denial letter.  *See, e.g., Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding."); *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)               Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
               Inc., et al.

("The purpose of ERISA's requirement that plan administrators provide claimants with the specific reasons for denial is undermined 'where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary.'" (quoting *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 129 (1st Cir. 2004))).

The Ninth Circuit's recent decision in *Spinedex* implies that, under certain circumstances, the right to assert an anti-assignment clause may be waived.  *Spinedex*, 770 F.3d at 1296-97.  Other courts that have evaluated the issue have similarly found waiver to apply in the context of an ERISA anti-assignment provision.  *See, e.g.*, *Lutheran Medical Center of Omaha, Nebraska v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan*, 25 F.3d 616, 619-20 (8th Cir. 1994), *abrogated on other grounds by Martin v. Arkansas Blue Cross and Blue Shield,* 299 F.3d 966 (8th Cir. 2002) ("Because the Plan's actual practice is not in conformity with its strict anti-assignment provision, we conclude that nothing in the contract precludes a finding that Lutheran and Henderson have standing as assignees."); *N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*, CIV.A. 13-74 ES, 2013 WL 5366400, at *6-7 (D.N.J. Sept. 25, 2013) ("The Court finds that Defendant's involvement with the reimbursement claims, through BCBS, constitutes a waiver of the anti-assignment clause."); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. CIV.A.06-0462(JAG), 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007) ("GSS describes a course of dealing between itself and Horizon that allegedly constitutes a waiver of the anti-assignment provision and estops Horizon from disavowing GSS's standing. The conduct includes discussions of patient coverage under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes. Horizon contends that its direct payment of reimbursements to GSS conforms with the terms of the plans at issue and thus cannot constitute a waiver. Although Horizon's direct payments to GSS would not constitute a waiver if authorized under the Horizon plans at issue, the SAC alleges a course of conduct beyond direct reimbursement for medical services. Indeed, the SAC describes regular interaction between Horizon and GSS prior to and after claim forms are submitted, without mention of Horizon's invocation of the anti-assignment clause.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
            Inc., et al.

Such actions impede Horizon's ability to rely on the anti-assignment provision to
challenge GSS's standing." (citations omitted)).

### ii.    Waiver in the Present Case

Plaintiffs allege waiver as a result of the same conduct that gives rise to their
estoppel contention.  (Opp. To Omnibus Mot. at 20 ("The same course of conduct that
causes Defendants to be estopped also results in waiver")).   In the FAC, Plaintiffs
allege that "throughout the entire administrative process for thousands of claims,
neither United nor Defendants . . . ***ever refused to pay any of Plaintiffs' claims based
on any such anti-assignment provisions***."  (FAC ¶ 875 (emphasis added)).

Defendants, however, contend that standing cannot be waived, and that,
assuming the Ninth Circuit would permit waiver in this ERISA context, Defendants'
assertion of the anti-assignment provisions at this stage is not inconsistent with the
activities alleged to have transpired between the parties to date.  (Omnibus Reply at 19-
21).

Defendants also point out that "waiver is defined as the intentional
relinquishment of a known right."  (*Id*. at 21 (citing *Alocozy v. U.S. Citizenship &
Immig. Srvs*., 704 F.3d 795, 797 (9th Cir. 2012))).  Plaintiffs contend that the standard
of "knowing intent" for waiver is met in this case, since "[t]he FAC alleges that on
hundreds of discrete occasions, Plaintiffs 'demonstrated [to United] that they held a
valid assignment of benefits from the patient,' (FAC ¶ 953, Patients 2, 6; Appendix,
*passim*), and further, that United confirmed receipt of this assignment from Plaintiffs.
(FAC ¶ 890.)."  (Opp. to Omnibus Mot. at 20-21).

### 1.  Waiver of Jurisdictional Requirement

If the anti-assignment provisions bear on a standing requirement that cannot be
waived, then the waiver inquiry could end here.  In the *Care First* Order, the court
evaluated a contention that the right to rely on anti-assignment provisions contained in
plan documents had been waived since the defendants had failed to rely on them

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                    Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

during the administrative process.  *Care First* Order at 35.  The plan, in turn,
contended that lack of standing to sue cannot be waived (which the court construed as
an assertion that standing is a jurisdictional requirement that cannot be waived) and
that the anti-assignment provisions, in any event, were not waived because they
"concern a party's standing to sue and are not a substantive basis for denial of a claim."
*Id*. at 37, 38-39.

      As to the jurisdictional argument, the court rejected the argument that a plan
could never waive its right to assert an anti-assignment provision to defeat a plaintiff's
claim to have prudential standing as an assignee.  *Care First* Order at 38.  In doing so,
the court differentiated between Article III standing and standing under the terms of an
anti-assignment provision, noting that the former pertains to subject matter jurisdiction
(which a party cannot be prevented, in equity, from raising), and the latter is a
prudential matter (which a party can equitably be prevented from raising).  *Id*. at 37-38.
*See also Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1090
(9th Cir. 2012) ("Unlike constitutional standing, which is jurisdictional, we presume
that statutory standing may be waived.").

      Here, Defendants point out that "[d]istrict courts both within and outside of this
Circuit . . . have reasoned that 'derivative standing has only been recognized in cases
where there is a valid transfer of rights,' making it 'doubtful that a plaintiff can acquire
standing by virtue of a defendant's acquiescence.'"  (Omnibus Reply at 20 (citing
*Middlesex Surgery Ctr. v. Horizon* ("*Middlesex*"), No. CIV.A. 13-112 SRC, 2013 WL
775536, at *4 (D.N.J. Feb. 28, 2013); *Spinedex Physical Therapy, U.S.A., Inc. v.
United Healthcare of Arizona, Inc*. ("*Spinedex I*"), No. CV-08-00457-PHX-ROS, 2012
WL 8169880, at *5 (D. Ariz. Oct. 19, 2012))).

      However, as noted by the *Care First* Order, *Spinedex I* did not distinguish
between prudential and constitutional standing, which led the *Care First* court to reject
the argument that a plan could never waive the right to assert an anti-assignment clause
in order to defeat prudential (rather than constitutional) standing.  *Care First* Order at
38.  *Middlesex* does not suffer from this same defect, though it cites no legal authority

─────────────────────────────────────────────

CIVIL MINUTES—GENERAL                                                      36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

for its doubts that a plaintiff could acquire standing through a defendant's
acquiescence.  *Middlesex*, 2013 WL 775536, at *4.  Moreover, the "acquiescence" here
is not the absence of an assignment to begin with, but whether the assignment may be
rendered invalid due to a plan provision.  The effect might be the same in that a
provider may not be afforded standing for suit, but it does seem to be a somewhat
notable difference in evaluating the propriety of standing as an initial matter.  *See
LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d
348, 351 (5th Cir. 2002) ("Standing is jurisdictional. LeTourneau has no direct claim
against the Plan; and, absent a valid assignment of benefits from Nichols, LeTourneau
would have no derivative standing to sue the Plan under ERISA Section 502."
(footnotes omitted)).

        Ultimately, the Court rules that, as a general matter, waiver could be applicable
to the standing issue relevant here.  Whether waiver actually applies under the facts of
this case, however, is discussed below.

                    **2.  Anti-Assignment Clause as Substantive Basis for
                        Claim Denial as Opposed to Necessary for Standing**

        As discussed in the context of estoppel on this same issue:

        Plaintiffs argue that the anti-assignment clauses were waived, or that
        Defendants are estopped from raising them, because they were not
        asserted by United during the claims administration process as a
        reason to deny benefits or otherwise. *See* Pls.' Opp. at 15-21. . . .
        [T]his argument fundamentally misconstrues why the anti-assignment
        provisions are relevant. Defendants did not rely (and are not relying
        now) on the anti-assignment clauses to determine the appropriate
        reimbursement for the claims at issue in this case, or as a reason to
        deny benefits due under the terms of the plans.  The anti-assignment
        clauses are being raised now because they dictate whether a provider-

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                 Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

assignee has standing to sue an ERISA plan where the terms of the
plan forbid such an assignment.

(Omnibus Reply at 15).

     In *Care First,* the court found that *Gordon v. Deloitte & Touche, LLP Group
Long Term Disability Plan*, 749 F.3d 746 (9th Cir. 2014)—the case the plan asserted as
support for its argument that it had not waived the right to raise anti-assignment
provisions because those provisions concern standing to sue and not a substantive basis
for denial—was unavailing.  *Care First* Order at 38-39.  In *Gordon*, the court found
that an insurer had not waived its right to assert a statute of limitations defense when
that defense was not the basis for the claim denial and the actual basis for the claim
denial had been communicated to the claimant.  *Gordon*, 749 F.3d at 753.  In *Care
First*, in contrast, the complaint contained no allegations regarding whether the
relevant claims were denied as falling outside the plan coverage or due to the anti-
assignment provisions, and, as such, *Gordon's* holding was inapplicable to negate
waiver of a defense that was not raised as a basis for claim denial.  *Care First* Order at
39.

     Moreover, the *Care First* court discussed that, perhaps recognizing the problem
with *Gordon* (that it pertained to a substantive, communicated reason for denial and a
later-arising statute of limitations argument that the court found had not been waived),
the defendants argued that the anti-assignment provision could not have been the
reason for the claim denial because they had no obligation to make payments to the
plaintiffs in the first place—rather, the plans allowed for payments to be made to
providers purely for the convenience of the plan participants.  *Care First* Order at 39.
However, the court found this "illogical as it necessarily relie[d] on the fact that the
plan agreements contained anti-assignment provisions and implie[d] that the reason for
the plan's denial of Care First's claims was that Care First was not entitled to payment
under the plan agreements under those provisions. As noted, the complaint contain[ed]
no allegations concerning the reason for the denial, and the court therefore [could not]
determine the matter in deciding defendants' motion to dismiss." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

Ultimately, the *Care First* court found that the provider had not adequately
alleged waiver of the defendants' right to rely on anti-assignment provisions, as the
provider only alleged that after the claims were submitted the plan issued adverse
benefits decisions—there were no allegations that the claims were denied for a reason
other than the provider's assignee status or that the plan failed to provide a written
explanation of the denial.  *Care First* Order at 40.  The *Care First* court also noted that
the provider did not allege in the complaint that the plan never raised the anti-
assignment provisions during the administrative process (though the provider did
discuss this in its opposition brief).  *Id.*

Here, the analysis is somewhat complicated by the fact that adverse benefits
determinations were seemingly not always issued, such that the reasons for "denials"
are potentially difficult to gauge for each claim.  (*See, e.g.*, FAC ¶ 939 ("In many
cases, Defendants have held Plaintiffs' claims submissions in limbo without allowing
or denying the claims.")).  Plaintiffs assert that "[w]hen Plaintiffs did receive
[Explanations of Benefits ("EOBs")] containing adverse benefits decisions from
Defendants, these notices failed to disclose the reasons for the benefits determination
with any specificity, and failed to identify any plan provisions justifying the denial of
benefits."  (*Id.* ¶ 1028).  However, Plaintiffs also discuss Defendants' allegedly
"pretextual reasons for denial of the claims," (*id.* ¶ 954) and that United's conduct
included "[d]enying claims solely because the patients on whose behalf reimbursement
was sought had allegedly failed to 'authorize' Plaintiffs to appeal on their behalf, even
though Plaintiffs always submitted a proper assignment of benefits demonstrating such
authority, and even though Defendants in practice acknowledged that assignment had
occurred by dealing directly with Plaintiffs, rather than with the patients" (*id.* ¶ 884).

Even in light of these varied allegations, however, there are affirmative
allegations in the FAC that Defendants did not assert the anti-assignment clauses
during the administrative process as a reason for denying claims: "At no time during
the administrative process did Defendants ever state that the specific reason for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

adverse benefit determination was due to an anti-assignment provision, nor did they
reference a specific anti-assignment provision in any plan document."  (*Id*. ¶ 876).

There does seem to be a meaningful distinction between asserting the anti-
assignment provisions for purposes of claims denial and asserting them in order to
preclude standing for a suit.  However, this distinction loses its salience if there has
been activity undertaken in the pre-suit claims procedures that, irrespective of their
relevance to the standing issue at present, should have triggered mention and/or
invocation of these anti-assignment provisions.  For example, if payments were made
to Plaintiffs that could only have been made to assignees, this might suggest waiver of
the argument that the plans on whose behalf these payments were made prohibit
assignments.

The question, therefore, becomes whether the pre-suit activity—during which
the anti-assignment provisions were allegedly not mentioned—should have alerted
United to the fact that Plaintiffs were operating as purported assignees, such that the
failure to inform them that they could not do so means this argument might be deemed
waived.

### 3.  Pre-Suit Activity: Authorized Representatives and Assignees

Defendants argue that, "[e]ven if ERISA permits 'standing by waiver,' there is
'nothing inconsistent' about Defendants objecting to Plaintiffs' ERISA standing after
engaging with Plaintiffs in a pre-suit claims review process."  (Omnibus Reply at 20
(citations omitted)).  Moreover, Defendants contend that "[a]llegations of prior
payment in connection with a claim for benefits are not . . . inconsistent with
enforcement of anti-assignment clauses, for as Plaintiffs acknowledge, they sought
payment from United as their patients' 'authorized representative[s]' as well as
'assignees.'"  (Omnibus Mot. at 15 (citing FAC ¶¶ 953(B), 977-78)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

ERISA regulations provide that "claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not preclude an ***authorized representative*** of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2560.503-1(b)(4) (emphasis added). Defendants assert that they did not waive the right to assert anti-assignment clauses because:

> Under the regulations governing ERISA claim procedures, plans are prohibited from "preclud[ing] an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. §2560.503-1(b)(4). Thus, there can be no "waiver" by allowing an "authorized representative" to participate in the claims administration process, and payments to patients' "authorized representatives" are still payments to patients themselves and in no way implicate a plan's anti-assignment clause. By bringing their claims here, however, as assignees, Plaintiffs are claiming that they—not the patients—now have the right to the benefits, and it is this that the plans' anti-assignment provisions prohibit. *Total Renal Care of N.C., L.L.C. v. Fresh Market, Inc*., 2008 WL 623494, at *5-7 (M.D.N.C. Mar. 6, 2008) (authorized representatives sue "on behalf of" patients, whereas assignees file claims "in their own right").

(Omnibus Mot. at 15 n. 10).

> Plaintiffs counter by pointing out that:

> Defendants do not deny that they failed to raise the anti-assignment clauses. Instead, they attempt to argue that they have not waived this defense because Plaintiffs were merely acting as "authorized representatives" of the patients, not as assignees. This glib assertion is not supported by the facts. Defendants do not identify any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

allegations in the FAC that demonstrate that Plaintiffs were acting
solely as authorized representatives. Nor does anything in the FAC
suggest that Defendants ever informed Plaintiffs that they were not
assignees. To the contrary: **the FAC actually demonstrates that
Plaintiffs, proceeding as full assignees, repeatedly raised the issue
of assignments during the administrative process**.  Even if
Plaintiffs had authorized representative status, that did not deprive
them of their status as assignees. The two represent parallel methods
of proceeding under ERISA. *See, e.g.*, *Biomed Pharm., Inc. v. Oxford
Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 665 (S.D.N.Y. 2011)
(as assignee, provider "was not required to submit either an
'authorized representative' or 'designated representative form'").

. . .

Numerous Defendants suggest that they were entitled to pay providers
directly for "convenience" only, and without waiving their rights to
raise anti-assignment. This makes no sense, because Defendants'
direct payments to Plaintiffs were part of a larger, continuous course
of conduct that affirmed the validity of the assignments. As the *Care
First* court observed in considering an identical argument, "[t]his
argument is illogical as it necessarily relies on the fact that the plan
agreements contained anti-assignment provisions and implies that the
reason for the plan's denial [] was that [the provider] was not entitled
to payment under the [anti-assignment] provisions." RJN Ex. A at
p.39:15-24 (emphasis added). Here, the FAC makes clear that
Defendants never raised anti-assignment.
. . .

As explained above, even if Plaintiffs were authorized representatives,
that does not mean they were not also assignees. *Biomed*, 831
F.Supp.2d at 665. More importantly, a patient's authorized

CIVIL MINUTES—GENERAL                                          42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

representative is not entitled to direct payment of benefits. Such an
individual is authorized only to "pursu[e] a benefit claim or appeal of
an adverse benefit determination" on behalf of another. 29 C.F.R.
2560.503-1(b)(4); *Biomed*, 831 F.Supp.2d at 664 (defining
representative as "a person to act on your behalf").

(Opp. to Omnibus Mot. at 17, 20, 23 (emphasis in original)).

Pursuant to 29 C.F.R. § 2560.503-1(b)(4), and as discussed above, the Court
agrees with Defendants that allowing Plaintiffs to conduct appeals or pursue a benefit
claim decision would not waive the right to assert anti-assignment clauses; ERISA
regulations require that the plans allow an authorized representative to engage in these
activities, and United allowing it should not waive its right to assert anti-assignment
clauses as to something beyond this permissive activity.  Moreover, as discussed
above, it does appear that the purported assignments at issue here contain both
language of assignment and language designating relevant providers to be authorized
representatives.  As a result, the arguments regarding Defendants' failure to mention
anti-assignment provisions during the communications between the parties are
unpersuasive, at least to the extent that these communications pertained to the pursuit
and appeal of claims decisions.  Perhaps, if the correct procedures were not followed
under any particular plan as to authorized representative designation, and yet United
did not object to communicating with Plaintiffs regarding appeals and the like, waiver
may have been effected as to considering the Plaintiffs authorized representatives for
the corresponding claims.  However, that is not what is at issue here.

The issue of receiving payment presents a more complicated question.  Plaintiffs
contend that "a patient's authorized representative is not entitled to direct payment of
benefits," while Defendants posit that a payment to an "authorized representative" is
still a payment to the patient, such that it does not present the scenario the anti-
assignment clauses seek to prohibit—namely, providers claiming that they, rather than
the patients, have the right to benefits.  Defendants cite to *Middlesex* for the
proposition that "whether Plaintiffs have the right to submit a claim and pursue an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

appeal on a patient's behalf 'is a separate issue entirely' from whether Plaintiffs have the right to sue under ERISA," and that in having allowed the former, Defendants have not waived the latter.  (Omnibus Reply at 15 (quoting *Middlesex*, 2013 WL 775536, at *4)).

        *Biomed* is instructive on some of the distinctions between assignees and authorized representatives.  In *Biomed*, the defendants cited to the "Frequently Asked Questions" section of the Department of Labor's website, which indicates that an assignment is generally not sufficient to designate the provider as an authorized representative.  *See Biomed*, 831 F. Supp. 2d at 663 n. 16 ("The 'Frequently Asked Questions' state: B–2: Does an assignment of benefits by a claimant to a health care provider constitute the designation of an authorized representative? No. An assignment of benefits by a claimant is generally limited to assignment of the claimant's right to receive a benefit payment under the terms of the plan. Typically, assignments are 'hot [sic] a grant of authority to act on a claimant's behalf in pursuing and appealing a benefit determination under a plan. In addition, the validity of a designation of an authorized representative will depend on whether the designation has been made in accordance with the procedures established by the plan, if any.").  Ultimately, however, the *Biomed* court concluded that the assignee was capable of pursing appeals on its own behalf, and therefore was not required to submit an "authorized representative" or "designated authorized representative form."  *Id*. at 665.

        The assignment at issue in *Biomed* specified that it assigned to Biomed all of the patient's rights, "including the right to sue on [the patient's] behalf or name, under policy number [ ] issued by Oxford, to recover damages for services rendered by Biomed Pharm Inc."  *Id*. at 654 n. 2.  As discussed above, *Biomed* makes the distinction between an "authorized representative," who works on behalf of the patient with respect to a benefit decision or appeal, and an assignee, who acts on its own behalf as if it was the assignor.  *Id*. at 664-65.  This appears to be precisely the distinction that Defendants claim would render the assignments objectionable for purposes of this suit: the scenario is no longer a provider operating as an "authorized representative" on the patient's behalf (which United purportedly would be required to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

allow for appeals purposes under the ERISA regulations, upon a proper showing of authorization), but rather is the provider operating for its own benefit and in its own right.

In *Spinedex*, the Ninth Circuit held that United had not waived its right to assert a plan's anti-assignment provision, despite having failed to raise it during the first level appeal process, when the plan allowed the claims administrator to pay a provider directly for services rendered.  *Spinedex*, 770 F.3d at 1296-97.  The court also evaluated whether United had "consented to the assignments by sending Explanation of Benefits ('EOB') letters indicating that certain payments had been assigned to Spinedex."  *Id*. at 1296.  Regarding this latter argument, the court viewed United's EOB stating "PAYMENT ASSIGNED TO PROVIDER" "as an exercise of its discretionary authority" under the terms of the plan "to send payments directly to non-network providers."  *Id*.  The court noted that the relevant plan SPD provided that: "You may not assign your Benefits under the Plan to a non-Network provider without *our* consent. The *Claims Administrator* may, however, in their discretion, pay a non-Network provider directly for services rendered to you."  *Id*. (emphasis in original) (internal quotation marks omitted).  "Our" was defined as referring to the plan sponsor, Discount Tire Company.  *Id*.  As such, "United did not have authority to consent to assignment of benefits; only the Plan Sponsor had that authority," and that "[t]here [was] no evidence in the record that the Discount Tire Company consented to any assignment."  *Id*.

Regarding waiver, the Ninth Circuit discussed *Harlick* and noted that "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court."  *Spinedex*, 770 F.3d at 1296.  However, on the facts before it, the court held that "there [was] no evidence that United was aware, or should have been aware, during the administrative process that [the provider] was acting as its patients' assignee.  So far as United knew, [the provider] was acting merely as an authorized representative charged with filing, collecting, or appealing a claim on behalf of the patient."  *Id*. at 1297.  The court distinguished *Hermann II*, in which the court

CIVIL MINUTES—GENERAL                                                        45

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

held that a plan was estopped from asserting an anti-assignment provision "'because of its protracted failure to assert the clause when [the provider] requested payment pursuant to a clear and unambiguous assignment.'"  *Id.* (quoting *Hermann II*, 959 F.2d at 575).  Rather, in *Spinedex*, the court found that the defendants had not "waive[d] their objection to the assignment in the district court when it became clear, for the first time, that Spinedex was claiming as an assignee."  *Id.*

Here, the Court can see that the same might be true for plans that similarly allow for payments to be made to providers for the convenience of participants (or potentially others).  In such situations, until suit was filed, nothing had occurred that would have been within the range of conduct the anti-assignment clauses purportedly seek to prohibit.  As such, allowing activity that is consistent with the proper rights of an "authorized representative" and not inconsistent with the anti-assignment clauses does not seem as though it should result in a waiver of later conduct that *does* come within such prohibitions.

In *Care First II*, the court evaluated allegations that defendants failed to raise anti-assignment clauses during the administrative process or cite it as a reason for claim denial, and therefore had waived the right to assert it in litigation.  *Care First II* at 34.  However, the court rejected this argument, noting that there were no allegations suggesting that the defendants knew the provider plaintiff was acting as an assignee, rather than an authorized representative.  *Id.*  The *Care First II* complaint alleged that the contracted claims administrator (Zenith, not a defendant to the action) had made representations that assignments were permitted, but the court noted that, as in *Spinedex*, this claims administrator had no authority to waive the provision under the terms of the plan.  *Id.* at 34-35.  The language of the relevant plan allowed for direct payment of benefits to providers, but such payment was not to imply an enforceable assignment of the benefits.  *Id.* at 35.  The complaint did not contain allegations that the plaintiff "asked *defendants* whether assignments were permitted."  *Id.* (emphasis in original).  As such, the court concluded that "[b]ecause there [were] no allegations suggesting that defendants intentionally relinquished their rights under the anti-assignment provision, the first amended complaint fail[ed] adequately to allege waiver

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

by defendants." *Id.* Rather, in light of the facts alleged, the court found (consistent
with *Spinedex*) that so far as the defendants knew, the plaintiff was only acting "'as an
authorized representative charged with filing, collecting, or appealing a claim on behalf
of the patient.'" *Id.* (quoting *Spinedex*, 770 F.3d at 1296).

        At the hearing, Plaintiffs argued that the facts alleged in the FAC sufficiently
demonstrate that United was on-notice that Plaintiffs were proceedings as assignees.
In furtherance of this argument, Plaintiffs pointed out that United often challenged
Plaintiffs' authority to bring appeals and, in response, Plaintiffs allege that they
provided United with their purported assignments.  The FAC alleges specific instances
during which the purported assignments were provided to United; the general language
that reflects this submission is as follows: "Subsequently, however, United informed
the Plaintiffs that their appeals were denied due to a lack of patient authorization. This
was even though Plaintiffs had previously demonstrated that they held a valid
assignment of benefits from the patient that authorized Plaintiffs to make appeals on
behalf of the patient."  (*See* Opp. to Omnibus Mot. at 17 n. 6 (citing FAC ¶ 953,
Patients 1, 2, 6 (subparagraphs (H)); Appendix A, Patients 9-11, 14-16, 26-28, 31 34,
36, 37, 40-42, 44, 46, 51, 54, 56, 58, 63, 64, 66-68, 71, 73, 75, 78, 82, 83, 85, 87, 92,
93, 97, 99, 100, 101, 109, 112, 114, 118, 125, 127, 129, 130, 134, 138, 140, 141, 143,
148, 153, 154, 155, 161, 168, 171-173, 175, 176, 183, 186, 188, 189, 191, 194 198,
201, 207, 208, 214, 217, 220, 225, 227, 230, 233, 234, 240, 246- 249, 251, 253, 260,
264, 265, 267, 269, 270, 272, 274, 276, 278, 281, 286, 290, 296, 300-302, 304, 306,
308, 316-318, 321-323, 326, 332, 333, 335, 337, 344, 348, 350, 351, 353, 355, 358-
362, 365, 368, 369, 371, 373, 377, 380, 383, 385, 387, 390-392, 400-402, 405, 406,
416, 418, 422 (respective subparagraphs (H)))).

        However, even if United's alleged conduct were sufficient to demonstrate
waiver of a particular plan's anti-assignment provision, the Court does not read the
allegations in the FAC as demonstrating that United perceived that Plaintiffs intended
to proceed as assignees rather than authorized representatives.  The allegations
themselves discuss assignments, but discuss their effect as authorizing Plaintiffs to
make appeals on the patients' behalf.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

The allegations in the FAC are insufficient to demonstrate that Defendants intentionally relinquished any known rights pertaining to the anti-assignment clauses.

### c.  Consent of Insurer

Plaintiffs contend that assignability is governed by California law, since this is where the assignments were obtained by Plaintiffs.   (Opp. to Omnibus Mot. at 24).  Plaintiffs argue that anti-assignment clauses which require consent of the insurer, as the "most common variant of anti-assignment clause" at issue in this case does, are ineffective under California law.  (*Id*. at 23-24 ("It is well established in California that the right to bring a suit to recover benefits under an insurance policy can be assigned even where an anti-assignment clause contained in the policy states that assignment is not valid without the consent of the insurer.")).  Plaintiffs cite to *Comunale v. Traders & General Insurance Co*., 50 Cal. 2d 654, 662, 328 P.2d 198 (1958), for this proposition, and a variety of case law for the proposition that this principle is not preempted by ERISA.  (*Id*. at 24).

*Comunale* involved an assignee of an insured suing an automobile insurance company to recover the portion of a judgment against the insured that was in excess of his policy limits based on the insurer's alleged wrongful failure to settle.  *Comunale*, 50 Cal. 2d at 657, 661.  The California Supreme Court stated that, in general, "an action for damages in excess of the policy limits based on an insurer's wrongful failure to settle is assignable whether the action is considered as sounding in tort or contract." *Id*. (citing Cal. Civ. Code § 954; *Brown v. Guarantee Ins. Co*., 155 Cal. App. 2d 679, 693-695 (1957)).  As to the *Comunale* assignment, the insurance company contended that there was a clause in the policy which rendered an assignment of an interest under the policy valid only with consent of the insurance company.  *Id*.  The California Supreme Court, however, found that the cause of action at issue could be assigned because "it is well settled that such a provision does not preclude the transfer of a cause of action for damages for breach of a contract."  *Id*. at 661-62 (citing *Trubowitch v. Riverbank Canning Co*., 30 Cal.2d 335, 339-340 (1947)).  The California Supreme

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                 Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

Court also noted that "[t]his rule has been applied to provisions against assignability in
insurance policies similar to the provision involved here."  *Id.* at 662 (citing *Vierneisel
v. Rhode Island Ins. Co.*, 77 Cal. App. 2d 229, 232 (1946); *Pietrantonio v. Travelers
Ins. Co.*, 282 Mich. 111, 275 N.W. 786, 788 (1937)).

         The statement that Plaintiffs cite for support in *Comunale* does not support the
proposition they allege: namely, that the right to bring a suit to recover **benefits** under
an insurance policy can be assigned even where an anti-assignment clause contained in
the policy states that assignment is not valid without the consent of the insurer.
*Comunale* does not mention whether an anti-assignment provision that requires an
insurer's consent would be ineffective to preclude the transfer of a claim for benefits;
rather, it only bears on this question in the case of a transfer of a cause of action for
damages arising out of breach of contract.  None of the citing references for *Comunale*
address this particular issue.  The Court is not convinced, therefore, that the
proposition Plaintiffs proffer is actually a tenet of California law that would be
applicable to anti-assignment clauses in the present case.  In light of this conclusion,
the Court will not evaluate whether such a California law would be preempted.

         **d.  California DOI Regulation and California Insurance Code
             Section 10133(a)**

         Plaintiffs contend that anti-assignment clauses in plans governed by the
California Department of Insurance ("DOI") are ineffective.  (Opp. to Omnibus Mot. at
24-25).  For this proposition, Plaintiffs cite to California Insurance Code section
10133(a): "'Upon written consent of the insured first obtained with respect to a
particular claim,' an insurer covered by the Insurance Code '**shall pay** group insurance
benefits" for 'hospitalization or medical or surgical aid,' contingent on certain
conditions."  (*Id.* at 24 (emphasis in original) (citing Cal. Ins. Code § 10133(a)).
Plaintiffs substantiate the applicability of this provision by arguing that "[m]ost or all
of the 30+ plans in Exhibit B to the Omnibus Brief that have 'COC,' or Certificate of
Coverage, as the document type, and that are insured by United, are very likely
governed by the DOI."  (*Id.* at 25).  Plaintiffs also contend that this state statute is not

CIVIL MINUTES—GENERAL                                                                    49

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

preempted, as it is a general regulation of insurance.  (*Id.* at 24-25 (citing *Washington
Physicians Serv. Ass'n v. Gregoire*, 147 F.3d 1039, 1045 (9th Cir. 1998), *as amended
on denial of reh'g and reh'g en banc* (Aug. 24, 1998)).

California Insurance Code section 10133(a) provides:

*Upon written consent of the insured first obtained with respect to a
particular claim, any disability insurer shall pay group insurance
benefits contingent upon, or for expenses incurred on account of,
hospitalization or medical or surgical aid to the person or persons
furnishing the hospitalization or medical or surgical aid*, or, on and
after January 1, 1994, to the person or persons having paid for the
hospitalization or medical or surgical aid, but the amount of any such
payment shall not exceed the amount of benefit provided by the policy
with respect to the service or billing of the provider of aid, and the
amount of the payments pursuant to one or more assignments shall not
exceed the amount of expenses incurred on account of the
hospitalization or medical or surgical aid. Payments so made shall
discharge the insurer's obligation with respect to the amount so paid.

Cal. Ins. Code § 10133(a) (emphasis added).

Plaintiffs are not making a definitive allegation that all of the contracts with anti-
assignment provisions are governed by the DOI and therefore subject to California
Insurance Code section 10133(a); at best, they allege that "[m]ost or all" of the plans
appended to Defendants Omnibus Motion with a COC that are insured by United are
"very likely governed by the DOI."  The Court is under the impression that the parties
are working to remove the fully-insured plans from this litigation, which renders
Plaintiffs' identification of the relevant sub-set of plans as some portion of those
insured by United somewhat perplexing.  Nevertheless, the Court will evaluate whether
the provision might otherwise be applicable in this litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

    Defendants argue that California Insurance Code section 10133(a), by its terms, only applies to disability insurers, not healthcare insurers.  (Omnibus Reply at 23). Further, Defendants also argue that California Insurance Code section 10133(a) would not work to preclude them from asserting the anti-assignment clauses in order to defeat Plaintiffs' standing; rather, Defendants contend that this code section merely allows for payment to go to the providers.  (*Id.*).

    The Court agrees that the provision, by its terms, does not appear to bar anti-assignment clauses.  Plaintiffs cite to no authority interpreting this provision in the manner they urge.  As such, the Court need not at present decide whether the provision would apply to some or all plans at issue, or whether preemption would bar its application here.

### e.  Almont No. 14-CV-03053 Counterclaim Position

    Plaintiffs claim that United's counsel cannot argue in this case that the assignment of benefits are invalid, and yet rely on the assignments in related case No. 14-CV-03053 to pursue "overpayment" claims against Plaintiffs.  (Opp. to Omnibus Mot. at 21-22).  They argue that the Court has previously recognized that this issue of United's counsel's potential conflict was a "a close call, given United's position in the counterclaim," but that the Court stated that it was "unclear" whether a conflict existed then given that information about which plans would assert anti-assignment clauses was not then before the Court.  (*Id.* at 22 (quoting Docket No. 839 at 12)).  However, Plaintiffs contend that:

        That information is now before the Court. United has provided
        Plaintiffs with a list of the claims that they seek to recoup, which
        makes clear that United seeks to recover every payment ever made to
        Plaintiffs.  (Chan Decl. ¶ 4-5.)  Given the sheer breadth of United's
        counterclaim, it is ***highly likely*** that United seeks to recover payments
        on behalf of every plan that raises anti-assignment in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

(*Id*. at 22 (emphasis added)).

Plaintiffs further contend that:

United's counsel attempts to claim that its positions are not inconsistent because Plaintiffs were *authorized representatives*, not assignees.  (*See* June 16, 2014 Tr. of Hrg. on Mot. to Disqualify at 10:8-11 ("Even if there's not an assignment there may have been a payment [] to the plaintiffs as authorized representatives to direct payment to them.") (statement of Mr. Lucke).)  United also modified its FACC so that it alleges that Plaintiffs were authorized representatives, not assignees. (See FACC ¶¶ 314, 328.) . . . . [E]ven if Plaintiffs were authorized representatives, that does not mean they were not also assignees.  *Biomed*, 831 F.Supp.2d at 665.  More importantly, a patient's authorized representative is not entitled to direct payment of benefits.  Such an individual is authorized only to "pursu[e] a benefit claim or appeal of an adverse benefit determination" on behalf of another.  29 C.F.R. 2560.503-1(b)(4); *Biomed*, 831 F.Supp.2d at 664 (defining representative as "a person to act on your behalf").

(*Id*. at 22-23).

Defendants counter by arguing that the FACC in No. 14-CV-03053:

[D]oes not rely upon assignments that are invalid due to anti-assignment clauses.  Rather, the counterclaim asserts that the current Plaintiffs are required to return any sums negligently paid to them pursuant to Plan terms, including but not limited to situations where Plaintiffs submitted claims for benefits under 29 C.F.R. §2560.503-1 pursuant to 'authorized representative' forms under [Department of Labor] regulations, where they had "valid" assignments (i.e., those not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

prohibited by anti-assignment clauses) under the Plan, or where they
accepted payment from the Plan.  In each of those instances (and
potentially others), Plaintiffs are bound by plan terms requiring the
return of overpayments.  Thus, the Counterclaim only relies upon
"valid" assignments, and does so only in the alternative to other
arguments and bases for recovery.

(Omnibus Reply at 21).

        At present, the Court is not in a position to gauge the actual overlap on this anti-
assignment issue between the two cases.  Although Plaintiffs purport to "match up" the
names of patients United provided in connection with the FACC in No. 14-CV-03053
and find that "at least two of the example patients" from the FACC belong to plans that
assert to have anti-assignment clauses in this case (Enterprise Holdings and AT&T),
this is hardly enough to establish that the relevant plan terms applicable in the two
actions are the same.  (Opp. to Omnibus Mot. at 22).

        In any event, there seem to be a number of factual issues that bear on what is
being asserted in each case with respect to which plans, dates of service, and the like.
As such, ruling on the propriety of the purportedly conflicting stances is premature at
this time.

### f.  Continuum of Anti-Assignment Clauses

        As to the specific language in the anti-assignment provisions, the Court wishes
to make clear that not all anti-assignment clauses presented would defeat standing at
this early stage in the proceedings.  Approximately 145 groups of Defendants (*i.e.*, a
plan sponsor and the corresponding plan(s)) assert anti-assignment arguments, though
these will vary in effect.  Plaintiffs make a variety of arguments regarding the limits of
anti-assignment provisions asserted in this case, such as the fact that none of these
provisions prevent the assignment of ancillary ERISA causes of action, "creditor" anti-
assignment clauses are ineffective against the providers here, and some purported anti-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

assignment provisions permit assignment to providers without restriction.  (Opp. to Omnibus Mot. at 25-28).

Regarding the first of these arguments, the Court's discussion regarding the scope of the alleged assignments in relation to ancillary ERISA Counts dispenses with the need for further analysis here.  Regarding the other arguments, the Court outlines general categories of anti-assignment provisions and their relative merits here.  As discussed below, however, all of these evaluations are subject to the threshold requirement that the anti-assignment provisions proffered by Defendants be manifestly reflective of the relevant operative plan terms.

So-called "creditor" or "spendthrift" provisions, discussed (though not found determinative) in the Order adjudicating the Baker Hughes Motion, are unlikely to be given effect against providers at this stage in the litigation.

Similarly, provisions allowing only for assignment with consent of a designated entity (be it the plan sponsor or otherwise) are insufficient to defeat standing at this stage in the proceedings.  Defendants have not demonstrated that such consent exceptions do not apply to Plaintiffs' alleged assignments.  The allegations in the FAC, read in the light most favorable to Plaintiffs, plausibly allege that Plaintiffs' assignments were accepted under such exceptions; although many of the activities alleged in the FAC are not inconsistent with those undertaken by an authorized representative, nor are they inconsistent with activities undertaken by an assignee.  Given the likely need for extrinsic evidence on this issue, this argument is better suited to summary judgment.   At the hearing, Defendants asked the Court to reconsider this point in light of *Spinedex*.  However, *Spinedex* was a review of a summary judgment decision, which only bolsters the Court's reasoning on this point.

However, provisions that contain no exclusions or exceptions to the assignment prohibition, or contain exclusions that are clearly inapplicable in the present case, are more likely to defeat standing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. *-v-* UnitedHealth Group, Inc., et al.

Finally, Defendants argue that "Plaintiffs do not allege in the Amended Complaint—or even assert in opposition—that the anti-assignment clauses are ambiguous, making the anti-assignment provisions valid and enforceable under Ninth Circuit precedent."  (Omnibus Reply at 14 (footnotes omitted)).  In a footnote, they further contend that "[a]lthough Plaintiffs assert that an ambiguous anti-assignment clause must be construed against the drafter, Pls.' Opp. at 21, they do not identify any ambiguity in the clauses provided in conjunction with Defendants' Opening Brief."  (*Id.* n. 14).

"'In interpreting the terms of an ERISA plan[,] we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law.'"  *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1082 (10th Cir. 2004)).  The Ninth Circuit applies ordinary contract interpretation rules to ERISA plans.  It has stated:

> We have held that terms in a pension plan should be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience.  When disputes arise as to the meaning of one or more terms, we first look to the explicit language of the agreement to determine the clear intent of the parties.  The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion.  An ambiguity exists when the terms or words of a pension plan are subject to more than one reasonable interpretation.  In fact, only by excluding all alternative readings as unreasonable may we find that a plan's language is plain and unambiguous.

*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) (internal quotation marks and citations omitted).  In order to determine that an anti-assignment precludes standing, therefore, it becomes necessary to determine whether the provisions in question are unambiguous.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

The Court recognizes that the anti-assignment language will largely not defeat standing at this stage (either because the documents submitted are not demonstrably the operative plan documents, the clauses contain exceptions, and/or the anti-assignment language itself does not manifestly cover the scenario presented in this case).  However, due to the deficiencies (discussed below) in Plaintiffs' prima facie benefits Count, invocation of anti-assignment clauses will not be required at this stage of the proceedings in order to defeat the ERISA benefits Count.  Moreover, the estoppel Count is independently deficient for the reasons discussed in the Order adjudicating the United Motion.  These are the only two ERISA Counts for which the Court has ruled Plaintiffs have standing.   Due to the deficiencies in these Counts, the Court does not evaluate at present whether particular anti-assignment clauses are ambiguous or might defeat standing for these Counts.

## B.    Plaintiffs' Count Under ERISA § 502(a)(1)(B) (Count I)

### 1. Employers as Proper Defendants

Defendants dispute the propriety of including employer Defendants in a suit for benefits, stating: "Under Ninth Circuit law, the proper defendants for a claim for benefits are the entities with authority to resolve benefit claims (United) or the responsibility to pay them under the terms of the plan (the Plans)."   (Omnibus Mot. at 7 (citing *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206-07 (9th Cir. 2011) (en banc)).  Plaintiffs, in turn, argue that the employers are responsible for payment, quoting the United Motion for the proposition that "[b]ecause nearly all of the Defendant Plans at issue are 'self-funded,' *the Employers, not United, are responsible for the payment of any benefits due*."  (Opp. to Omnibus Mot. at 10 (emphasis in original) (quoting United Mot. at 1)).

However, irrespective of payment obligations, the employers appear to be proper Defendants at this stage of the litigation due to the operation of ERISA law. Admittedly, it is unclear from the FAC which parties are actually the plan administrators for any given plan.  The FAC alternately alleges that the employers and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

United served as plan administrator.   (*See, e.g.,* FAC ¶ 58 ("Plaintiffs are informed and believe that Defendant, AARP, is a plan sponsor and plan administrator for the AARP Employees Welfare Plan."); ¶ 1067 ("United was in all instances the Claim Administrator, and in some instances, the designated Plan Administrator, to whom administrative duties were expressly delegated by the plans, and/or plan sponsors.")). Numerous parties contend that their plan documents explicitly designate the employer as the plan administrator.  (*See* Opp. to United Mot. at 20 n. 6 ("It appears that the large majority, though not all, of Employers have been designated as the administrators for their respective Plans.")).  However, at the very least, ERISA designates employers as the "plan sponsor" "in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B)(i).  Moreover, ERISA designates the plan sponsor to be the default plan administrator if the plan does not specifically designate another administrator. 29 U.S.C. § 1002(16)(A)(ii).  As such, at this early stage of the proceedings, with so little clarity as to who the plan administrators are, the Court cannot discount that the Employer Defendants may be plan administrators for their respective plans (as alleged in the FAC).

There is out-of-circuit precedent for the notion that a plan administrator may not be the proper party to a benefits action if the plan administrator does not participate in benefit decisions; rather, in such a case, the claims administrator that does make such choices is the proper defendant. *See, e.g. Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (holding that the claims administrator is the proper defendant in an action for ERISA benefits and dismissal of the plan administrator was proper where the claims administrator exercised full authority to adjudicate claims for benefits).

Within the Ninth Circuit, the rules regarding proper ERISA benefit claim defendants were previously a bit unclear.  However, *Spinedex* recently provided a bit of clarity on the issue.  In *Spinedex*, the Ninth Circuit acknowledged the open questions regarding proper ERISA benefit claim defendants under *Cyr*, and held that "proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                    Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                  Inc., et al.

entities responsible for payment of benefits, and de facto plan administrators that
improperly deny or cause improper denial of benefits."  *Spinedex*, 770 F.3d at 1297.

        As *Spinedex* makes clear, formally designated and de facto plan administrators
are proper defendants in an ERISA benefits action.  Though the FAC also contains
allegations that United may be a plan administrator or de facto administrator for the
relevant plans, the Court is inclined to rule that it would be improper for the jointly-
represented Employer Defendants to argue that they are improper defendants for Count
I, brought pursuant to § 1132(a)(1)(B).  (*See* Omnibus Mot. at 36 n. 41 ("Not only does
ERISA §3(16) make the employer the presumptive 'Plan Administrator,' the plan
documents reflect that the employers, not United, are the designated ERISA §3(16)
'Plan Administrator,' which had the duty to provide documents under ERISA § 104(b).
JR Defs.' Appendix F.  Plaintiffs allege nothing to the contrary, apart from stating that
United was the 'the designated Plan Administrator and/or the designated Claims
Administrator'—a formulation so vague that it plainly is insufficient to state a claim
that United was in fact the 'plan administrator' for any given plan. Am. Compl. ¶
849.")).  Moreover, the operation of ERISA law and allegations in the FAC weigh
against dismissing the remaining Employer Defendants at this time.

        Unless the relevant, operative plan documents rule out the possibility that the
Employer Defendants fall into one of the *Spinedex* designations discussed above, the
Court concludes that they are proper Defendants for Count I at present.

### a.  Employer Defendants That Purportedly Are Not Plan Administrators

        The Court notes that there are a few Supplemental Memoranda arguing that the
Employer Defendant named is not the relevant plan administrator, such as those
submitted by: the Ensign Defendants (Docket No. 1088); the Medco Defendants
(Docket No. 1078); the Southwest Defendants (Docket No. 1098).  However, the
support for these arguments stems from SPDs and/or it is unclear that the documents
submitted (even if they constitute the operative plans) are relevant for each of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

claims alleged in the FAC.  The Court is not persuaded that it can rely on such documents to dismiss Counts against these particular entities at this time.

Similarly, the Edison Defendants argue that Edison International is neither the relevant plan's sponsor nor its plan administrator; rather, the Edison Defendants assert that "non-party Southern California Edison Company ('SCE') is the plan sponsor" and "[n]on-party the Southern California Edison Company Benefits Committee ('Committee') is the plan administrator."  (Edison Supp. Memo. (Docket No. 1070) at 1).  The relevant patient for the Edison Defendants is Patient 122, and Appendix A to the FAC (Docket No. 840-3) alleges that services were provided to Patient 122 on May 22, 2009.  (FAC, Appendix A at 194).   Filed with the Edison Supplemental Memorandum is the Declaration of Matthew P. Eastus ("Eastus Declaration"), to which is attached "a true and correct copy of relevant excerpts of the plan document applicable to Patient 122."  (Eastus Decl. (Docket No. 1070-1) ¶ 4).  The plan document reflects that Edison International is neither the plan administrator nor the plan sponsor for the relevant plan.  (Eastus Decl., Ex. B (Docket No. 1070-1) at EIX000433, EIX000435, EIX000445, EIX000509).

At the hearing, Plaintiffs indicated that they will replace Edison International with the proper Defendant in their amended pleading.

**b.  The Union Pacific Defendants**

The Union Pacific Defendants note that the "single employer" framework may not apply to them as to all purportedly related plans.

At the hearing, Plaintiffs informed the Court that they had settled with the Union Pacific Defendants.  As such, the Court need not weigh the relative merits of arguments pertaining to these Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015**
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
               Inc., et al.

### 2.  Stating a Claim for Benefits Under the Terms of the Relevant Plans

#### a.  Standard of Review and Benefits Determinations

ERISA § 502(a)(1)(B) authorizes participants and beneficiaries of a plan to
bring suit to recover benefits to which they are entitled under the plan.   The court will
then review the decision made by the administrator.  *See Moyle v. Liberty Mut.
Retirement Ben. Plan*, 985 F. Supp. 2d 1247, 1262 (S.D. Cal. 2013) (citing *Benson v.
Long Term Disability Income Plan for Employees of Xerox*, 108 F. Supp. 2d 1074,
1080 (C.D. Cal. 1999)).  "The United States Supreme Court has held that a denial of
benefits is reviewed *de novo* when the plan does not confer discretion on the
administrator 'to determine eligibility for benefits or construe the terms of the plan.'"
*Id.* at 1256 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).
"If *de novo* review applies, no further preliminary analytical steps are required and the
court proceeds to evaluate whether the plan administrator correctly or incorrectly
denied benefits without regard to whether the administrator operated under a conflict
of interest."  *Id.* (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th
Cir. 2006) (en banc)).

If a plan does confer discretion (which it must do unambiguously), then the
applicable standard of review is abuse of discretion.  *Id.* (citing *Firestone Tire &
Rubber Co.*, 489 U.S. at 115)).  There is an abuse of discretion if an administrator: "(1)
renders a decision without explanation, (2) construes provisions of the plan in a way
that conflicts with the plain language of the plan, or (3) relies on clearly erroneous
findings of fact."  *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d
1173, 1178 (9th Cir. 2005) (citing *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944
(9th Cir. 1999)).  "A finding is 'clearly erroneous' when although there is evidence to
support it, the reviewing [body] on the entire evidence is left with the definite and firm
conviction that a mistake has been committed."  *Id.* (alteration in original) (quoting
*Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust
for Southern California*, 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:      Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

(internal quotation marks omitted).  Under an abuse of discretion review, the administrator's decision will be upheld "'if it is based upon a reasonable interpretation of the plan's terms and was made in good faith.'"  *Id.* (quoting *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997)).

However, "[i]f a plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as 'a facto[r] in determining whether there is an abuse of discretion.'"  *Moyle*, 985 F. Supp. 2d at 1257 (alteration in original) (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 115, 109 S.Ct. 948) (internal quotation marks omitted).  "In following the United States Supreme Court, the Ninth Circuit has held that the '[a]buse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest.'"  *Id.* (quoting *Abatie*, 458 F.3d at 956).  In such circumstances, "the standard of review is an abuse of discretion review 'but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record.'"  *Id.* (quoting *Abatie*, 458 F.3d at 967).  In contrast, "if an administrator 'engages in wholesale and flagrant violation of the procedural requirements of ERISA and thus acts in utter disregard of the underlying purpose of the plan as well,' the Court reviews *de novo* the administrator's decision to deny benefits."  *Id.* (quoting *Abatie*, 458 F.3d at 971).

Under an abuse of discretion review, the Court evaluates only the administrative record.  *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1200 (9th Cir. 2010) (citing *Abatie*, 458 F.3d at 970).

### b.  Pleading Requirements

"To state a claim [for benefits under ERISA § 502(a)(1)(B)], plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits.  A plan is established if a reasonable person 'can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'  Failure to identify the controlling ERISA plans makes a complaint unclear and ambiguous."  *Forest Ambulatory Surgical Associates*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

(*"Forest Ambulatory"*), *L.P. v. United HealthCare Ins. Co.*, 10-CV-04911-EJD, 2011
WL 2748724, at *5 (N.D. Cal. July 13, 2011) (citations omitted).  "Accordingly, '[a]
plaintiff who brings a claim for benefits under ERISA must identify a specific plan
term that confers the benefit in question.'"  *Sanctuary Surgical Ctr., Inc. v.
UnitedHealth Grp., Inc. ("Sanctuary Surgical")*, 10-81589-CIV, 2013 WL 149356
(S.D. Fla. Jan. 14, 2013), *appeal dismissed* (May 15, 2013) (quoting *Stewart v.
National Educ. Ass'n*, 404 F. Supp. 2d 122, 130 (D.D.C. 2005)).

        In *Sanctuary Surgical*, the court evaluated a case in which 966 derivative ERISA
claims were at issue.  The *Sanctuary Surgical* plaintiffs, out-of-network providers,
sought payment for medical services (manipulation under anesthesia procedures or
"MUAs") provided to United members.   *Sanctuary Surgical*, 2013 WL 149356, at *1.
The plaintiffs alleged that prior to performing the relevant services, they called United
to "confirm out-of-network coverage for the requested services," and were purportedly
told during each call that "there was coverage for plaintiffs' facility fees and for the
procedures involved."  *Id*.  Plaintiffs alleged that "they had no access to any of the
health insurance plans at issue when they placed the pre-authorization calls for
verification of benefits, and therefore 'had to rely' on United's verbal verification of
coverage and promise of payment before rendering treatment."  *Id*.  In testing the
sufficiency of the allegations in the complaint as to the plaintiffs' claim for benefits,
the court noted that application of the pleading requirements for a benefits claim meant
that "plaintiffs must at least identify the specific plan provisions under which coverage
is conferred with respect to each of the 996 derivative ERISA claims identified in its
complaint, and to allege sufficient facts to plausibly show the services rendered to each
patient were indeed covered under that particular plan."  *Id.* at * 3 (emphasis removed).
The *Sanctuary Surgical* court found that this standard had not been met by the
plaintiffs at issue in that case.  The plaintiffs cited six exemplar summary plan
descriptions and two certificates of coverage "which arguably encompass[ed] coverage
for the MUA procedures at issue," and alleged that "none of the six exemplar plans
contain language that specifically excludes MUAs from coverage."  *Id.* at *3-6.
However, the court found this unavailing, as the plaintiffs had failed to cite to relevant
exclusionary language that would allow the court "to determine whether the MUAs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                 Inc., et al.

were actually covered services even under the six exemplar summary plan descriptions
which plaintiffs selectively cite[d]," and did not provide any support "for the
speculative allegation, purportedly made 'upon information and belief,' that all 300 of
the plans at issue contain[ed] 'similar' coverage language."  *Id*. at *6.

     Similarly, in *Forest Ambulatory,* the court found allegations that "the benefits
agreements on which it seeks relief 'include employee welfare benefit plans covered
by [ERISA],' and that '[u]nder the terms of the relevant written ERISA plans and
written Assignment Agreements, United Healthcare was obligated to pay [the provider]
the amount of the Claims submitted under the ERISA plans for the procedures
performed by [the provider's] medical staff for the United Insureds'" too conclusory to
satisfy *Iqbal/Twombly* pleading standards.  *Forest Ambulatory,* 2011 WL 2748724, at
*5.  The court noted that the complaint need not describe a particular plan in detail,
such as by giving policy numbers, but that the allegation had to "raise the existence of
an ERISA plan above [a] speculative level."  *Id*. (internal quotation marks and citations
omitted).  Furthermore, the court found the "alleged violations are insufficient without
reference to the terms of the controlling plans," and that these failings mandated
dismissal of an ERISA cause of action.  *Id*.

     In contrast, the court in *Encompass Office Solutions, Inc. v. Ingenix, Inc.
("Encompass")*, 775 F. Supp. 2d 938 (E.D. Tex. 2011) held that relatively general
allegations were sufficient to state a claim for breach of contract and entitlement to
benefits under ERISA.  These included allegations that: United's plans "provide
coverage for both in and out-of-network '[s]urgery and related services received on an
outpatient basis at a Hospital or Alternate Facility or in a Physician's office . . . .
Benefits under this section include: The facility charge and the charge for supplies and
equipment. Physician services for anesthesiologists, pathologists and radiologists'"; the
plaintiff's patients had PPO or POS benefits that allowed them to "seek medically
necessary benefits, whether in-network or not," and were entitled to reimbursement for
their claims because the plaintiff "is an out-of-network provider for United, which
assists in performing outpatient surgeries in physician's offices by providing supplies,
equipment, and nurses—covered services"; that the plaintiff's claims "should not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:      Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

been denied as United's plans provide coverage for the very services [the plaintiff] performs"; United initially paid but then slowly began to deny the plaintiffs' claims; and United made untrue representations regarding its reimbursement percentages. *Encompass*, 775 F. Supp. 2d at 953-54, 969.

Similarly, in *In re WellPoint, Inc. Out-of-Network UCR Rates Litig. ("WellPoint I")*, 865 F. Supp. 2d 1002 (C.D. Cal. 2011), the defendants argued that a plaintiff who brings suit for ERISA benefits must specify the plan terms that entitle him to the benefits, and that the *WellPoint I* plaintiffs had failed to do so.  *WellPoint I*, 865 F. Supp. 2d at 1040.  The court, however, found that "Plaintiffs [had] sufficiently identif[ied] specific plan terms promising medical reimbursement benefits for [out-of-network services] at the lesser of the billed charged or the UCR, benefits which were denied by Defendants."  *Id*.  The court held that the plaintiffs had "identified specific plan terms conferring reimbursement benefits and [had] alleged sufficient facts demonstrating how" the defendants had "deprived" the plaintiffs of these full benefits by providing "flawed and 'scrub[bed]' data" to the entity that provided the relevant out-of-network reimbursement data.  *Id*. at 1016, 1040.

### c.  Sufficiency of Allegations

As a preliminary matter, Plaintiffs contend that the applicable standard of review for the benefits "decisions" here is de novo, due to United's purported conflicts and ERISA procedural violations.  (*See* FAC ¶¶ 893, 982-85).  However, as discussed below, the pleadings are deficient such that the Court need not even evaluate the appropriate standard of review.

Defendants rely on *Sanctuary Surgical*, arguing that the pleading deficiencies in that case (failure of the plaintiffs to argue the terms of the relevant plans that demonstrate conditions of coverage) are applicable here.  (Omnibus Mot. at 11-13).  Plaintiffs, in turn, contend that "Defendants failed to comply with the ERISA regulations requiring detailed notice of every reason for the denial of the claim, including citations to specific provisions of the plan."  (Opp. to Omnibus Mot. at 37).  As such, Plaintiffs reason, Defendants cannot now attempt to argue that Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)               Date:  April 10, 2015
Title:         Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

Count should be dismissed for failure to cite to plan terms, when the fault for Plaintiffs not having these terms readily available lies with Defendants themselves.  (*Id.* at 37-38).  Moreover, Plaintiffs distinguish *Sanctuary Surgical*, classifying that case as an "outlier," and noting that "[o]ther courts have recognized . . . that plausible allegations that merely describe the relevant plan provisions in general terms are more than sufficient to put defendants on notice as to the benefits sought."  (*Id.* at 38 (citing *Encompass*, 775 F. Supp. 2d at 969; *WellPoint I*, 865 F. Supp. 2d 1002, 1040-42 (C.D. Cal. 2011)).

        In terms of actual allegations, Plaintiffs cite the fact that they verified that each patient had valid coverage and received either an authorization or statement that no authorization was needed; in light of this, Plaintiffs claim that "it would be ***implausible*** to conclude, in light of such representations, that the Plaintiffs' hundreds of benefits claims all relate to non-covered patients or procedures."  (Opp. to Omnibus Mot. at 38-39 (emphasis in original)).  Specifically, Plaintiffs allege in the FAC that:

        The patients whose claims are at issue in this lawsuit are all morbidly obese individuals who are suffering from serious medical problems associated with their obesity.

        All of these patients choose Preferred Provider Organization ("PPO") insurance, rather than HMO insurance, through their employers so that they can receive their medical services from the physicians and other medical providers of their choice, regardless of whether those physicians are in-network or out-of-network. United Healthcare, who administers the PPO insurance for these employers, advertises on its website that the benefits of its PPO policies include: "The freedom to choose any doctor for your health care needs."

        All of these patients' healthcare providers requested that United Healthcare authorize the patients to undergo the extensive pre-operative tests necessary to determine whether they are qualified to

CIVIL MINUTES—GENERAL                                                   65

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

receive Lap-Band surgery. United Healthcare ther [sic] provided
authorization for the plaintiffs' healthcare providers to perform the
procedures, or were informed that no authorization was needed. After
receiving the authorizations, or being informed that no authorization
was necessary, the patients went through months of pre-operative
tests.

. . .

***No provisions in those benefit plans, whether in their Summary
Plan Descriptions (SPDs) and Evidences of Coverage (EOCs),
justified the failure to pay the usual and customary fees for services
charged by outpatient surgical centers such as those managed and
operated by the Plaintiffs, and to instead pay nothing. It was
arbitrary, capricious and improper for United to do so.*** In fact,
during the insurance verification process for most if not all of the
patients in this case, United represented to Plaintiffs that it would pay
the Plaintiff Providers' usual and customary fees. Plaintiffs sought
information during this process about potential limitations on the
reimbursement of Plaintiffs fee each time prior to providing services,
and specifically inquired each time prior to providing services as to
how United's fee provisions would apply to their situation.
Defendants withheld information in response to such requests, and
therefore misled plaintiffs into thinking that the entire Plaintiffs'
usual and customary fees would be paid.

Likewise, no provisions anywhere in those plans justified the failure
to issue a final decision or denial on any of Plaintiffs' claims. This
was therefore arbitrary, capricious, and a breach of United's fiduciary
duties to plan participants and fiduciaries. It was also a violation of
regulations promulgated under ERISA by the Department of Labor,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)**              **Date:  April 10, 2015**

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
            Inc., et al.

which require that claims be adjudicated by the claims administrator
(e.g., United) within 90 days after receipt of the claim.

(FAC ¶¶ 3-5, 867-868 (emphasis added)).

        The general allegations in this case closely resemble those in *Sanctuary
Surgical*.  For example, in both cases there are allegations that Plaintiffs telephoned
United and received confirmation of out-of-network coverage for the requested
services, and that Plaintiffs did not have access to the underlying plans and so had to
rely on United's verbal verification and promise of payment prior to rendering
services.  Although the court in *Sanctuary Surgical* imposed a rather stringent pleading
requirement which the Court is not necessarily adopting, the Court does note the
similarities between the two cases.

        Moreover, as Defendants contend, *WellPoint I* and *Encompass* are both
distinguishable, as they involve plaintiffs who "alleged specific plan terms or included
specific allegations regarding the plan terms."  (Omnibus Reply at 5).  In *Encompass*,
the plaintiff alleged that certain services that it provided were covered under the
insureds' plans, and also discussed the benefits allowed under the plans for such
services.  *Encompass*, 775 F. Supp. 2d at 953-54, 969.  Similarly, in *WellPoint I*, the
benefit issues were reimbursement-rate specific, and the allegations as to relevant plan
terms went to that issue.  *WellPoint I*, 865 F. Supp. 2d at 1040.

        Here, Plaintiffs may allege that they were provided authorizations and that no
plan terms "justified the failure to pay the usual and customary fees for services
charged by outpatient surgical centers such as those managed and operated by the
Plaintiffs, and to instead pay nothing," but they do not actually allege that the specific
services they provided to the patients at issue were covered under the terms of the
relevant plans or describe the plan terms that would support such coverage.  They do
not plead exemplar language or even make allegations regarding such language that is
then extrapolated to the remaining plans.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                    Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

Furthermore, to the extent that Plaintiffs try to negate their burden to plead plan terms on the basis of United's purported failure to provide plan documents, Defendants' argument in the Omnibus Reply to the contrary is persuasive:

> Plaintiffs cannot plead coverage by alleging that they were told in phone conversations with United that benefits were available for the performed procedures. Such allegations, while perhaps relevant to the estoppel claim that they allege in Count IV (and now seek to stay), are irrelevant as to whether coverage exists under the terms of the Plans. *See* Pls.' Opp. at 38; *see also Sanctuary*, 2013 WL 149356, at *1-7 (dismissing claim for benefits based on failure to plead coverage despite plaintiffs' assertion that United confirmed coverage during preauthorization telephone calls).  The issue in a claim for benefits under Section 502(a)(1)(B) is whether the terms of the plan provide coverage, and assurances allegedly made over the telephone are not terms of the plan.

(Omnibus Reply at 9).

In short, the Court is inclined to agree that Plaintiffs have failed to meet their pleading burden for purposes of their § 502(a)(1)(B) Count.  The Court notes that this is a close call under the facts of this case, and further observes that the FAC contains allegations that bear on their ERISA benefits Count.  However, the Court will provide leave to amend.  In the Second Amended Complaint, Plaintiffs will have to plead that for each plan, the terms of the plan: (1) provide coverage for each of the procedures at issue in this case; and (2) dictate that these covered services would be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by outpatient surgical centers), which must be specified.  Plaintiffs should then allege that Defendants failed to reimburse for the covered services provided by Plaintiffs according to this reimbursement rate provided in the plans.  Given the allegations in this case regarding absence of access to plan documents, the Court will permit these allegations to be made "on information and belief."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

### 3.  Plaintiffs' Counts as Barred by Plan Terms

Defendants also argue that Plaintiffs' Counts are barred by various plan terms, such as anti-assignment provisions, forum selection clauses, coverage exclusions, and time limitations.  (Omnibus Mot. at 13-17).  Plaintiffs contend that the SPDs submitted with the Motions are not proper representations of the plans' terms, and therefore cannot be relied upon as proof that plans contain various provisions.  (Opp. to Omnibus Mot. at 12-13 ("The vast majority of submissions by Plan Defendants consist of selective excerpts from their Summary Plan Descriptions (SPDs), ***rather than the operative plan documents that govern the plans***.") (emphasis in original)).

### a.  SPDs and Plan Documents

"ERISA requires welfare benefit plans to be established and maintained pursuant to a written instrument. 29 U.S.C. §§ 1102(a)(1), 1102(b).  In addition, an employer must provide employees with a written Summary Plan Description ('SPD') which describes the employees' plan. 29 U.S.C. § 1022(a)(1)."  *Pisciotta*, 91 F.3d at 1329.

An SPD is the "statutorily established means of informing participants of the terms of the plan and its benefits."  *Alday v. Container Corp. of Am.,* 906 F.2d 660, 665 (11th Cir. 1990) (citing 29 U.S.C. §§ 1022(a) and 1102; 29 C.F.R. § 2520.102–2).  The rule in the Ninth Circuit used to be that an SPD is a plan document that ought to be considered when interpreting an ERISA plan.  *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc*., 293 F.3d 1139, 1143 (9th Cir. 2002) (noting that 29 U.S.C. § 1104(a)(1)(D) requires plan fiduciaries to act "solely 'in accordance with the documents and instruments governing the plan,'" "[e]mployers are required to furnish a copy of the SPD (not the master plan document)" pursuant to 29 U.S.C. § 1022(a)-(b), and the SPD is the "'statutorily established means of informing participants of the terms of the plan and its benefits,'" and that, therefore, the Ninth Circuit would follow other courts that have held that the SPD is part of the ERISA plan (citations omitted)).  *See also Pisciotta*, 91 F.3d at 1330 (granting motion for summary judgment as to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)           Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

alleged promise when the document purportedly containing it was not an SPD, and therefore there were no existing plan documents that supported such a promise).

However, the Supreme Court's decision in *Cigna Corporation v. Amara*, --- U.S. ---, 131 S.Ct. 1866 (2011) has shifted the landscape.  In *Amara*, the Court clarified that SPDs make statements "*about* the plan, but . . . their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *Id*. at 1878 (emphasis in original).  A recent decision by a court in this District discussed the impropriety of relying on *Bergt* in light of *Amara*.  *See Mull v. Motion Picture Indus. Health Plan*, --- F. Supp. 3d ---, 2014 WL 4854548 (C.D. Cal. Sept. 30, 2014) ("The Court cannot follow [the statement that the SPD is a plan document and should be considered when interpreting an ERISA plan] in *Bergt*, because it was effectively overruled by *Amara's* holding [that SPDs, by themselves, do not constitute the terms of the plan].").

In *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124 (10th Cir. 2011), a case involving denial of residential treatment costs under a benefits plan, the Tenth Circuit applied *Amara* in deciding whether a plan administrator was entitled to deferential review under the terms of the relevant plan.  *Eugene S.*, 663 F.3d at 1131.  The *Eugene S.* court viewed *Amara* as providing one of two propositions under the facts of that case: "(1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents." *Id*.  However, the court did not need to follow either proposition, since it decided that the language of the relevant SPD *was* the language of the plan. *Id*.  The court did note, however, that a district court can only rely on the language of an SPD once it has concluded that the SPD is part of the underlying plan. *Id*.

In contrast, in *Zalduondo v. Aetna Life insurance Company*, 941 F. Supp. 2d 125, 133-34, 136 (D.D.C. 2013), the court evaluated a less clear-cut situation than *Eugene S.*  Namely, an SPD that was in evidence provided Aetna with discretion, but the plan documents themselves were not in evidence, and the SPD contained a disclaimer that it is not the verbatim language of the plan (though it did not "expressly

CIVIL MINUTES—GENERAL                                              70

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

un-incorporate the SPD from the Plan"). *Zalduondo*, 941 F. Supp. 2d at 133-36.  As such, the court noted that it "may *eventually* rely on the terms in the SPD . . . but only after the SPD *and* the official Plan document are before the Court so that the parties may argue, and so that the Court may decide, whether the *Firestone* discretionary standard of review applies and whether Zalduondo was inappropriately denied benefits under the terms of the Plan."  *Id*. at 136 (emphasis in original).  The court, accordingly, denied Aetna's motion for summary judgment without prejudice and ordered the plan documents to be produced.  *Id*.  *See also McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 182 n.5 (4th Cir. 2012) ("We note that, per *Amara*, 'summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan. . . .' 131 S.Ct. at 1878. The record before us reflects, and the parties at oral argument confirmed, that only the summary plan document, and not the plan itself, was before the district court and before us.  Because McCravy's claims and MetLife's defenses depend upon the contents of the plan, their resolution on remand will require the actual plan documents.").

**b.  Consideration of SPDs in This Case**

Plaintiffs initially mention SPDs as part of a benefit plan.  (FAC ¶ 867 ("No provisions in those benefit plans, whether in their Summary Plan Descriptions (SPDs) and Evidences of Coverage (EOCs), justified the failure to pay the usual and customary fees for services charged by outpatient surgical centers such as those managed and operated by the Plaintiffs, and to instead pay nothing.")).  However, Plaintiffs later contest the use of SPDs as proper representation of the plans in their Opposition to the Omnibus Motion: "The vast majority of Defendants submitted Summary Plan Descriptions ('SPDs'), which are not operative plan documents and cannot be relied upon to dismiss Plaintiffs' claims."  (Opp. to Omnibus Mot. at 2).

Defendants argue in the Omnibus Reply that for health plans, unlike the retirement plans at issue in *Amara*, the SPDs "almost always constitute the 'plan' itself (or a portion of it)."  (Omnibus Reply at 8).  Moreover, Defendants argue that "in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

colloquy with the Court at the August 6, 2014, hearing, counsel for Plaintiffs expressly stated that he had 'no objection' to counsel for the Jointly Represented Defendants' suggestion 'to have a single affidavit that would collect and collate . . . excerpts . . . [from the] summary plan descriptions' for the purpose of 'authenticating the various [plan] provisions.'  Sec. Supp. Decl. of Heather M. McCann, Ex. 1 (Hrg. Tr. at 10:3-12:2 (Aug. 6, 2014)).  As discussed at the hearing, submitting 6-10 pages of excerpts of the relevant provisions of SPDs that often exceed 60-70 pages lessens the burden on the Court.  *Id*. at 10:11-21."  (Omnibus Reply at 8 (footnote omitted)).

The transcript for the August 6, 2014 hearing does, indeed, appear to support Defendants' contention.  However, under *Amara*, the Court does not have power to consider the SPDs as plan terms without evaluating whether the SPDs are part of the plan in each instance.  While several Defendants posit that SPDs often or even generally constitute the terms of the relevant plan, the Court has before it no authority demonstrating that this is always the case, such that consideration of the SPDs would be acceptable absent confirmation that this is so in each instance.

In light of *Amara*, statements that SPDs generally constitute the plan terms are insufficient to demonstrate that any specific SPDs proffered reflect relevant plan language.  If the documents submitted are not manifestly reflective of the operative plan terms, the Court will not consider them at this time in support of arguments that any particular plan contains specific language, including anti-assignment clauses, forum selection clauses, and contractual time limitations.

### c.  Specific Types of Plan Terms

Separate and apart from which documents may be considered when evaluating "plan terms," various types of terms are also at issue.  As the effect of anti-assignment provisions has been previously evaluated, the Court will not reiterate this discussion here.  However, the Court will discuss the effect of forum selection clauses, coverage exclusions, and time limitations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015**

Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

### i.    Forum Selection Clauses

Defendants argue that plans containing forum selection clauses "should be dismissed because their contracts explicitly govern where a legal dispute must be resolved, and it is not in this Court."  (Omnibus Mot. at 15).  Alternatively, Defendants request that the cases against these Defendants be transferred "to the appropriate courts under 28 U.S.C. §1404(a)."  (*Id.* at 15-16).

### 1.  Enforceability of Forum Selection Clauses

For the reasons discussed in the Order adjudicating the Aegon Motion, the Court rules that forum selection clauses are applicable in ERISA cases such as this. Moreover, Plaintiffs have failed to demonstrate that enforcing forum selection clauses would be "unreasonable" in this case, as that term is understood under *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972).  Further, Plaintiffs have not demonstrated why this case should be among the "exceptional" cases in which forum selection clauses are insufficient to defeat transfer, as discussed in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas ("Atlantic Marine")*, --- U.S. ---, 134 S.Ct. 568 (2013).  Finally, Plaintiffs arguments regarding lack of notice are unpersuasive.

However, even resolving all of these threshold issues, the wording of the various forum selection clauses at issue here will have some bearing on their effect.

### 2.  Permissive and Mandatory Clauses

"The prevailing rule is . . . that where venue is specified with mandatory language the clause will be enforced."  *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (citations omitted).  "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one."  *N. Cal. District Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995).  However, "[w]hen only jurisdiction is specified the clause will generally not be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

enforced without some further language indicating the parties' intent to make
jurisdiction exclusive."  *Docksider, Ltd.,* 875 F.2d at 754.

As such, the effect of mandatory and permissive clauses will potentially vary in
this case.  The Court evaluates these two lines of analysis below.

### 3.  Effect of Mandatory Forum Selection Clauses

Plaintiffs argue that "Defendants cite no cases suggesting that dismissal for
improper venue under 28 U.S.C. § 1406 is warranted, rather than transfer."  (Opp. to
Omnibus Mot. at 37).  Defendants, in turn, contend that:

> Contrary to Plaintiffs' argument . . . the Sixth Circuit considered
> whether dismissal or transfer is warranted, and upheld the district
> court's dismissal of the plaintiff's complaint based on the forum
> selection clause.  *Smith*, 2014 WL 5125633, at *8-9.  Defendants'
> forum selection clauses are valid and should be enforced either by
> dismissal under Rule 12(b)(6) or, in the alternative, transferred."

(Omnibus Reply at 30).

At the outset, the Court notes that the parties seem to disagree as to what may be
the relevant basis for dismissal in light of the forum selection clauses: § 1406 or Rule
12(b)(6).  The Omnibus Motion mentions neither § 1406 nor Rule 12(b)(3), both of
which provide for dismissal in the event of improper venue.

In Defendants' cited case, *Smith v. Aegon Companies Pension Plan,* 769 F.3d
922 (6th Cir. 2014), the Sixth Circuit found that the district court's dismissal pursuant
to Rule 12(b)(6), when the plaintiff made no request for a transfer of venue, was not an
abuse of discretion.  *Smith*, 769 F.3d at 933-34.  The *Smith* court noted that *Atlantic
Marine* rejected the argument that dismissal under Rule 12(b)(3) or 28 U.S.C. §
1406(a) was the appropriate mechanism through which to enforce a forum selection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

clause (presumably, when the initial venue is otherwise proper under federal statute). *Smith*, 769 F.3d at 933-34 (citing *Atlantic Marine*, 134 S.Ct. at 575).  However, the *Smith* court also noted that *Atlantic Marine* had not involved a motion to dismiss pursuant to Rule 12(b)(6) and the Court had "declined to apply its holding to Rule 12(b)(6) dismissals."  *Id*. at 934 (citing *Atlantic Marine,* 134 S.Ct. at 580).

Here, the forum selection clause-based arguments in the Omnibus Motion are phrased in terms of dismissal or, in the alternative, transfer under § 1404(a).  (Omnibus Mot. at 15-16 ("These plans, referred to as the 'Forum Selection Clause Plans,' see JR Defs.' Appendix C, should be dismissed because their contracts explicitly govern where a legal dispute must be resolved, and it is not in this Court.  Alternatively, the Forum Selection Clause Plans move to transfer their respective cases to the appropriate courts under 28 U.S.C. §1404(a).")).  As such, the scenario before the Court is somewhat distinguishable from *Smith*, in which transfer had not been requested.  Even so, when assessing the proper remedy in this case, the Court must evaluate whether transfer pursuant to § 1404(a) (which is only applicable if the initial venue is proper) or dismissal pursuant to Rule 12(b)(6) would be appropriate.

### a.  Transfer and 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice," an action may be transferred pursuant to 28 U.S.C. § 1404(a) to another "district or division" where it may have been initially brought or a "district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice."  *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007).  However, a motion to transfer should not merely shift the inconvenience from the moving party to the opposing party.  *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

Notably, § 1404 allows only for the transfer of an entire "civil action."  28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015**

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                 Inc., et al.

justice, a district court may transfer any civil action to any other district or division
where it might have been brought or to any district or division to which all parties have
consented."); *see also Chrysler Credit Corp. v. Country Chrysler, Inc*., 928 F.2d 1509,
1518 (10th Cir. 1991) ("Section 1404(a) only authorizes the transfer of an entire action,
not individual claims." (citations omitted)).  "But where certain claims in an action are
properly severed under Fed.R.Civ.P. 21, two separate actions result; a district court
may transfer one action while retaining jurisdiction over the other." *Chrysler Credit
Corp*., 928 F.2d at 1519 (footnote and citations omitted).  Therefore, any § 1404(a)
transfer in this action would either be wholesale (a scenario that is clearly not feasible),
or preceded by severance of Counts against particular Defendants.

        With this in mind, "[t]he threshold question under Section 1404(a) requires the
court to determine whether the case could have been brought in the forum to which the
transfer is sought." *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D.
Cal. 2010) (citing 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co*., 758 F.2d 409, 414
(9th Cir. 1985)).  "If venue would be appropriate in the would-be transferee court, then
the court must make an 'individualized, case-by-case consideration of convenience and
fairness.'" *Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.
2000)).

        "In the typical case not involving a forum-selection clause, a district court
considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both
the convenience of the parties and various public-interest considerations." *See Atlantic
Marine*, 134 S.Ct. at 581 (footnote omitted).  "The calculus changes, however, when
the parties' contract contains a valid forum-selection clause, which 'represents the
parties' agreement as to the most proper forum.'" *Id.* at 581 (quoting *Stewart Org.,
Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  The presence of a valid forum selection
clause alters the § 1404(a) analysis in three ways: (1) "the plaintiff's choice of forum
merits no weight" if the suit was filed in violation of the forum selection clause; (2) the
court "should not consider arguments about the parties' private interest"; and (3) the
court to which the action is transferred should not apply "the original venue's choice-
of-law rules." *Id.* at 581-83.   Thus, the presence of a mandatory forum selection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:       Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

clause will render a § 1404(a) transfer analysis more straightforward than it might otherwise be.

The Court now turns to the first question that determines whether § 1404(a) is applicable in the present suit: propriety of initial venue.

### b.  Propriety of Venue in This Court

General venue in diversity and federal question cases is governed by 28 U.S.C. § 1391(b).  However, ERISA contains its own venue statute.  *See* 29 U.S.C. § 1132(e)(2).  While venue generally must be proper as to all claims, the doctrine of "pendent venue" can permit proper venue as to a federal claim to satisfy venue requirements for closely related claims.  *See Martensen v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013), *on reconsideration in part*, No. C-12-05257 JSC, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013) ("While the Ninth Circuit does not appear to have addressed the issue, courts in this District have applied the pendent venue doctrine, which holds that if venue is proper on one claim, the court may find pendent venue for claims that are closely related.  A court may consider the principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants in making its decision.  These are the same factors the Ninth Circuit has directed courts to consider when evaluating whether to apply the doctrine of pendent personal jurisdiction." (citations omitted)).  Moreover, a specific venue provision will control over a general provision.  *See, e.g.*, *Pacer Global Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 790-91 (E.D. Wis. 2003) ("To summarize, where a special venue provision lays venue of a claim in certain specified districts, such provision controls venue for all claims arising out of the same nucleus of operative facts. This is so because all such claims may be classified as one cause of action for purposes of venue.  Any claim governed by the general venue statute that is part of the cause of action may be brought in the district specified by the special venue statute under the doctrine of pendent venue." (citations and footnote omitted)).  As such, in light of ERISA's specific venue provision and the interrelated nature of the Counts at issue, the Court considers the ERISA venue provision controlling in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

Pursuant to 29 U.S.C. § 1132(e)(2), an ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  The Ninth Circuit has recognized that Congress's inclusion of the word "found" in this statute is indicative of its intent "to expand, rather than restrict, the range of permissible venue locations" for ERISA actions.  *Varsic v. U.S. Dist. Court for Cent. Dist. of California*, 607 F.2d 245, 247-48 (9th Cir. 1979).  For purposes of this statute, a defendant is "found" in a district if personal jurisdiction may properly be exercised over the defendant there.  *Id*. at 248.  As such, this inquiry requires an analysis of whether a defendant's "contacts with the Central District of California are sufficient to satisfy the 'minimum contacts' test for personal jurisdiction" laid out in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  *Id*. at 248-49.

In the Opposition to the Aegon Motion, Plaintiffs assert that venue is proper here under § 1132(e)(2) because the benefits were to be received by Plaintiffs in this District, and "[d]istrict courts hold that the location where the 'breach' takes place for purposes of ERISA venue is where the beneficiary was to receive his benefits."  (Opp. to Aegon Mot. at 6 (citing *Keating v. Whitmore Mfg. Co*., 981 F. Supp. 890, 893 (E.D. Pa. 1997); *Wallace v. Am. Petrofina, Inc*., 659 F. Supp. 829, 832 (E.D. Tex. 1987); *Helder v. Hitachi Power Tools, USA Ltd*., 764 F. Supp. 93, 95 (E.D. Mich. 1991))).  Plaintiffs elaborate that, "[i]n this case, all of the billing for the patients' medical services occurred in this judicial district, and thus the injury that Plaintiffs incurred due to Defendants' failure to pay occurred here."  (Opp. to Aegon Mot. at 6 (citations omitted)).

From the FAC, it is clear that "a defendant resides or may be found" in this District, rendering venue proper here.  This ruling dispenses with the arguments raised in various Supplemental Memoranda that venue is improper in this Court.

The Court further rules that transfer pursuant to § 1404 is preferable to dismissal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015**

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

The entities that have advanced forum selection arguments are: the Alcon Defendants (Omnibus Motion); the CNA Financial Defendants (Omnibus Motion); the Conmed Defendants (Omnibus Motion); the Aegon Defendants (Docket No. 1066); the Dr. Pepper Snapple Group, Inc. Defendants (Docket No. 1149-5); the Enterprise Holdings, Inc. Defendants (Docket No. 1149-6); the OCLC Online Computer Library Center, Inc. (Docket No. 1149-14); the Payless Shoesource, Inc. Defendants (Docket Nos. 1107, 1151); the Probuild Holdings, Inc. Defendants (Docket No. 1149-16); and the Southwest Airlines Co. Defendants (Docket No. 1098).

The Court will evaluate the Payless Defendants' forum selection clause in connection with its permissive forum selection clause analysis below.

As to the rest of these Defendants, the supporting documents provided either are SPDs that the Court cannot rely on in adjudicating the Motions, are not demonstrably the operative plan documents that control the relevant time periods for the claims to which they correspond, and/or contain exceptions such that the Court cannot resolve their applicability at present.  In sum, the Court concludes that it cannot rely at present on any of the proffered documents to transfer Counts against these entities at this time.

### 4.  Effect of Permissive Forum Selection Clauses

The reasoning in *Atlantic Marine* was driven by the overarching policy of honoring the parties' mutual intent to litigate in a designated forum.  The Supreme Court stated that "a valid forum-selection clause . . . 'represents the parties' agreement as to the most proper forum.'"  *Atlantic Marine*, 134 S. Ct. at 581 (quoting *Stewart*, 487 U.S. at 31).  Therefore, "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'"  *Id.* (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

However, where the parties have a permissive forum clause, they arguably have not actually agreed "as to the most proper forum."  Instead, such parties merely consented to the jurisdiction of certain courts.  "Such consent to jurisdiction . . . does not mean that the same subject matter cannot be litigated in any other court."  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (construing a forum selection clause stating that "[t]he Courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or interpretation of this contract" as permissive).  Accordingly, the Court will conduct a § 1404(a) analysis without affording *Atlantic Marine's* deference to permissive forum selection clauses.  However, as discussed below, such permissive clauses—while not controlling—may be weighed as a "significant factor" favoring a transfer under § 1404(a).

Among the Defendants objecting to venue on the basis of a forum selection clause, only one set of arguably relevant, operative plan documents reflects a permissive forum selection clause: the Payless Shoesource, Inc. Medical Plan.  (*See* Payless Shoesource, Inc. Supp. Memo. (Docket Nos. 1107-3, 1151 – 1151-2)); Payless Shoesource, Inc. Reply (Docket No. 1225)).  This clause provides as follows:

> Subject to the applicable provisions of the Employee Retirement Income Security Act of 1974 which provide to the contrary, this Plan shall be administered construed and enforced according to the laws of the State of Kansas or such other state as may be provided for in an HMO or other insured arrangement with respect to matters governed thereby, and in any case, shall be subject to the jurisdiction of courts situated in Kansas or such other state.

(Docket Nos. 1107-3, 1151-2).

The Court will conduct the following analysis on the presumption that the transferee venue would be proper.  Whether transfer would be warranted, however, requires further inquiry.  The Ninth Circuit has noted that "[a] motion to transfer venue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
             Inc., et al.

under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case."  *Jones*, 211 F.3d at 498 (footnote omitted).  Examples of the types of factors the court may consider are:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Id.* at 498-99 (9th Cir. 2000) (footnotes omitted).

In light of the nature of this case, the Court does not at present have specific information about the negotiation of each plan, extensive details regarding the relationship between individual patients and the forum, and the like.  However, the Court will look more generally to the types of considerations articulated by the Ninth Circuit in *Jones*.

Looking first to Plaintiffs' choice of forum, this factor plainly weighs against transfer.

Regarding knowledge of the governing law, in light of dicta in *Atlantic Marine*, stating that "federal judges routinely apply the law of a State other than the State in which they sit," 134 S.Ct. at 584, this factor does not particularly aid the Court's analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-14-02139-MWF (VBKx)          Date: April 10, 2015
Title:       Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

As to the location of witnesses and access to sources of proof, Appendix A to the FAC indicates that the basis for suit against the Aegon Defendants arises from procedures allegedly performed by Plaintiff IMS for Patient 274. (FAC, Appendix A at 454). The FAC alleges that Plaintiff IMS is "a California professional corporation organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California." (FAC ¶ 49). Although it is unclear where Patient 274 resides, it certainly appears that there will at least be some witnesses or proof relevant to IMS (and, presumably, the claims related to Patient 274) located in this District. While there may also be witnesses or proof relevant to the Payless Defendants located in Kansas, this seems, at best, to render this factor neutral.

Ultimately, since the relevant procedure, patient, and billing seemingly have some nexus to this District, the Court is reluctant to make a transfer to a judicial district with a less manifest connection to the procedure at issue. The Court rules that, on balance, consideration of the convenience of the parties and witnesses and the interests of justice weighs against a transfer.

### ii. Coverage Exclusions

#### 1. Failure to Raise During Administrative Process

Plaintiffs assert that "United and the Plan Defendants attempt to raise coverage base[d] defenses that were not raised during the administrative process. Having elected to 'hide the ball' from the Plaintiffs during the administrative process, Defendants are precluded from raising these excuses in litigation." (Opp. to Omnibus Mot. at 28). Plaintiffs contend that this effectively precludes Defendants from asserting here that "all conditions for coverage were not met, or whether certain kinds of procedures (e.g., bariatric surgery) were excluded from coverage entirely." (*Id.* at 29-30). For this proposition, Plaintiffs rely in large part on *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1196 (9th Cir. 2010) and *Harlick v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

*Blue Shield of California*, 686 F.3d 699, 720 (9th Cir. 2012) *cert. denied*, 133 S. Ct.
1492 (2013).

        In *Mitchell*, the insurer/administrator (MetLife) of a plan raised a "date of onset
coverage" defense for the first time in response to an insured's district court complaint.
*Mitchell*, 611 F.3d at 1197.  The plan itself contained the requirement that MetLife
provide reasons for claim denials, reference the plan provisions upon which the denial
was based, and also provided for the same requirements on appeal.  *Id*. at 1200.  The
Ninth Circuit found that MetLife failed to meet these requirements and did not provide
justification for such a failure, and also that MetLife had had "ample opportunity to
assert this coverage defense, had it believed it meritorious."  *Id*.  The court, therefore,
found that MetLife could not be surprised that it was being required to adhere to the
terms of its own plan, and held that MetLife's denial of benefits had been an abuse of
discretion.  *Id*.  In a footnote, the court states that it need not reach the argument that
MetLife waived the right to assert this coverage defense, and that, in any event, the
court was not persuaded that the district court had erred in concluding that MetLife had
waived its right to assert this defense.  *Id*. at 1199 n.2.  The court noted that "[t]he
purpose of ERISA's requirement that plan administrators provide claimants with the
specific reasons for denial is undermined 'where plan administrators have available
sufficient information to assert a basis for denial of benefits, but choose to hold that
basis in reserve rather than communicate it to the beneficiary.'"  *Id*. (quoting *Glista v.
Unum Life Ins. Co. of Am.*, 378 F.3d 113, 129 (1st Cir. 2004)).

        Similarly, in *Harlick*, a plan administrator (Blue Shield) did not raise a medical
necessity defense during the administrative process.  *Harlick*, 686 F.3d at 720.  The
court found that Blue Cross had forfeited the right to rely on this reason for denial of
benefits.  *Id*. at 719-21.  The court noted "[t]he general rule . . . in this circuit and in
others, is that a court will not allow an ERISA plan administrator to assert a reason for
denial of benefits that it had not given during the administrative process."  *Id*. at 719-
20.  "Requiring that plan administrators provide a participant with specific reasons for
denial enable[s] the claimant to prepare adequately for any further administrative
review, as well as appeal to the federal courts.  [A] contrary rule would allow

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

claimants, who are entitled to sue once a claim has been deemed denied, to be sandbagged by a rationale the plan administrator adduces only after the suit has commenced."  *Id*. at 720 (quoting *Mitchell*, 611 F.3d at 1199 n. 2) (internal quotation marks omitted).

      Here, the analysis is complicated by the fact that the issue of "denials" is far from straightforward.  Claims were allegedly denied for a variety of reasons (which Plaintiffs claim were pretextual), but at other times, no final benefits decision was purportedly issued.  This does not appear to be a scenario in which an administrator indisputably had the facts available to it for application of policy exclusions and simply never did; rather, the FAC is replete with allegations that United repeatedly asked for supplemental documentation in order to process the claims at issue.  (*See, e.g.*, FAC ¶¶ 882-84, 953).  (*See also* Omnibus Reply at 12 n. 10 ("Plaintiffs' allegations characterizing United's requests for further information as 'denials' are not sufficient under *Twombly* given their allegations that United requested additional information to decide the claims or proof of authority to proceed.  And although claims that are not acted upon may be 'deemed exhausted' under 29 C.F.R. §2560.503-1(l), they are not actual denials, and that fact does not mean that a full and complete record for all of Plaintiffs' claims for benefits was adopted, or that United had the information necessary to issue a final adverse benefits determination.  *See Jebian v. Hewlett-Packard Co. Empl. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1106 (9th Cir. 2003).")))

      When denials were not definitively issued, barring assertion of coverage exclusions would not advance the purpose underlying the rule that reasons for denial be provided to the claimant.  There would be no "sandbagging" in such an instance, because the claim was never denied in the first place, and therefore assertion of rationales for denial now would not present the same worrying pattern of insurers asserting rationale after rationale for denials.

      In instances where claims were actually denied for other "pretextual" reasons that do not include plan exclusions, the Court is more inclined to apply *Harlick* and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

*Mitchell*, as this would present a more traditional example of the "sandbagging" scenario.

Regardless, however, the Court's conclusion regarding Plaintiffs' failure to plead a prima facie benefits Count renders it unnecessary at present to evaluate whether certain exclusions could be properly asserted to defeat such a Count.  The Court notes that exclusion arguments have been raised by approximately 322 groups of Defendants (*i.e.*, a plan sponsor and the corresponding plan(s)).  However, the Court also observes that these exclusions vary in their terms and effect—for example, some may categorically preclude procedures at issue here, while others prohibit coverage from providers such as Plaintiffs.  At the hearing, for example, the Medco Defendants argued that their plan contains exclusions for both surgical and non-surgical treatment for obesity.

Defendants were asked at the hearing to address the distinctions between coverage (which is Plaintiffs' burden to sufficiently allege) and exclusions (which Defendants bear the burden of demonstrating).  Defendants argued that plan terms that impose conditions before procedures are reimbursable constitute "coverage" issues, which fall under the Plaintiffs' pleading burden (*i.e.*, in order to establish "coverage" under a particular plan for their § 502(a)(1)(B) Count, Plaintiffs must allege that such conditions were satisfied).

The Court certainly acknowledges that courts may well impose technical and specific pleading requirements for purposes of allowing a § 502(a)(1)(B) claim to survive a motion to dismiss.  However, the practical realities of this case and the nature of Plaintiffs' allegations regarding their lack of access to plan terms counsel adoption of the approach discussed above.  Still, as the Court noted at the hearing, Plaintiffs are not absolved of their duties under Rule 11.  To the extent that the litigation to date has provided Plaintiffs with information indicating that they cannot in good faith proceed with particular Counts against specific entities, they risk consequences if they proceed with such Counts in spite of this information.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

## 2.  Factual Issues

Plaintiffs also assert that applying coverage limitations and exclusions implicates questions of fact, such that resolution at this stage is inappropriate.  (Opp. to Omnibus Mot. at 30-32).  Defendants counter by arguing that "Plaintiffs cannot avoid dismissal by alleging that coverage determinations involve 'fact issues.'  Although 'fact issues' might potentially preclude dismissal for certain claims if Plaintiffs had properly alleged a claim for benefits in the first instance, they have not done so." (Omnibus Reply at 5).

Given the Court's analysis regarding Plaintiffs' failure to plead a prima facie Count of entitlement to benefits, it is unnecessary to evaluate at present whether factual issues applicable to coverage exclusions might preclude dismissal.

### iii.    Time Limitations

#### 1.  Whether Time Limitations For Bringing Suit Were Never Triggered Due to Allegedly Deficient Benefit Decisions

Plaintiffs argue that the time limitations in various plans were never triggered because United's letters were too deficient to do so.  (Opp. to Omnibus Mot. at 32-34). Plaintiffs note that "[i]n some cases, the FAC alleges that United simply never issued a final denial," but go on to argue that "even where a final denial issued, Defendants failed to provide proper notice under ERISA explaining why they denied the claim, how it could be perfected, and how it could be appealed."  (*Id*. at 32).  As such, they argue that the denials were deficient under 29 C.F.R. § 2560.503-1 and contractual time limitations never began to run.  (*Id*. at 32-34).

In support of this deficiency argument, Plaintiffs cite to *White v. Jacobs Engineering Group Long Term Disability Plan*, 896 F.2d 344 (9th Cir. 1989).  There, the court found that a plan administrator's benefits termination notice was inadequate when it failed to adhere to the specificity requirements of 29 C.F.R. § 2560.503-1—the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
               Inc., et al.

only rationale given for denial was "information" in the plan administrator's file, the notice cited no pertinent plan provisions on which the denial was based, and provided no indication as to what information would be needed in order to perfect the claim. *Id.* at 349-50. The Ninth Circuit cited to decisions in other circuits that had found that similarly conclusory statements, unaccompanied by explanations or reasons for the denial, were insufficient. *Id.* Based on the inadequate notice, which failed to outline the proper steps for an appeal, the Ninth Circuit found that the plan's 60-day time bar for appeals—calibrated from written notice of an initial benefits decision—was not triggered. *Id.* at 350 (citing *Challenger v. Local Union No. 1 of Internat'l Bridge, Structural, & Ornamental Ironworkers, AFL-CIO*, 619 F.2d 645, 648 (7th Cir. 1980)). The court noted that, otherwise, "[p]lan boards could with impunity deter claimants from timely appealing by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively." *Id.* at 351. The court, in finding that the 60-day appeal time bar was not triggered, also found that administrative exhaustion had not occurred and ordered the case to be sent back to the plan board to be heard. *Id.* at 352. The court also distinguished the remedy sought in *White*, in which the claimant sought to avail himself of the plan's claims review procedure, from the more "drastic" remedy of a district court's review on the merits. *Id.*

Plaintiffs also cite to *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026 (9th Cir. 2006) as confirming the rule established in *White*. In *Chuck*, the court evaluated whether a plan's deficient adherence to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 could preclude ERISA's statutory time bar from triggering. *Chuck*, 455 F.3d at 1029. Specifically, the court evaluated whether a plan's failure to inform a claimant that the claim had been finally denied or provide information regarding internal appeal rights could preclude the running of the ERISA statutory limitation to bring suit. *Id.* at 1032-33. The court ultimately found that a plan's violation of ERISA disclosure and review obligations under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 was "a highly significant," but not "dispositive," factor weighing against finding that the statutory (rather than contractual) statute of limitations had begun to run against a claimant seeking benefits under ERISA. *Id.* at 1031. The court reasoned that an ERISA cause of action accrues either when benefits are denied or the insured has reason to know the

CIVIL MINUTES—GENERAL                                                          87

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

claim has been denied, and in some cases, despite a plan's violation of ERISA provisions, the claimant may independently know that a plan's denial is final such that the statutory time limitation to bring suit in federal court could be triggered.  *Id.* at 1033-36.  As such, "an investigation of the facts of each case is necessary to determine whether a plan nevertheless foreclosed a claimant from any reasonable belief that the plan had not finally decided benefits."  *Id.* at 1036.

Unlike *White*, which dealt with a contractual time limitation for administrative appeals, the Court is primarily concerned at present with contractual time limitations for bringing a suit for benefits.  It stands to reason that a benefits determination which failed to outline the reasons for denial under a plan would not trigger the relatively short administrative appeal time limit calibrated from the review of the initial benefits determination, as was the case in *White*.  Whether the same purportedly deficient benefits decision should permit a Plaintiff to claim an exception to the administrative exhaustion requirement (as discussed below) and also potentially avoid time limitations for bringing suit for judicial review of a benefits determination is less intuitive.  *White* relied on the reasoning that allowing plans to send vague appeal notices and withholding information needed for appeals would permit plans to deter timely claim appeals.  However, this reasoning was not geared towards bringing a timely suit.  Judicial review of claim denials is permissible irrespective of traditional administrative exhaustion when the plan fails to "establish and follow reasonable claims procedures."  29 C.F.R. § 2560.503-1(l).  Ostensibly, a purportedly deficient benefits decision would apprise a claimant that reasonable claims procedures were not being followed, such that administrative remedies would be deemed exhausted and suit could be brought in a timely manner.

While *Chuck* does lend the implication that the same reasoning used in *White* might be applicable to the limitations periods for bringing suit, *Chuck* makes the distinction that *White* dealt with contractual time limitations while *Chuck* evaluated ERISA statutory limitations.  On the whole, it seems qualitatively different to claim that inadequate benefits decisions should preclude a contractual time limit from running when Plaintiffs did not rely on benefits determinations in bringing suit, but

_____

CIVIL MINUTES—GENERAL                                                    88

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

rather seek, in part, to address these purportedly deficient benefit determinations by way of their suit.  This stands in stark contrast to a scenario in which an adverse benefits decision was inadequate to apprise a claimant of what was needed in order to properly appeal the decision through the plan's appeal procedures.

Of course, the plans' triggering events for time limitations are also important factors here.  Defendants argue that many of the relevant triggering events in this case are not related to benefits decisions.  (*See* Omnibus Reply at 25-26).  If time limitations are triggered by a final benefits determination, however, then it stands to reason that allegedly deficient benefits decisions should be insufficient to commence the running of the limitations period.

In sum, Plaintiffs' arguments regarding deficient benefit decisions and contractual time limitations are unpersuasive, except to the extent that any time limitations are triggered by the date of a final benefits decision.  However, in such situations, to the extent that the receipt of final benefit decisions **is** alleged in the FAC (as opposed to requests for additional information or other purportedly nebulous correspondence), this distinction is not applicable.

**2.  Whether the Time Limits For Bringing Suit Were Unreasonable Given United's Purported Conduct**

Plaintiffs contend that the contractual time limits were unreasonable given United's purported delay tactics.  (Opp. to Omnibus Mot. at 34-35).   In support of this argument, Plaintiffs cite *Heimeshoff v. Hartford Life & Accident Ins. Co*., --- U.S. ---, 134 S. Ct. 604, 612-613 (2013), contending that the case "reaffirm[s] that time limitations may be extended where obstacles exist to normal resolution of a claim." (*Id*. at 34).

In *Heimeshoff*, the Supreme Court evaluated a suit for ERISA benefits against a long-term disability insurer.  The plan at issue required a participant to bring suit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:       Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

within three years after "proof of loss" is due; however, proof of loss is due prior to the completion of the plan's administrative process, such that the administrative exhaustion requirement effectively shortens the contractual limitations period. *Heimeshoff*, 134 S. Ct. at 608.  The Court was tasked with determining whether the contractual limitation was, therefore, enforceable.  *Id*.  In deciding that it *was* enforceable, the Court discussed that: the limitation was not unreasonably short on its face, as it would provide approximately one year for claimants to file suit after the completion of the administrative review; the limitation period did not undermine ERISA's two-tiered remedial scheme (comprised of the administrative process and subsequent judicial review); and there was only insubstantial evidence that the limitations period would harm diligent participants.  *Id*. at 612-15.  The Court distinguished *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355 (1997), in which the Court did not enforce a 1-year statute of limitations for Title VII employment discrimination actions when the EEOC faced a backlog of 18 to24 months.  *Heimeshoff*, 134 S. Ct. at  613.  The Court said that, absent evidence of similar obstacles to bringing a timely § 502(a)(1)(B) claim, the plan's limitation provision was reasonable.  *Id*.

As discussed above, the Court also stated that, "even in the rare cases where internal review prevents participants from bringing § 502(a)(1)(B) actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed.  If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations period as a defense."  *Heimeshoff*, 134 S.Ct. at 615.  Moreover, "[t]o the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply."  *Id*. (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990)).

Here, it is not clear that the Supreme Court's discussion/distinction of *Occidental* would support Plaintiffs.  In *Occidental*, an institutional backlog meant that there was little chance that claimants *could* bring claims that were not barred by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:         Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
               Inc., et al.

statute of limitations.  This seems to be more of a fundamental obstacle to timeliness
than United's alleged dilatory conduct, particularly in light of the fact that Plaintiffs
plead an exception to administrative exhaustion in order to bring the instant suit, and
therefore do not rely on adherence to the administrative process or timelines.

        In sum, Plaintiffs' argument regarding United's alleged conduct is not
persuasive.  The Court does not address at present whether any of the individual time
limitations are *per se* unreasonable, an issue not raised by Plaintiffs.

### 3.  Waiver/Estoppel and Time Limitations for Bringing Suit

        Plaintiffs also contend that they are "entitled to assert waiver and estoppel" as to
contractual time limitations.  (Opp. to Omnibus Mot. at 35).  Plaintiffs urge that
"application of these defenses necessarily involve questions of fact that are properly
not before the Court."  (*Id.*).

        As discussed above, the Supreme Court has previously stated that "in the rare
cases where internal review prevents participants from bringing § 502(a)(1)(B) actions
within the contractual limitations period, courts are well equipped to apply traditional
doctrines that may nevertheless allow participants to proceed.  If the administrator's
conduct causes a participant to miss the deadline for judicial review, waiver or estoppel
may prevent the administrator from invoking the limitations period as a defense."
*Heimeshoff,* 134 S. Ct. at 615.

        The Court will analyze whether these defenses apply in the present action.

### a.  Estoppel and Time Limitations

        "As a general rule, a defendant will be estopped from setting up a statute-of-
limitations defense when its own prior representations or conduct have caused the
plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible
for that result."  *Gordon*, 749 F.3d at 750 (internal quotation marks omitted) (quoting

---

**CIVIL MINUTES—GENERAL**                                        **91**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:      Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

*LaMantia v. Voluntary Plan Adm'rs, Inc*., 401 F.3d 1114, 1119 (9th Cir. 2005)).  The Ninth Circuit has held that the six-prong test required for recovery of benefits under an ERISA estoppel theory is not applicable to the invocation of estoppel regarding timeliness of filing suit pursuant to a statute of limitations.  *LaMantia*, 401 F.3d at 1119-20.

The present case is distinguishable from *LaMantia*, in which the Ninth Circuit held that a plan was estopped from asserting either a contractual limitations period or the ERISA statutory limitations period.  *LaMantia*, 401 F.3d at 1121.  In that case, over the course of several years, the plan administrator "made several representations to [the claimant] regarding the status of her internal appeal which [the claimant] reasonably relied upon, and . . . [the claimant's] reliance caused her prejudice by her failure to file suit within either limitations period."  *Id.* at 1120.  The plan and regulations in effect at the time contained a provision that the appeal would be "deemed denied" after the expiration of a certain period of time (120 days), but the communications between the parties reflected an understanding that the claimant's appeal would be placed in suspension until the plan received further medical records and a final decision on the merits was rendered.  *Id*. at 1116-20.  During the parties' communications, the plan "never relied on or even mentioned the contractual limitations period" (even during communications on the eve of and following its expiration), and "it never considered [the plaintiff's] claim to be fully denied until August 24, 2001, when a final decision *on the merits* was rendered."  *Id*. at 1120 (emphasis in original).  As such, the plan could not rely on the expiration of the 120-day "deemed denied" date as the accrual of the claim for statutes of limitations purposes, and claimant's suit, filed October 17, 2001, was timely.  *Id*. at 1121.

Here, apart from the argument discussed below regarding a purported failure to adhere to an affirmative statutory duty to disclose time limitations, it is unclear what Plaintiffs contend Defendants did or said that would have caused them to run afoul of any applicable contractual statutes of limitations.  The Court sees no allegations akin to those in *LaMantia* that United affirmed that the claims were open and under review pending the occurrence of certain events.  It is true that *LaMantia* and the present case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
               Inc., et al.

both do involve a situation in which additional records were requested from the
claimants, but *LaMantia* includes something more: assurances that claims were being
held open so as to negate the timeframe in which they otherwise would have been
"deemed denied."  Indeed, Plaintiffs appear to consider United's EOBs requesting
additional documentation to be denials (*see, e.g.*, FAC ¶ 953 Patient 4 ¶ (D)), and the
FAC contains no allegations of assurances that the appeals were pending.

      Plaintiffs allege dilatory conduct on the part of United, which purportedly
dragged out claim adjudication for months or years.  (*See, e.g.*, FAC ¶¶ 1023, 1027).
However, Plaintiffs are plainly aware that administrative exhaustion is not always
necessary to bring suit, given that they plead exceptions to this doctrine, including the
exception for a failure of an administrator to establish or adhere to adequate claims
procedures.  In light of 29 C.F.R. § 2560.503-1,  Plaintiffs had reason to know if
claims procedures were not being adhered to—and, therefore, whether they could
potentially bring suit—rather quickly.  *See Heimeshoff*, 134 S. Ct. at 613 ("If the plan
fails to meet its own deadlines under these procedures, the participant 'shall be deemed
to have exhausted the administrative remedies.' § 2560.503–1(l ). Upon exhaustion of
the internal review process, the participant is entitled to proceed immediately to
judicial review, the second tier of ERISA's remedial scheme.").

      In short, assuming estoppel might otherwise be applicable in this context, the
Court rules that the use of estoppel to preclude application of contractual time
limitations would be improper in this suit based on the allegations in the FAC.

                    **b.  California Insurance Code Section 790.10
                         and 10 C.C.R. Section 2695.4**

      Plaintiffs contend that Defendants are estopped from asserting any contractual
time limitations because the deficient adverse benefit decisions never mentioned such
limitations, and that the policies regulated by the California DOI require affirmative
disclosure of such provisions pursuant to Ins. Code section 790.10 and 10 C.C.R.
section 2695.4.  (Opp. to Omnibus Mot. at 35-36).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

The Ninth Circuit has already noted that this regulation is preempted as applied
to self-funded plans by operation of ERISA's deemer clause, and has declined to
incorporate the disclosure requirements into the federal common law.  *See Scharff v.
Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907-08 (9th Cir. 2009).  The
Court is under the impression that the parties are working to eliminate or have
eliminated any fully-insured plans from this litigation, leaving only self-insured plans.
As such, Plaintiffs' reliance on these provisions as providing affirmative disclosure
duties, the violation of which would support estoppel allegations, is unavailing as to
the relevant remaining plans.

### c.  Waiver and Time Limitations

Plaintiffs contend that "Defendants have waived their rights to raise their
contractual limitation periods because the deficient adverse benefit determinations that
they issued ***failed to disclose the time limitations upon which Defendants now rely***."
(Opp. to Omnibus Mot. at 35 (emphasis in original) (citing *Moyer v. Met. Life. Ins.
Co*., 762 F.3d 503, 506-07 (6th Cir. 2014); *Solien v. Raytheon Long Term Disability
Plan #590*, CV 07-456 TUC DCB, 2008 WL 2323915 (D. Ariz. June 2, 2008))).

In *Moyer*, the Sixth Circuit held that a claims administrator was obligated to
send notice of a contractual time limitation for judicial review when it sent an adverse
benefits determination letter to an ERISA plan participant.  *Moyer,* 762 F.3d at 505.
*Moyer* relies on a reading of 29 C.F.R. § 2560.503–1(g)(1)(iv)—requiring that a
benefit determination notification contain "[a] description of the plan's review
procedures and the time limits applicable to such procedures, including a statement of
the claimant's right to bring a civil action under section 502(a) of the Act following an
adverse benefit determination on review"—as encompassing a duty to disclose time
limitations related to the right to bring a civil action.  *Moyer*, 762 F.3d at 505.  The
*Moyer* court also cites to decisions in various other circuits that supports the same
interpretation of 29 C.F.R. § 2560.503–1(g)(1)(iv).  *Id.* at 505-506.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)**            **Date:  April 10, 2015**

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

However, the Ninth Circuit (in a case that precedes *Moyer*), has found no such duty.  *Scharff*, 581 F.3d at 907-08.  In *Scharff*, the Ninth Circuit declined to adopt a "California regulation requiring insurers to inform claimants expressly of statutes of limitations that may bar their claims" into the federal common law.  *Id*. at 901.  There, the administrator of a self-funded plan sent a final benefits decision that disclosed the plan participant's right to bring a civil action under § 502(a), but provided no information about the one-year contractual time limitation for doing so (triggered by the denial of the claim appeal).  *Id*. at 902-03.  The court saw no requirement in ERISA that the administrator communicate the contractual time limit to the participant during their correspondence.  *Id*. at 907-08 ("Plaintiff concedes that the Plan met all applicable ERISA disclosure requirements and that MetLife was not obligated under ERISA to inform her of the deadline.  She argues, however, that we should impose an additional 'duty to inform' on claims administrators, drawn from a California insurance regulation.  We decline to do so.").

While *Scharff* appears to be at odds with *Moyer*, and despite *Scharff's* recognition of a desire for harmony among the circuits in deciding such ERISA issues, the Court is bound by Ninth Circuit precedent as it currently stands.  As such, assuming that waiver might otherwise be applicable in this context, United's purported failure to disclose (absent a duty that it do so) is not a persuasive reason to bar application of the contractual time limits here.

## 4.  Additional Types of Time Limitations

As discussed above, the foregoing analysis largely pertains to time limitations that bear on timely initiation of suit for benefits.  To the extent that any initial claim submission (calibrated from the date of service) is untimely under the terms of the corresponding plan, the Court would be inclined to rule that Counts pertaining to these submissions are, likewise, untimely.  This is, of course, contingent upon the requirement that such limitations be contained within relevant, operative plan documents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)               Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

Administrative review timelines are discussed below in the context of administrative exhaustion.

## 5.  Factual Issues and Time Limitations

Finally, Plaintiffs argue that "ambiguities in some of the contractual limitations create factual issues will arise that cannot be resolved now."  (Opp. to Omnibus Mot. at 36).  Defendants counter:

> Plaintiffs next claim that ambiguities contained in "some" of the contractual limitations periods create factual issues that cannot be resolved on a motion to dismiss.  *See* Pls.' Opp. at 36.  The only "ambiguity" identified, however, involves the phrase (or variations on the phrase) "proof of loss."  *Id*.  At the outset, that phrase is not contained in many of the limitations periods identified by Defendants and, as a result, does not apply to such plans.  *See* Defs.' Mem., App'x E.  To the extent, however, that the phrase "proof of loss" appears in a contractual limitations period, there is nothing ambiguous about its meaning.  Indeed, the Supreme Court addressed a plan provision requiring "participants to bring suit within three years after 'proof of loss' is due" in *Heimeshoff*, 134 S. Ct. at 608.  Although the phrase was not defined, neither the Supreme Court, nor the parties, considered the phrase to be ambiguous.  In fact, the Court noted that the "limitations provision at issue is quite common" and that the "vast majority of States require certain policies to include 3-year limitations periods that run from the date proof of loss is due."  *Id*. at 614-15.  Remarkably, despite the prevalence of the phrase, Plaintiffs do not cite a single case suggesting that the phrase is ambiguous.

(Omnibus Reply at 29).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)           Date:  April 10, 2015

Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                   Inc., et al.

Regardless, however, the Court's conclusion regarding Plaintiffs' failure to
plead a prima facie benefits Count renders it unnecessary at present to evaluate
whether certain time limitations bar this Count against the Employer and Plan
Defendants.  To the extent Defendants contend that these limitations bar the additional
Counts against them, the Court notes that the deficiencies in either standing or the
sufficiency of allegations supporting these Counts dispenses with the need to rely on
such time limitations at present.

### 4.  Failure of Plaintiffs' Counts Due to Improper Claim Administrator, Failure to Exhaust Administrative Remedies, Assertion of Claims on Behalf of Non-Party, and Bankruptcy

Finally, United argues that Plaintiffs' Counts fail because United was not the
claims administrator during the relevant time period, certain Plaintiffs failed to exhaust
their administrative remedies, and Plaintiffs attempt to assert claims on behalf of
"Valley Surgical Center," which is not a party to the action.   (Omnibus Mot. at 17-19).

### a.  Improper Claims Administrator

Defendants argue that "[t]he only thread common to the claims against the
Employer and Plan Defendants is that United was the third party claims administrator
for the claims at issue, but for certain Defendants, United was not the claims
administrator at the relevant time."  (*Id*. at 17-18).  In turn, "Plaintiffs clarify that they
are not seeking reimbursement through this lawsuit for claims that were not submitted
to, and processed by, United."  (Opp. to Omnibus Mot. at 46).  However, Plaintiffs go
on to contest that the inconsistencies raised by Defendants are "not fatal, as the
Appendix does not purport to be a comprehensive list of every medical service for
every patient who is at issue under each plan."  (*Id*.).

Plaintiffs first note many apparent errors in the dates listed in the FAC, and note
that they only meant to include dates for which United was the claims administrator.
(*Id*. at 46- 47).  Next, Plaintiffs combat the allegations that certain Defendants never

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
             Inc., et al.

used United by citing to claims they have received on behalf of these Defendants, or
entities with somewhat related names, during the relevant time period.  (*Id*. at 47).

### i.   Defendants Did Not Use United During Time Periods
Alleged in FAC

As to this first category, Plaintiffs are once again advised that an opposition brief
is an inappropriate vehicle for correcting errors in the FAC; Plaintiffs must go through
the proper procedural channels to correct errors in the operative pleading.
Nevertheless, given the seeming agreement among the parties that the claims listed for
the contested groups are not for the proper time periods and yet were erroneously
included, the Court sees no reason why these claims should not be dismissed.  As such,
the Court need not evaluate at present whether the SPDs included in the relevant
declarations would be sufficient to reflect the actual claims administrator for the
various plans during the time periods alleged.  The parties to whom this is applicable
are as follows: the ESRI Defendants (Docket No. 1062-9) (Opp. to Omnibus Mot. at
46); the Performance Food Defendants (Docket No. 1062-10) (Opp. to Omnibus Mot.
at 46-47); the Shaw Group Defendants (Docket No. 1145) (Opp. to Omnibus Mot. at
47).

However, the Court cannot agree that such inaccuracies would not generally be
fatal due to the fact that "the Appendix does not purport to be a comprehensive list of
every medical service for every patient who is at issue under each plan."  The FAC is
meant to give the Defendants notice of the allegations against them.  As the FAC and
Appendix A allege facts regarding only one patient per Employer and corresponding
Plan Defendant(s), the failure of Plaintiffs to tie such patient and related services to
United renders the allegations against the corresponding Plan and Employer
Defendants completely irrelevant to the activities purportedly at issue in the FAC.  In
short, if the allegations made pertaining to a patient have no nexus to United, and yet
are the only allegations included for specific Plan and Employer Defendants, Plaintiffs
have failed to state a claim in relation to those Plan and Employer Defendants (or
United, as pertains to that patient).  Dismissal of such Plan and Employer Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

is appropriate, as is the dismissal of any claims against United pertaining to
participants in these dismissed Plans.  If the Plaintiffs wish to re-plead to include claim
lines for which United purportedly served as claims administrator, they must do so
through proper procedural channels.  For the moment, however, those parties listed
above (for which Plaintiffs do not dispute that improper time frames have been
alleged) will be dismissed.

In their Supplemental Memorandum (Docket No. 1095), the Red Wing Shoe
Company Defendants argue that UMR, not United, was the claims administrator during
the timeframe relevant to this suit.  Support for this argument is provided in the form of
an ASA attached to the Declaration of Michelle S. Lewis (the "Lewis Declaration").
(Red Wing Shoe Company Supp. Memo., Lewis Declaration (Docket No. 1095) ¶¶ 4, 6
Ex. B (Docket No. 1095)).  However, while it is clear that the document appended is
an ASA, it is not clear to which plan it pertains or the responsibilities it allocates.  (*Id*.).
As such, the Court is not convinced that it can rely on this document to dismiss Counts
against these particular entities at this time.

Similarly, additional Defendants argue in their Supplemental Memoranda that
United is not the claims administrator for the time period alleged in the FAC and
Appendix A: the Ensign Defendants (Docket No. 1088); and the Whirlpool Defendants
(Docket No. 1093).  However, the support for these arguments stems from documents
on which the Court cannot rely at this time to dismiss Counts against these particular
entities.

## ii.   Defendants Never Used United as Claims
##       Administrator

As to the latter category of purported errors raised in the Omnibus briefing, there
appear to be extrinsic factual issues that will bear on resolution, such that dismissal is
inappropriate at this early stage in the litigation.  However, Plaintiffs are advised to
proceed in good faith in pursuing claims for plans that are alleged not to have existed
or not to have used United in the briefing to date.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

The Defendants to whom this pertains, as listed in the Omnibus briefing, are the CareFusion Defendants (Docket No. 1149-2) (Opp. to Omnibus Mot. at 47).

The Union Pacific Defendants also raised a similar argument, but, as discussed above, Plaintiffs have settled with these Defendants.

### b.  Failure to Exhaust Administrative Remedies

Defendants argue that "[t]he claims against certain Plan and Employer Defendants should be dismissed because the facts alleged in the Amended Complaint make clear that certain Plaintiffs failed to exhaust their administrative remedies, as they must do 'before bringing suit in federal court.'"  (Omnibus Mot. at 18 (citations omitted)).  Defendants elaborate that, "[f]or example, in many instances, Plaintiffs acknowledge that they failed to respond to requests for information, which demonstrates a failure to exhaust.   In other instances, the Plans may include a final level of appellate review performed by employees of the alleged sponsor—and Plaintiffs repeatedly acknowledge that they failed to submit any claims to these entities."  (*Id.* (citations omitted)).

Plaintiffs, in turn, argue that the requisite administrative exhaustion under ERISA has been satisfied because: "Defendants failed to meet their antecedent duty to issue adequate claim and appeal denials, so Plaintiffs were not required to engage in further appeals, which, in any case, would be futile."  (Opp. to Omnibus Mot. at 2).

### i.    Exhaustion Requirement and Exceptions

As a general rule, prior to bringing an ERISA claim in federal court, a plaintiff must exhaust administrative remedies under the relevant benefit plan.  *Diaz v. United Agr. Emp. Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995).  "Although not explicitly set out in the statute, the exhaustion doctrine is consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Id.* (citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980)).  "[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they should usually do so." *Amato*, 618 F.2d at 568.

There is, however, a distinction between claims for relief that only allege violations of the terms of ERISA statutes (which do not require exhaustion), and claims for relief that necessitate in inquiry into the parties' rights and duties under a plan (which do). *See Graphic Commc'ns Union, Dist. Council No. 2, AFL-CIO v. GCIU-Employer Ret. Ben. Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990) ("On the one hand, '[e]xhaustion of internal dispute procedures is not required where the issue is whether a violation of the terms or provisions of the statute has occurred.' . . . On the other hand, exhaustion . . . is ordinarily required where an action seeks 'a declaration of the parties' rights and duties under [a plan].'" (internal quotation marks and citations omitted)). *See also Diaz*, 50 F.3d at 1483 (discussing the limits of this distinction).

"Generally, a failure to exhaust will be excused in two limited circumstances—when resort to administrative remedies would be futile or when the remedy provided is inadequate.  The Department of Labor added another exception to the exhaustion requirement when it amended the ERISA regulations in 2000 to provide that claimants are 'deemed to have exhausted' their administrative remedies if a plan has failed to establish or follow claims procedures consistent with the requirements of ERISA. *See* 29 C.F.R. § 2560.503–1(l ) (the deemed-exhausted provision)." *Holmes v. Colorado Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1204 (10th Cir. 2014) (footnote and citations omitted); *see also Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626-27 (9th Cir. 2008).  Inadequacy of remedies does not appear to be at issue in this case, but the other two exceptions are.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)               Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v-* UnitedHealth Group,
              Inc., et al.

      "[T]here is disagreement among the federal courts as to whether a plaintiff must affirmatively plead exhaustion or if the failure to exhaust is merely a defense." *Forest Ambulatory Surgical Associates, L.P. v. United HealthCare Ins. Co.*, 10-CV-04911-EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (footnote omitted).  However, at least one court in the Ninth Circuit has noted that the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 212 (2007), indicates that exhaustion is typically an affirmative defense under the Federal Rules, and that therefore dismissal due to a failure to affirmatively allege exhaustion would be improper.  *Forest Ambulatory Surgical Associates, L.P.,* 2011 WL 2748724, at *5.

      However, even so, "Courts in this Circuit have placed the burden on a 'plaintiff seeking excuse from the exhaustion requirement [to] provide support for [the] excuse' at the motion to dismiss stage." *WellPoint II*, 903 F. Supp. 2d 880, 919.  As will be discussed below, Plaintiffs seem to have satisfied this burden.

### 1.  Futility

      While "'bare assertions of futility'" are insufficient to invoke the futility exception, *WellPoint I*, 865 F. Supp. 2d at 1041 (quoting *Diaz*, 50 F. 3d at 1485), "a plaintiff can demonstrate futility by pointing to a similarly situated plaintiff who exhausted administrative remedies to no avail," *id*.  However, "'a Plan's refusal to pay does not, by itself, show futility.'"  *Id*. (quoting *Foster v. Blue Shield of Cal.*, No. CV 05-03324(DDP), 2009 WL 1586039, at *5 (C.D. Cal June 3, 2009)).  Rather, "[t]he futility exception is narrow—the plan participant 'must show that it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.'"  *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009) (quoting *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002)) (internal quotation marks omitted).

      For example, in *Diaz*, a couple argued that "it would have been 'futile' for them to demand administrative review because both defendants have demonstrated by their continued refusal to pay that they have no intention of doing so."  *Diaz*, 50 F.3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
             Inc., et al.

1485.  However, the Ninth Circuit rejected this argument and noted its circularity,
since the denial at issue was "pegged entirely to [the couple's] failure to have pursued
the administrative route."  *Id*.

### 2.  Failure to Establish or Follow Claims Procedures
###     Consistent With the Requirements of ERISA

        "When an ERISA-governed plan fails to comply with its antecedent duty under
§ 1133 to provide participants with notice and review, aggrieved participants are not
required to exhaust their administrative remedies before filing a lawsuit for benefits
under § 1132(a)."  *Brown*, 586 F.3d at 1085.  "One of the purposes of § 1133 is to
provide claimants with sufficient information to prepare adequately for any further
administrative review or for an appeal to the federal courts.  To the extent the statute is
ambiguous, § 1133's disclosure requirements should be construed broadly, because
ERISA is remedial legislation and should be liberally construed to effectuate
Congress's intent to protect plan participants."  *Id*. at 1086 (citations omitted).

        The administrative process has particular consequences on the plan's ability to
assert new rationales for claim denial:

        Under ERISA, an employee benefit plan must "provide adequate
        notice in writing to any participant or beneficiary whose claim for
        benefits under the plan has been denied" and must "afford a
        reasonable opportunity to any participant whose claim for benefits has
        been denied for a full and fair review by the appropriate named
        fiduciary of the decision denying the claim."  29 U.S.C. § 1133; *see
        also* 29 C.F.R. § 2560.503–1(g)(1), (h)(2).  Given these statutory and
        regulatory requirements, [the Ninth Circuit has] held that an
        administrator may not raise a new reason for denying benefits in its
        final decision, because that would effectively preclude the participant
        "from responding to that rationale for denial at the administrative
        level," and insulate the rationale from administrative review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
             Inc., et al.

*Gabriel*, 773 F.3d at 14(citations omitted).

### ii.   Allegations Regarding Exhaustion in FAC

As mentioned above, Plaintiffs allege in their Opposition to the Omnibus Motion
that the requisite administrative exhaustion under ERISA has been satisfied because
"Defendants failed to meet their antecedent duty to issue adequate claim and appeal
denials."  (Opp. To Omnibus Mot. at 2).  Plaintiffs also claim that the FAC contains
allegations that they "appealed claim denials for ***each and every Plan***."  (*Id*. at
41(emphasis in original)).  However, the FAC actually alleges that:

> Plaintiffs have exhausted all administrative remedies available to
> them.  ***They appealed <u>virtually</u> every adverse claim determination***
> made by United, at least in those cases in which United rendered an
> actual adverse benefit decision.  Plaintiffs have literally sent out ***tens
> of thousands*** of appeal letters on unpaid claims.  These letters address
> each and every one of the reasons for denial provided by United.

(FAC ¶ 936 (first emphasis added)).  The FAC also notes that "Plaintiffs' diligent,
persistent and thorough efforts to appeal have resulted in virtually no additional
payment from United," and, "[i]n many cases, Defendants have held Plaintiffs' claims
submissions in limbo without allowing or denying the claims."  (FAC ¶¶ 938-39).
Ultimately, Plaintiffs contend that they expended time and effort appealing adverse
decisions when United rendered decisions, and that United failed to process the claims
in a manner consistent with ERISA, which deprived Plaintiffs of the necessary
information and due process to effectively appeal, rendering Plaintiffs' obligations to
pursue further remedies exhausted under 29 C.F.R. § 2560.503-1.  (FAC ¶ 940).

Based upon the plain language of the FAC, there is at least the implication that
fewer than all claims were actually appealed and exhausted.  Although this seems to be
connected to the alleged failure of United to always present a meaningful denial to

CIVIL MINUTES—GENERAL                                               104

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

which a response could be made, the FAC still fails to allege that complete exhaustion
for all claims has been effected under the administrative procedures required by each
plan.

### 1.  Allegations Regarding Futility in the FAC

Even if the FAC does not allege that all claims were actually appealed and
exhausted, if futility is sufficiently alleged, exhaustion may not be necessary.

Defendants argue that "in many instances, Plaintiffs acknowledge that they
failed to respond to requests for information, which demonstrates a failure to exhaust."
(Omnibus Mot. at 18 (citing FAC ¶ 953, Patient 3(B) & 5(J); *Franco v. Am. Gas
Assoc. Lab. Pac. Coast Branch*, 902 F.2d 39 (9th Cir. 1990))).  However, Plaintiffs
contend that, "[g]iven that Defendants were demonstrably determined not to pay
benefits, no matter what actions were taken by Plaintiffs, additional appeals would
have been futile."  (FAC ¶¶ 939, 981).

Plaintiffs' contention sounds remarkably similar to the language in *Diaz*, which
was found insufficient to establish futility.  However, in *Diaz*, the couple received a
claim decision (albeit, not in a language that the couple said they could understand)
from their plan, which had adequate internal procedures in place, and never appealed.
*Diaz*, 50 F.3d at 1484-86.  As such, the couple's "own delinquency in pursuing an
internal appeal prevented the possibility of an administrative look at the merits, and the
record contains nothing but speculation to suggest that the administrators would have
reached a preconceived result in that respect."  *Id.* (footnote omitted).  This does seem
meaningfully different from the situation alleged here, in which United purportedly
furnished incomplete information regarding claims, did not always render actual
decisions, and therefore did not provide for an adequate opportunity to appeal the
"decisions" administratively.

In any event, the Court construes Plaintiffs' futility argument as a
mischaracterization of the "failure to observe ERISA regulations" argument, discussed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

below.   In *Brown*, the Eighth Circuit evaluated a similar situation: "Although couched in terms of 'futility,' the gravamen of [the plaintiff's] argument in the district court and this court is simply this: [the insurer's] failure to comply with its duty under § 1133 to afford [the plaintiff] 'a reasonable opportunity ... for a full and fair review' excuses her failure to exhaust. More specifically, [the plaintiff] argues [the insurer's] failure to respond to her requests for the Administrative Record and other documents absolves [the plaintiff's] failure to file a timely written appeal of Prudential's decision to discontinue her LTD benefits." *Brown*, 586 F.3d at 1085.  The *Brown* court ultimately found that "[w]hen stripped of its 'futility' label," the plaintiff's argument was "a winner." *Id*.

## 2.  Allegations Regarding Failure to Observe ERISA Regulations

Even if futility and exhaustion are not alleged, if there are adequate allegations that the plan has failed to establish or follow claims procedures consistent with the requirements of ERISA, failure to exhaust may be excused.  "When applying the Claims Regulations, courts have concluded substantial compliance is sufficient. 'This means that technical noncompliance with ERISA procedures will be excused,' provided 'full and fair review' of the decision is possible." *Spinedex Physical Therapy, U.S.A., Inc. v. United Healthcare of Arizona, Inc*., CV-08-00457-PHX-ROS, 2012 WL 8169880 (D. Ariz. Oct. 19, 2012) (quoting *Robinson v. Aetna Life Ins. Co*., 443 F.3d 389, 393 (5th Cir. 2006)); *see also Chuck*, 455 F.3d at 1032 (discussing that the Ninth Circuit has found substantial compliance with ERISA notification regulations sufficient to satisfy obligations pursuant to same).

Here, Plaintiffs allege that "the EOBs issued by the Defendants (when they actually issued EOBs) were nearly devoid of information about the benefit plans, the reason a claim was being partially or fully denied, and the plan provisions and any internal rules or guidelines that were being used to deny the claim."   (FAC ¶ 944). Plaintiffs further allege that "[t]he EOBs issued by Defendants frequently did not . . . explain that the beneficiary or participant of the plan had the right to appeal; what the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

plan's review procedures were; or what the applicable time limits were.  Moreover, they did not describe what information would be required to make a proper appeal, nor did it explain why such information was necessary. Thus, United's EOBs were substantively deficient and failed to comply with any of the key requirements of Section 2560.503-1(g) of the ERISA regulations."  (*Id*. ¶ 946).

As discussed above, using the *Brown* case for guidance, it seems that there are sufficient allegations in the FAC to suggest a failure on United's part to observe ERISA regulations.  Although some of these statements encompass fewer than all of the benefit "determinations," the conjunction of these paragraphs lends the implication that either EOBs were not supplied for a claim, or the EOB was deficient under 29 C.F.R. § 2560.503-1.

In sum, the Court rules that (to the extent it is needed) Plaintiffs have sufficiently pleaded support for their exhaustion excuse to survive a motion to dismiss for those plans that used United as a claims administrator.  Although some plans may contain specific requirements for claim appeal timelines or the entity to which certain levels of appeal must be made, United's alleged role in making claims decisions, when taken in conjunction with the FAC's allegations regarding benefit decisions, suggests that an exception to exhaustion should be recognized here.

When United is demonstrably not a plan's claims administrator, however, there are no allegations that connect the purported claims appeal process and deficiencies to the relevant Defendants.  Consequently, for these plans, the Court would agree that administrative exhaustion (or an exception thereto) has not been alleged.  However, as discussed below, the Court is largely unable to address arguments that United was not a claims administrator for specific plans at this time; therefore, while the Court notes this administrative exhaustion issue at present for such plans, it will not affect the proceedings at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

### c.  Valley Surgical Center

Defendants contend that "Plaintiffs have alleged certain claims for payment of services rendered by 'Valley Surgical Center,'" and that such claims asserted on behalf of a non-party cannot stand.  (Omnibus Mot. at 19 (citing FAC ¶ 953, Patient 6(A)).  Plaintiffs, in their Opposition to the Omnibus Motion, attempt to "clarify that they are not presently seeking to recover as to any claims submitted by Valley."  (Opp. to Omnibus Mot. at 46).

The Court agrees that Plaintiffs cannot assert claims on behalf of Valley Surgical.  As such, any claim lines that purport to do so must be dismissed.  Plaintiffs have already stated that they will dismiss "the only defendants for whom Valley was the only provider claims [:] Southwest Airlines Co. and its Welfare Benefit Plan."  (*Id.* at 46).  Plaintiffs, however, have yet to dismiss these parties.

### d.  Bankruptcy

While not raised in the Omnibus Motion itself, Defendants PMC and the Perkins Flexible Benefits Plan (the "PMC Plan") argue in their Supplemental Memorandum that Plaintiffs' Counts against them have been discharged by a Joint Plan of Reorganization entered by a bankruptcy court in 2011.  (PMC Supp. Memo. (Docket No. 1159) at 2-3).  Plaintiffs address this argument in their Opposition to the Omnibus Motion, so the Court will evaluate the merits here.

As stated in the PMC Supplemental Memorandum, "PMC filed for bankruptcy on June 13, 2011" (*see* PMC Request, Ex. A at 1), and the bankruptcy court confirmed PMC's Joint Plan of Reorganization ("Reorganization Plan") on November 1, 2011.  (PMC Supp. Memo. at 2, 3 n. 3).  The procedures allegedly at issue for PMC and the PMC Plan are an endoscopy and polysomnography purportedly performed on Patient 278 by Plaintiff IMS on December 26 and December 27, 2010.  (FAC, Appendix A at 461).  Because "[t]he Reorganization Plan specifies a broad discharge of all known and unknown Claims and Causes of Action, including Claims that arose before the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015
Title:          Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                Inc., et al.

effective date of the Reorganization Plan" (*see* PMC Request, Ex. B, Sec. IX(D) at 49),
and since "Patient 278's claim for benefits easily falls under the definition of 'Claim'
and was discharged upon the bankruptcy court's order confirming the Reorganization
Plan,"  PMC and the PMC Plan contend that "all causes of action against PMC should
be dismissed."  (PMC Supp. Memo. at 3).  PMC and the PMC Plan argue that
"continuing the lawsuit against PMC would be a direct violation of a federal
bankruptcy court order."  (*Id*.).  Further, PMC and the PMC Plan contend that the
Perkins Flexible Benefits Plan should be dismissed because "[a]t the time of Patient
278's alleged medical procedures, PMC paid out benefits claims not from the Benefits
Plan, but rather from the general assets of PMC."  (*Id*.).

> Plaintiffs, in turn, argue that:
>
> There is insufficient evidence at this stage to permit dismissal of
> Perkins and its plan. For instance, Perkins has not demonstrated that
> its health care plans were part of the bankruptcy estate. Likewise,
> Perkins does not contend that its health plans were wound down as
> part of any bankruptcy proceedings. Unlike in a Chapter 7 bankruptcy,
> in which health benefit plans must be wound down, an employer's
> benefit plans may continue throughout a Chapter 11 bankruptcy.
> Indeed, Perkins' yearly filings with the Department of Labor from
> both before and after the bankruptcy demonstrate that its ERISA
> benefits plan has been in continuous existence since January 1, 1990.

(Opp. to Omnibus Mot. at 48 (citing Request, Ex. B)).  However, in their Reply, PMC
and the PMC Plan point out that they do "not contend, as Plaintiffs claim, that PMC's
sponsored health care plan ceased to exist following Chapter 11 reorganization.
Rather, because its health care plan contains no assets other than the general assets of
PMC, Plaintiffs only possible suit for unpaid ERISA benefits is against PMC."  (PMC
Reply (Docket No. 1281) at 2).  Moreover, the PMC Reply posits that "Plaintiffs
actually confirm this to be the case in their Opposition, where they ask the Court to
take judicial notice of filings with the Department of Labor that clearly demonstrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)            Date:  April 10, 2015
Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
              Inc., et al.

PMC's health plan is funded by the general assets of PMC and that health benefits are
paid out by PMC's general assets."  (*Id*. (citing Request, Ex. B at 55, 58, 60, 62)).

        At the hearing, the PMC Defendants again argued that the relevant inquiries are
merely the dates of the bankruptcy decision discharging PMC's pre-confirmation
liability as compared with the date of service for the PMC-related patient here.  Given
that the latter precedes the former, the PMC Defendants argued that they should be
dismissed.  Plaintiffs stated at the hearing that they are willing to dismiss PMC (the
Employer Defendant), but not the PMC Plan.

        While the Court has taken judicial notice of the publicly filed forms discussed
by the parties, it does not at present use these forms to determine the truth of any facts
alleged within them.  Thus, while the Court might be inclined to rule that PMC's
bankruptcy discharges pre-confirmation liability against both it and the PMC Plan, it
cannot at present make such a ruling.

                        **5.  Statute of Limitations**

        In their Supplemental Memorandum, the Whirlpool Defendants contend that the
statute of limitations has expired for an ERISA benefits Count.  (Whirlpool Supp.
Memo. (Docket No. 1093) at 4).

        "There is no federal statute of limitation applicable to lawsuits seeking benefits
under ERISA."  *Gordon*, 749 F.3d at 750 (citing *Wetzel v. Lou Ehlers Cadillac Grp.
Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000)).  "The Ninth
Circuit has held that California's four-year statute of limitations for written contracts
applies to ERISA claims for benefits under 29 U.S.C. § 1132(a)(1)(B)."  *Moyle*, 985 F.
Supp. 2d at 1259 (citing *Wetzel*, 222 F.3d at 648).  *See also Gordon*, 749 F.3d at 750
(citing *Wetzel*, 222 F.3d at 648).

        Though this statute of limitations is determined by reference to state law, the
accrual of an ERISA cause of action is governed by federal law.  *Gordon*, 749 F.3d at

---

**CIVIL MINUTES—GENERAL**                                    **110**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015
Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group,
              Inc., et al.

750 (citing *Wetzel*, 222 F.3d at 649).  Pursuant to "federal law, 'an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied.'"  *Id.* (quoting *Wetzel*, 222 F.3d at 649).  "A claimant has reason to know that the claim has been denied where there has been 'a clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his benefits had been finally denied.'"  *Id.* at 750-51 (quoting *Chuck*, 455 F.3d at 1031).

The Whirlpool Defendants contend that "since services were rendered more than four years before suit was filed, any possible statute of limitations has run." (Whirlpool Supp. Memo. at 4).  However, they cite to an improper triggering date for the commencement of the relevant statute of limitations.  The date of service relevant to the Whirlpool Defendants is January 16, 2010.  (FAC, Appendix A at 670).  The FAC alleges that United responded to Plaintiffs' appeals of the initial claim denials on October 7, 2011, purportedly stating "that their appeals were denied due to a lack of patient authorization."  (*Id.* at 671).  Plaintiffs purportedly "called United to inquire about status on pending claims" on December 11, 2013.  (*Id.*).  It is reasonable to assume that, based on the allegations in the FAC, October 7, 2011 is the earliest date on which the claims may have even arguably been considered finally denied.  The instant suit (filed March 20, 2014) was brought well within four years from this date.  As such, the Whirlpool Defendants' timeliness argument fails.

## C.   Plaintiffs' Remaining ERISA Counts Against Employer and Plan Defendants (Counts II, III, V, VII)

Plaintiffs' remaining ERISA Counts that implicate the Employer and Plan Defendants are Counts II, III, V, and VII.

The Court has already determined that Plaintiffs lack standing to bring these Counts.  The Court need not, at present, address the various other arguments raised as to why they independently fail.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-14-02139-MWF (VBKx)　　　　Date:  April 10, 2015

Title:　　　Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

### D.　Plaintiffs' UCL Count (Count VIII)

"To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."  *Birdsong v. Apple, Inc*., 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17204; *Walker v. Geico Gen. Ins. Co*., 558 F.3d 1025, 1027 (9th Cir. 2009)).

Defendants contend that "[Plaintiffs'] UCL claim makes clear that . . . they seek to recover derivatively for the injuries allegedly inflicted upon their subscriber-patients, as assignees of their patients' claims for benefits."  (United Mot. at 12).  However, Plaintiffs allege that they bring their UCL Count "in their own independent right, and not based upon the Assignment of Benefits Plaintiffs received from their patients."  (FAC ¶ 1083).  The remedy Plaintiffs seek includes "restitution of an amount to be proved at trial, plus applicable statutory interest, which is the amount that the Defendants are obligated to pay Plaintiffs for the services Plaintiffs provided to plan participants and beneficiaries.  Plaintiffs further seek an injunction prohibiting Defendants' ongoing conduct in using inappropriate methodologies to deny or underpay Plaintiffs' claims for medical treatment provided to plan members.  Furthermore, the injunction should force Defendants to correctly price past and future claims by Plaintiffs by determining UCR based on appropriate UCR data."  (*Id*. ¶ 1089).

In *WellPoint II*, the court discussed *Amalgamated Transit Union, Local 1756 v. Superior Court ("Amalgamated Transit")*, 46 Cal.4th 993, 95 Cal. Rptr. 3d 605 (2009), in which the California Supreme Court held that allowing a noninjured assignee of a UCL claim to stand in the shoes of the actual injured party would contravene Proposition 64.  *WellPoint II*, 903 F. Supp. 2d at 898 (citing *Amalgamated Transit*, 46 Cal. 4th at 998, 1002).  In contrast, *Amalgamated Transit* stated that such derivative UCL actions were to be brought as class actions.  *Id*.  (citing *Amalgamated Transit*, 46 Cal. 4th at 1005).  The *WellPoint II* provider plaintiffs argued that *Amalgamated Transit* did not bar their UCL claims based on the assignments, since

---

**CIVIL MINUTES—GENERAL**　　　　　　　　112

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015**

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

they suffered their own injury.  *Id*.  The *WellPoint II* court held that the provider plaintiffs would have been able to bring suit if they had suffered "independent and direct injuries" in their own right.  *Id*. at 899.  However, the Court concluded that "to allow the Provider Plaintiffs to sue on behalf of the injured subscriber-assignors simply because they have suffered their own distinct injuries would run counter to *Amalgamated Transit's* pronouncement that all UCL actions seeking to recover for injuries inflicted on others must be brought as class actions"  *Id*.  As such, the court found it improper to allow the provider plaintiffs to sue on behalf of the assignors.  *Id*.

Here, as in *WellPoint II*, Plaintiffs argue that *Amalgamated Transit* does not apply to them, since they suffered injury in their own right.  (Opp. to United Mot. at 5-6).  Even so, the relief they seek for this Count is restitution of the amounts purportedly owed (which is also the relief sought under ERISA by virtue of the assignments, and which the assignments purportedly confer the right to pursue on behalf of the plan participants) and injunctions regarding use of proper UCR methodologies in pricing the past and future claims of plan participants (also similar to relief sought pursuant to Plaintiffs' ERISA benefits Count).

Unlike in *WellPoint II*, the FAC spells out that Plaintiffs are not seeking to recover derivatively through their assignments.

At the hearing, Plaintiffs pointed out that they are entitled to plead in the alternative, and asserted that their UCL Count is just such an alternative basis for relief (distinct from their Counts brought as assignees under ERISA).  However, the wrongdoing alleged in connection with the UCL Count includes allegations that: "[t]he United Defendants have illegally discriminated against members of ERISA plans in the provision of fringe employment benefits on the protected basis of those members' morbid obesity, in violation of the Americans with Disabilities Act" (FAC ¶ 1085(a)); "[t]he United Defendants used arbitrary, capricious and improper methods to improperly deny or underpay Plaintiffs' claims" (*id*. ¶ 1085(c)); and "[t]he United Defendants willfully violated numerous provisions of ERISA, as detailed in this complaint and Appendix A, at least tens of thousands of times, which could subject

---

**CIVIL MINUTES—GENERAL                                                    113**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015

Title:       Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
             Inc., et al.

United Defendants to criminal penalties under 29 U.S.C. § 1131" (*id*. ¶ 1085(i)).
These are not reflective of a UCL claim brought as an alternative basis of relief seeking
to address "independent and distinct injuries" suffered by Plaintiffs.   Although
Plaintiffs do allege that "[t]he United Defendants routinely misrepresented that
Plaintiffs' claims would be paid, when in fact Defendants had no intention of paying
any of Plaintiffs' claims" (*id*. ¶ 1085(d)), and though this might constitute just the sort
of independent injury required to assert a viable UCL claim, this allegation is
intertwined with other purported wrongs that implicate the assignors' injuries.

     In sum, even if Plaintiffs allege that they suffered injury in their own right, this
injury does not remove them from the ambit of *Amalgamated Transit* based on the
UCL Count as pleaded in the FAC.  Plaintiffs have no standing to bring the UCL
Count.

     In light of this conclusion, the Court need not address various Defendants'
arguments that their plans contain choice-of-law provisions, precluding application of
California's UCL as to them in this suit.  Similarly, the Court need not address
arguments that the UCL Count is preempted.

     **E.     Improper Service**

     Defendants argue that, "in some instances (as detailed in individual submissions
submitted by the Plan Defendants), Plaintiffs have failed to properly serve the Plans."
(Omnibus Mot. at 40).  The Court sees only two groups of Defendants that raise such
improper service issues: the Ensign and Sodexo Defendants.  Defendants contend that
"[b]ecause Plaintiffs failed to issue a summons to the Plan Defendants as discussed in
the individual Plan's supplemental motions, dismissal is appropriate pursuant to both
Rule 12(b)(2), for lack of personal jurisdiction, and Rules 12(b)(4) and (b)(5), for
defective process and service of process."  (*Id*.).  Plaintiffs, in turn, "disagree that
service was improper," but state that they "are willing to enact service again to resolve
any doubt."  (Opp. to Omnibus Mot. at 48).  In this vein, Plaintiffs contend that "[t]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)                Date:  April 10, 2015**
Title:         Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group,
                Inc., et al.

Court should find good cause to extend the time period for service, given that those
parties have actual notice of this lawsuit, and would not be prejudiced."  (*Id*.).

Federal Rule of Civil Procedure 4 requires that a summons "be directed to the
defendant," and that, in cases involving multiple defendants, a summons "must be
issued for each defendant to be served."  Fed. R. Civ. P. 4(a)(1)(B), 4(b).  "If a
defendant is not served within 120 days after the complaint is filed, the court—on
motion or on its own after notice to the plaintiff—must dismiss the action without
prejudice against that defendant or order that service be made within a specified time.
But if the plaintiff shows good cause for the failure, the court must extend the time for
service for an appropriate period."  Fed. R. Civ. P. 4(m).  A showing of good cause
under Rule 4(m) means, "[a]t a minimum . . . 'excusable neglect,'" and may also
require a showing of the following three factors: "(a) the party to be served personally
received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and
(c) plaintiff would be severely prejudiced if his complaint were dismissed."  *Boudette
v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (citing *Hart v. United States*, 817 F.2d
78, 80–81 (9th Cir. 1987)).

The Ensign Defendants' Supplemental Memorandum (Docket No. 1088)
contends that Plaintiffs have not served The Ensign Benefit Group Plan.  (Ensign
Supp. Memo. at 6).  This argument, while not citing to ERISA § 502(d), appears to be
linked to the Ensign Defendants' contentions that Ensign California is not the plan
administrator for the relevant plan, and United is not the claims administrator, such that
service on Ensign California and United is not sufficient to effect service on the plan.
(*Id*.).  *See also* 29 U.S.C. § 1132(d) (1) ("An employee benefit plan may sue or be sued
under this subchapter as an entity.  Service of summons, subpena, or other legal
process of a court upon a trustee or an administrator of an employee benefit plan in his
capacity as such shall constitute service upon the employee benefit plan.").

Similarly, the Sodexo Defendants' Supplemental Memorandum (Docket No.
1138) asserts that "Plaintiffs failed to issue a summons to the Sodexo Medical Plan."
(Sodexo Supp. Memo. at 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

        In light of the fact that the pertinent Defendants appear to have received notice and the apparent lack of prejudice to Defendants, the Court is inclined to permit Plaintiffs an opportunity to enact service in a way that addresses objections raised by Defendants so as to resolve any disagreement on this matter.  Service is to be effected within **10 days** of the entry of this Order.   The Court notes, however, that the corrections urged with regard to the Ensign Defendants seemingly require more than just mere service, as they go to the fundamental propriety of the parties named. Plaintiffs are advised to proceed accordingly.

        **F.      Improper Joinder**

        Defendants argue that "the 422 Employer and Plan Defendants have different and disparate plan provisions, employment practices, and involvement with Plaintiffs, and joining them together to litigate their disputes en masse will needlessly disrupt this Court's docket . . . , financially burden their health benefits programs, and accomplish little that cannot already be addressed in a related lawsuit before the Court."  (Omnibus Mot. at 41).  Plaintiffs counter by arguing that joinder is proper since the lawsuit "rises and falls on a common set of issues of both law and fact as to each plan: namely, whether United's indiscriminate denials of Plaintiffs' claims violated the full and fair review requirements of ERISA."  (Opp. to Omnibus Mot. at 49).

        As mentioned above, Federal Rule of Civil Procedure 20(a) permits joinder if: (1) the claims against each defendant arise out of the same transaction or occurrence or, as stated by the Ninth Circuit, the same "series of transactions or occurrences"; and (2) "there are common questions of law or fact."  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (citations omitted); Fed. R. Civ. P. 20(a).  However, even if these requirements are met, the district court must evaluate whether allowing joinder would "'comport with the principles of fundamental fairness' or would result in prejudice to either side."  *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)              Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

"Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach."  7 Charles Alan Wright, Arthur R. Miller, *et al*., *Federal Practice and Procedure* § 1653 (3d ed. rev. 2014) (footnote omitted).  "[L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."  *Id*. (footnote omitted).

Similarly, as to the "common question" requirement, "Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact."  *Id*. (footnote omitted).

On the whole, "[t]he transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests," but rather "are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."  *Id*. (footnote omitted).

## 1.  Multiple Defendants and Transactions

Defendants contend that "Plaintiffs' claims actually stem—not from the same transaction or occurrence—but from thousands of independent and unique out-of-network benefit claims."  (Omnibus Mot. at 43).  More specifically, Defendants state that "in order to resolve whether United improperly denied a claim for benefits, the Court must analyze and apply the governing benefit plan.  With the current joinder of parties, the Court will need to evaluate more than 400 separate plans because each contract contains different terms and exclusions."  (*Id*. at 48).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                 Date:  April 10, 2015
Title:         Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

While, strictly speaking, each claim line and attendant claims process does implicate a different "transaction" of sorts, the Court does not believe the FAC should be read so narrowly.  Rather, each discrete claim is part of the larger systematic behavior alleged in the FAC.  When viewed in this sense, the Counts against each defendant arise out of the same series of transactions or occurrences.  *See Coughlin*, 130 F.3d at 1350 ("Plaintiffs do not allege that their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence.").

## 2.  Common Questions of Law or Fact

Defendants contend that "[i]n essence, Plaintiffs allege that the Defendants have (a) failed to pay benefit claims and (b) failed to follow proper claims procedures. Yet each claim for benefits is associated with a unique benefit plan with distinct terms and exclusions, as well as a disparate processing history."  (Omnibus Mot. at 47 (footnote omitted)).  Plaintiffs, in turn, argue that "[p]recisely because United gave false reasons for denying Plaintiffs' claims and failed to provide the information required by the ERISA regulations, the Court will not have to examine vastly different 'processing histories' for each of the claims at issue."  (Opp. to Omnibus Mot. at 49).

While the Court acknowledges that resolution of this case will involve specific issues unique to individual claims or groups of claims, the fact remains that the primary contentions here relate to whether United and the employers and plans that used United in an administrative capacity improperly denied claims and committed systematic violations of ERISA.  As such, there are certainly issues of law or fact that are common to all parties.

## 3.  Interests of Fairness and Economy

Defendants argue that, under Federal Rule of Civil Procedure 21, the Court can add or drop a party, and that the Court should dismiss the non-United Defendants in this case in order to avoid the "logistical nightmare" presented by the numerous differences in facts and legal issues among the over 800 defendants initially named in the FAC.  (Omnibus Mot. at 50).  Defendants argue that dismissing these defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-02139-MWF (VBKx)                  Date:  April 10, 2015

Title:        Almont Ambulatory Surgery Center, LLC, et al. -v- UnitedHealth Group, Inc., et al.

will "serve the interests of fairness and judicial economy" that Rule 20 "is designed to promote," and would avoid the need for several "'mini-trials involving different evidence and testimony'" (*Id.* at 49-50 (quoting *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. 2011))).

However, in light of the fact that the claim lines (and, consequently, the plan terms) implicated will be the same regardless of whether only United or all of the current Defendants are named, dismissal of the non-United Defendants does not present quite the streamlining solution posited in the Omnibus Motion for the benefits Count.  Moreover, as to an evaluation of potential prejudice, the Court cannot agree that allowing joinder would preclude application of defenses unique to each plan.  (*See* Omnibus Reply at 49 ("[F]orcing a defendant to remain in the case, when it would be and should be dismissed if sued in a separate action, is contrary to the interests of fairness and judicial economy).  As is evident in this Order, the Court is taking into consideration specific plan provisions that might require dismissal of Count against individual Defendants, to the extent such defenses are applicable at present.

The Court cannot say that joinder in this case is so defective as to warrant dismissal of the non-United Defendants at this time.  The Court does not presently decide whether bifurcation might be proper at a later date.

## G.    **Declaratory Relief (Count IX)**

In a footnote, Defendants argue that "Count IX fails to state a claim because a declaratory judgment action does not state a claim where there is 'an adequate remedy at law.'  Here, because Count IX is 'duplicative' of Plaintiffs' claims in Count I, Count IX cannot state an independent cause for relief."  (Omnibus Mot. at 6 n. 6 (citations omitted)).

The Court notes the overlap between Counts I and IX, and rules that Count IX is completely preempted by ERISA. To the extent it is preempted, the Count is converted into an ERISA claim, and falls into the analysis above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)**          **Date:  April 10, 2015**

Title:          Almont Ambulatory Surgery Center, LLC, et al. *-v-* UnitedHealth Group,
                  Inc., et al.

At the hearing, Plaintiffs submitted on this point.

## IV.   **CONCLUSION**

The Omnibus Motion with respect to Count I is **GRANTED** ***with leave to
amend***.  Successful amendment will require allegations that for each plan, the terms of
the plan: (1) provide coverage for each of the procedures at issue in this case; and (2)
dictate that these covered services would be paid according to a specific
reimbursement rate (such as the reasonable and customary fees for services charged by
outpatient surgical centers), which must be specified.  Plaintiffs should then allege that
Defendants failed to reimburse for the covered services provided by Plaintiffs
according to this reimbursement rate provided in the plans.  Given the allegations in
this case regarding absence of access to plan documents, the Court will permit these
allegations to be made "on information and belief."

Similarly, the Omnibus Motion as to Counts II, III, V, VI, and VII is
**GRANTED** ***with leave to amend***.  Plaintiffs' proffered assignment does not confer
standing to bring these ERISA Counts, and although the Court is not convinced that
Plaintiffs could plead additional facts to alter this conclusion, they will be provided an
opportunity to do so.

The Omnibus Motion as to Count VIII is **GRANTED** ***with leave to amend***.
Even if Plaintiffs allegedly suffered their own injuries, it is clear that they are seeking
to recover derivatively on behalf of their assignors in a way that contravenes the
holding of *Amalgamated Transit* that such derivative UCL actions must be brought as
class actions.

Finally, the Omnibus Motion as to Count IX is **GRANTED** ***with leave to
amend***.  This Count is completely preempted by ERISA, and therefore will rise and
fall with the duplicated ERISA Counts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-02139-MWF (VBKx)          Date:  April 10, 2015**

Title:      Almont Ambulatory Surgery Center, LLC, et al. -*v*- UnitedHealth Group, Inc., et al.

     To the extent leave to amend is granted, the Court will issue a subsequent Order (based upon the recommendations of the parties in the statement they will file on April 10, 2015) setting a timeline for the filing of a Second Amended Complaint ("SAC").

     IT IS SO ORDERED.