1  DARON L. TOOCH (State Bar No. 137269)
   ERIC D. CHAN (State Bar No. 253082)
2  BRIDGET A. GORDON (State Bar No. 287098)
   **HOOPER, LUNDY & BOOKMAN, P.C.**
3  1875 Century Park East, Suite 1600
   Los Angeles, CA 90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
5  E-Mail:  dtooch@health-law.com
   E-Mail:  echan@health-law.com
6
   Attorneys for Plaintiffs
7

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 ALMONT AMBULATORY                CASE NO.:14-cv-02139-MWF (VBKx)
   SURGERY CENTER, LLC, a
12 California limited liability company;  **THIRD AMENDED COMPLAINT**
   BAKERSFIELD SURGERY           **FOR[1]:**
13 INSTITUTE, LLC, a California limited
   liability company; CIRO SURGERY   **(1)  ENFORCEMENT UNDER 29**
14 CENTER, LLC, a California limited     **U.S.C. § 1132 (a)(1)(B) FOR**
   liability company; EAST BAY          **ERISA PLAN BENEFITS**
15 AMBULATORY SURGERY            **(2)  ENFORCEMENT UNDER 29**
   CENTER, LLC, a California limited     **U.S.C. § 1132(a)(2) FOR**
16 liability company; MODERN            **BREACH OF FIDUCIARY**
   INSTITUTE OF PLASTIC SURGERY      **DUTY**
17 & ANTIAGING, INC., a California    **(4)* ESTOPPEL (AS TO ANTI-**
   corporation; NEW LIFE SURGERY        **ASSIGNMENT CLAUSES**
18 CENTER, LLC, a California limited     **ONLY)**
   liability company dba BEVERLY      **(7)* PRODUCTION OF**
19 HILLS SURGERY CENTER;                **DOCUMENTS UNDER 29**
   ORANGE GROVE SURGERY              **U.S.C. §§ 1024(B) AND 1133(2),**
20 CENTER, LLC, a California limited     **AND FOR STATUTORY**
   liability company; PALMDALE          **PAYMENTS UNDER 29 U.S.C.**
21 SURGERY CENTER, LLC, a             **§ 1132(c)(1)**
   California limited liability company;
22 SAN DIEGO AMBULATORY
23
24
25
26 _____
   [1] This Third Amended Complaint is filed at a time when Hooper, Lundy & Bookman
27 has filed a motion to withdraw as counsel for Plaintiffs due to conflicts with the
   client.  Clients have not had other counsel review the complaint prior to its filing.
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  SURGERY CENTER, LLC, a
2  California limited liability company;
   SAN JOAQUIN VALLEY SURGERY
3  CENTER, LLC, a California limited
   liability company; SKIN CANCER &
4  RECONSTRUCTIVE SURGERY
   SPECIALISTS OF BEVERLY HILLS,
5  INC., a California corporation;
6  VALENCIA AMBULATORY
   SURGERY CENTER, LLC, a
7  California limited liability company;
8  WEST HILLS SURGERY CENTER,
   LLC, a California limited liability
9  company; INDEPENDENT MEDICAL
   SERVICES, INC., a California
10 corporation,

11
                    Plaintiffs,
12 vs.

13
   UNITEDHEALTH GROUP, INC.;
14 UNITED HEALTHCARE SERVICES,
   INC.; UNITEDHEALTHCARE
15 INSURANCE COMPANY;
   OPTUMINSIGHT, INC.; AARP, a
16 District of Columbia corporation;
   AARP EMPLOYEES WELFARE
17 PLAN; ACCENTURE, LLP, a
18 Delaware limited liability partnership;
   ACCENTURE UNITED STATES
19 GROUP HEALTH PLAN; G6
20 HOSPITALITY, LLC, a Delaware
   corporation, F/K/A ACCOR NORTH
21 AMERICA, INC.; G6 HOSPITALITY
22 GROUP INSURANCE PLAN;
   ACTAVIS, INC., a Delaware
23 corporation; ACTAVIS HEALTH AND
24 WELFARE PLAN; ACUSHNET
   COMPANY, a Delaware corporation;
25 ACUSHNET COMPANY
26 CONSOLIDATED HEALTH AND
   WELFARE PLAN; AEGIS MEDIA
27 AMERICAS, INC., a Delaware
   corporation; AEGIS MEDIA
28

**\*Remaining Counts Removed By Order of the Court**

**JURY TRIAL DEMANDED**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

AMERICAS, INC. BENEFITPLUS FLEXIBLE BENEFITS PLAN; AEGON USA, LLC, an Iowa limited liability company; AEGON COMPANIES MEDICAL PLAN; AERA ENERGY SERVICES COMPANY, a Delaware corporation; AERA ENERGY SERVICES COMPANY MEDICAL BENEFITS PLAN; AIR LIQUIDE USA, LLC, a Delaware limited liability company; AIR LIQUIDE USA LLC GROUP BENEFITS PLAN; AKZO NOBEL, INC., a Delaware corporation; AKZO NOBEL, INC. SALARIED EMPLOYEES GROUP BENEFITS PROGRAM; ALCON LABORATORIES, INC., a Delaware corporation; ALCON LABORATORIES INC. VOLUNTARY EMPLOYEES BENEFICIARY ASSOCIATION TRUST; ALEXANDER GALLO HOLDINGS, LLC, a Georgia limited liability company; ALEXANDER GALLO HOLDINGS, LLC WELFARE BENEFIT PLAN; ALLSTATE INSURANCE COMPANY, an Illinois corporation; ALLSTATE CAFETERIA PLAN; ALTEC INDUSTRIES, INC., an Alabama corporation; ALTEC INDUSTRIES, INC. WELFARE BENEFITS PLAN; ALCATEL-LUCENT USA, INC., a Delaware corporation; ALCATEL-LUCENT RETIREE WELFARE BENEFITS PLAN; AMERICAN AIRLINES, INC., a Delaware corporation; GROUP LIFE AND HEALTH BENEFITS PLAN FOR EMPLOYEES OF PARTICIPATING AMR CORPORATION SUBSIDIARIES; AMERICAN FINANCIAL GROUP, INC., a California corporation;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 AMERICAN FINANCIAL GROUP,
2 INC. GROUP WELFARE BENEFIT
PLAN; AMERICAN
3 INTERNATIONAL GROUP, INC., a
California corporation; AMERICAN
4 INTERNATIONAL GROUP, INC.
5 MEDICAL PLAN; ANHEUSER-
BUSCH EMPLOYEES' CREDIT
6 UNION; ANHEUSER-BUSCH
EMPLOYEES CREDIT UNION
7 BENEFIT PLAN; ANIXTER, INC., a
8 Delaware corporation; ANIXTER, INC.
GROUP INSURANCE; ANN, INC., a
9 Delaware corporation; ANN, INC.
10 WELFARE BENEFITS PLAN;
ANSCHUTZ ENTERTAINMENT
11 GROUP, INC., a Colorado corporation;
AEG EMPLOYEE HEALTH &
12 WELFARE PLAN; APL LIMITED, a
13 Delaware corporation; WELFARE
PLAN FOR EMPLOYEES OF APL
14 LIMITED; APPLE, INC., a California
corporation; APPLE, INC. HEALTH
15 AND WELFARE BENEFIT PLAN;
16 APPLE AMERICAN GROUP, LLC, a
Delaware limited liability company;
17 APPLE AMERICAN GROUP, LLC
18 SECTION 125 PLAN; APTCO, LLC, a
California limited liability company;
19 APTCO, LLC; AT&T CORP., a New
20 York corporation; AT&T UMBRELLA
BENEFIT PLAN; AT&T MOBILITY,
21 LLC, a Delaware limited liability
company; CINGULAR WIRELESS
22 MEDICAL PLUS PLAN; ATI
23 SYSTEMS INTERNATIONAL, INC.,
a California corporation; ATI
24 SYSTEMS - A GARDA COMPANY
GROUP HEALTH PLAN;
25 AUTOMATIC DATA PROCESSING,
26 INC., a Nevada corporation;
AUTOMATIC DATA PROCESSING,
27 INC. FLEX 2000 PLAN; AVON
28 PRODUCTS, INC., a New York

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  corporation; AVON PRODUCTS INC.
2  MEDICAL PLAN FOR ACTIVE
   EMPLOYEES; BAKER HUGHES
3  INCORPORATED, a Delaware
   corporation; BAKER HUGHES
4  INCORPORATED WELFARE
5  BENEFITS PLAN; BARNES &
   NOBLE, INC., a Delaware corporation;
6  BARNES & NOBLE, INC.
7  COMPREHENSIVE MEDICAL AND
   DENTAL PLAN; BAUSCH & LOMB
8  INCORPORATED, a New York
9  corporation; BAUSCH & LOMB
   COMPREHENSIVE MEDICAL
10 PLAN; BBA AVIATION USA, INC., a
   Delaware corporation; BBA
11 AVIATION BENEFIT PLAN;
   BECTON, DICKINSON AND
12 COMPANY, a New Jersey corporation;
13 BECTON, DICKINSON AND
   COMPANY GROUP LIFE AND
14 HEALTH PLAN; BELMONT
   VILLAGE, LP, a Delaware limited
15 partnership; BELMONT VILLAGE LP
16 HEALTHCARE BENEFITS PLAN;
   BEST BUY CO., INC., a Minnesota
17 corporation; BEST BUY FLEXIBLE
18 BENEFITS PLAN; BLACK BOX
   NETWORK SERVICES, INC., a
19 California corporation; BLACK BOX
20 NETWORK SERVICES GROUP
   MEDICAL PLAN; BMW OF NORTH
21 AMERICA, LLC, a Delaware limited
   liability company; BMW OF NORTH
22 AMERICA LLC HEALTH AND
23 WELFARE PLANS; BOSTON
   MARKET CORPORATION, a
24 Delaware corporation; BOSTON
25 MARKET CORPORATION HEALTH
   AND WELFARE PLAN; BRADY
26 CORPORATION, a Wisconsin
   corporation; W.H. BRADY CO.
27 INSURED BENEFITS PLAN;
28 ADVANCE/NEWHOUSE

1 │ PARTERNERSHIP, a New York
2 │ Partnership dba BRIGHT HOUSE
NETWORKS, LLC;
3 │ ADVANCE/NEWHOUSE
PARTNERSHIP HEALTH BENEFITS
4 │ PLAN; BRINKER INTERNATIONAL
5 │ PAYROLL COMPANY, L.P., a
Delaware limited partnership;
6 │ BRINKER INTERNATIONAL, INC.
WELFARE BENEFIT PLAN;
7 │ BRINK'S INCORPORATED, a
8 │ Delaware corporation; THE BRINKS
COMPANY COMPREHENSIVE
9 │ HEALTH AND WELFARE PLAN;
10 │ BUCA RESTAURANTS 2, INC., a
Minnesota corporation; BUCA INC.
11 │ HEALTH CARE BENEFIT PLAN;
BUILDING MATERIALS
12 │ CORPORATION OF AMERICA, a
Delaware corporation; GAF
13 │ MATERIALS CORPORATION
14 │ WELFARE BENEFIT PLAN; BUPA
WORLDWIDE CORPORATION, a
15 │ Florida corporation; BUPA
16 │ WORLDWIDE CORPORATION
HEALTH & BENEFITS PLAN;
17 │ BWAY CORPORATION, a Delaware
18 │ corporation; BWAY CORPORATION
COMPREHENSIVE MEDICAL
19 │ PLAN; CALIBER HOME LOANS,
20 │ INC., a Delaware corporation, F/K/A
VERICREST FINANCIAL, INC.;
21 │ VERICREST FINANCIAL, INC.
WELFARE AND BENEFITS PLAN;
22 │ CBIZ MHM, LLC, a Delaware limited
23 │ liability company; CBIZ INC. GROUP
HEALTH AND WELFARE PLAN;
24 │ CBS CORPORATION, a Delaware
25 │ corporation; CBS HEALTH AND
WELFARE BENEFITS PLAN; CEC
26 │ ENTERTAINMENT, INC., a Kansas
corporation; CEC ENTERTAINMENT
27 │ WELFARE BENEFIT PLAN;
28 │ CENTRAL PARKING SYSTEM, a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1 | Tennessee corporation; CENTRAL
2 | PARKING SYSTEM HEALTH AND
WELFARE PLAN; CENTRIC
3 | GROUP, LLC, a Delaware limited
liability company; CENTRIC GROUP
4 | HOSPITAL PLAN; COGENTRIX
5 | ENERGY POWER MANAGEMENT,
LLC, a North Carolina limited liability
6 | company; COGENTRIX ENERGY
POWER MANAGEMENT, LLC
7 | GROUP INSURANCE PLAN; C.H.
8 | ROBINSON COMPANY, INC., a
Minnesota corporation; CH
9 | ROBINSON COMPANY GROUP
10 | HEALTH MAJOR MEDICAL PLAN;
CHARLOTTE RUSSE, INC., a
11 | California corporation; CHARLOTTE
RUSSE HOLDING, INC. WELFARE
12 | BENEFIT PLAN; CHARMING
13 | SHOPPES, INC., a Pennsylvania
corporation; CHARMING SHOPPES,
14 | INC. MEDICAL PLAN; CHEVRON
15 | CORPORATION, a Delaware
corporation; CHEVRON
16 | CORPORATION OMNIBUS
17 | HEALTH CARE PLAN; CITIGROUP,
INC., a Delaware corporation;
18 | CITIGROUP HEALTH BENEFIT
PLAN; CNA FINANCIAL
19 | CORPORATION, a Delaware
20 | corporation; CNA FINANCIAL
CORPORATION HEALTH AND
21 | GROUP BENEFITS PROGRAM;
22 | COGNIZANT TECHNOLOGY
SOLUTIONS U.S. CORPORATION, a
23 | Delaware corporation; COGNIZANT
HEALTH & WELFARE BENEFIT
24 | PLAN; COMFORT SYSTEMS USA,
25 | INC., a Delaware corporation;
COMFORT SYSTEMS USA HEALTH
26 | & WELFARE PLAN; COMMSCOPE,
INC. OF NORTH CAROLINA, a North
27 | Carolina corporation; COMMSCOPE
28 | WELFARE BENEFIT PLAN;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  CONMED CORPORATION, a New
2  York corporation; CONMED
   CORPORATION HEALTHCARE
3  PLAN; CONSTRUCTION
   TEAMSTERS SECURITY FUND FOR
4  SOUTHERN CALIFORNIA; CORT
5  BUSINESS SERVICES
   CORPORATION, a Delaware
6  corporation; CORT BUSINESS
   SERVICES CORPORATION GROUP
7  INSURANCE PLAN; COVIDIEN, LP,
8  a Delaware limited partnership;
   COVIDIEN HEALTH & WELFARE
9  BENEFITS PLAN; CREDIT SUISSE
   SECURITIES (USA), LLC, a Delaware
10 limited liability company; CREDIT
11 SUISSE SECURITIES (USA) LLC
   GROUP HEALTH CARE PLAN;
12 CROWLEY HOLDINGS, INC., a
13 Delaware corporation; CROWLEY
   HOLDINGS, INC. WELFARE
14 HEALTH LIFE & ACCIDENTAL
   DEATH & DISMEMBERMENT
15 PLANS; CYTEC INDUSTRIES, INC.,
16 a Delaware corporation; CYTEC
   INDUSTRIES INC. HEALTH AND
17 WELFARE PLAN; DANAHER
18 CORPORATION, a Delaware
   corporation; DANAHER
19 CORPORATION & SUBSIDIARIES
20 MEDICAL PLAN; DARDEN
   RESTAURANTS, INC., a Florida
21 corporation; DARDEN GROUP LIFE
   AND HEALTH BENEFIT PLAN FOR
22 HOURLY EMPLOYEES; DARDEN
23 GROUP LIFE AND HEALTH
   BENEFIT PLAN FOR SALARIED
24 EMPLOYEES; DEERE & COMPANY,
25 a Delaware corporation; JOHN DEERE
   HEALTH BENEFIT PLAN FOR
26 WAGE EMPLOYEES; THE JOHN
27 DEERE HEALTH BENEFIT PLAN
   FOR SALARIED EMPLOYEES;
28 DELLACAMERA CAPITAL

1  MANAGEMENT, LLC, a Delaware
limited liability company;
2  DELLACAMERA CAPITAL
MANAGEMENT, LLC HEALTH
3  AND WELFARE PLAN; DELOITTE,
LLP, a Pennsylvania limited liability
4  partnership; DELOITTE & TOUCHE
GROUP INSURANCE PLAN; DELTA
5  AIR LINES, INC., a Delaware
6  corporation; DELTA FAMILY-CARE
MEDICAL PLAN; DENSO
7  PRODUCTS AND SERVICES
AMERICAS, INC., a California
8  corporation; DENSO SALES
CALIFORNIA, INC. GROUP LIFE,
9  ACCIDENT, MEDICAL & DENTAL
INSURANCE; DIAGEO NORTH
10  AMERICA, INC., a Connecticut
corporation; DIAGEO NORTH
11  AMERICA, INC. MEDICAL CARE
AND LIFE INSURANCE PLAN FOR
12  HOURLY AND RETIRED
EMPLOYEES; DIAGEO NORTH
13  AMERICA, INC. MEDICAL CARE
AND LIFE INSURANCE PLAN FOR
14  SALARIED AND RETIRED
EMPLOYEES; DOLLAR THRIFTY
15  AUTOMOTIVE GROUP, INC., a
Delaware corporation; DOLLAR
16  THRIFTY AUTOMOTIVE GROUP,
INC. WELFARE BENEFIT PLAN;
17  DR. PEPPER SNAPPLE GROUP,
INC., a Delaware corporation; DR.
18  PEPPER SNAPPLE GROUP, INC.
HEALTH PLAN; DRIVETIME
19  AUTOMOTIVE GROUP, INC., a
Delaware corporation; DRIVETIME
20  WELFARE BENEFIT PLAN; DS
WATERS OF AMERICA, INC., a
21  Delaware corporation; DS WATERS
OF AMERICA, INC. HEALTH AND
22  WELFARE PLAN; ECOLAB, INC., a
Delaware corporation; ECOLAB
23  HEALTH AND WELFARE

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  BENEFITS PLAN; EDWARD D.
2  JONES & CO., LP, a Missouri limited
   partnership; EDWARD D. JONES &
3  CO. EMPLOYEES HEALTH AND
4  WELFARE PROGRAM; EMCOR
   GROUP, INC., a Delaware corporation;
5  EMCOR GROUP, INC. EMPLOYEE
   WELFARE PLAN; ENSIGN UNITED
6  STATES DRILLING, INC., a Colorado
7  corporation; ENSIGN US DRILLING
   EMPLOYEE BENEFIT PLAN;
8  ENTERPRISE HOLDINGS, INC., a
   Missouri corporation; ENTERPRISE
9  HOLDINGS HOSPITAL INSURANCE
10 PLAN; ENVIRONMENTAL
   SYSTEMS RESEARCH INSTITUTE,
11 INC., a California corporation;
   ENVIRONMENTAL SYSTEMS
12 RESEARCH INSTITUTE, INC. LIFE,
13 LTD. TRAVEL ACCIDENT, VISION
   SERVICE, MEDICAL DENTAL;
14 EQUITY RESIDENTIAL SERVICES,
15 LLC, a Delaware limited liability
   company; EQUITY RESIDENTIAL
16 PROPERTIES TRUST GROUP
17 INSURANCE PLAN; ERNST &
   YOUNG, LLP, a Delaware limited
18 liability partnership; ERNST &
19 YOUNG MEDICAL PLAN; ESSILOR
   OF AMERICA, INC., a Delaware
20 corporation; ESSILOR OF AMERICA,
   INC. EMPLOYER WELFARE
21 BENEFIT PLAN; THE ESTEE
22 LAUDER COMPANIES, INC., a
   Delaware corporation; THE ESTEE
23 LAUDER COMPANIES, INC. GROUP
   MEDICAL, DENTAL,
24 PRESCRIPTION DRUG, LONG
25 TERM DISABILITY, LIFE,
   ACCIDENTAL DEATH AND
26 DISMEMBERMENT PLAN;
27 EXPERIAN INFORMATION
   SOLUTIONS, INC., an Ohio
28 corporation; EXPERIAN

INFORMATION SOLUTIONS, INC. HEALTH AND WELFARE PLAN; EXPRESSJET AIRLINES, INC., a Utah corporation, F/K/A ATLANTIC SOUTHEAST AIRLINES; EXPRESSJET AIRLINES, INC. CONSOLIDATED WELFARE BENEFIT PLAN; FARMERS GROUP, INC., a Nevada corporation; FARMERS GROUP, INC. EMPLOYEE PREPAID BENEFIT PLAN; FC USA, INC., a New York corporation; FC USA INC. BENEFITS; FIDELITY BROKERAGE SERVICES, LLC, a Delaware limited liability company; FIDELITY GROUP EMPLOYEES MEDICAL, DENTAL AND CAFETERIA PLAN; KATE SPADE & COMPANY, a Delaware corporation, F/K/A FIFTH & PACIFIC COMPANIES, INC.; FNPC HEALTH AND WELFARE PLAN; FINRA DISPUTE RESOLUTION, INC., a Delaware corporation; FINRA EMPLOYEE GROUP MEDICAL, DENTAL, LIFE, DISABILITY, AD&D & VISION PLAN; FISERV, INC., a Wisconsin corporation; FISERV, INC. WELFARE BENEFIT PLAN; FIVE STAR QUALITY CARE, INC., a Massachusetts corporation; FIVE STAR QUALITY CARE; FLEXTRONICS INTERNATIONAL USA, INC., a California corporation; FLEXTRONICS EMPLOYEE BENEFITS PLAN; FOOT LOCKER RETAIL, INC., a New York corporation; FOOT LOCKER WELFARE BENEFIT PAYMENT PLAN; FOUNDERS HEALTHCARE, LLC, an Arizona limited liability company; FOUNDERS HEALTHCARE, LLC PREFERRED HOMECARE EMPLOYEE BENEFIT

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

PLAN; FOX ENTERTAINMENT GROUP, INC., a Delaware corporation; FOX HEALTH PLAN; FUGATE AVIATION, INC., a Kansas corporation; FUGATE ENTERPRISES EMPLOYEE WELFARE BENEFIT PLAN; FUTURE ELECTRONICS CORP., a Massachusetts corporation; FUTURE ELECTRONICS CORP. GROUP INSURANCE; G4S SECURE SOLUTIONS, (USA) INC., a Florida corporation; G4S SECURE SOLUTIONS, USA INSURED HEALTH PLANS; GAP, INC., a California corporation; GAP INC. HEALTH AND LIFE INSURANCE PLAN; GENERAL ELECTRIC COMPANY, a New York corporation; GE HEALTH CHOICE PLAN; GENERAL PARTS INTERNATIONAL, INC., a North Carolina corporation; GENERAL PARTS INTERNATIONAL, INC. SELF-FUNDED HEALTH AND WELFARE PLAN; GENON ENERGY SERVICES, LLC, a Delaware limited liability company; GENON ENERGY GROUP WELFARE BENEFITS PLAN; GENPACT PROCESS SOLUTIONS, LLC, a Delaware limited liability company; GENPACT WELFARE BENEFIT PLAN; GEORGIA-PACIFIC, LLC, a Delaware limited liability company; GEORGIA-PACIFIC LLC LIFECHOICES BENEFITS PROGRAM FOR SALARIED AND SALARIED BENEFITS ELIGIBLE EMPLOYEES; GLAXOSMITHKLINE, LLC, a Delaware limited liability company; GLAXOSMITHKLINE HEALTH AND WELFARE BENEFITS PLAN FOR US EMPLOYEES; GP STRATEGIES CORPORATION, a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1 Delaware corporation, F/K/A
2 GENERAL PHYSICS
CORPORATION; GP STRATEGIES
3 CORPORATION WELFARE
BENEFIT PLAN; GREAT-WEST
4 LIFE & ANNUITY INSURANCE
COMPANY, a Colorado corporation;
5 GREAT-WEST LIFE & ANN INS
6 FLEXIBLE BENEFIT PLAN;
GREYSTAR MANAGEMENT
7 SERVICES, LP, a Delaware limited
partnership; GREYSTAR
8 MANAGEMENT SERVICES, LLP;
9 GTECH CORPORATION, a Delaware
corporation; GTECH CORPORATION
10 PARTICIPANT BENEFIT PLAN; HD
SUPPLY, INC., a Delaware
11 corporation; HD SUPPLY HEALTH
12 AND WELFARE PROGRAM;
HEALTH INVENTURES, LLC, a
13 Delaware limited liability company;
HEALTH INVENTURES HEALTH
14 AND WELLNESS BENEFIT PLAN;
15 HEARTLAND AUTOMOTIVE
SERVICES, INC., a Minnesota
16 corporation; HEARTLAND
AUTOMOTIVE SERVICES, INC.
17 GROUP MEDICAL AND LIFE PLAN;
18 HEWLETT-PACKARD COMPANY, a
Delaware corporation; HEWLETT-
19 PACKARD COMPANY
20 COMPREHENSIVE WELFARE
BENEFITS PLAN; HONEYWELL
21 INTERNATIONAL, INC., a Delaware
22 corporation; HONEYWELL
INTERNATIONAL INC. BENEFIT
23 PLAN; HOT TOPIC, INC., a California
24 corporation; HOT TOPIC, INC.
HEALTH AND WELFARE PLAN;
25 HUHTAMAKI AMERICAS, INC., a
26 Delaware corporation; HUHTAMAKI
AMERICAS, INC. GROUP
27 INSURANCE PLAN; INFORMA
28 USA, INC., a Massachusetts

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

corporation; INFORMA USA, INC.
AND SUBSIDIARIES INSURANCE
PLAN; ING NORTH AMERICA
INSURANCE CORPORATION, a
Delaware corporation; ING
AMERICAS WELFARE BENEFITS
PLAN; INSTANT WEB, INC., a
Minnesota corporation; INSTANT
WEB INC. AND SUBSIDIARY
MEDICAL BENEFIT PLAN;
INTEGRA LIFESCIENCES
CORPORATION, a Delaware
corporation; INTEGRA
LIFESCIENCES CORP.
MEDICAL/PRESCRIPTION,
DENTAL AND STD PLAN;
INTELSAT CORPORATION, a
Delaware corporation; INTELSAT
GROUP WELFARE BENEFITS
PLAN; INTERNATIONAL
BUSINESS MACHINES
CORPORATION, a New York
corporation; IBM MEDICAL &
DENTAL PLAN FOR REGULAR
AND PART-TIME EMPLOYEES;
INTERNATIONAL PAPER
COMPANY, a New York corporation;
INTERNATIONAL PAPER
COMPANY GROUP HEALTH &
WELFARE PLAN;
INTERNATIONAL SPEEDWAY
CORPORATION, a Florida
corporation; INTERNATIONAL
SPEEDWAY CORPORATION
WELFARE BENEFIT PLAN;
INTERSTATE HOTELS & RESORTS,
INC., a Delaware corporation;
INTERSTATE HOTELS & RESORTS
BENEFITS PROGRAM; INX
INTERNATIONAL INK CO., a
Delaware corporation; INX
INTERNATIONAL GROUP
MEDICAL/DENTAL PLAN; J.C.
PENNEY CORPORATION, INC., a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Delaware corporation; J.C. PENNEY CORPORATION, INC. HEALTH & WELFARE BENEFITS PLAN; J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC., a New York corporation; THE JPMORGAN CHASE HEALTH & INCOME PROTECTION PLAN FOR ACTIVE EMPLOYEES; JACK IN THE BOX, INC., a Delaware corporation; JACK IN THE BOX, INC. CREW EMPLOYEES HEALTH & WELFARE PLAN; JACOBS ENGINEERING GROUP, INC., a Delaware corporation; JACOBS ENGINEERING GROUP, INC. EMPLOYEE GROUP INSURANCE PLAN; JETBLUE AIRWAYS CORPORATION, a Delaware corporation; JETBLUE AIRWAYS GROUP HEALTH INSURANCE PLAN; JONES LANG LASALLE, INC., a Maryland corporation; JONES LANG LASALLE INC. HEALTH AND WELFARE BENEFITS PLAN; KINDER MORGAN G.P., INC., a Delaware corporation; KMI FLEXIBLE BENEFIT PLAN; KINETIC CONCEPTS, INC., a Texas corporation; KCI MEDICAL PLAN; KLA-TENCOR CORPORATION, a Delaware corporation; KLA-TENCOR CORPORATION GROUP INSURANCE PLAN; KONICA MINOLTA BUSINESS SOLUTIONS USA, INC., a New York corporation; KONICA MINOLTA BUSINESS SOLUTIONS USA, INC. LIFE, DISABILITY, ACCIDENT, MEDICAL AND DENTAL PLAN; L BRANDS, INC., a Delaware corporation, F/K/A LIMITED BRANDS, INC.; LIMITED BRANDS, INC. HEALTH AND WELFARE

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

15

THIRD AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  BENEFITS PLAN; LA-Z-BOY
2  INCORPORATED, a Michigan
   corporation; LA-Z-BOY
3  INCORPORATED MEDICAL PLAN;
4  LGAA, LLC, a Utah limited liability
   company, F/K/A LEAVITT GROUP
5  AGENCY ASSOCIATION; LGAA
   BENEFIT PLAN; LEVEL 3
6  COMMUNICATIONS, LLC, a
7  Delaware limited liability company;
   LEVEL 3 COMMUNICATIONS, INC.
8  WELFARE BENEFIT PLAN; LEVY
   RESTAURANTS, INC., an Illinois
9  corporation; EMPLOYEE BENEFIT
   PLAN OF THE COMPASS GROUP
10 USA, INC.; LINDE NORTH
11 AMERICA, INC., a Delaware
   corporation; LINDE NORTH
12 AMERICA, INC. INSURANCE PLAN;
13 L'OREAL USA S/D, INC., a Delaware
   corporation; L'OREAL USA, INC.
14 COMPREHENSIVE MEDICAL
15 PLAN; MAERSK, INC., a New York
   corporation; MAERSK INC. ACTIVE
16 NONUNION HEALTH AND
   WELFARE PLAN; MARUBENI
17 ITOCHU STEEL AMERICA, INC., a
18 Delaware corporation; MISA GROUP
   BENEFIT PLANS; MARY KAY, INC.,
19 a Delaware corporation; MARY KAY,
20 INC. COMPREHENSIVE EMPLOYEE
   HEALTH AND WELFARE PLAN;
21 MCCARTHY HOLTHUS, LP, a
22 California limited partnership;
   MCCARTHY & HOLTHUS, LLP
23 WELFARE BENEFITS PLAN; MCM
   CORPORATION, a North Carolina
24 corporation; HEALTH CARE PLAN
25 OF THE EMPLOYEES OF MCM
   CORP; MCMASTER-CARR SUPPLY
26 COMPANY, an Illinois corporation;
27 MCMASTER-CARR SUPPLY
   COMPANY GROUP INSURANCE
28 PROGRAM; MEDCO HEALTH

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  SOLUTIONS, INC., a Delaware
2  corporation; MEDCO HEALTH
   SOLUTIONS, INC. WELFARE
3  BENEFIT PLAN; CAREFUSION
   CORPORATION, a Delaware
4  corporation, F/K/A MEDEGEN, INC.;
5  METROPOLITAN LIFE INSURANCE
   COMPANY, a New York corporation;
6  METLIFE OPTIONS AND CHOICES
   PLAN; MIDAMERICAN ENERGY
7  COMPANY, an Iowa corporation;
8  MIDAMERICAN ENERGY
   COMPANY WELFARE BENEFIT
9  PLAN; MILLARD REFRIGERATED
10 SERVICES, INC., a Georgia
   corporation; MILLARD
11 REFRIGERATED SERVICES, INC.
   GROUP MAJOR MEDICAL; MOBILE
12 MINI, INC., a Delaware corporation;
13 MOBILE MINI, INC. BENEFIT
   PLAN; MONROVIA NURSERY
14 COMPANY, a California corporation;
15 MONROVIA NURSERY COMPANY
   EMPLOYEE BENEFIT PLAN;
16 MULTIPLAN, INC., a New York
   corporation; HEALTH INSURANCE
17 PLAN OF MULTIPLAN, INC.;
18 NATIONAL MENTOR HOLDINGS,
   LLC, a Delaware limited liability
19 company; NATIONAL MENTOR
20 HOLDINGS, LLC FLEXIBLE
   BENEFIT PLAN; NATIONAL
21 RAILROAD PASSENGER
   CORPORATION, a District of
22 Columbia corporation; AMPLAN, THE
23 AMTRAK UNION BENEFITS PLAN;
   NATIONAL RAILROAD
24 PASSENGER CORPORATION
   CHOICEPLUS CAFETERIA PLAN;
25 NATIONSTAR MORTGAGE, LLC, a
26 Delaware limited liability company;
   NATIONSTAR MORTGAGE GROUP
27 HEALTH AND WELFARE BENEFIT
28 PLAN; NCH CORPORATION, a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Delaware corporation; NCH CORPORATION EMPLOYEE LIFE AND HEALTH BENEFIT PLAN; NEC CORPORATION OF AMERICA, a Nevada corporation; GROUP INSURANCE PLAN FOR EMPLOYEES OF NEC AND AFFILIATES; NEFF RENTAL, LLC, a Delaware limited liability company; NEFF RENTAL LLC HEALTH & WELFARE PLAN; NESTLE WATERS NORTH AMERICA, INC., a Delaware corporation; NESTLE WATERS NORTH AMERICA HOLDINGS GROUP BENEFITS PLAN; NEW BREED CORPORATE SERVICES, INC., a New Jersey corporation; NEW BREED CORPORATE SERVICES INC. WELFARE BENEFIT PLAN; NIKE, INC., an Oregon corporation; NIKE, INC. GROUP INSURANCE PLAN; NORTHROP GRUMMAN CORPORATION, a Delaware corporation; NORTHROP GRUMMAN CORPORATION GROUP BENEFITS PLAN; NOVARTIS CORPORATION, a New York corporation; NOVARTIS CORPORATION WELFARE BENEFIT PLAN; NPL CONSTRUCTION CO., a Nevada corporation; NPL CONSTRUCTION CO. EMPLOYEE HEALTH BENEFIT PLAN; NURSEFINDERS, LLC, a Texas limited liability company; AMN HEALTHCARE INC. HEALTH INSURANCE PLAN; OCLC ONLINE COMPUTER LIBRARY CENTER, INC., an Ohio corporation; OCLC EMPLOYEE GROUP MEDICAL PLAN; OLD DOMINION FREIGHT LINE, INC., a Virginia corporation; OLD DOMINION EMPLOYEE BENEFIT PLAN; OLIN CORPORATION, a Virginia

1  corporation; OLIN MEDICAL/DENTAL PLAN; ORIX
2  USA CORPORATION, a Delaware
3  corporation; ORIX USA CORPORATION WELFARE PLAN;
4  OSRAM SYLVANIA, INC., a
5  Delaware corporation; OSRAM SYLVANIA, INC. HEALTH AND
6  WELFARE BENEFITS PLAN;
7  WINDSTREAM CORPORATION , a Delaware corporation; WINDSTREAM
8  COMPREHENSIVE PLAN OF GROUP INSURANCE; PANALPINA,
9  INC., a New York corporation; PANALPINA, INC. WELFARE
10  BENEFITS PLAN; PARKER-
11  HANNIFIN CORPORATION, an Ohio corporation; GROUP INSURANCE
12  PLAN HOURLY AND SALARIED EMPLOYEES OF PARKER
13  HANNIFIN CORP.; PARSONS
14  CORPORATION, a Delaware corporation; GROUP BENEFITS
15  PLAN FOR EMPLOYEES OF
16  PARSONS CORPORATION & DESIGNATED SUBSIDIARIES;
17  PAYLESS SHOESOURCE, INC., a Missouri corporation; PAYLESS
18  SHOESOURCE, INC. MEDICAL
19  PLAN; PECHINEY PLASTIC PACKAGING, INC., a Delaware
20  corporation; ALCAN SALARIED
21  WELFARE BENEFITS PROGRAM; PENTAIR, INC., a Minnesota
22  corporation; PENTAIR, INC. ACTIVE
23  EMPLOYEE WELFARE PLAN; PERFORMANCE FOOD GROUP,
24  INC., a Colorado corporation;
25  PERFORMANCE FOOD GROUP INC. EMPLOYEE BENEFITS PLAN;
26  PERKINS FLEXIBLE BENEFITS
27  PLAN; DELL, INC., a Delaware corporation; DELL, INC.
28  COMPREHENSIVE HEALTH &

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  WELFARE PLAN; PETCO ANIMAL
2  SUPPLIES, INC., a Delaware
   corporation; PETCO ANIMAL
3  SUPPLIES INC. GROUP BENEFIT
   PLAN AND TRUST; PETER KIEWIT
4  SONS', INC., a Delaware corporation;
5  PETER KIEWIT SONS', INC.
   HEALTH AND WELFARE PLAN;
6  PETSMART, INC., a Delaware
   corporation; PETSMART
7  SMARTCHOICES BENEFIT PLAN;
8  PFIZER, INC., a Delaware corporation;
   PFIZER MEDICAL PLAN;
9  PHARMACEUTICAL PRODUCT
   DEVELOPMENT, LLC, a Florida
10 limited liability company;
11 PHARMACEUTICAL PRODUCT
   DEVELOPMENT, LLC WELFARE
12 BENEFIT PLAN; PLAINS ALL
13 AMERICAN GP, LLC, a Delaware
   limited liability company; PLAINS
14 ALL AMERICAN GP LLC
15 EMPLOYEE HEALTH BENEFIT
   PLAN; PLAYBOY ENTERPRISES
16 INTERNATIONAL, INC., a Delaware
   corporation; PLAYBOY HEALTH
17 BENEFIT PLAN; PPS HOLDINGS,
18 INC., a Tennessee corporation; PPS
   HOLDINGS, INC. EMPLOYEE
19 BENEFIT PLAN; PRIME
20 ADMINISTRATION, LLC, a Delaware
   limited liability company; PRIME
21 ADMINISTRATION LLC
22 CONSOLIDATED HEALTH &
   WELFARE PLAN; PROBUILD
23 HOLDINGS, INC., a Delaware
   corporation; PROBUILD HOLDINGS,
24 INC. WELFARE BENEFIT PLAN;
25 THE PROCTER & GAMBLE
   COMPANY, an Ohio corporation; THE
26 PROCTER & GAMBLE HEALTH
   CARE PLAN; PROGRESSIVE
27 LOGISTICS SERVICES, LLC, a
28 Georgia limited liability company;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

THIRD AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  PROGRESSIVE LOGISTICS
2  SERVICES, LLC MEDICAL & LIFE
   INSURANCE BENEFITS PLAN; PSC
3  ENVIRONMENTAL SERVICES,
   LLC, a Delaware limited liability
4  company; PSC, LLC GROUP
5  WELFARE BENEFITS PLAN;
   WOOD GROUP PSN, INC., a Nevada
6  corporation; QUANTUM
   CORPORATION, a Delaware
7  corporation; QUANTUM
8  CORPORATION WELFARE
   BENEFIT PLAN; RAINBOW USA,
9  INC., a New York corporation;
   RAINBOW USA, INC. MEDICAL
10 PLAN; RAYTHEON COMPANY, a
11 Delaware corporation; RAYTHEON
   HEALTH BENEFITS PLAN; RED
12 WING SHOE COMPANY, INC., a
13 Minnesota corporation; RED WING
   SHOE COMPANY HEALTH PLAN;
14 REXAM, INC., a Delaware
   corporation; GROUP INSURANCE
15 PLAN FOR EMPLOYEES OF
16 REXAM, INC.; REXNORD
   INDUSTRIES, LLC, a Delaware
17 limited liability company; REXNORD
18 WELFARE PLAN; REYES
   HOLDINGS, LLC, a Delaware limited
19 liability company; THE REYES
20 HOLDINGS FLEXIBLE BENEFITS
   PLAN; RITE AID CORPORATION, a
21 Delaware corporation; RITE AID
22 CORPORATION HEALTH
   INSURANCE PLAN;
23 RURAL/METRO CORPORATION, an
   Arizona corporation; RURAL METRO
24 CORPORATION EMPLOYEE
25 BENEFIT PLAN; RUSH TRUCK
   CENTERS OF CALIFORNIA, INC., a
26 Delaware corporation; RUSH
27 ENTERPRISES MEDICAL PLAN;
   RYDER SERVICES CORPORATION,
28 a Florida corporation; RYDER

SYSTEM, INC. FLEXIBLE
BENEFITS PLAN; SAFRAN USA,
INC., a Delaware corporation;
SAFRAN USA, INC. CAFETERIA
PLAN; SAIA MOTOR FREIGHT
LINE, LLC, a Louisiana limited
liability company; SAIA MOTOR
FREIGHT LINE LLC EMPLOYEE
PREFERRED PROVIDER PLAN;
SALLY BEAUTY HOLDINGS, INC.,
a Delaware corporation; SALLY
BEAUTY HOLDINGS INC. HEALTH
AND WELFARE PLAN;
SANTANDER CONSUMER USA,
INC., an Illinois corporation;
SANTANDER CONSUMER USA
INC. WELFARE BENEFIT PLAN;
SCHNEIDER NATIONAL, INC., a
Wisconsin corporation; SCHNEIDER
NATIONAL, INC. FLEXIBLE
BENEFITS PLAN; SEDGWICK
CLAIMS MANAGEMENT
SERVICES, INC., an Illinois
corporation; SEDGWICK CLAIMS
MANAGEMENT SERVICES, INC.
WELFARE BENEFIT PLAN; SELECT
SPECIALIZED STAFFING, INC., a
California corporation; SELECT
STAFFING – FLEXIBLE BENEFITS
PLAN; SHELL OIL COMPANY, a
Delaware corporation; SHELL OIL
COMPANY COMPREHENSIVE
WELFARE BENEFITS PLAN;
SIEMENS CORPORATION, a
Delaware corporation; SIEMENS
CORPORATION GROUP LIFE,
MEDICAL, DENTAL, VISION,
HEARING AND LONG TERM
DISABILITY INCOME PLAN;
SILVERADO SENIOR LIVING
HOLDINGS, INC., a Delaware
corporation; SILVERADO SENIOR
LIVING HOLDINGS, INC.
WELFARE BENEFITS PLAN;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

SKYWEST AIRLINES, INC., a Utah corporation; SKYWEST, INC. CAFETERIA PLAN; SLEEP INNOVATIONS, INC., a New Jersey corporation; SLEEP INNOVATIONS, INC. WELFARE BENEFIT PLAN; SMURFIT KAPPA ORANGE COUNTY, LLC, a Delaware limited liability company, F/K/A ORANGE COUNTY CONTAINER GROUP, LLC; ORANGE COUNTY CONTAINERS GROUP MEDICAL PLAN; SOURCEHOV, LLC, a Delaware limited liability company; SOURCEHOV, LLC HEALTH AND WELFARE BENEFIT PLAN; SOUTHWEST AIRLINES CO., a Texas corporation; SOUTHWEST AIRLINES CO. WELFARE BENEFIT PLAN; SOUTHWEST GAS CORPORATION, a California corporation; SOUTHWEST GAS CORPORATION LIFE INSURANCE & HEALTH PLAN; STEIN MART, INC., a Florida corporation; STEIN MART, INC. & SUBSIDIARIES HEALTH BENEFIT PLAN; SUNBURST HOSPITALITY CORPORATION, a Delaware corporation; SUNBURST HOSPITALITY CORPORATION EMPLOYEE WELFARE PLAN; SYSTEMS APPLICATION & TECHNOLOGIES, INC., a Delaware corporation; SYSTEMS APPLICATION AND TECHNOLOGIES, INC. HEALTH AND WELFARE PLAN; TARGET CORPORATION, a Minnesota corporation; TARGET CORPORATION EMPLOYEE UMBRELLA TRUSTEED BENEFIT PLAN; TECH DATA CORPORATION, a Florida

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

corporation; TECH DATA
CORPORATION EMPLOYEE
WELFARE BENEFITS PLAN;
TELAID INDUSTRIES, INC., a
Connecticut corporation; TELAID
GROUP HEALTH PLAN;
TESTAMERICA LABORATORIES,
INC., a Delaware limited liability
company; TESTAMERICA
EMPLOYEE BENEFITS PLAN;
TEXTRON, INC., a Delaware
corporation; TEXTRON BARGAINED
INSURED BENEFITS PLAN; TGI
FRIDAY'S, INC., a New York
corporation; THE BOEING
COMPANY, a Delaware corporation;
BOEING NORTH AMERICAN
EMPLOYEE HEALTH PLAN; THE
CHILDREN'S PLACE RETAIL
STORES, INC., a Delaware
corporation; THE CHILDREN'S
PLACE HEALTH CARE, SHORT
TERM DISABILITY & LIFE
INSURANCE PLAN; THE CLOROX
COMPANY, a Delaware corporation;
THE CLOROX COMPANY GROUP
INSURANCE PLAN; THE COCA-
COLA COMPANY, a Delaware
corporation; THE COCA-COLA
COMPANY HEALTH AND
WELFARE BENEFITS PLAN; THE
GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA, a New
York corporation; THE GUARDIAN
HIGH DEDUCTIBLE HEALTH PLAN
THROUGH UNITEDHEALTHCARE
HOME OFFICE; THE HAIN
CELESTIAL GROUP, INC., a
Delaware corporation; THE HAIN
CELESTIAL GROUP, INC.
BENEFITS PLAN; THE HERTZ
CORPORATION, a Delaware
corporation; HERTZ CUSTOM
BENEFIT PROGRAM; THE

1  INTERPUBLIC GROUP OF
2  COMPANIES, INC., a Delaware
   corporation; THE INTERPUBLIC
3  GROUP OF COMPANIES, INC.
   HEALTH AND WELFARE PLAN;
4  THE MCGRAW-HILL FINANCIAL,
5  INC., a New York corporation, F/K/A
   THE MCGRAW-HILL COMPANIES,
6  INC.; THE MCGRAW-HILL
   COMPANIES, INC. GROUP HEALTH
7  PLAN; THE SERVICEMASTER
8  COMPANY, LLC, a Delaware limited
   liability company; THE
9  SERVICEMASTER HEALTH &
   WELFARE BENEFITS PLAN; THE
10 TRAVELERS COMPANIES, INC., a
11 Minnesota corporation; THE
   TRAVELERS TRUSTEED
12 EMPLOYEE BENEFIT PLAN; THE
13 TRAVELERS NON-TRUSTEED
   EMPLOYEE BENEFIT PLAN; THE
14 TURNER CORPORATION, a New
15 York corporation; THE TURNER
   CORPORATION WELFARE
16 BENEFITS PLAN; THERMO FISHER
17 SCIENTIFIC, INC., a Delaware
   corporation; THERMO FISHER
18 SCIENTIFIC INC. GROUP
   INSURANCE PLAN; TIME WARNER
19 CABLE, INC., a Delaware corporation;
20 TIME WARNER CABLE BENEFITS
   PLAN; TIRE CENTERS, LLC, a
21 California limited liability company;
22 TIRE CENTERS, LLC EMPLOYEE
   BENEFIT PLAN; T-MOBILE USA,
23 INC., a Delaware corporation; T-
   MOBILE USA, INC. EMPLOYEE
24 BENEFIT PLAN; TOSHIBA
25 AMERICA, INC., a Delaware
   corporation; TOSHIBA AMERICA
26 INC. GROUP WELFARE BENEFIT
   PLAN; TOWERS WATSON & CO., a
27 Delaware corporation; TOWERS
28 WATSON MEDICAL PLAN;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  TRIBUNE COMPANY, a Delaware
2  corporation; TRIBUNE COMPANY
   BENEFIT PROGRAM; TRINET HR
3  CORPORATION, a California
   corporation, F/K/A GEVITY HR, INC.;
4  TRINET EMPLOYEE BENEFIT
5  INSURANCE PLAN; TTX
   COMPANY, a Delaware corporation;
6  TTX COMPANY GROUP AND
   HEALTH PLAN; UNION BANK,
7  N.A., a California corporation; UNION
8  BANK HEALTH BENEFIT PLAN;
   UNITED AIRLINES, INC., a Delaware
9  corporation; UNITED AIRLINES
10 CONSOLIDATED WELFARE
   BENEFIT PLAN; UNITEDHEALTH
11 GROUP EMPLOYEE HEALTH
   BENEFIT PLAN; UNIVISION
12 COMMUNICATIONS, INC., a
13 Delaware corporation; UNIVISION
   WELFARE BENEFITS PLAN; US
14 AIRWAYS GROUP, INC., a Delaware
15 corporation; US AIRWAYS, INC.
   HEALTH BENEFIT PLAN; U.S.
16 NURSING CORPORATION, a
   Colorado corporation; US NURSING
17 CORP. EMPLOYEE BENEFIT PLAN;
18 USA TRUCK, INC., a Delaware
   corporation; USA TRUCK INC.
19 WELFARE BENEFIT PLAN; UTI
20 SERVICES, INC., a California
   corporation; UTI SERVICES, INC.
21 WELFARE BENEFITS PLAN;
22 VALEANT PHARMACEUTICALS
   INTERNATIONAL, a Delaware
23 corporation; VALEANT
   PHARMACEUTICALS
24 INTERNATIONAL GROUP
25 WELFARE PLAN; VELOCITY
   EXPRESS, LLC, a Delaware limited
26 liability company; VELOCITY
   EXPRESS, LLC FLEXIBLE
27 BENEFITS PLAN; VEOLIA
28 ENVIRONMENTAL SERVICES

1201369.1

1  NORTH AMERICA, LLC, a Wisconsin
corporation; VEOLIA
2  ENVIRONMENTAL SERVICES
NORTH AMERICA CORP.
3  EMPLOYEE HEALTH BENEFIT
PLAN; VERIZON
4  COMMUNICATIONS, INC., a
Delaware corporation; VERIZON
5  PLAN 550; VIACOM, INC., a
Delaware corporation; VIACOM
6  HEALTH AND WELFARE PLAN;
7  VOLT INFORMATION SCIENCES,
INC., a New York corporation; VOLT
8  INFORMATION SCIENCES, INC.
AND AFFILIATES EMPLOYEE
9  WELFARE BENEFITS PLAN;
10  VULCAN MATERIALS COMPANY,
a New Jersey corporation; HEALTH &
11  WELFARE BENEFIT PLANS OF
VULCAN MATERIALS COMPANY;
12  W.W. GRAINGER, INC., an Illinois
13  corporation; W.W. GRAINGER INC.
GROUP BENEFIT PLAN I; W.W.
14  GRAINGER INC. GROUP BENEFIT
PLAN II; WACHOVIA FINANCIAL
15  SERVICES, INC., a Delaware
16  corporation; WACHOVIA
CORPORATION HEALTH AND
17  WELFARE PLAN; WAL-MART
STORES, INC., a Delaware
18  corporation; WAL-MART STORES,
INC. ASSOCIATES HEALTH AND
19  WELFARE PLAN; WELLS FARGO &
20  COMPANY, a Delaware corporation;
WELLS FARGO & CO. HEALTH
21  PLAN; WE'RE READY TO
ASSEMBLE, INC., a Texas corporation
22  (F/K/A NATIONAL PRODUCT
SERVICES, INC.) DBA IMPACT
23  RESOURCE GROUP; WE'RE
24  READY TO ASSEMBLE DBA
IMPACT RESOURCE GROUP
25  BENEFIT PLAN; WHOLE FOODS
MARKET CALIFORNIA, INC., a
26
27
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

California corporation; WHOLE FOODS MARKET, INC. GROUP BENEFIT PLAN; WILLIAMS-SONOMA STORES, INC., a California corporation; WILLIAMS-SONOMA, INC. HEALTH & WELFARE PLAN; WIPRO LIMITED, an India corporation; WIPRO HEALTH AND WELFARE PLAN; WOLVERINE WORLD WIDE, INC., a Delaware corporation; GROUP INSURANCE PLAN WOLVERINE & RETAIL; WORLD TRAVEL HOLDINGS, INC., a Delaware corporation; WORLD TRAVEL HOLDINGS, INC. FLEXIBLE BENEFIT PLAN; WORLEYPARSONS CORPORATION, a Delaware corporation; GROUP BENEFITS PLAN FOR EMPLOYEES OF WORLEYPARSONS CORPORATION; YUM! BRANDS, INC., a North Carolina corporation; YUM! BRANDS, INC. RESTAURANT EMPLOYEES GROUP INSURANCE PLAN; ZALE CORPORATION, a Texas corporation; ZALE CORPORATION BENEFITS PLAN; BUCKEYE TECHNOLOGIES, INC., Delaware corporation; THE BUCKEYE TECHNOLOGIES COMPREHENSIVE HEALTH CARE PLAN; CALIBRE INC., a Wisconsin corporation; CALIBRE INC. EMPLOYEE HEALTH PLAN; EDGEWOOD MANAGEMENT CORPORATION, a Maryland Corporation dba MARYLAND EDGEWOOD MANAGEMENT CORPORATION; MID-CITY FINANCIAL/EDGEWOOD MANAGEMENT EMPLOYEE BENEFIT TRUST; POLYAIR CORPORATION, a Delaware

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  corporation; POLYAIR
2  CORPORATION FLEXIBLE
   BENEFITS PLAN; PSI SERVICES,
3  LLC, a California limited liability
   company; PSI SERVICES, LLC
4  HEALTH AND WELFARE
5  BENEFITS PLAN; GLOBAL MAIL,
   INC., a Delaware corporation dba DHL
6  GLOBAL MAIL; GLOBAL MAIL,
   INC. WELFARE PLAN; THE
7  RAILROAD EMPLOYEES
8  NATIONAL HEALTH & WELFARE
   PLAN; NATIONAL RAILWAY
9  CARRIERS AND UNITED
   TRANSPORTATION UNION
10 HEALTH & WELFARE PLAN; AND
11 DOES 1 through 10, inclusive,

12
13                    Defendants.

14

15        Plaintiffs Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery

16 Institute, LLC, CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center,

17 LLC, Modern Institute Of Plastic Surgery & Antiaging, Inc., New Life Surgery

18 Center, LLC dba Beverly Hills Surgery Center, Orange Grove Surgery Center, LLC,

19 Palmdale Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, San

20 Joaquin Valley Surgery Center, LLC, Skin Cancer & Reconstructive Surgery

21 Specialists Of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West

22 Hills Surgery Center, LLC, and Independent Medical Services, Inc. (collectively, the

23 "Plaintiff Providers") bring this action, alleging as follows:

24        1.     Plaintiffs bring this action pursuant to the Employee Retirement Income

25 Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 et seq.; and pursuant to the laws

26 of California, including but not limited to California's unfair competition law, Cal.

27 Civ. Code § 17200 et seq., for violations of the Americans with Disabilities Act of

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   1990 ("ADA") 42 U.S.C. § 12111 et seq., and the California Fair Employment and

2   Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq. for injuries caused by

3   United's efforts to deny morbidly obese patients access to the surgical services

4   provided at the Plaintiffs' surgery centers and medical providers.

## I.      INTRODUCTION

6       2.      This lawsuit alleges a deliberate, willful and concerted effort by United

7   Healthcare to avoid paying for basic medical benefits, including diagnostic, surgical,

8   and Lap-Band-related services for its morbidly obese members.  Plaintiffs believe

9   that United's improper actions, and the actions of the ERISA Plan Defendants that

10  knowingly supported, aided, and abetted United, violate a wide range of civil and

11  criminal laws, including both the civil and criminal provisions of ERISA and federal

12  and state anti-discrimination laws.

13      3.      The vast majority of patients whose claims are at issue in this lawsuit are

14  morbidly obese individuals who suffer from serious medical problems associated

15  with their obesity.

16      4.      All of these patients choose Preferred Provider Organization ("PPO")

17  insurance, rather than HMO insurance, through their employers so that they can

18  receive their medical services from the physicians and other medical providers of

19  their choice, regardless of whether those physicians are in-network or out-of-

20  network.  United Healthcare, who administers the PPO insurance for these

21  employers, advertises on its website that the benefits of its PPO policies include:

22  "The freedom to choose any doctor for your health care needs."[2]

23      5.      For essentially all of these patients, their healthcare providers

24  ("Providers" or "Plaintiffs") requested that United Healthcare authorize the patients

25  to undergo numerous pre-operative tests.  These tests are necessary to determine

---

27  [2] See UnitedHealthcare Options – a Preferred Provider Organization (PPO),

28  http://www.uhc.com/employer/health-plans/options-ppo (last visited May 28, 2015).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

whether the patients are qualified to receive Lap-Band surgery, but also have independent benefits, in diagnosing health issues that are common to Plaintiffs' morbidly obese patient population, other than morbid obesity itself.  United Healthcare either provided authorization for the plaintiffs' healthcare providers to perform each of the tests and procedures, or informed Plaintiffs that no authorization was needed.

6.     This testing, which could include esophagogastroduodenoscopy (an endoscopic procedure), polysomnography (overnight sleep observation), ultrasonic imaging, blood work, and pathology, was also designed to identify health issues that commonly arise within the Providers' morbidly obese patient population, including conditions such as sleep apnea, gastroesophageal reflux disease (GERD), or hernias. When such issues were found, the Providers sought and received authorization from United to provide corrective treatment.  Therefore, aside from whether the patients required treatment for obesity itself, and aside from whether their benefit plans covered such obesity treatment, the benefit plans did cover treatment for the real medical problems suffered by these patients.

7.     United Healthcare, however, has refused to pay for the vast majority of the medical services that were provided, even though the patients at issue all had PPO health benefits plans that covered these services.

8.     In many cases, United Healthcare authorized patients to receive the Lap-Band surgery, or other surgical procedures.  However, despite authorizing the surgeries, and despite fact that the procedures provided were covered services under the patients' plans, United Healthcare has, in many cases, refused to pay for the surgeries, or for any of the other medical services that were provided.

9.     Recognizing that the plans that it administers clearly cover the procedures received by the patients, United Healthcare has manufactured a number of pretextual excuses for denying the Providers' medical reimbursement claims.  The most common excuse is that it needs certain medical records from the patients'

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  healthcare providers – the Plaintiffs in this case.  However, the Plaintiffs provided all

2  the relevant medical records for each patient to United Healthcare on multiple

3  occasions.  Nevertheless, United Healthcare continues to falsely claim that it needs

4  additional records, and regularly relies on its supposed failure to receive such records

5  as the explicit and sole reason for denying Plaintifs' claims.

6       10.    When the healthcare providers call United Healthcare to ask what

7  records are missing, United Healthcare cannot say what records are missing.  Instead,

8  the United representatives who answer the phones say that United's claims processor,

9  OptumInsight, Inc. (previously known as "Ingenix," and more recently rebranded as

10  "Optum"), which is located in the Philippines, says that it is missing records, but

11  cannot tell United Healthcare what records are missing.

12       11.    United Healthcare, acting on behalf of the Employer and Plan

13  defendants named in this lawsuit, therefore avoided paying for any of the claims by

14  repeatedly asserting that it needs unspecified medical records.  However, it refuses to

15  identify what records are missing.  The truth is that United Healthcare has all the

16  medical records for all the claims at issue in this case, and did not need any more

17  records in order to adjudicate Plaintiffs' claims.

18       12.    Many patients have been afraid to have the Lap-Band surgeries, needed

19  follow-up, and other medically necessary procedures, even though their insurance

20  covers the procedures and they are authorized to have them, because they do not want

21  to be saddled with the liability for paying for the procedures, given that United

22  Healthcare may simply decide not to pay.

23       13.    Some patients have had the Lap-Band surgeries and need to have their

24  Lap-Bands adjusted because they have lost weight, or require other follow-up

25  medical procedures related to their surgeries.  However, these patients are afraid to

26  have these follow-up procedures because they do not want to further increase their

27  liability for payment due to United Healthcare's failure to pay.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

14.     The refusal of United Healthcare and the defendant Employers to pay for the procedures for their morbidly obese members and employees violates both civil and criminal provisions of the Employee Retirement Income Security Act ("ERISA") and constitutes discrimination against morbidly obese individuals. ERISA requires the defendants to provide the specific reasons for non-payment of claims, to state explicitly what additional records are needed to perfect the claims, and to provide all requested plan and other documents used to deny the claims. Defendants have repeatedly failed to comply with any of these requirements, which exposes them to penalties under ERISA.

15.     Hundreds of millions of dollars are owed by defendants for the services the Plaintiff healthcare providers have provided to defendants' members and insureds.  In addition, the Providers are entitled to a substantial award of penalties resulting from defendants' failures to provide the documents requested by plaintiffs.

**A.     Plaintiffs Provide Much-Needed Health Care to Morbidly Obese Patients.**

16.     Plaintiffs Almont Ambulatory Surgery Center, LLC, Bakersfield Surgery Institute, LLC, CIRO Surgery Center, LLC, East Bay Ambulatory Surgery Center, LLC, Modern Institute Of Plastic Surgery & Antiaging, Inc., New Life Surgery Center, LLC dba Beverly Hills Surgery Center, Orange Grove Surgery Center, LLC, Palmdale Surgery Center, LLC, San Diego Ambulatory Surgery Center, LLC, San Joaquin Valley Surgery Center, LLC, Skin Cancer & Reconstructive Surgery Specialists Of Beverly Hills, Inc., Valencia Ambulatory Surgery Center, LLC, West Hills Surgery Center, LLC, and Independent Medical Services, Inc., are a network of health providers that specialize in providing laparoscopic adjustable gastric band ("Lap-Band") surgery and other surgical procedures and medical services to individuals who are morbidly obese.

17.     Lap-Band surgery is a widely used and minimally invasive surgical procedure that involves tying a silicone band around a portion of the stomach pouch. Individuals who receive this procedure experience a feeling of satiety, or fullness,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  more quickly, and therefore eat less, which in turn promotes weight loss.  Compared

2  to other forms of bariatric surgery, such as gastric sleeve surgery or gastric bypass

3  procedures, one expert publicly commented that "Lap-Band really has the fewest

4  complications and is the least invasive."[3]

5      18.    Since 2010, Plaintiffs have helped thousands of morbidly obese

6  individuals to undergo Lap-Band surgery and/or other medical procedures that assist

7  those individuals in evaluating and obtaining effective treatment for their disability.

8  Plaintiffs estimate that roughly 90% of their patients are morbidly obese.

9      19.    In this lawsuit, Defendants are now refusing, for the first time, to pay for

10 any of the services provided by Plaintiffs to their morbidly obese patients on the

11 grounds that some benefit plans do not cover the surgical or non-surgical treatment of

12 obesity.  However, simply because the patients are obese does not mean that

13 Defendants can deny all medical treatment for them.  In other words, Defendants are

14 taking the position that non-obese patients can be treated for ailments such as sleep

15 apnea, hernias, or GERD, but obese patients cannot receive such medically necessary

16 care.

17     20.    This position is discriminatory.  The Equal Employment Opportunity

18 Commission has formally recognized "severe" or "morbid" obesity as a disability

19 under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*.  Morbidly obese

20 individuals are therefore protected from discrimination based upon their disability

21 status.  This includes discrimination with respect to the provision of health care

22 benefits that those individuals obtain through their employer.

23

24

25 [3] ABC News, Christie's Weight-Loss Surgery: Less Invasive but Slower Weight

26 Loss, May 7, 2013, http://abcnews.go.com/Health/chris-christies-lap-band-surgery-
   left-stomach-intact/story?id=19126013 (comments of Dr. Richard Besser, ABC

27 News' chief health and medical correspondent, regarding the recent announcement

28 by New Jersey governor Chris Christie that he had received Lap-Band surgery).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

21.     Indeed, the morbidly obese, who represent nearly 4% of America's population, are frequently discriminated against in the provision of medical care. This trend was illustrated by a blog post in the New York Times, which reported that in a recent study, one out of five doctors' offices in four major cities across the country refused to even book an appointment when researchers attempted to do so on behalf of a hypothetical overweight, disabled patient, and made unfounded assumptions about that patient without even meeting him.[4]  The Provider Plaintiffs therefore perform a valuable role in providing much-needed care to an underserved and misunderstood population.

22.     The position taken by numerous Defendants in this case (including the Jointly Represented Defendants) that morbidly obese patients who were beneficiaries or participants under Defendants' health plans were entitled to <u>no benefits</u> simply because they were obese is a form of outright discrimination against a protected class of individuals.

**B.     <u>Defendants' Blanket Refusal to Pay for Plaintiffs' Services Continues to Cause Serious and Ongoing Harm to Patient Care.</u>**

23.     This lawsuit arises from a deliberate, willful and concerted effort by Defendants UnitedHealth Group, Inc., United Healthcare Services, and UnitedHealthcare Insurance Company (collectively, "United" or "United Defendants") to deny payment for services that Plaintiffs rendered to their largely morbidly obese patient population.

24.     In 2010, Plaintiffs began submitting claims for reimbursement to United, who acts as the welfare benefits plan administrator for various ERISA and non-ERISA health benefits plans.

---

[4] Pauline W. Chen, New York Times Well Blog, May 23, 2013, *Disability and Discrimination at the Doctor's Office*, http://well.blogs.nytimes.com/2013/05/23/disability-and-discrimination-at-the-doctors-office/

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

25.     Plaintiffs are not members of UnitedHealth Group's in-network health care providers, and they are not signatories to any contracts with UnitedHealth Group.  Each of the claims which Plaintiffs submitted was pursuant to an authorization that they obtained from UnitedHealth Group prior to the procedure being performed.  In fact, with respect to a large majority of the patient claims, UnitedHealth Group's represented, in response to inquiries by the various Plaintiff providers, that United would reimburse the cost of the procedure at the <u>provider's</u> "usual and customary rates" ("UCR").  Yet, at the time that United made these affirmative representations, it had no intention of paying anything at all.

## 1.     <u>United Schemed to Withhold All Payment from Plaintiffs, And Then Lied About It.</u>

26.     Initially, United paid Plaintiffs' claims according to the terms of the health plans that it administered.  Beginning in 2010, however, United started to substantially underpay Plaintiffs' claims for reimbursement, and shortly thereafter, began to systematically withhold all payment from Plaintiffs without informing them.  United did so even though for many patients it had expressly given authorization for the procedures at issue to be performed.  In many cases, the providers and surgery centers performed these surgeries in reliance upon United's prior authorizations.  Despite authorizing the procedures, however, United denies virtually any claim that is submitted by the Plaintiffs.

27.     United accomplishes this delay in processing claims by using a variety of made-up excuses, all of which are procedurally improper, and which violate multiple civil and criminal statutes.  Each time the Plaintiffs submit claims for services rendered, United responds with a boilerplate notification that the claim cannot be processed without additional, burdensome documentation, most of which is already in the possession of United, and none of which is needed to process the claims.  In many cases, United asks for numerous categories of medical records which it either already has, or which are not relevant to the claim being processed.  In

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1    other cases, pretends not to have received the claim at all, or pretends not to have

2    received medical records that Plaintiffs have submitted, forcing Plaintiffs to re-

3    submit them.  When Plaintiffs follow up to ask what information is required to

4    perfect its claims United refuses to identify which specific records it supposedly

5    needs.  Despite having all the information it needs to process Plaintiffs' valid claim

6    submissions, in the end, United always denies Plaintiffs' claims for the purported

7    failure to provide all relevant medical records, or for other pretextual reasons, such as

8    not having a supposed surgery center "license" (though surgery centers are not

9    required to be licensed in California.)

10           28.     United also forwards nearly every claim submitted by the Plaintiffs to its

11   wholly owned subsidiary, Defendant OptumInsight, Inc. (also known as Ingenix or

12   Optum) for purported further "review," where those claims may languish for months

13   or years without being paid.  Ingenix/OptumInsight makes the same unintelligible,

14   burdensome and baseless requests for records and documentation as United, even

15   when Plaintiffs have previously provided all of the same medical records and other

16   documents to United in response to the same requests.  Ingenix/OptumInsight also

17   refuses to identify what specific records are supposedly necessary to perfect the

18   claims for payment.  As a result, Plaintiffs are ping-ponged back and forth between

19   United and Ingenix in what are ultimately futile attempts to understand what further

20   information United supposedly needs to pay the claims.

21           29.     ERISA requires plan administrators to "provide adequate notice in

22   writing to any participant or beneficiary whose claim for benefits under the plan has

23   been denied, setting forth the specific reasons for such denial."  Defendants' denial

24   letters did not advise Plaintiffs the specific type of evidence to submit in support of

25   their claims in violation of ERISA.  Defendants' denial letters did not notify

26   Plaintiffs or the plan beneficiaries of what additional information would be necessary

27   to perfect the claims.  Instead, they parroted the same ten generic categories of

28   documents that Defendants previously contended had not been provided.  They

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

therefore violate ERISA because they fail to explain "in a manner calculated to be understood by the claimant" what Plaintiffs must do to perfect the claims.

30.     Defendants' communications with Plaintiffs are deceptive because they are intended to obfuscate United's true intent, which is to deny any claim submitted by Plaintiffs.  After months or years of delay, Defendants ultimately rely on the same intentionally dishonest, inadequate and spurious excuses to deny payment such as the purported failure to provide the "complete" medical records.

31.     Through this deliberate and institutionalized abuse of the claims administration process, Defendants have successfully managed to avoid paying nearly any of Plaintiffs' claims without providing legitimate reasons for doing so. The amount that Defendants owe Plaintiffs, in the aggregate, on these unpaid claims is in the millions of dollars.

32.     United's scheme of denials and cryptic claim rejections ensure that Plaintiffs (and United's own beneficiaries) never know why their claims are being denied in violation of Defendants' obligations under ERISA to convey complete and accurate information.  Plaintiffs and the beneficiaries are therefore deprived of the procedural protections of ERISA and other applicable regulations.  Those regulations specify that a determination must be made within 90 days of United's receipt of the claim submission, and that every denial must be justified by identifying specific language contained in the benefit plans.  United's failure to render proper and timely decisions on the merits therefore prejudices Plaintiffs' appeal rights.

33.     As an added benefit, Defendants' reliance on pretextual procedural rationales and material misrepresentations permits Defendants to avoid having to identify any actual provision in the health plans on which the denial of payment must be based.  In their formal denial letters, which are sent either by United or by Ingenix, Defendants rely on the same excuses (typically the claimed lack of records) as the sole reason that benefits are not available.  These denial letters generally do not cite to actual provisions of the plans to explain why benefits are not available for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  diagnostic or surgical procedures performed.  Plaintiffs are informed and believed

2  that this is because, under the terms of the plans, benefits are virtually always

3  available for such procedures.  This practice, as applied to tens of thousands of

4  provider claims, is in obvious violation of applicable federal and state regulations,

5  including ERISA, and would also support an inference of knowing, criminal conduct.

6      34.    Defendants have repeatedly denied Plaintiffs any meaningful dialogue

7  about their claim submissions, thus foreclosing all opportunity for Plaintiffs to submit

8  any additional documents, correct any errors in the record, point to any favorable

9  evidence that would tend to support the claim, or to otherwise perfect the claim or

10 prepare an informed response to Defendants' decisions.  Defendants' pattern of

11 practice of refusing to provide specific reasons for the denials that are based on the

12 language of the plans – a pattern manifested over tens of thousands of provider

13 claims – also deprives Plaintiffs of the information that Plaintiffs would need to make

14 proper appeals from those denials.

15     35.    In almost every instance, Plaintiffs explicitly demanded that Defendants

16 produce specific plan documents justifying their denial of payment, and Defendants

17 ignored these requests.  Defendants' refusal to provide the requested records (which

18 is punishable by fine under ERISA) was designed to conceal the pretextual basis for

19 Defendants' behavior, as well as Defendants' policy of discrimination against

20 insureds who were morbidly obese.  However, because Defendants will not provide

21 the plan documents despite tens of thousands of written requests, Plaintiffs cannot

22 know for sure.

23     36.    On information and belief, the terms of the health benefit plans

24 administered by United do not permit United to deny Plaintiffs' claims, nor do they

25 permit United to obstruct, delay, or draw out the claims process for years at a time.

26 In carrying out its scheme, United is therefore acting *ultra vires*, outside the scope of

27 its delegated authority under the plans as the claims administrator for those plans.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

37.     Moreover, on information and belief, Defendants were fully aware that roughly 90% of the patients who came to Plaintiffs were morbidly obese, a protected class, and in need of evaluation and treatment, surgical and otherwise.  Defendants' discriminatory treatment of Plaintiffs' morbidly obese patients was therefore also in violation of applicable state and federal law, including the federal Americans with Disabilities Act and California's Fair Employment and Housing Act, and criminal statutes, as well.

2.     **Plaintiffs Will Suffer Irreparable Harm, Including Harm to Their Ability to Care for Existing Patients, Unless United is Ordered to Stop.**

38.     Plaintiffs and their morbidly obese patients have been, and continue to be, seriously harmed by Defendants' behavior.  Defendants never directly and unambiguously informed Plaintiffs that it intended to deny payment on each and every claim.  To the contrary, Defendants continued to verify the availability of benefits whenever Plaintiffs inquired regarding new patients, and continued to authorize medical procedures for those patients to be performed by the Plaintiffs.  Similarly, during insurance verification calls, United consistently assured Plaintiffs that they would pay the reasonable and customary fees charged by Plaintiffs for their services, and consistently assured Plaintiffs that they would accept provider assignments of benefits.  In reliance upon United's representations that benefits were available and that procedures would be authorized and United's promises to pay their reasonable and customary charges, Plaintiffs reasonably expected their claims would be paid and continued to see United policyholders, to their detriment.

39.     United is the single largest payor for Plaintiffs, such that a very substantial percentage of all Plaintiffs' patients have benefit plans that are funded and/or administered by United.  United's surreptitious and dishonest scheme to withhold payment is, quite literally, driving Plaintiffs out of business.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

40.     United's actions also threaten the continuity of patient care.  For instance, United frequently authorized initial procedures and the work-up necessary to perform bariatric surgery, and in some cases, even paid for the initial work-up, but then denied payment for surgical procedures that were performed.  This prevents Plaintiffs' morbidly obese patients from receiving the treatment they desperately need to help them lose weight.  Likewise, patients who have received Lap-Band surgery must return to Plaintiffs on a regular basis to receive adjustments to the Lap-Band, yet it is difficult to continue to provide care when United has still failed to pay for the initial procedure.  For such patients, Plaintiffs cannot simply stop providing care, as that might constitute patient abandonment under California law.

41.     United is also depriving its own insureds of the health benefits to which they are entitled.  As patients acknowledge when they come to Plaintiffs for treatment, they are financially responsible in the event that United does not pay. Because United authorizes procedures performed by the Plaintiff providers and yet does not paid anything on the resulting claims, Plaintiffs are being placed into an adversarial position with respect to their patients.  Of course, this is a costly, unpleasant, and uncertain process, and results in the loss of the peace of mind that insureds are entitled to enjoy.

42.     Patient care will continue to be endangered unless this Court enjoins Defendants' behavior, and orders Defendants to cease abusing the claims review process as a way to indefinitely avoid paying Plaintiffs what they are entitled to be paid under the terms of the patients' benefit plans.  Immediate injunctive relief is necessary in order to stop Defendants from hiding behind the curtain of arbitrary administrative process, and to force Defendants to process Plaintiffs' claims according to the terms of applicable benefit plans.  Otherwise, patient care and peace of mind will continue to be endangered, causing further irreparable harm to Plaintiffs' ability to care for its patients.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

**C.** **In Addition to Refusing to Pay, United Imposed Arbitrary and Discriminatory Barriers to Patients Obtaining Medically Necessary Care.**

43.   On information and belief, there was an overarching, and undisclosed, policy at United to withhold all payment for submitted by patients who utilized their out-of-network benefits with Plaintiffs, even though Defendants were fully aware that roughly 90% of the patients who came to the Plaintiffs were morbidly obese and in need of surgical and non-surgical treatment to ameliorate their condition and symptoms.

44.   On information and belief, as part of this unwritten policy, Defendants created unreasonable barriers for morbidly obese patients seeking to obtain the weight loss surgery and other medical treatment offered by Plaintiffs constituted unlawful discrimination as well as an arbitrary and capricious denial of health benefits.  Such benefits were clearly available under the health plans administered and/or funded by United, and could have and should have been paid.

45.   For instance, United began denying approval for certain procedures until the individuals seeking surgery enrolled in, and completed, a six-month weight loss plan and nutrition regimen.  United knew that nothing in the terms of many of those individuals' health benefit plans required such draconian steps.  It also knew the patients' physicians had already determined that Lap-Band surgery was medically necessary.

46.   Studies published in numerous well-regarded scientific journals have found that such weight loss programs were ineffective for the morbidly obese and did not lead to better clinical outcomes than bariatric surgery alone.  Individuals who enroll in such arbitrarily imposed six-month plans typically drop out and do not lose weight; in any case, United's weight loss plans typically do not even require a demonstration that weight loss has occurred.  Thus, the net effect of this arbitrary and capricious barrier was to prevent morbidly obese plan beneficiaries from acquiring much-needed surgery.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

47.     Along the same lines, United raised an unreasonable impediment to approval by seeking written proof from a doctor's office of the patient's weight or body mass index (BMI) for each of the preceding five years to be eligible for surgery. If the morbidly obese patient did not visit a doctor and thus did not have a documented weight in just one of the previous 5 years, the request would be denied. Like the preoperative weight loss plans, this was not a requirement of many of the health benefit plan prior to the approval of bariatric surgery, and was an arbitrary and capricious barrier to prevent morbidly obese beneficiaries from obtaining surgery.

48.     Moreover, United is now improperly denying medically necessary care by Plaintiffs' obese patients to diagnose and treat their symptoms for such conditions as hernis, sleep apnea, and GERD, on the grounds that they are obese, even though United previously authorized the services in question, or indicated to Plaintiffs that no authorization was needed.  Plaintiffs are informed and believe that United does not deny such basic, medically necessary services with respect to its non-obese members.

49.     United, as the designated claims administrator for the plans, exercised sole discretion over claim pricing and payment of Plaintiffs' claims, and was responsible for authorizing medical treatment for its members.  On information and belief, however, the terms of many patients' benefit plans did not make surgery benefits contingent upon barriers such as the completion of a six month weight-loss plan, or a five-year documentation of the patient's weight.  United's refusal to approve many of these procedures until these arbitrary requirements had been met constituted arbitrary and capricious conduct that went beyond United's fiduciary duties to interpret and administer the terms of the plans.

50.     As with United's pretextual denials of payment for medical procedures actually performed, United's imposition of such barriers also constituted wrongful discrimination and failure to reasonably accommodate these patients' disabilities under both the federal Americans with Disabilities Act and California's Fair

1  Employment and Housing Act.  As a result, United has also engaged in unfair

2  competition under California's Unfair Competition Law, and should enjoined from

3  denying benefits to its insureds based on such conduct – and from preventing

4  Plaintiffs from providing necessary care.

5

6              **II.    JURISDICTION AND VENUE**

7        51.    This Court has subject matter jurisdiction over this action pursuant to 28

8  U.S.C. § 1331, because the action arises under the laws of the United States; and

9  pursuant to 29 U.S.C. § 1132(e)(1), because the action seeks to enforce rights under

10  the Employee Retirement Income Security Act ("ERISA"); and supplemental

11  jurisdiction pursuant to 28 U.S.C. § 1367, because there is a common nucleus of facts

12  relating to United's wrongful behavior.

13        52.    This Court is the proper venue for this action pursuant to 28 U.S.C.

14  § 1391(b) because a substantial part of the events or omissions giving rise to the

15  claims alleged herein occurred in this Judicial District, and because one or more of

16  the Defendants conducts a substantial amount of business in this Judicial District.

17

18              **III.    THE PARTIES**

19  **A.    Plaintiff Surgery Centers**

20        53.    The Plaintiff Surgery Centers are Limited Liability Companies and

21  Corporations organized and existing under the laws of the State of California, with

22  their principal places of business in the State of California.  Plaintiff Surgery Centers

23  operate ambulatory surgery centers that provide a variety of surgical services,

24  including but not limited to the Lap-Band procedure.  At all relevant times, none of

25  the Plaintiff Surgery Centers were under contract with any of the Defendants, and

26  none of them participated in any of Defendants' provider networks.

27              a)    Plaintiff Almont Ambulatory Surgery Center LLC is, and at all

28  relevant times was, a California limited liability company organized and existing

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1  under the laws of the State of California, with its principal place of business in

2  Beverly Hills, California.  Plaintiff Almont Ambulatory Surgery Center operates an

3  ambulatory surgery center in Beverly Hills, California.  At all relevant times, Almont

4  Ambulatory Surgery Center was not under contract with any of the Defendants, and

5  did not participate in any of their provider networks.

6         b)     Plaintiff Bakersfield Surgery Institute, LLC is, and at all relevant

7  times was, a limited liability company organized and existing under the laws of the

8  State of California, with its principal place of business in Bakersfield, CA.  Plaintiff

9  Bakersfield Surgery Institute, LLC operates an ambulatory surgery center in

10  Bakersfield, California.  At all relevant times, Bakersfield Surgery Institute, LLC was

11  not under contract with any of the Defendants, and did not participate in any of their

12  provider networks.

13         c)     Plaintiff CIRO Surgery Center, LLC is, and at all relevant times

14  was, a limited liability company organized and existing under the laws of the State of

15  California, with its principal place of business in San Jose, CA.  Plaintiff CIRO

16  Surgery Center, LLC operates an ambulatory surgery center in San Jose, California

17  specializing in bariatric surgery, including in the Lap-Band procedure.  At all

18  relevant times, CIRO Surgery Center, LLC was not under contract with any of the

19  Defendants, and did not participate in any of their provider networks.

20         d)     Plaintiff East Bay Ambulatory Surgery Center, LLC is, and at all

21  relevant times was, a limited liability company organized and existing under the laws

22  of the State of California, with its principal place of business in Fremont, CA.

23  Plaintiff East Bay Ambulatory Surgery Center, LLC operates an ambulatory surgery

24  center in Fremont, California.  At all relevant times, East Bay Ambulatory Surgery

25  Center, LLC was not under contract with any of the Defendants, and did not

26  participate in any of their provider networks.

27         e)     Plaintiff Modern Institute of Plastic Surgery & Antiaging, Inc.

28  ("Modern Institute") is, and at all relevant times was, a California corporation

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    organized and existing under the laws of the State of California, with its principal

2    place of business in Beverly Hills, California.  Plaintiff Modern Institute operates an

3    ambulatory surgery center in Beverly Hills, California specializing in plastic surgery

4    and also in bariatric surgery, including the Lap-Band procedure.  At all relevant

5    times, Plaintiff Modern Institute was not under contract with any of the Defendants,

6    and did not participate in any of their provider networks.

7            f)      Plaintiff New Life Surgery Center LLC dba Beverly Hills Surgery

8    Center is, and at all relevant times was, a limited liability company organized and

9    existing under the laws of the State of California, with its principal place of business

10   in Beverly Hills, California.  Plaintiff New Life Surgery Center LLC operates an

11   ambulatory surgery center in Beverly Hills, California specializing in bariatric

12   surgery, including in the Lap-Band procedure.  At all relevant times, New Life

13   Surgery Center LLC was not under contract with any of the Defendants, and did not

14   participate in any of their provider networks.

15           g)      Plaintiff Orange Grove Surgery Center, LLC is, and at all relevant

16   times was, a limited liability company organized and existing under the laws of the

17   State of California, with its principal place of business in Pomona, CA.  Plaintiff

18   Orange Grove Surgery Center, LLC operates an ambulatory surgery center in

19   Pomona, California.  At all relevant times, Orange Grove Surgery Center, LLC was

20   not under contract with any of the Defendants, and did not participate in any of their

21   provider networks.

22           h)      Plaintiff Palmdale Surgery Center, LLC is, and at all relevant

23   times was, a limited liability company organized and existing under the laws of the

24   State of California, with its principal place of business in Palmdale, CA.  Plaintiff

25   Palmdale Surgery Center, LLC operates an ambulatory surgery center in Palmdale,

26   California.  At all relevant times, Palmdale Surgery Center, LLC was not under

27   contract with any of the Defendants, and did not participate in any of their provider

28   networks.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

i)      Plaintiff San Diego Ambulatory Surgery Center, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in San Diego, CA. Plaintiff San Diego Ambulatory Surgery Center, LLC operates an ambulatory surgery center in San Diego, California.  At all relevant times, San Diego Ambulatory Surgery Center, LLC was not under contract with any of the Defendants, and did not participate in any of their provider networks.

j)      Plaintiff San Joaquin Valley Surgery Center, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Modesto, CA. Plaintiff San Joaquin Valley Surgery Center, LLC operates an ambulatory surgery center in Modesto, California.  At all relevant times, San Joaquin Valley Surgery Center, LLC was not under contract with any of the Defendants, and did not participate in any of their provider networks.

k)      Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills ("Reconstructive Specialists") is, and at all relevant times was, a California corporation organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills operates an ambulatory surgery center in Beverly Hills, California.  At all relevant times, Plaintiff Skin Cancer & Reconstructive Surgery Specialists of Beverly Hills was not under contract with any of the Defendants, and did not participate in any of their provider networks.

l)      Plaintiff Valencia Ambulatory Surgery Center, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Valencia, CA. Plaintiff Valencia Ambulatory Surgery Center, LLC operates an ambulatory surgery center in Valencia, California.  At all relevant times, Valencia Ambulatory Surgery

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1  Center, LLC was not under contract with any of the Defendants, and did not

2  participate in any of their provider networks.

3          m)    Plaintiff West Hills Surgery Center LLC is, and at all relevant

4  times was, a limited liability company organized and existing under the laws of the

5  State of California, with its principal place of business in West Hills, California.

6  Plaintiff West Hills Surgery Center LLC operates an ambulatory surgery center in

7  West Hills, California.  At all relevant times, West Hills Surgery Center LLC was not

8  under contract with any of the Defendants, and did not participate in any of their

9  provider networks.

10  **B.**    **Plaintiff Independent Medical Services**

11        54.    Plaintiff Independent Medical Services, Inc. ("IMS") is, and at all

12  relevant times was, a California professional corporation organized and existing

13  under the laws of the State of California, with its principal place of business in

14  Beverly Hills, California.  IMS is a physicians' medical group that, through billing

15  companies, bills for professional services.  At all relevant times, IMS was not under

16  contract with any of the Defendants, nor did it participate in any of Defendants'

17  provider networks.

18  **C.**    **United Defendants**

19        55.    Plaintiffs are informed and believe that Defendant UnitedHealth Group,

20  Inc. ("UHG") is a Minnesota corporation with its corporate headquarters located in

21  Minneapolis, Minnesota.  Defendant UnitedHealth Group is a publicly traded

22  corporation which is not qualified to do business in the State of California, but is

23  engaged in business in the State of California and County of Los Angeles through its

24  subsidiaries UnitedHealthcare Insurance Company, and United HealthCare Services,

25  Inc.

26        56.    Plaintiffs are informed and believe that Defendant UnitedHealthcare

27  Insurance Company ("UHIC") is a corporation organized and existing under the laws

28  of the State of Connecticut, a wholly owned and controlled subsidiary of Defendant

1  UnitedHealth Group, with its principal place of business in Connecticut.  Defendant

2  UHIC is qualified to engage in business in the State of California and engaged in

3  business in the Country of Los Angeles as an insurance company.

4        57.     Plaintiffs are informed and believe that Defendant United HealthCare

5  Services, Inc. ("United HealthCare") is a Minnesota corporation with its corporate

6  headquarters located in Minneapolis, Minnesota.  United HealthCare is wholly-

7  owned by UnitedHealth, and serves as UnitedHealth's operating division.  United

8  HealthCare is licensed to conduct insurance operations in California and, on

9  information and belief, every other State in the United States, whether it be under the

10  name United HealthCare or some other operating name.  On information and belief,

11  Plaintiffs believe that United HealthCare Services is responsible for administering the

12  employee health benefit plans at least some of United's self-funded ERISA plan

13  clients, and in this role, sometimes does business under the brand name "UMR,"

14  which is not a separate legal entity.

15        58.     Plaintiffs are informed and believes that Defendant OptumInsight, Inc.

16  ("Optum" or "Ingenix") is a Delaware corporation with its corporate headquarters

17  located in Eden Prairie, Minnesota.  Plaintiff is informed and believes that as of April

18  2011, Ingenix, Inc. also has been doing business under the trade name "Optum."

19  Optum is a wholly-owned subsidiary of UnitedHealth.  Plaintiffs are informed and

20  believe Optum/Ingenix is an ERISA fiduciary due to its functional control over

21  Plans' assets and the discretionary authority it has in Plans' administration with

22  respect to claims management.

23        59.     UnitedHealth, United Healthcare, UHIC, and Optum/Ingenix will be

24  collectively referred to herein as "United" or the "United Defendants."

25        60.     Plaintiffs are informed and believe that, in many instances, United is the

26  designated plan fiduciary for the self-funded ERISA plans defendants at issue in this

27  action.  Plaintiffs are further informed and believe that United serves as the named

28  plan administrator's "designee" for certain self-funded employee benefit plans.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1   Plaintiffs are informed and believe that United exercised fiduciary responsibility with

2   respect to the claims at issue in this litigation.  Because United acted as a fiduciary

3   with respect to the claims at issue, exercised benefits discretion and determined final

4   benefit appeals, United is liable for nonpaid and underpaid benefits to Plaintiffs.

5        61.    Plaintiffs are further informed and believe that, with respect to self-

6   funded ERISA plans which have not specifically designated a plan administrator,

7   United functions as the *de facto* plan administrator, or as the co-administrator

8   because, *inter alia*, it has provided plan documents to participants, received benefit

9   claims, evaluated and processed those claims, made benefit determinations, made and

10  administered benefit payments, and handled appeals of benefit determinations.

11  Moreover, Plaintiffs are informed and believe that, even with respect to self-funded

12  ERISA plans which have not specifically designated a plan administrator, United has

13  been specifically been designated as the claims administrator, and has been delegated

14  the responsibilities described above.  Specifically, with respect to all of the claims at

15  issue herein, including with respect to self-funded plans which have not been named

16  as defendants in this action, Plaintiffs are informed and believe that the United

17  Defendants:

18        a)     drafted and provided plan members with plan documents;

19        b)     operated a centralized verification and authorization telephone

20  number which handled calls for members of the self-funded plans, including plans

21  that have not been named as defendants in this Complaint;

22        c)     authorized Plaintiffs to provide medical services to beneficiaries

23  of the ERISA plan defendants;

24        d)     received and processed electronic bills from Plaintiffs for claims

25  for members of the self-funded plans, including plans that are not named as

26  defendants in this Complaint;

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1    e)    communicated with Plaintiffs on behalf of the ERISA plans (and

2    additional self-insured plans that are not named as defendants) regarding

3    authorization of surgical procedures;

4    f)    issued remittance advices and EOBs;

5    g)    priced claims for the self-insured ERISA plans;

6    h)    communicated with Plaintiffs with respect to the processing of

7    claims on behalf of the Defendants and self-insured plans;

8    i)    processed appeals, and sent appeal response letters; and

9    j)    in certain cases, issued payment.

10    62.    Accordingly, Defendants UnitedHealth Group, United Healthcare

11    Services, and United Healthcare Insurance are proper ERISA defendants because

12    they "effectively controlled the decision whether to honor or to deny a claim...."  *Cyr*

13    *v. Reliance Life Ins. Co.,* 642 F.3d 1202, 1204 (9th Cir. 2011) (en banc).

14    **D.    ERISA Self-Funded Plan Defendants**

15    63.    Plaintiffs are informed and believe that Defendant, AARP, is a District

16    of Columbia corporation with its corporate headquarters located in Washington,

17    District of Columbia.  Plaintiffs are informed and believe that Defendant, AARP, is a

18    plan sponsor and plan administrator for the AARP Employees Welfare Plan.

19    64.    Plaintiffs are informed and believe that Defendant, AARP Employees

20    Welfare Plan is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

21    29 U.S.C. § 1132(d).

22    65.    Plaintiffs are informed and believe that Defendant, Accenture, LLP, is a

23    Delaware limited liability partnership with its corporate headquarters located in

24    Chicago, Illinois.  Plaintiffs are informed and believe that Defendant, Accenture,

25    LLP, is a plan sponsor and plan administrator for the Accenture United States Group

26    Health Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   66.   Plaintiffs are informed and believe that Defendant, Accenture United

2   States Group Health Plan, is an ERISA plan and a proper defendant pursuant to

3   ERISA § 502(d), 29 U.S.C. § 1132(d).

4   67.   Plaintiffs are informed and believe that Defendant, G6 Hospitality, LLC,

5   is a Delaware corporation f/k/a Accor North America, Inc., with its corporate

6   headquarters located in Carrollton, Texas.  Plaintiffs are informed and believe that

7   Defendant, G6 Hospitality, LLC, is a plan sponsor and plan administrator for the G6

8   Hospitality Group Insurance Plan.

9   68.   Plaintiffs are informed and believe that Defendant, G6 Hospitality

10   Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11   § 502(d), 29 U.S.C. § 1132(d).

12   69.   Plaintiffs are informed and believe that Defendant, Actavis, Inc., is a

13   Delaware corporation with its corporate headquarters located in Parsippany, New

14   Jersey.  Plaintiffs are informed and believe that Defendant, Actavis, Inc., is a plan

15   sponsor and plan administrator for the Actavis Health and Welfare Plan.

16   70.   Plaintiffs are informed and believe that Defendant, Actavis Health and

17   Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

18   29 U.S.C. § 1132(d).

19   71.   Plaintiffs are informed and believe that Defendant, Acushnet Company,

20   is a Delaware corporation with its corporate headquarters located in Fairhaven,

21   Massachusetts.  Plaintiffs are informed and believe that Defendant, Acushnet

22   Company, is a plan sponsor and plan administrator for the Acushnet Company

23   Consolidated Health and Welfare Plan.

24   72.   Plaintiffs are informed and believe that Defendant, Acushnet Company

25   Consolidated Health and Welfare Plan, is an ERISA plan and a proper defendant

26   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

27   73.   Plaintiffs are informed and believe that Defendant, Aegis Media

28   Americas, Inc., is a Delaware corporation with its corporate headquarters located in

1201369.1

1    New York, New York.  Plaintiffs are informed and believe that Defendant, Aegis

2    Media Americas, Inc., is a plan sponsor and plan administrator for the Aegis Media

3    Americas, Inc. Benefitplus Flexible Benefits Plan.

4         74.    Plaintiffs are informed and believe that Defendant, Aegis Media

5    Americas, Inc. Benefitplus Flexible Benefits Plan, is an ERISA plan and a proper

6    defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7         75.    Plaintiffs are informed and believe that Defendant, Aegon USA, LLC, is

8    an Iowa limited liability company with its corporate headquarters located in Cedar

9    Rapids, Iowa.  Plaintiffs are informed and believe that Defendant, Aegon USA, LLC,

10   is a plan sponsor and plan administrator for the Aegon Companies Medical Plan.

11        76.    Plaintiffs are informed and believe that Defendant, Aegon Companies

12   Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

13   29 U.S.C. § 1132(d).

14        77.    Plaintiffs are informed and believe that Defendant, Aera Energy

15   Services Company, is a Delaware corporation with its corporate headquarters located

16   in Bakersfield, California.  Plaintiffs are informed and believe that Defendant, Aera

17   Energy Services Company, is a plan sponsor and plan administrator for the Aera

18   Energy Services Company Medical Benefits Plan.

19        78.    Plaintiffs are informed and believe that Defendant, Aera Energy

20   Services Company Medical Benefits Plan, is an ERISA plan and a proper defendant

21   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

22        79.    Plaintiffs are informed and believe that Defendant, Air Liquide USA,

23   LLC, is a Delaware limited liability company with its corporate headquarters located

24   in Houston, Texas.  Plaintiffs are informed and believe that Defendant, Air Liquide

25   USA, LLC, is a plan sponsor and plan administrator for the Air Liquide USA LLC

26   Group Benefits Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

80.     Plaintiffs are informed and believe that Defendant, Air Liquide USA LLC Group Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

81.     Plaintiffs are informed and believe that Defendant, Akzo Nobel, Inc., is a Delaware corporation with its corporate headquarters located in Los Angeles, California.  Plaintiffs are informed and believe that Defendant, Akzo Nobel, Inc., is a plan sponsor and plan administrator for the Akzo Nobel, Inc. Salaried Employees Group Benefits Program.

82.     Plaintiffs are informed and believe that Defendant, Akzo Nobel, Inc. Salaried Employees Group Benefits Program, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

83.     Plaintiffs are informed and believe that Defendant, Alcon Laboratories, Inc., is a Delaware corporation with its corporate headquarters located in Fort Worth, Texas.  Plaintiffs are informed and believe that Defendant, Alcon Laboratories, Inc., is a plan sponsor and plan administrator for the Alcon Laboratories Inc. Voluntary Employees Beneficiary Association Trust.

84.     Plaintiffs are informed and believe that Defendant, Alcon Laboratories Inc. Voluntary Employees Beneficiary Association Trust, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

85.     Plaintiffs are informed and believe that Defendant, Alexander Gallo Holdings, LLC, is a Georgia limited liability company with its corporate headquarters located in Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, Alexander Gallo Holdings, LLC, is a plan sponsor and plan administrator for the Alexander Gallo Holdings, LLC Welfare Benefit Plan.

86.     Plaintiffs are informed and believe that Defendant, Alexander Gallo Holdings, LLC Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

87.     Plaintiffs are informed and believe that Defendant, Allstate Insurance Company, is an Illinois corporation with its corporate headquarters located in Northbrook, Illinois.  Plaintiffs are informed and believe that Defendant, Allstate Insurance Company, is a plan sponsor and plan administrator for the Allstate Cafeteria Plan.

88.     Plaintiffs are informed and believe that Defendant, Allstate Cafeteria Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

89.     Plaintiffs are informed and believe that Defendant, Altec Industries, Inc., is an Alabama corporation with its corporate headquarters located in Birmingham, Alabama.  Plaintiffs are informed and believe that Defendant, Altec Industries, Inc., is a plan sponsor and plan administrator for the Altec Industries Inc. Welfare Benefits Plan.

90.     Plaintiffs are informed and believe that Defendant, Altec Industries, Inc. Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

91.     Plaintiffs are informed and believe that Defendant, Alcatel-Lucent USA, Inc., is a Delaware corporation with its corporate headquarters located in Alpharetta, Georgia.  Plaintiffs are informed and believe that Defendant, Alcatel-Lucent USA, Inc., is a plan sponsor and plan administrator for the Alcatel-Lucent Retiree Welfare Benefits Plan.

92.     Plaintiffs are informed and believe that Defendant, Alcatel-Lucent Retiree Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

93.     Plaintiffs are informed and believe that Defendant, American Airlines, Inc., is a Delaware corporation with its corporate headquarters located in Fort Worth, Texas.  Plaintiffs are informed and believe that Defendant, American Airlines, Inc., is

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

1  a plan sponsor and plan administrator for the Group Life and Health Benefits Plan for

2  Employees of Participating AMR Corporation Subsidiaries.

3       94.    Plaintiffs are informed and believe that Defendant, Group Life and

4  Health Benefits Plan for Employees of Participating AMR Corporation Subsidiaries,

5  is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C.

6  § 1132(d).

7       95.    Plaintiffs are informed and believe that Defendant, American Financial

8  Group, Inc., is a California corporation with its corporate headquarters located in Los

9  Angeles, California.  Plaintiffs are informed and believe that Defendant, American

10  Financial Group, Inc., is a plan sponsor and plan administrator for the American

11  Financial Group, Inc. Group Welfare Benefit Plan.

12       96.    Plaintiffs are informed and believe that Defendant, American Financial

13  Group, Inc. Group Welfare Benefit Plan, is an ERISA plan and a proper defendant

14  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15       97.    Plaintiffs are informed and believe that Defendant, American

16  International Group, Inc., is a California corporation with its corporate headquarters

17  located in New York, New York.  Plaintiffs are informed and believe that Defendant,

18  American International Group, Inc., is a plan sponsor and plan administrator for the

19  American International Group, Inc. Medical Plan.

20       98.    Plaintiffs are informed and believe that Defendant, American

21  International Group, Inc. Medical Plan, is an ERISA plan and a proper defendant

22  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

23       99.    Plaintiffs are informed and believe that Defendant, Anheuser-Busch

24  Employees' Credit Union, has its headquarters located in Saint Louis, Missouri.

25  Plaintiffs are informed and believe that Defendant, Anheuser-Busch Employees'

26  Credit Union, is a plan sponsor and plan administrator for the Anheuser-Busch

27  Employees Credit Union Benefit Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    100.   Plaintiffs are informed and believe that Defendant, Anheuser-Busch

2    Employees Credit Union Benefit Plan, is an ERISA plan and a proper defendant

3    pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    101.   Plaintiffs are informed and believe that Defendant, Anixter, Inc., is a

5    Delaware corporation with its corporate headquarters located in Glenview, Illinois.

6    Plaintiffs are informed and believe that Defendant, Anixter, Inc., is a plan sponsor

7    and plan administrator for the Anixter, Inc. Group Insurance.

8    102.   Plaintiffs are informed and believe that Defendant, Anixter, Inc. Group

9    Insurance, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

10   U.S.C. § 1132(d).

11   103.   Plaintiffs are informed and believe that Defendant, Ann, Inc., is a

12   Delaware with its corporate headquarters located in New York, New York.  Plaintiffs

13   are informed and believe that Defendant, Ann, Inc., is a plan sponsor and plan

14   administrator for the Ann, Inc. Welfare Benefits Plan.

15   104.   Plaintiffs are informed and believe that Defendant, Ann, Inc. Welfare

16   Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

17   29 U.S.C. § 1132(d).

18   105.   Plaintiffs are informed and believe that Defendant, Anschutz

19   Entertainment Group, Inc., is a Colorado corporation with its corporate headquarters

20   located in Los Angeles, California.  Plaintiffs are informed and believe that

21   Defendant, Anschutz Entertainment Group, Inc., is a plan sponsor and plan

22   administrator for the AEG Employee Health & Welfare Plan.

23   106.   Plaintiffs are informed and believe that Defendant, AEG Employee

24   Health & Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA

25   § 502(d), 29 U.S.C. § 1132(d).

26   107.   Plaintiffs are informed and believe that Defendant, APL Limited, is a

27   Delaware corporation with its corporate headquarters located in Scottsdale, Arizona.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1    Plaintiffs are informed and believe that Defendant, APL Limited, is a plan sponsor

2    and plan administrator for the Welfare Plan for Employees of APL Limited.

3        108.   Plaintiffs are informed and believe that Defendant, Welfare Plan for

4    Employees of APL Limited, is an ERISA plan and a proper defendant pursuant to

5    ERISA § 502(d), 29 U.S.C. § 1132(d).

6        109.   Plaintiffs are informed and believe that Defendant, Apple, Inc., is a

7    California corporation with its corporate headquarters located in Cupertino,

8    California.  Plaintiffs are informed and believe that Defendant, Apple, Inc., is a plan

9    sponsor and plan administrator for the Apple, Inc. Health and Welfare Benefit Plan.

10       110.   Plaintiffs are informed and believe that Defendant, Apple, Inc. Health

11   and Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to

12   ERISA § 502(d), 29 U.S.C. § 1132(d).

13       111.   Plaintiffs are informed and believe that Defendant, Apple American

14   Group, LLC, is a Delaware limited liability company with its corporate headquarters

15   located in San Francisco, California.  Plaintiffs are informed and believe that

16   Defendant, Apple American Group, LLC, is a plan sponsor and plan administrator for

17   the Apple American Group, LLC Section 125 Plan.

18       112.   Plaintiffs are informed and believe that Defendant, Apple American

19   Group, LLC Section 125 Plan, is an ERISA plan and a proper defendant pursuant to

20   ERISA § 502(d), 29 U.S.C. § 1132(d).

21       113.   Plaintiffs are informed and believe that Defendant, Aptco, LLC, is a

22   California limited liability company with its corporate headquarters located in

23   McFarland, California.  Plaintiffs are informed and believe that Defendant, Aptco,

24   LLC, is a plan sponsor and plan administrator for Aptco, LLC.

25       114.   Plaintiffs are informed and believe that Defendant, Aptco, LLC, is an

26   ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C.

27   § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   115.   Plaintiffs are informed and believe that Defendant, AT&T Corp., is a

2   New York corporation with its corporate headquarters located in Bedminster, New

3   Jersey.  Plaintiffs are informed and believe that Defendant, AT&T Corp., is a plan

4   sponsor and plan administrator for the AT&T Umbrella Benefit Plan.

5   116.   Plaintiffs are informed and believe that Defendant, AT&T Umbrella

6   Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

7   29 U.S.C. § 1132(d).

8   117.   Plaintiffs are informed and believe that Defendant, AT&T Mobility,

9   LLC, is a Delaware limited liability company with its corporate headquarters located

10  in Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, AT&T

11  Mobility, LLC, is a plan sponsor and plan administrator for the Cingular Wireless

12  Medical Plus Plan.

13  118.   Plaintiffs are informed and believe that Defendant, Cingular Wireless

14  Medical Plus Plan, is an ERISA plan and a proper defendant pursuant to ERISA

15  § 502(d), 29 U.S.C. § 1132(d).

16  119.   Plaintiffs are informed and believe that Defendant, ATI Systems

17  International, Inc., is a California corporation with its corporate headquarters located

18  in Boca Raton, Florida.  Plaintiffs are informed and believe that Defendant, ATI

19  Systems International, Inc., is a plan sponsor and plan administrator for the ATI

20  Systems - a Garda Company Group Health Plan.

21  120.   Plaintiffs are informed and believe that Defendant, ATI Systems - a

22  Garda Company Group Health Plan, is an ERISA plan and a proper defendant

23  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

24  121.   Plaintiffs are informed and believe that Defendant, Automatic Data

25  Processing, Inc., is a Nevada corporation with its corporate headquarters located in

26  Roseland, New Jersey.  Plaintiffs are informed and believe that Defendant,

27  Automatic Data Processing, Inc., is a plan sponsor and plan administrator for the

28  Automatic Data Processing, Inc. Flex 2000 Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1       122.   Plaintiffs are informed and believe that Defendant, Automatic Data

2   Processing, Inc. Flex 2000 Plan, is an ERISA plan and a proper defendant pursuant to

3   ERISA § 502(d), 29 U.S.C. § 1132(d).

4       123.   Plaintiffs are informed and believe that Defendant Avon Products, Inc.,

5   is a New York corporation with its corporate headquarters located in New York, New

6   York.  Plaintiffs are informed and believe that Defendant, Avon Products, Inc., is a

7   plan sponsor and plan administrator for the Avon Products Inc. Medical Plan for

8   Active Employees.

9       124.   Plaintiffs are informed and believe that Defendant, Avon Products Inc.

10   Medical Plan for Active Employees, is an ERISA plan and a proper defendant

11   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

12       125.   Plaintiffs are informed and believe that Defendant, Baker Hughes

13   Incorporated, is a Delaware corporation with its corporate headquarters located in

14   Houston, Texas.  Plaintiffs are informed and believe that Defendant, Baker Hughes

15   Incorporated, is a plan sponsor and plan administrator for the Baker Hughes

16   Incorporated Welfare Benefits Plan.

17       126.   Plaintiffs are informed and believe that Defendant, Baker Hughes

18   Incorporated Welfare Benefits Plan, is an ERISA plan and a proper defendant

19   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20       127.   Plaintiffs are informed and believe that Defendant, Barnes & Noble,

21   Inc., is a Delaware corporation with its corporate headquarters located in New York,

22   New York.  Plaintiffs are informed and believe that Defendant, Barnes & Noble, Inc.,

23   is a plan sponsor and plan administrator for the Barnes & Noble, Inc. Comprehensive

24   Medical and Dental Plan.

25       128.   Plaintiffs are informed and believe that Defendant, Barnes & Noble, Inc.

26   Comprehensive Medical and Dental Plan, is an ERISA plan and a proper defendant

27   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

129.   Plaintiffs are informed and believe that Defendant, Bausch & Lomb Incorporated, is a New York corporation with its corporate headquarters located in Rochester, New York.  Plaintiffs are informed and believe that Defendant, Bausch & Lomb Incorporated, is a plan sponsor and plan administrator for the Bausch & Lomb Comprehensive Medical Plan.

130.   Plaintiffs are informed and believe that Defendant, Bausch & Lomb Comprehensive Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

131.   Plaintiffs are informed and believe that Defendant, BBA Aviation USA, Inc., is a Delaware corporation with its corporate headquarters located in Orlando, Florida.  Plaintiffs are informed and believe that Defendant, BBA Aviation USA, Inc., is a plan sponsor and plan administrator for the BBA Aviation Benefit Plan.

132.   Plaintiffs are informed and believe that Defendant, BBA Aviation Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

133.   Plaintiffs are informed and believe that Defendant, Becton, Dickinson and Company, is a New Jersey corporation with its corporate headquarters located in Franklin Lakes, New Jersey.  Plaintiffs are informed and believe that Defendant, Becton, Dickinson and Company, is a plan sponsor and plan administrator for the Becton, Dickinson and Company Group Life and Health Plan.

134.   Plaintiffs are informed and believe that Defendant, Becton, Dickinson and Company Group Life and Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

135.   Plaintiffs are informed and believe that Defendant, Belmont Village, LP, is a Delaware limited partnership with its corporate headquarters located in Houston, Texas.  Plaintiffs are informed and believe that Defendant, Belmont Village, LP, is a plan sponsor and plan administrator for the Belmont Village LP Healthcare Benefits Plan.

1201369.1

136.   Plaintiffs are informed and believe that Defendant, Belmont Village LP Healthcare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

137.   Plaintiffs are informed and believe that Defendant, Best Buy Co., Inc., is a Minnesota corporation with its corporate headquarters located in Richfield, Minnesota.  Plaintiffs are informed and believe that Defendant, Best Buy Co., Inc., is a plan sponsor and plan administrator for the Best Buy Flexible Benefits Plan.

138.   Plaintiffs are informed and believe that Defendant, Best Buy Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

139.   Plaintiffs are informed and believe that Defendant, Black Box Network Services, Inc., is a California corporation with its corporate headquarters located in Lawrence, Pennsylvania.  Plaintiffs are informed and believe that Defendant, Black Box Network Services, Inc., is a plan sponsor and plan administrator for the Black Box Network Services Group Medical Plan.

140.   Plaintiffs are informed and believe that Defendant, Black Box Network Services Group Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

141.   Plaintiffs are informed and believe that Defendant, BMW of North America, LLC, is a Delaware limited liability company with its corporate headquarters located in Westwood, New Jersey.  Plaintiffs are informed and believe that Defendant, BMW of North America, LLC, is a plan sponsor and plan administrator for the BMW of North America LLC Health and Welfare Plans.

142.   Plaintiffs are informed and believe that Defendant, BMW of North America LLC Health and Welfare Plans, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

143.   Plaintiffs are informed and believe that Defendant, Boston Market Corporation, is a Delaware corporation with its corporate headquarters located in

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Golden, Colorado.  Plaintiffs are informed and believe that Defendant, Boston

2  Market Corporation, is a plan sponsor and plan administrator for the Boston Market

3  Corporation Health and Welfare Plan.

4      144.   Plaintiffs are informed and believe that Defendant, Boston Market

5  Corporation Health and Welfare Plan, is an ERISA plan and a proper defendant

6  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7      145.   Plaintiffs are informed and believe that Defendant, Brady Corporation,

8  is a Wisconsin corporation with its corporate headquarters located in Milwaukee,

9  Wisconsin.  Plaintiffs are informed and believe that Defendant, Brady Corporation, is

10  a plan sponsor and plan administrator for the W.H. Brady Co. Insured Benefits Plan.

11      146.   Plaintiffs are informed and believe that Defendant, the W.H. Brady Co.

12  Insured Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

13  § 502(d), 29 U.S.C. § 1132(d).

14      147.   Plaintiffs are informed and believe that Defendant, Advance/Newhouse

15  Parternership dba Bright House Networks, LLC, is a partnership with its corporate

16  headquarters located in East Syracuse, New York.  Plaintiffs are informed and

17  believe that Defendant, Advance/Newhouse Parternership, is a plan sponsor and plan

18  administrator for the Advance/Newhouse Partnership Health Benefits Plan.

19      148.   Plaintiffs are informed and believe that Defendant, Advance/Newhouse

20  Partnership Health Benefits Plan, is an ERISA plan and a proper defendant pursuant

21  to ERISA § 502(d), 29 U.S.C. § 1132(d).

22      149.   Plaintiffs are informed and believe that Defendant, Brinker International

23  Payroll Company, L.P., is a Delaware limited partnership with its corporate

24  headquarters located in Dallas, Texas.  Plaintiffs are informed and believe that

25  Defendant, Brinker International Payroll Company, L.P., is a plan sponsor and plan

26  administrator for the Brinker International, Inc. Welfare Benefit Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   150.   Plaintiffs are informed and believe that Defendant, Brinker International,

2   Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to

3   ERISA § 502(d), 29 U.S.C. § 1132(d).

4   151.   Plaintiffs are informed and believe that Defendant, Brink's Incorporated,

5   is a Delaware corporation with its corporate headquarters located in Richmond,

6   Virginia.  Plaintiffs are informed and believe that Defendant, Brink's Incorporated, is

7   a plan sponsor and plan administrator for The Brinks Company Comprehensive

8   Health and Welfare Plan.

9   152.   Plaintiffs are informed and believe that Defendant, The Brinks Company

10  Comprehensive Health and Welfare Plan, is an ERISA plan and a proper defendant

11  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

12  153.   Plaintiffs are informed and believe that Defendant, Buca Restaurants 2,

13  Inc., is a Minnesota corporation with its corporate headquarters located in Orlando,

14  Florida.  Plaintiffs are informed and believe that Defendant, Buca Restaurants 2, Inc.,

15  is a plan sponsor and plan administrator for the Buca Inc. Health Care Benefit Plan.

16  154.   Plaintiffs are informed and believe that Defendant, Buca Inc. Health

17  Care Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA

18  § 502(d), 29 U.S.C. § 1132(d).

19  155.   Plaintiffs are informed and believe that Defendant, Building Materials

20  Corporation of America, is a Delaware corporation with its corporate headquarters

21  located in Wayne, New Jersey.  Plaintiffs are informed and believe that Defendant,

22  Building Materials Corporation of America, is a plan sponsor and plan administrator

23  for the GAF Materials Corporation Welfare Benefit Plan.

24  156.   Plaintiffs are informed and believe that Defendant, GAF Materials

25  Corporation Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

26  to ERISA § 502(d), 29 U.S.C. § 1132(d).

27  157.   Plaintiffs are informed and believe that Defendant, BUPA Worldwide

28  Corporation, is a Florida corporation with its corporate headquarters located in

Miami, Florida.  Plaintiffs are informed and believe that Defendant, BUPA Worldwide Corporation, is a plan sponsor and plan administrator for the BUPA Worldwide Corporation Health & Benefits Plan.

158.   Plaintiffs are informed and believe that Defendant, BUPA Worldwide Corporation Health & Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

159.   Plaintiffs are informed and believe that Defendant, BWAY Corporation, is a Delaware corporation with its corporate headquarters located in Atlanta, Georgia. Plaintiffs are informed and believe that Defendant, BWAY Corporation, is a plan sponsor and plan administrator for the BWAY Corporation Comprehensive Medical Plan.

160.   Plaintiffs are informed and believe that Defendant, BWAY Corporation Comprehensive Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

161.   Plaintiffs are informed and believe that Defendant, Caliber Home Loans, Inc., is a Delaware corporation formerly known as Vericrest Financial, Inc., with its corporate headquarters located in Irving, Texas.  Plaintiffs are informed and believe that Defendant, Caliber Home Loans, Inc., is a plan sponsor and plan administrator for the Vericrest Financial, Inc. Welfare and Benefits Plan.

162.   Plaintiffs are informed and believe that Defendant, Vericrest Financial, Inc. Welfare and Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

163.   Plaintiffs are informed and believe that Defendant, CBIZ MHM, LLC, is a Delaware limited liability company with its corporate headquarters located in Cleveland, Ohio.  Plaintiffs are informed and believe that Defendant, CBIZ MHM, LLC, is a plan sponsor and plan administrator for the CBIZ Inc. Group Health and Welfare Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

164.   Plaintiffs are informed and believe that Defendant, CBIZ Inc. Group Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

165.   Plaintiffs are informed and believe that Defendant, CBS Corporation, is a Delaware corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, CBS Corporation, is a plan sponsor and plan administrator for the CBS Health and Welfare Benefits Plan.

166.   Plaintiffs are informed and believe that Defendant, CBS Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

167.   Plaintiffs are informed and believe that Defendant, CEC Entertainment, Inc., is a Kansas corporation with its corporate headquarters located in Irving, Texas. Plaintiffs are informed and believe that Defendant, CEC Entertainment, Inc., is a plan sponsor and plan administrator for the CEC Entertainment Welfare Benefit Plan.

168.   Plaintiffs are informed and believe that Defendant, CEC Entertainment Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

169.   Plaintiffs are informed and believe that Defendant, Central Parking System, is a Tennessee corporation with its corporate headquarters located in Nashville, Tennessee.  Plaintiffs are informed and believe that Defendant, Central Parking System, is a plan sponsor and plan administrator for the Central Parking System Health and Welfare Plan.

170.   Plaintiffs are informed and believe that Defendant, Central Parking System Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

171.   Plaintiffs are informed and believe that Defendant, Centric Group, LLC, is a Delaware limited liability company with its corporate headquarters located in Saint Louis, Missouri.  Plaintiffs are informed and believe that Defendant, Centric

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Group, LLC, is a plan sponsor and plan administrator for the Centric Group Hospital
2  Plan.

3      172.   Plaintiffs are informed and believe that Defendant, Centric Group
4  Hospital Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),
5  29 U.S.C. § 1132(d).

6      173.   Plaintiffs are informed and believe that Defendant, Cogentrix Energy
7  Power Management, LLC, is a North Carolina limited liability company, with its
8  corporate headquarters located in Charlotte, North Carolina.  Plaintiffs are informed
9  and believe that Defendant, Cogentrix Energy Power Management, LLC, is a plan
10 sponsor and plan administrator for the Cogentrix Energy Power Management, LLC
11 Group Insurance Plan.

12     174.   Plaintiffs are informed and believe that Defendant, Cogentrix Energy
13 Power Management, LLC Group Insurance Plan, is an ERISA plan and a proper
14 defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15     175.   Plaintiffs are informed and believe that Defendant, C.H. Robinson
16 Company, Inc., is a Minnesota corporation with its corporate headquarters located in
17 Eden Prairie, Minnesota.  Plaintiffs are informed and believe that Defendant, C.H.
18 Robinson Company, Inc., is a plan sponsor and plan administrator for the CH
19 Robinson Company Group Health Major Medical Plan.

20     176.   Plaintiffs are informed and believe that Defendant, CH Robinson
21 Company Group Health Major Medical Plan, is an ERISA plan and a proper
22 defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

23     177.   Plaintiffs are informed and believe that Defendant, Charlotte Russe, Inc.,
24 is a California corporation with its corporate headquarters located in San Diego,
25 California.  Plaintiffs are informed and believe that Defendant, Charlotte Russe, Inc.,
26 is a plan sponsor and plan administrator for the Charlotte Russe Holding, Inc.
27 Welfare Benefit Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

178.   Plaintiffs are informed and believe that Defendant, Charlotte Russe Holding, Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

179.   Plaintiffs are informed and believe that Defendant, Charming Shoppes, Inc., is a Pennsylvania corporation with its corporate headquarters located in Densalem, Pennsylvania.  Plaintiffs are informed and believe that Defendant, Charming Shoppes, Inc., is a plan sponsor and plan administrator for the Charming Shoppes, Inc. Medical Plan.

180.   Plaintiffs are informed and believe that Defendant, Charming Shoppes, Inc. Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

181.   Plaintiffs are informed and believe that Defendant, Chevron Corporation, is a Delaware corporation with its corporate headquarters located in San Ramon, California.  Plaintiffs are informed and believe that Defendant, Chevron Corporation is a plan sponsor and plan administrator for the Chevron Corporation Omnibus Health Care Plan.

182.   Plaintiffs are informed and believe that Defendant, Chevron Corporation Omnibus Health Care Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

183.   Plaintiffs are informed and believe that Defendant, Citigroup, Inc., is a Delaware corporation with its corporate headquarters located in Stamford, Connecticut.  Plaintiffs are informed and believe that Defendant, Citigroup, Inc., is a plan sponsor and administrator for the Citigroup Health Benefit Plan.

184.   Plaintiffs are informed and believe that Defendant, Citigroup Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

185.   Plaintiffs are informed and believe that Defendant, CNA Financial Corporation, is a Delaware corporation with its corporate headquarters located in

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Chicago, Illinois.  Plaintiffs are informed and believe that Defendant, CNA Financial

2  Corporation, is a plan sponsor and plan administrator for the CNA Financial

3  Corporation Health and Group Benefits Program.

4       186.   Plaintiffs are informed and believe that Defendant, CNA Financial

5  Corporation Health and Group Benefits Program, Plan is an ERISA plan and a proper

6  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7       187.   Plaintiffs are informed and believe that Defendant, Cognizant

8  Technology Solutions U.S. Corporation, is a Delaware corporation with its corporate

9  headquarters located in Teaneck, New Jersey.  Plaintiffs are informed and believe

10  that Defendant, Cognizant Technology Solutions U.S. Corporation, is a plan sponsor

11  and plan administrator for the Cognizant Health & Welfare Benefit Plan.

12       188.   Plaintiffs are informed and believe that Defendant, Cognizant Health &

13  Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA

14  § 502(d), 29 U.S.C. § 1132(d).

15       189.   Plaintiffs are informed and believe that Defendant, Comfort Systems

16  USA, Inc., is a Delaware corporation with its corporate headquarters located in

17  Houston, Texas.  Plaintiffs are informed and believe that Defendant, Comfort

18  Systems USA, Inc., is a plan sponsor and plan administrator for the Comfort Systems

19  USA Health & Welfare Plan.

20       190.   Plaintiffs are informed and believe that Defendant, Comfort Systems

21  USA Health & Welfare Plan, is an ERISA plan and a proper defendant pursuant to

22  ERISA § 502(d), 29 U.S.C. § 1132(d).

23       191.   Plaintiffs are informed and believe that Defendant, CommScope, Inc. of

24  North Carolina, is a North Carolina corporation with its corporate headquarters

25  located in Hickory, North Carolina.  Plaintiffs are informed and believe that

26  Defendant, CommScope, Inc. of North Carolina, is a plan sponsor and plan

27  administrator for the CommScope Welfare Benefit Plan.

28

1    192.   Plaintiffs are informed and believe that Defendant, CommScope Welfare

2   Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

3   29 U.S.C. § 1132(d).

4    193.   Plaintiffs are informed and believe that Defendant, Conmed

5   Corporation, is a New York corporation with its corporate headquarters located in

6   Utica, New York.  Plaintiffs are informed and believe that Defendant, Conmed

7   Corporation, is a plan sponsor and plan administrator for the Conmed Corporation

8   Healthcare Plan.

9    194.   Plaintiffs are informed and believe that Defendant, Conmed Corporation

10   Healthcare Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11   § 502(d), 29 U.S.C. § 1132(d).

12    195.   Plaintiffs are informed and believe that Defendant, Construction

13   Teamsters Security Fund for Southern California, is an ERISA plan and a proper

14   defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15    196.   Plaintiffs are informed and believe that Defendant, Cort Business

16   Services Corporation, is a Delaware corporation with its corporate headquarters

17   located in Chantilly, Virginia.  Plaintiffs are informed and believe that Defendant,

18   Cort Business Services Corporation, is a plan sponsor and plan administrator for the

19   Cort Business Services Corporation Group Insurance Plan.

20    197.   Plaintiffs are informed and believe that Defendant, Cort Business

21   Services Corporation Group Insurance Plan, is an ERISA plan and a proper defendant

22   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

23    198.   Plaintiffs are informed and believe that Defendant, Covidien, LP, is a

24   Delaware limited partnership with its corporate headquarters located in Mansfield,

25   Massachusetts.  Plaintiffs are informed and believe that Defendant, Covidien, LP, is a

26   plan sponsor and plan administrator for the Covidien Health & Welfare Benefits

27   Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

199.   Plaintiffs are informed and believe that Defendant, Covidien Health & Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

200.   Plaintiffs are informed and believe that Defendant, Credit Suisse Securities (USA), LLC, is a Delaware limited liability company with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, Credit Suisse Securities (USA), LLC, is a plan sponsor and plan administrator for the Credit Suisse Securities (USA) LLC Group Health Care Plan.

201.   Plaintiffs are informed and believe that Defendant, Credit Suisse Securities (USA) LLC Group Health Care Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

202.   Plaintiffs are informed and believe that Defendant, Crowley Holdings, Inc., is a Delaware corporation with its corporate headquarters located in Jacksonville, Florida.  Plaintiffs are informed and believe that Defendant, Crowley Holdings, Inc., is a plan sponsor and plan administrator for the Crowley Holdings, Inc. Welfare Health Life & Accidental Death & Dismemberment plans.

203.   Plaintiffs are informed and believe that Defendant, Crowley Holdings, Inc. Welfare Health Life & Accidental Death & Dismemberment plans, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

204.   Plaintiffs are informed and believe that Defendant, Cytec Industries, Inc., is a Delaware corporation with its corporate headquarters located in Woodland Park, New Jersey.  Plaintiffs are informed and believe that Defendant, Cytec Industries, Inc., is a plan sponsor and plan administrator for the Cytec Industries Inc. Health and Welfare Plan.

205.   Plaintiffs are informed and believe that Defendant, Cytec Industries Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

206.   Plaintiffs are informed and believe that Defendant, Danaher Corporation, is a Delaware corporation with its corporate headquarters located in Mayfield Heights, Ohio.  Plaintiffs are informed and believe that Defendant, Danaher Corporation, is a plan sponsor and plan administrator for the Danaher Corporation & Subsidiaries Medical Plan.

207.   Plaintiffs are informed and believe that Defendant, Danaher Corporation & Subsidiaries Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

208.   Plaintiffs are informed and believe that Defendant, Darden Restaurants, Inc., is a Florida corporation with its corporate headquarters located in Orlando, Florida.  Plaintiffs are informed and believe that Defendant, Darden Restaurants, Inc., is a plan sponsor and plan administrator for the Darden Group Life and Health Benefit Plan for Hourly Employees and the Darden Group Life and Health Benefit Plan for Salaried Employees.

209.   Plaintiffs are informed and believe that Defendant, Darden Group Life and Health Benefit Plan for Hourly Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

210.   Plaintiffs are informed and believe that Defendant, Darden Group Life and Health Benefit Plan for Salaried Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

211.   Plaintiffs are informed and believe that Defendant, Deere & Company, is a Delaware corporation with its corporate headquarters located in Moline, Illinois. Plaintiffs are informed and believe that Defendant, Deere & Company, is a plan sponsor and plan administrator for John Deere Health Benefit Plan for Wage Employees and The John Deere Health Benefit Plan for Salaried Employees.

212.   Plaintiffs are informed and believe that Defendant, John Deere Benefit Plan for Wage Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

213.   Plaintiffs are informed and believe that Defendant, The John Deere Benefit Plan for Salaried Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

214.   Plaintiffs are informed and believe that Defendant, DellaCamera Capital Management, LLC, is a Delaware limited liability company with its headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, DellaCamera Capital Management, LLC, is a plan sponsor and plan administrator for the DellaCamera Capital Management, LLC Health and Welfare Plan.

215.   Plaintiffs are informed and believe that Defendant, DellaCamera Capital Management, LLC Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

216.   Plaintiffs are informed and believe that Defendant, Deloitte, LLP, is a Pennsylvania limited liability partnership with its headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, Deloitte, LLP, is a plan sponsor and plan administrator for the Deloitte & Touche Group Insurance Plan.

217.   Plaintiffs are informed and believe that Defendant, Deloitte & Touche Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

218.   Plaintiffs are informed and believe that Defendant, Delta Air Lines, Inc., is a Delaware corporation with its corporate headquarters located in Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, Delta Air Lines, Inc., is a plan sponsor and plan administrator for the Delta Family-Care Medical Plan.

219.   Plaintiffs are informed and believe that Defendant, Delta Family-Care Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

220.   Plaintiffs are informed and believe that Defendant, Denso Products and Services Americas, Inc., is a California corporation with its corporate headquarters located in Southfield, Michigan.  Plaintiffs are informed and believe that Defendant,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Denso Products and Services Americas, Inc., is a plan sponsor and plan administrator

2   for the Denso Sales California, Inc. Group Life, Accident, Medical & Dental

3   Insurance.

4       221.   Plaintiffs are informed and believe that Defendant, Denso Sales

5   California, Inc. Group Life, Accident, Medical & Dental Insurance, is an ERISA plan

6   and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7       222.   Plaintiffs are informed and believe that Defendant, Diageo North

8   America, Inc., is a Connecticut corporation with its corporate headquarters located in

9   Norwalk, Connecticut.  Plaintiffs are informed and believe that Defendant, Diageo

10   North America, Inc., is a plan sponsor and plan administrator for the Diageo North

11   America, Inc. Medical Care and Life Insurance Plan for Hourly and Retired

12   Employees and the Diageo North America, Inc. Medical Care and Life Insurance

13   Plan for Salaried and Retired Employees.

14       223.   Plaintiffs are informed and believe that Defendant, Diageo North

15   America, Inc. Medical Care and Life Insurance Plan for Hourly and Retired

16   Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

17   29 U.S.C. § 1132(d).

18       224.   Plaintiffs are informed and believe that Defendant, Diageo North

19   America, Inc. Medical Care and Life Insurance Plan for Salaried and Retired

20   Employees, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

21   29 U.S.C. § 1132(d).

22       225.   Plaintiffs are informed and believe that Defendant, Dollar Thrifty

23   Automotive Group, Inc., is a Delaware corporation with its corporate headquarters

24   located in Tulsa, Oklahoma.  Plaintiffs are informed and believe that Defendant,

25   Dollar Thrifty Automotive Group, Inc., is a plan sponsor and plan administrator for

26   the Dollar Thrifty Automotive Group, Inc. Welfare Benefit Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    226.   Plaintiffs are informed and believe that Defendant, Dollar Thrifty

2    Automotive Group, Inc. Welfare Benefit Plan, is an ERISA plan and a proper

3    defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    227.   Plaintiffs are informed and believe that Defendant, Dr. Pepper Snapple

5    Group, Inc., is a Delaware corporation with its corporate headquarters located in

6    Plano, Texas.  Plaintiffs are informed and believe that Defendant, Dr. Pepper Snapple

7    Group, Inc., is a plan sponsor and plan administrator for the Dr. Pepper Snapple

8    Group, Inc. Health Plan.

9    228.   Plaintiffs are informed and believe that Defendant, Dr. Pepper Snapple

10   Group, Inc. Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11   § 502(d), 29 U.S.C. § 1132(d).

12   229.   Plaintiffs are informed and believe that Defendant, Drivetime

13   Automotive Group, Inc., is a Delaware corporation with its corporate headquarters

14   located in Phoenix, Arizona.  Plaintiffs are informed and believe that Defendant,

15   Drivetime Automotive Group, Inc., is a plan sponsor and plan administrator for the

16   Drivetime Welfare Benefit Plan.

17   230.   Plaintiffs are informed and believe that Defendant, Drivetime Welfare

18   Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

19   29 U.S.C. § 1132(d).

20   231.   Plaintiffs are informed and believe that Defendant, DS Waters of

21   America, Inc., is a Delaware corporation with its corporate headquarters located in

22   Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, DS Waters of

23   America, Inc., is a plan sponsor and plan administrator for the DS Waters of

24   America, Inc. Health and Welfare Plan.

25   232.   Plaintiffs are informed and believe that Defendant, DS Waters of

26   America, Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant

27   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

233.   Plaintiffs are informed and believe that Defendant, Ecolab, Inc., is a Delaware corporation with its corporate headquarters located in St. Paul. Minnesota. Plaintiffs are informed and believe that Defendant, Ecolab, Inc., is a plan sponsor and plan administrator for the Ecolab Health and Welfare Benefits Plan.

234.   Plaintiffs are informed and believe that Defendant, Ecolab Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

235.   Plaintiffs are informed and believe that Defendant, Edward D. Jones & Co., LP, is a Missouri limited partnership with its corporate headquarters located in Maryland Heights, Missouri.  Plaintiffs are informed and believe that Defendant, Edward D. Jones & Co., LP, is a plan sponsor and plan administrator for the Edward D. Jones & Co. Employees Health and Welfare Program.

236.   Plaintiffs are informed and believe that Defendant, Edward D. Jones & Co. Employees Health and Welfare Program, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

237.   Plaintiffs are informed and believe that Defendant, Emcor Group, Inc., is a Delaware corporation with its corporate headquarters located in Norwalk, Connecticut.  Plaintiffs are informed and believe that Defendant, Emcor Group, Inc., is a plan sponsor and plan administrator for the Emcor Group, Inc. Employee Welfare Plan.

238.   Plaintiffs are informed and believe that Defendant, Emcor Group, Inc. Employee Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

239.   Plaintiffs are informed and believe that Defendant, Ensign United States Drilling, Inc., is a Colorado corporation with its corporate headquarters located in Denver, Colorado.  Plaintiffs are informed and believe that Defendant, Ensign United States Drilling, Inc., is a plan sponsor and plan administrator for the Ensign US Drilling Drilling Employee Benefit Plan.

1201369.1

1   240.   Plaintiffs are informed and believe that Defendant, Ensign US Drilling

2   Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA

3   § 502(d), 29 U.S.C. § 1132(d).

4   241.   Plaintiffs are informed and believe that Defendant, Enterprise Holdings,

5   Inc., is a Missouri corporation with its corporate headquarters located in St. Louis,

6   Missouri.  Plaintiffs are informed and believe that Defendant, Enterprise Holdings,

7   Inc., is a plan sponsor and plan administrator for the Enterprise Holdings Hospital

8   Insurance Plan.

9   242.   Plaintiffs are informed and believe that Defendant, Enterprise Holdings

10  Hospital Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11  § 502(d), 29 U.S.C. § 1132(d).

12  243.   Plaintiffs are informed and believe that Defendant, Environmental

13  Systems Research Institute, Inc., is a California corporation with its corporate

14  headquarters located in Redlands, California.  Plaintiffs are informed and believe that

15  Defendant, Environmental Systems Research Institute, Inc., is a plan sponsor and

16  plan administrator for the Environmental Systems Research Institute, Inc. Life, Ltd.

17  Travel Accident, Vision Service, Medical Dental.

18  244.   Plaintiffs are informed and believe that Defendant, Environmental

19  Systems Research Institute, Inc. Life, Ltd. Travel Accident, Vision Service, Medical

20  Dental, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

21  U.S.C. § 1132(d).

22  245.   Plaintiffs are informed and believe that Defendant, Equity Residential

23  Services, LLC, is a Delaware limited liability company with its corporate

24  headquarters located in Chicago, Illinois.  Plaintiffs are informed and believe that

25  Defendant, Equity Residential Services, LLC, is a plan sponsor and plan

26  administrator for the Equity Residential Properties Trust Group Insurance Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

246.   Plaintiffs are informed and believe that Defendant, Equity Residential Properties Trust Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

247.   Plaintiffs are informed and believe that Defendant, Ernst & Young, LLP, is a Delaware limited liability company with its corporate headquarters located in Secaucus., New Jersey.  Plaintiffs are informed and believe that Defendant, Ernst & Young, LLP, is a plan sponsor and plan administrator for the Ernst & Young Medical Plan.

248.   Plaintiffs are informed and believe that Defendant, Ernst & Young Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

249.   Plaintiffs are informed and believe that Defendant, Essilor of America, Inc., is a Delaware corporation with its corporate headquarters located in Dallas, Texas.  Plaintiffs are informed and believe that Defendant, Essilor of America, Inc., is a plan sponsor and plan administrator for the Essilor of America, Inc. Employer Welfare Benefit Plan.

250.   Plaintiffs are informed and believe that Defendant, Essilor of America, Inc. Employer Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

251.   Plaintiffs are informed and believe that Defendant, The Estee Lauder Companies, Inc., is a Delaware corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, The Estee Lauder Companies, Inc. is a plan sponsor and plan administrator for The Estee Lauder Companies, Inc. Group Medical, Dental, Prescription Drug, Long Term Disability, Life, Accidental Death and Dismemberment Plan.

252.   Plaintiffs are informed and believe that Defendant, The Estee Lauder Companies, Inc. Group Medical, Dental, Prescription Drug, Long Term Disability,

1    Life, Accidental Death and Dismemberment Plan, is an ERISA plan and a proper

2    defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

3        253.   Plaintiffs are informed and believe that Defendant, Experian Information

4    Solutions, Inc., is an Ohio corporation with its corporate headquarters located in

5    Costa Mesa, California.  Plaintiffs are informed and believe that Defendant, Experian

6    Information Solutions, Inc., is a plan sponsor and plan administrator for the Experian

7    Information Solutions, Inc. Health and Welfare Plan.

8        254.   Plaintiffs are informed and believe that Defendant, Experian Information

9    Solutions, Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant

10   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

11       255.   Plaintiffs are informed and believe that Defendant, Expressjet Airlines,

12   Inc., is a Utah corporation f/k/a Atlantic Southeast Airlines, with its corporate

13   headquarters located in Atlanta, Georgia.  Plaintiffs are informed and believe that

14   Defendant, Expressjet Airlines, Inc., is a plan sponsor and plan administrator for the

15   Expressjet Airlines, Inc. Consolidated Welfare Benefit Plan.

16       256.   Plaintiffs are informed and believe that Defendant, Expressjet Airlines,

17   Inc. Consolidated Welfare Benefit Plan, is an ERISA plan and a proper defendant

18   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

19       257.   Plaintiffs are informed and believe that Defendant, Farmers Group, Inc.,

20   is a Nevada corporation with its corporate headquarters located Grand Rapids,

21   Michigan.  Plaintiffs are informed and believe that Defendant, Farmers Group, Inc.,

22   is a plan sponsor and plan administrator for the Farmers Group, Inc. Employee

23   Prepaid Benefit Plan.

24       258.   Plaintiffs are informed and believe that Defendant, Farmers Group, Inc.

25   Employee Prepaid Benefit Plan, is an ERISA plan and a proper defendant pursuant to

26   ERISA § 502(d), 29 U.S.C. § 1132(d).

27       259.   Plaintiffs are informed and believe that Defendant FC USA, Inc., is a

28   New York corporation with its corporate headquarters located in Ramsey, New

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Jersey.  Plaintiffs are informed and believe that Defendant, FC USA, Inc., is a plan

2   sponsor and plan administrator for the FC USA Inc. Benefits.

3       260.   Plaintiffs are informed and believe that Defendant, FC USA Inc.

4   Benefits, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

5   U.S.C. § 1132(d).

6       261.   Plaintiffs are informed and believe that Defendant, Fidelity Brokerage

7   Services, LLC, is a Delaware limited liability company with its corporate

8   headquarters located in Boston, Massachusetts.  Plaintiffs are informed and believe

9   that Defendant, Fidelity Brokerage Services, LLC, is a plan sponsor and plan

10  administrator for the Fidelity Group Employees Medical, Dental and Cafeteria Plan.

11      262.   Plaintiffs are informed and believe that Defendant, Fidelity Group

12  Employees Medical, Dental and Cafeteria Plan, is an ERISA plan and a proper

13  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

14      263.   Plaintiffs are informed and believe that Defendant, Kate Spade &

15  Company, is a Delaware corporation, f/k/a Fifth & Pacific Companies, Inc., with its

16  corporate headquarters located in New York, New York. Plaintiffs are informed and

17  believe that Defendant, Kate Spade & Company, Inc., is a plan sponsor and plan

18  administrator for the FNPC Health and Welfare Plan.

19      264.   Plaintiffs are informed and believe that Defendant, FNPC Health and

20  Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

21  29 U.S.C. § 1132(d).

22      265.   Plaintiffs are informed and believe that Defendant, Finra Dispute

23  Resolution, Inc., is a non-profit Delaware corporation with its corporate headquarters

24  located in Rockville, Maryland.  Plaintiffs are informed and believe that Defendant,

25  Finra Dispute Resolution, Inc., is a plan sponsor and plan administrator for the Finra

26  Employee Group Medical, Dental, Life, Disability, AD&D & Vision Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

80

THIRD AMENDED COMPLAINT

266.   Plaintiffs are informed and believe that Defendant, Finra Employee Group Medical, Dental, Life, Disability, AD&D & Vision Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

267.   Plaintiffs are informed and believe that Defendant, Fiserv, Inc., is a Wisconsin corporation with its corporate headquarters located in Brookfield, Wisconsin.  Plaintiffs are informed and believe that Defendant, Fiserv, Inc., is a plan sponsor and plan administrator for the Fiserv, Inc. Welfare Benefit Plan.

268.   Plaintiffs are informed and believe that Defendant, Fiserv, Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

269.   Plaintiffs are informed and believe that Defendant, Five Star Quality Care, Inc., is a Massachussetts corporation with its corporate headquarters located in Newton, Massachusetts.  Plaintiffs are informed and believe that Defendant, Five Star Quality Care, Inc., is a plan sponsor and plan administrator for the Five Star Quality Care.

270.   Plaintiffs are informed and believe that Defendant, Five Star Quality Care, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

271.   Plaintiffs are informed and believe that Defendant, Flextronics International USA, Inc., is a California corporation with its corporate headquarters located in Milpitas, California.  Plaintiffs are informed and believe that Defendant, Flextronics International USA, Inc., is a plan sponsor and plan administrator for the Flextronics Employee Benefits Plan.

272.   Plaintiffs are informed and believe that Defendant, Flextronics Employee Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

273.   Plaintiffs are informed and believe that Defendant, Foot Locker Retail, Inc., is a New York corporation with its corporate headquarters located in Harrisburg,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Pennsylvania.  Plaintiffs are informed and believe that Defendant, Foot Locker

2  Retail, Inc., is a plan sponsor and plan administrator for the Foot Locker Welfare

3  Benefit Payment Plan.

4      274.   Plaintiffs are informed and believe that Defendant, Foot Locker Welfare

5  Benefit Payment Plan, is an ERISA plan and a proper defendant pursuant to ERISA

6  § 502(d), 29 U.S.C. § 1132(d).

7      275.   Plaintiffs are informed and believe that Defendant, Founders Healthcare,

8  LLC, is a Arizona limited liability company with its corporate headquarters located in

9  Phoenix, Arizona.  Plaintiffs are informed and believe that Defendant, Founders

10  Healthcare, LLC, is a plan sponsor and plan administrator for the Founders

11  Healthcare, LLC Preferred Homecare Employee Benefit Plan.

12      276.   Plaintiffs are informed and believe that Defendant, Founders Healthcare,

13  LLC Preferred Homecare Employee Benefit Plan, is an ERISA plan and a proper

14  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15      277.   Plaintiffs are informed and believe that Defendant, Fox Entertainment

16  Group, Inc., is a Delaware corporation with its corporate headquarters located in Los

17  Angeles, California.  Plaintiffs are informed and believe that Defendant, Fox

18  Entertainment Group, Inc., is a plan sponsor and plan administrator for the Fox

19  Health Plan.

20      278.   Plaintiffs are informed and believe that Defendant, Fox Health Plan, is

21  an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C.

22  § 1132(d).

23      279.   Plaintiffs are informed and believe that Defendant, Fugate Aviation,

24  Inc., is a Kansas corporation with its corporate headquarters located in Wichita,

25  Kansas.  Plaintiffs are informed and believe that Defendant, Fugate Aviation, Inc., is

26  a plan sponsor and plan administrator for the Fugate Enterprises Employee Welfare

27  Benefit Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX:  (310) 551-8181

1201369.1

1    280.   Plaintiffs are informed and believe that Defendant, Fugate Enterprises

2    Employee Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

3    to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    281.   Plaintiffs are informed and believe that Defendant, Future Electronics

5    Corp., is a Massachusetts corporation with its corporate headquarters located in

6    Bolton, Massachusetts.  Plaintiffs are informed and believe that Defendant, Future

7    Electronics Corp., is a plan sponsor and plan administrator for the Future Electronics

8    Corp. Group Insurance.

9    282.   Plaintiffs are informed and believe that Defendant, Future Electronics

10   Corp. Group Insurance, is an ERISA plan and a proper defendant pursuant to ERISA

11   § 502(d), 29 U.S.C. § 1132(d).

12   283.   Plaintiffs are informed and believe that Defendant, G4S Secure

13   Solutions, (USA) Inc., is a Florida corporation with its corporate headquarters located

14   in Jupiter, Florida.  Plaintiffs are informed and believe that Defendant, G4S Secure

15   Solutions, (USA) Inc., is a plan sponsor and plan administrator for the G4S Secure

16   Solutions, USA Insured Health Plans.

17   284.   Plaintiffs are informed and believe that Defendant, G4S Secure

18   Solutions, USA Insured Health Plans, is an ERISA plan and a proper defendant

19   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20   285.   Plaintiffs are informed and believe that Defendant, Gap, Inc., is a

21   California corporation with its corporate headquarters located in San Francisco,

22   California.  Plaintiffs are informed and believe that Defendant, Gap, Inc., is a plan

23   sponsor and plan administrator for the Gap Inc. Health and Life Insurance Plan.

24   286.   Plaintiffs are informed and believe that Defendant, Gap Inc. Health and

25   Life Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA

26   § 502(d), 29 U.S.C. § 1132(d).

27   287.   Plaintiffs are informed and believe that Defendant, General Electric

28   Company, is a New York corporation with its corporate headquarters located in

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX:  (310) 551-8181

1201369.1

1   Schenectady, New York. Plaintiffs are informed and believe that Defendant, General

2   Electric Company, is a plan sponsor and plan administrator for the GE Health Choice

3   Plan.

4       288. Plaintiffs are informed and believe that Defendant, GE Health Choice

5   Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

6   U.S.C. § 1132(d).

7       289. Plaintiffs are informed and believe that Defendant, General Parts

8   International, Inc., is a North Carolina corporation with its corporate headquarters

9   located in Raleigh, North Carolina. Plaintiffs are informed and believe that

10  Defendant, General Parts International, Inc., is a plan sponsor and plan administrator

11  for the General Parts International, Inc. Self-Funded Health and Welfare Plan.

12      290. Plaintiffs are informed and believe that Defendant, General Parts

13  International, Inc. Self-Funded Health and Welfare Plan, is an ERISA plan and a

14  proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15      291. Plaintiffs are informed and believe that Defendant, Genon Energy

16  Services, LLC, is a Delaware limited liability company with its corporate

17  headquarters located in Princeton, New Jersey. Plaintiffs are informed and believe

18  that Defendant, Genon Energy Services, LLC, is a plan sponsor and plan

19  administrator for the Genon Energy Group Welfare Benefits Plan.

20      292. Plaintiffs are informed and believe that Defendant, Genon Energy Group

21  Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

22  § 502(d), 29 U.S.C. § 1132(d).

23      293. Plaintiffs are informed and believe that Defendant, Genpact Process

24  Solutions, LLC, is a Delaware limited liability company with its corporate

25  headquarters located in Danbury, Connecticut. Plaintiffs are informed and believe

26  that Defendant, Genpact Process Solutions, LLC, is a plan sponsor and plan

27  administrator for the Genpact Welfare Benefit Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1     294.   Plaintiffs are informed and believe that Defendant, Genpact Welfare

2  Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

3  29 U.S.C. § 1132(d).

4     295.   Plaintiffs are informed and believe that Defendant, Georgia-Pacific,

5  LLC, is a Delaware limited liability company with its corporate headquarters located

6  in Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, Georgia-

7  Pacific, LLC, is a plan sponsor and plan administrator for the Georgia-Pacific LLC

8  Lifechoices Benefits Program for Salaried and Salaried Benefits Eligible Employees.

9     296.   Plaintiffs are informed and believe that Defendant, Georgia-Pacific LLC

10  Lifechoices Benefits Program for Salaried and Salaried Benefits Eligible Employees,

11  is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C.

12  § 1132(d).

13     297.   Plaintiffs are informed and believe that Defendant, GlaxoSmithKline,

14  LLC, Delaware limited liability company with its corporate headquarters located in

15  Philadelphia, Pennsylvania.  Plaintiffs are informed and believe that

16  GlaxoSmithKline, LLC, is a plan sponsor and plan administrator for Defendant

17  GlaxoSmithKline Health and Welfare Benefits Plan for US Employees.

18     298.   PLAINTIFFS are informed and believe that Defendant,

19  GlaxoSmithKline Health and Welfare Benefits Plan for US Employees, is an ERISA

20  plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

21     299.   Plaintiffs are informed and believe that Defendant, GP Strategies

22  Corporation, is a Delaware corporation, f/k/a General Physics Corporation, with its

23  corporate headquarters located in Columbia, Maryland.  Plaintiffs are informed and

24  believe that Defendant, GP Strategies Corporation, is a plan sponsor and plan

25  administrator for the GP Strategies Corporation Welfare Benefit Plan.

26     300.   Plaintiffs are informed and believe that Defendant, GP Strategies

27  Corporation Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

28  to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

301.   Plaintiffs are informed and believe that Defendant, Great-West Life & Annuity Insurance Company, is a Colorado corporation with its corporate headquarters located in Greenwood Village, Colorado.  Plaintiffs are informed and believe that Defendant, Great-West Life & Annuity Insurance Company, is a plan sponsor and plan administrator for the Great-West Life & Ann Ins Flexible Benefit Plan.

302.   Plaintiffs are informed and believe that Defendant, Great-West Life & Ann Ins Flexible Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

303.   Plaintiffs are informed and believe that Defendant, Greystar Management Services, LP, is a Delaware limited partnership with its corporate headquarters located in Charleston, South Carolina.  Plaintiffs are informed and believe that Defendant, Greystar Management Services, LP, is a plan sponsor and plan administrator for the Greystar Management Services, LLP.

304.   Plaintiffs are informed and believe that Defendant, Greystar Management Services, LLP, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

305.   Plaintiffs are informed and believe that Defendant, GTech Corporation, is a Delaware corporation with its corporate headquarters located in Providence, Rhode Island.  Plaintiffs are informed and believe that Defendant, GTech Corporation, is a plan sponsor and plan administrator for the GTech Corporation Participant Benefit Plan.

306.   Plaintiffs are informed and believe that Defendant, GTech Corporation Participant Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

307.   Plaintiffs are informed and believe that Defendant, HD Supply, Inc., is a Delaware corporation with its corporate headquarters located in Atlanta, Georgia.

1  Plaintiffs are informed and believe that Defendant, HD Supply, Inc., is a plan sponsor

2  and plan administrator for the HD Supply Health and Welfare Program.

3      308.   Plaintiffs are informed and believe that Defendant, HD Supply Health

4  and Welfare Program, is an ERISA plan and a proper defendant pursuant to ERISA

5  § 502(d), 29 U.S.C. § 1132(d).

6      309.   Plaintiffs are informed and believe that Defendant, Health Inventures,

7  LLC, is a Delaware limited liability company with its corporate headquarters located

8  in Broomfield, Colorado.  Plaintiffs are informed and believe that Defendant, Health

9  Inventures, LLC, is a plan sponsor and plan administrator for the Health Inventures

10 Health and Wellness Benefit Plan.

11     310.   Plaintiffs are informed and believe that Defendant, Health Inventures

12 Health and Wellness Benefit Plan, is an ERISA plan and a proper defendant pursuant

13 to ERISA § 502(d), 29 U.S.C. § 1132(d).

14     311.   Plaintiffs are informed and believe that Defendant, Heartland

15 Automotive Services, Inc., is a Minnesota corporation with its corporate headquarters

16 located in Irving, Texas.  Plaintiffs are informed and believe that Defendant,

17 Heartland Automotive Services, Inc., is a plan sponsor and plan administrator for the

18 Heartland Automotive Services, Inc. Group Medical and Life Plan.

19     312.   Plaintiffs are informed and believe that Defendant, Heartland

20 Automotive Services, Inc. Group Medical and Life Plan, is an ERISA plan and a

21 proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

22     313.   Plaintiffs are informed and believe that Defendant, Hewlett-Packard

23 Company, is a Delaware corporation with its corporate headquarters located in Palo

24 Alto, California.  Plaintiffs are informed and believe that Defendant, Hewlett-Packard

25 Company, is a plan sponsor and plan administrator for the Hewlett-Packard Company

26 Compresive Welfare Benefits Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

314.   Plaintiffs are informed and believe that Defendant, Hewlett-Packard Company Comprehensive Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

315.   Plaintiffs are informed and believe that Defendant, Honeywell International, Inc., is a Delaware corporation with its corporate headquarters located in Morristown, New Jersey.  Plaintiffs are informed and believe that Defendant, Honeywell International, Inc., is a plan sponsor and plan administrator for the Honeywell International Inc. Benefit Plan.

316.   Plaintiffs are informed and believe that Defendant, Honeywell International Inc. Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

317.   Plaintiffs are informed and believe that Defendant, Hot Topic, Inc., is a California corporation with its corporate headquarters located in City of Industry, California.  Plaintiffs are informed and believe that Defendant, Hot Topic, Inc., is a plan sponsor and plan administrator for the Hot Topic, Inc. Health and Welfare Plan.

318.   Plaintiffs are informed and believe that Defendant, Hot Topic, Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

319.   Plaintiffs are informed and believe that Defendant, Huhtamaki Americas, Inc., is a Delaware corporation with its corporate headquarters located in De Soto, Kansas.  Plaintiffs are informed and believe that Defendant, Huhtamaki Americas, Inc., is a plan sponsor and plan administrator for the Huhtamaki Americas, Inc. Group Insurance Plan.

320.   Plaintiffs are informed and believe that Defendant, Huhtamaki Americas, Inc. Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

321.   Plaintiffs are informed and believe that Defendant, Informa USA, Inc., is a Massachusetts corporation with its corporate headquarters located in Sarasota,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  Florida.  Plaintiffs are informed and believe that Defendant, Informa USA, Inc., is a

2  plan sponsor and plan administrator for the Informa USA, Inc. and Subsidiaries

3  Insurance Plan.

4       322.   Plaintiffs are informed and believe that Defendant, Informa USA, Inc.

5  and Subsidiaries Insurance Plan, is an ERISA plan and a proper defendant pursuant

6  to ERISA § 502(d), 29 U.S.C. § 1132(d).

7       323.   Plaintiffs are informed and believe that Defendant, ING North America

8  Insurance Corporation, is a Delaware corporation with its corporate headquarters

9  located in Minneapolis, Minnesota.  Plaintiffs are informed and believe that

10  Defendant, ING North America Insurance Corporation, is a plan sponsor and plan

11  administrator for the ING Americas Welfare Benefits Plan.

12       324.   Plaintiffs are informed and believe that Defendant, ING Americas

13  Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

14  § 502(d), 29 U.S.C. § 1132(d).

15       325.   Plaintiffs are informed and believe that Defendant, Instant Web, Inc., is

16  a Minnesota corporation with its corporate headquarters located in Chanhassen,

17  Minnesota.  Plaintiffs are informed and believe that Defendant, Instant Web, Inc., is a

18  plan sponsor and plan administrator for the Instant Web Inc. and Subsidiary Medical

19  Benefit Plan.

20       326.   Plaintiffs are informed and believe that Defendant, Instant Web Inc. and

21  Subsidiary Medical Benefit Plan, is an ERISA plan and a proper defendant pursuant

22  to ERISA § 502(d), 29 U.S.C. § 1132(d).

23       327.   Plaintiffs are informed and believe that Defendant, Integra LifeSciences

24  Corporation, is a Delaware corporation with its corporate headquarters located in

25  Plainsboro, New Jersey.  Plaintiffs are informed and believe that Defendant, Integra

26  LifeSciences Corporation, is a plan sponsor and plan administrator for the Integra

27  LifeSciences Corp. Medical/Prescription, Dental and STD Plan.

28

1    328.   Plaintiffs are informed and believe that Defendant, Integra LifeSciences

2  Corp. Medical/Prescription, Dental and STD Plan, is an ERISA plan and a proper

3  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    329.   Plaintiffs are informed and believe that Defendant, Intelsat Corporation,

5  is a Delaware corporation with its corporate headquarters located in Washington,

6  District of Columbia.  Plaintiffs are informed and believe that Defendant, Intelsat

7  Corporation, is a plan sponsor and plan administrator for the Intelsat Group Welfare

8  Benefits Plan.

9    330.   Plaintiffs are informed and believe that Defendant, Intelsat Group

10  Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11  § 502(d), 29 U.S.C. § 1132(d).

12    331.   Plaintiffs are informed and believe that Defendant, International

13  Business Machines Corporation, is a New York corporation with its corporate

14  headquarters located in Armonk, New York.  Plaintiffs are informed and believe that

15  Defendant, International Business Machines Corporation, is a plan sponsor and plan

16  administrator for the IBM Medical & Dental Plan for Regular and Part-time

17  Employees.

18    332.   Plaintiffs are informed and believe that Defendant, IBM Medical &

19  Dental Plan for Regular and Part-time Employees, is an ERISA plan and a proper

20  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

21    333.   Plaintiffs are informed and believe that Defendant, International Paper

22  Company, is a New York corporation with its corporate headquarters located in

23  Memphis, Tennessee.  Plaintiffs are informed and believe that Defendant,

24  International Paper Company, is a plan sponsor and plan administrator for the

25  International Paper Company Group Health & Welfare Plan.

26    334.   Plaintiffs are informed and believe that Defendant, International Paper

27  Company Group Health & Welfare Plan, is an ERISA plan and a proper defendant

28  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

335.   Plaintiffs are informed and believe that Defendant, International Speedway Corporation, is a Florida corporation with its corporate headquarters located in Daytona, Florida.  Plaintiffs are informed and believe that Defendant, International Speedway Corporation, is a plan sponsor and plan administrator for the International Speedway Corporation Welfare Benefit Plan.

336.   Plaintiffs are informed and believe that Defendant, International Speedway Corporation Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

337.   Plaintiffs are informed and believe that Defendant, Interstate Hotels & Resorts, Inc., is a Delaware corporation with its corporate headquarters located in Los Angeles, California.  Plaintiffs are informed and believe that Defendant, Interstate Hotels & Resorts, Inc., is a plan sponsor and plan administrator for the Interstate Hotels & Resorts Benefits Program.

338.   Plaintiffs are informed and believe that Defendant, Interstate Hotels & Resorts Benefits Program, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

339.   Plaintiffs are informed and believe that Defendant, INX International Ink Co., is a Delaware corporation with its corporate headquarters located in Schaumburg, Florida.  Plaintiffs are informed and believe that Defendant, INX International Ink Co., is a plan sponsor and plan administrator for the INX International Group Medical/Dental Plan.

340.   Plaintiffs are informed and believe that Defendant, INX International Group Medical/Dental Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

341.   Plaintiffs are informed and believe that Defendant, J.C. Penney Corporation, Inc., is a Delaware corporation with its corporate headquarters located in Plano, Texas.  Plaintiffs are informed and believe that Defendant, J.C. Penney

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Corporation, Inc., is a plan sponsor and plan administrator for the J.C. Penney

2   Corporation, Inc. Health & Welfare Benefits Plan.

3        342.   Plaintiffs are informed and believe that Defendant, J.C. Penney

4   Corporation, Inc. Health & Welfare Benefits Plan, is an ERISA plan and a proper

5   defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

6        343.   Plaintiffs are informed and believe that Defendant, J.P. Morgan Chase

7   National Corporate Services, Inc., is a New York corporation with its corporate

8   headquarters located in New York, New York.  Plaintiffs are informed and believe

9   that Defendant, J.P. Morgan Chase National Corporate Services, Inc., is a plan

10   sponsor and plan administrator for The JPMorgan Chase Health & Income Protection

11   Plan For Active Employees.

12        344.   Plaintiffs are informed and believe that Defendant, The JPMorgan Chase

13   Health & Income Protection Plan For Active Employees, is an ERISA plan and a

14   proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15        345.   Plaintiffs are informed and believe that Defendant, Jack in the Box, Inc.,

16   is a Delaware corporation with its corporate headquarters located in San Diego,

17   California.  Plaintiffs are informed and believe that Defendant, Jack in the Box, Inc.,

18   is a plan sponsor and plan administrator for the Jack in the Box, Inc. Crew

19   Employees Health & Welfare Plan.

20        346.   Plaintiffs are informed and believe that Defendant, Jack in the Box, Inc.

21   Crew Employees Health & Welfare Plan, is an ERISA plan and a proper defendant

22   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

23        347.   Plaintiffs are informed and believe that Defendant, Jacobs Engineering

24   Group, Inc., is a Delaware corporation with its corporate headquarters located in

25   Pasadena, California.  Plaintiffs are informed and believe that Defendant, Jacobs

26   Engineering Group, Inc., is a plan sponsor and plan administrator for the Jacobs

27   Engineering Group, Inc. Employee Group Insurance Plan.

28

1201369.1

348.   Plaintiffs are informed and believe that Defendant, Jacobs Engineering Group, Inc. Employee Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

349.   Plaintiffs are informed and believe that Defendant, JetBlue Airways Corporation, is a Delaware corporation with its corporate headquarters located in Long Island City, New York.  Plaintiffs are informed and believe that Defendant, JetBlue Airways corporation, is a plan sponsor and plan administrator for the JetBlue Airways Group Health Insurance Plan.

350.   Plaintiffs are informed and believe that Defendant, JetBlue Airways Group Health Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

351.   Plaintiffs are informed and believe that Defendant, Jones Lang LaSalle, Inc., is a Maryland corporation with its corporate headquarters located in Chicago, Illinois.  Plaintiffs are informed and believe that Defendant, Jones Lang Lasalle, Inc., is a plan sponsor and plan administrator for the Jones Lang LaSalle Inc. Health and Welfare Benefits Plan.

352.   Plaintiffs are informed and believe that Defendant, Jones Lang LaSalle Inc. Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

353.   Plaintiffs are informed and believe that Defendant, Kinder Morgan G.P., Inc., is a Delaware corporation with its corporate headquarters located in Houston, Texas.  Plaintiffs are informed and believe that Defendant, Kinder Morgan G.P., Inc., is a plan sponsor and plan administrator for the KMI Flexible Benefit Plan.

354.   Plaintiffs are informed and believe that Defendant, KMI Flexible Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

355.   Plaintiffs are informed and believe that Defendant, Kinetic Concepts, Inc., is a Texas corporation with its corporate headquarters located in San Antonio,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Texas. Plaintiffs are informed and believe that Defendant, Kinetic Concepts, Inc., is a plan sponsor and plan administrator for the KCI Medical Plan.

356. Plaintiffs are informed and believe that Defendant, KCI Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

357. Plaintiffs are informed and believe that Defendant, KLA-Tencor Corporation, is a Delaware corporation with its corporate headquarters located in Milpitas, California. Plaintiffs are informed and believe that Defendant, KLA-Tencor Corporation, is a plan sponsor and plan administrator for the KLA-Tencor Corporation Group Insurance Plan.

358. Plaintiffs are informed and believe that Defendant, KLA-Tencor Corporation Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

359. Plaintiffs are informed and believe that Defendant, Konica Minolta Business Solutions USA, Inc., is a New York corporation with its corporate headquarters located in Ramsey, New Jersey. Plaintiffs are informed and believe that Defendant, Konica Minolta Business Solutions USA, Inc., is a plan sponsor and plan administrator for the Konica Minolta Business Solutions USA, Inc. Life, Disability, Accident, Medical and Dental Plan.

360. Plaintiffs are informed and believe that Defendant, Konica Minolta Business Solutions USA, Inc. Life, Disability, Accident, Medical and Dental Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

361. Plaintiffs are informed and believe that Defendant, L Brands, Inc., is a Delaware corporation formerly known as Limited Brands, Inc., with its corporate headquarters located in Columbus, Ohio. Plaintiffs are informed and believe that Defendant, L Brands, Inc., is a plan sponsor and plan administrator for the Limited Brands, Inc. Health and Welfare Benefits Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    362.   Plaintiffs are informed and believe that Defendant, Limited Brands, Inc.

2 Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant

3 to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    363.   Plaintiffs are informed and believe that Defendant, LA-Z-BOY

5 Incorporated, is a Michigan corporation with its corporate headquarters located in

6 Monroe, Michigan.  Plaintiffs are informed and believe that Defendant, LA-Z-BOY

7 Incorporated, is a plan sponsor and plan administrator for the LA-Z-BOY

8 Incorporated Medical Plan.

9    364.   Plaintiffs are informed and believe that Defendant, LA-Z-BOY

10 Incorporated Medical Plan, is an ERISA plan and a proper defendant pursuant to

11 ERISA § 502(d), 29 U.S.C. § 1132(d).

12   365.   Plaintiffs are informed and believe that Defendant, LGAA, LLC, is a

13 Utah limited liability company, f/k/a Leavitt Group Agency Association, with its

14 corporate headquarters located in Cedar City, Utah.  Plaintiffs are informed and

15 believe that Defendant, LGAA, LLC, is a plan sponsor and plan administrator for the

16 LGAA Benefit Plan.

17   366.   Plaintiffs are informed and believe that Defendant, LGAA Benefit Plan,

18 is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C.

19 § 1132(d).

20   367.   Plaintiffs are informed and believe that Defendant, Level 3

21 Communications, LLC, is a Delaware limited liability company with its headquarters

22 located in Broomfield, Colorado.  Plaintiffs are informed and believe that Defendant,

23 Level 3 Communications, LLC, is a plan sponsor and plan administrator for the Level

24 3 Communications, Inc. Welfare Benefit Plan.

25   368.   Plaintiffs are informed and believe that Defendant, Level 3

26 Communications, Inc. Welfare Benefit Plan, is an ERISA plan and a proper

27 defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

369.   Plaintiffs are informed and believe that Defendant, Levy Restaurants, Inc., is an Illinois corporation with its corporate headquarters located in Springfield, Illinois.  Plaintiffs are informed and believe that Defendant, Levy Restaurants, Inc., is a plan sponsor and plan administrator for the Employee Benefit Plan of the Compass Group USA, Inc.

370.   Plaintiffs are informed and believe that Defendant, Employee Benefit Plan of the Compass Group USA, Inc., is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

371.   Plaintiffs are informed and believe that Defendant, Linde North America, Inc., is a Delaware corporation with its corporate headquarters located in Murray Hill, New Jersey.  Plaintiffs are informed and believe that Defendant, Linde North America, Inc., is a plan sponsor and plan administrator for the Linde North America, Inc. Insurance Plan.

372.   Plaintiffs are informed and believe that Defendant, Linde North America, Inc. Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

373.   Plaintiffs are informed and believe that Defendant, L'Oreal USA S/D, Inc., is a Delaware corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, L'Oreal USA S/D, Inc., is a plan sponsor and plan administrator for the L'Oreal USA, Inc. Comprehensive Medical Plan.

374.   Plaintiffs are informed and believe that Defendant, L'Oreal USA, Inc. Comprehensive Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

375.   Plaintiffs are informed and believe that Defendant, Maersk, Inc., is a New York corporation with its corporate headquarters located in Madison, New Jersey.  Plaintiffs are informed and believe that Defendant, Maersk, Inc., is a plan

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  sponsor and plan administrator for the Maersk Inc. Active NonUnion Health and

2  Welfare Plan.

3      376.   Plaintiffs are informed and believe that Defendant, Maersk Inc. Active

4  NonUnion Health and Welfare Plan, is an ERISA plan and a proper defendant

5  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

6      377.   Plaintiffs are informed and believe that Defendant, Marubeni Itochu

7  Steel America, Inc., is a Delaware corporation with its corporate headquarters located

8  in New York, New York.  Plaintiffs are informed and believe that Defendant,

9  Marubeni Itochu Steel America, Inc., is a plan sponsor and plan administrator for the

10  MISA Group Benefit Plans.

11      378.   Plaintiffs are informed and believe that Defendant, MISA Group Benefit

12  Plans, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

13  U.S.C. § 1132(d).

14      379.   Plaintiffs are informed and believe that Defendant, Mary Kay, Inc., is a

15  Delaware corporation with its corporate headquarters located in Addison, Texas.

16  Plaintiffs are informed and believe that Defendant, Mary Kay, Inc., is a plan sponsor

17  and plan administrator for the Mary Kay, Inc. Comprehensive Employee Health and

18  Welfare Plan.

19      380.   Plaintiffs are informed and believe that Defendant, Mary Kay, Inc.

20  Comprehensive Employee Health and Welfare Plan, is an ERISA plan and a proper

21  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

22      381.   Plaintiffs are informed and believe that Defendant, McCarthy Holthus,

23  LP, is a California limited partnership with its corporate headquarters located in San

24  Diego, California.  Plaintiffs are informed and believe that Defendant, McCarthy

25  Holthus, LP, is a plan sponsor and plan administrator for the McCarthy & Holthus,

26  LLP Welfare Benefits Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1    382.   Plaintiffs are informed and believe that Defendant, McCarthy &
2 Holthus, LLP Welfare Benefits Plan, is an ERISA plan and a proper defendant
3 pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    383.   Plaintiffs are informed and believe that Defendant, MCM Corporation,
5 is a North Carolina corporation with its corporate headquarters located in Raleigh,
6 North Carolina.  Plaintiffs are informed and believe that Defendant, MCM
7 Corporation, is a plan sponsor and plan administrator for the Health Care Plan of the
8 Employees of MCM Corp.

9    384.   Plaintiffs are informed and believe that Defendant, Health Care Plan of
10 the Employees of MCM Corp, is an ERISA plan and a proper defendant pursuant to
11 ERISA § 502(d), 29 U.S.C. § 1132(d).

12    385.   Plaintiffs are informed and believe that Defendant, McMaster-Carr
13 Supply Company, is an Illinois corporation with its corporate headquarters located in
14 Elmhurst, Illinois.  Plaintiffs are informed and believe that Defendant, McMaster-
15 Carr Supply Company, is a plan sponsor and plan administrator for the McMaster-
16 Carr Supply Company Group Insurance Program.

17    386.   Plaintiffs are informed and believe that Defendant, McMaster-Carr
18 Supply Company Group Insurance Program, is an ERISA plan and a proper
19 defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20    387.   Plaintiffs are informed and believe that Defendant, Medco Health
21 Solutions, Inc., is a Delaware corporation with its corporate headquarters located in
22 Franklin Lakes, New Jersey.  Plaintiffs are informed and believe that Defendant,
23 Medco Health Solutions, Inc., is a plan sponsor and plan administrator for the Medco
24 Health Solutions, Inc. Welfare Benefit Plan.

25    388.   Plaintiffs are informed and believe that Defendant, Medco Health
26 Solutions, Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant
27 pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

389.   Plaintiffs are informed and believe that Defendant, CareFusion Corporation, is a Delaware corporation, f/k/a Medegen, Inc., with its corporate headquarters located in San Diego, California.  Plaintiffs are informed and believe that Defendant, CareFusion Corporation, is the corporate successor of the a plan sponsor and plan administrator for what was formerly the Medegen Welfare Benefit Plan.  On information and belief, Plaintiffs believe that CareFusion is now the financially responsible party for all claims for health benefits that arose under the former Medegen Welfare Benefit Plan.  Specifically, CareFusion announced on May 17, 2010 that it had acquired Medegen.[5]

390.   Plaintiffs are informed and believe that Defendant, Metropolitan Life Insurance Company, is a New York corporation with its corporate headquarters located in St. Louis, Missouri.  Plaintiffs are informed and believe that Defendant, Metropolitan Life Insurance Company, is a plan sponsor and plan administrator for the Metlife Options and Choices Plan.

391.   Plaintiffs are informed and believe that Defendant, Metlife Options and Choices Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

392.   Plaintiffs are informed and believe that Defendant, Midamerican Energy Company, is an Iowa corporation with its corporate headquarters located in Des Moines, Iowa.  Plaintiffs are informed and believe that Defendant, Midamerican Energy Company, is a plan sponsor and plan administrator for the Midamerican Energy Company Welfare Benefit Plan.

393.   Plaintiffs are informed and believe that Defendant, Midamerican Energy Company Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

_____

[5] Care Fusion May 17, 2010 press release, CareFusion Completes Medegen Acquisition, http://media.carefusion.com/index.php?s=32344&item=106573 (last visited May 31, 2015.)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

394. Plaintiffs are informed and believe that Defendant, Millard Refrigerated Services, Inc., is a Georgia corporation with its corporate headquarters located in Omaha, Nebraska. Plaintiffs are informed and believe that Defendant, Millard Refrigerated Services, Inc., is a plan sponsor and plan administrator for the Millard Refrigerated Services, Inc. Group Major Medical.

395. Plaintiffs are informed and believe that Defendant, Millard Refrigerated Services, Inc. Group Major Medical, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

396. Plaintiffs are informed and believe that Defendant, Mobile Mini, Inc., is a Delaware corporation with its corporate headquarters located in Tempe, Arizona. Plaintiffs are informed and believe that Defendant, Mobile Mini, Inc., is a plan sponsor and plan administrator for the Mobile Mini, Inc. Benefit Plan.

397. Plaintiffs are informed and believe that Defendant, Mobile Mini, Inc. Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

398. Plaintiffs are informed and believe that Defendant, Monrovia Nursery Company, is a California corporation with its corporate headquarters located in Azusa, California. Plaintiffs are informed and believe that Defendant, Monrovia Nursery Company, is a plan sponsor and plan administrator for the Monrovia Nursery Company Employee Benefit Plan.

399. Plaintiffs are informed and believe that Defendant, Monrovia Nursery Company Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

400. Plaintiffs are informed and believe that Defendant, Multiplan, Inc., is a New York corporation with its corporate headquarters located in New York, New York. Plaintiffs are informed and believe that Defendant, Multiplan, Inc., is a plan sponsor and plan administrator for the Health Insurance Plan of Multiplan, Inc.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

401.   Plaintiffs are informed and believe that Defendant, Health Insurance Plan of Multiplan, Inc., is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

402.   Plaintiffs are informed and believe that Defendant, National Mentor Holdings, LLC, is a Delaware limited liability company with its corporate headquarters located in Boston, Massachusetts.  Plaintiffs are informed and believe that Defendant, National Mentor Holdings, LLC is a plan sponsor and plan administrator for the National Mentor Holdings, LLC Flexible Benefit Plan.

403.   Plaintiffs are informed and believe that Defendant, National Mentor Holdings, LLC Flexible Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

404.   Plaintiffs are informed and believe that Defendant, National Railroad Passenger Corporation, is a District of Columbia corporation with its corporate headquarters located in Washington, D.C.  Plaintiffs are informed and believe that Defendant, National Railroad Passenger Corporation, is a plan sponsor and plan administrator for Amplan, The Amtrak Union Benefits Plan and the National Railroad Passenger Corporation Choiceplus Cafeteria Plan.

405.   Plaintiffs are informed and believe that Defendants, Amplan, The Amtrak Union Benefits Plan and the National Railroad Passenger Corporation Choiceplus Cafeteria Plan, are ERISA plans and proper defendants pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

406.   Plaintiffs are informed and believe that Defendant, Nationstar Mortgage, LLC, is a Delaware limited liability company with its corporate headquarters located in Lewisville, Texas.  Plaintiffs are informed and believe that Defendant, Nationstar Mortgage, LLC, is a plan sponsor and plan administrator for the Nationstar Mortgage Group Health and Welfare Benefit Plan.

1    407.   Plaintiffs are informed and believe that Defendant, Nationstar Mortgage

2    Group Health and Welfare Benefit Plan, is an ERISA plan and a proper defendant

3    pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4    408.   Plaintiffs are informed and believe that Defendant, NCH Corporation, is

5    a Delaware corporation with its corporate headquarters located in Irving, Texas.

6    Plaintiffs are informed and believe that Defendant, NCH Corporation, is a plan

7    sponsor and plan administrator for the NCH Corporation Employee Life and Health

8    Benefit Plan.

9    409.   Plaintiffs are informed and believe that Defendant, NCH Corporation

10   Employee Life and Health Benefit Plan, is an ERISA plan and a proper defendant

11   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

12   410.   Plaintiffs are informed and believe that Defendant, NEC Corporation of

13   America, is a Nevada corporation with its corporate headquarters located in Irving,

14   Texas.  Plaintiffs are informed and believe that Defendant, NEC Corporation of

15   America, is a plan sponsor and plan administrator for the Group Insurance Plan for

16   Employees of NEC and Affiliates.

17   411.   Plaintiffs are informed and believe that Defendant, Group Insurance

18   Plan for Employees of NEC and Affiliates, is an ERISA plan and a proper defendant

19   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20   412.   Plaintiffs are informed and believe that Defendant, Neff Rental, LLC, is

21   a Delaware limited liability company with its corporate headquarters located in

22   Miami, Florida.  Plaintiffs are informed and believe that Defendant, Neff Rental,

23   LLC, is a plan sponsor and plan administrator for the Neff Rental LLC Health &

24   Welfare Plan.

25   413.   Plaintiffs are informed and believe that Defendant, Neff Rental LLC

26   Health & Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA

27   § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

414.   Plaintiffs are informed and believe that Defendant, Nestle Waters North America, Inc., is a Delaware corporation with its corporate headquarters located in Stamford, Connecticut.  Plaintiffs are informed and believe that Defendant, Nestle Waters North America, Inc., is a plan sponsor and plan administrator for the Nestle Waters North America Holdings Group Benefits Plan.

415.   Plaintiffs are informed and believe that Defendant, Nestle Waters North America Holdings Group Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

416.   Plaintiffs are informed and believe that Defendant, New Breed Corporate Services, Inc., is a New Jersey corporation with its corporate headquarters located in High Point, North Carolina.  Plaintiffs are informed and believe that Defendant, New Breed Corporate Services, Inc., is a plan sponsor and plan administrator for the New Breed Corporate Services Inc. Welfare Benefit Plan.

417.   Plaintiffs are informed and believe that Defendant, New Breed Corporate Services Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

418.   Plaintiffs are informed and believe that Defendant, Nike, Inc., is an Oregon corporation with its corporate headquarters located in Beaverton, Oregon. Plaintiffs are informed and believe that Defendant, Nike, Inc., is a plan sponsor and plan administrator for the Nike, Inc. Group Insurance Plan.

419.   Plaintiffs are informed and believe that Defendant, Nike, Inc. Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

420.   Plaintiffs are informed and believe that Defendant, Northrop Grumman Corporation, is a Delaware corporation with its corporate headquarters located in Falls Church, Virginia.  Plaintiffs are informed and believe that Defendant, Northrop Grumman Corporation, is a plan sponsor and plan administrator for the Northrop Grumman Corporation Group Benefits Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

421.   Plaintiffs are informed and believe that Defendant, Northrop Grumman Corporation Group Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

422.   Plaintiffs are informed and believe that Defendant, Novartis Corporation, is a New York corporation with its corporate headquarters located in East Hanover, New Jersey.  Plaintiffs are informed and believe that Defendant, Novartis Corporation, is a plan sponsor and plan administrator for the Novartis Corporation Welfare Benefit Plan.

423.   Plaintiffs are informed and believe that Defendant, Novartis Corporation Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

424.   Plaintiffs are informed and believe that Defendant, NPL Construction Co., is a Nevada corporation with its corporate headquarters located in Phoenix, Arizona.  Plaintiffs are informed and believe that Defendant, NPL Construction Co., is a plan sponsor and plan administrator for the NPL Construction Co. Employee Health Benefit Plan.

425.   Plaintiffs are informed and believe that Defendant, NPL Construction Co. Employee Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

426.   Plaintiffs are informed and believe that Defendant, Nursefinders, LLC, is a Texas limited liability company with its corporate headquarters located in Arlington, Texas.  Plaintiffs are informed and believe that Defendant, Nursefinders, LLC, is a plan sponsor and plan administrator for the AMN Healthcare Inc. Health Insurance Plan.

427.   Plaintiffs are informed and believe that Defendant, AMN Healthcare Inc. Health Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

428.   Plaintiffs are informed and believe that Defendant, OCLC Online Computer Library Center, Inc., is an Ohio corporation with its corporate headquarters located in Dublin, Ohio.  Plaintiffs are informed and believe that Defendant, OCLC Online Computer Library Center, Inc., is a plan sponsor and plan administrator for the OCLC Employee Group Medical Plan.

429.   Plaintiffs are informed and believe that Defendant, OCLC Employee Group Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

430.   Plaintiffs are informed and believe that Defendant, Old Dominion Freight Line, Inc., is a Virginia corporation with its corporate headquarters located in Thomasville, North Carolina.  Plaintiffs are informed and believe that Defendant, Old Dominion Freight Line, Inc., is a plan sponsor and plan administrator for the Old Dominion Employee Benefit Plan.

431.   Plaintiffs are informed and believe that Defendant, Old Dominion Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

432.   Plaintiffs are informed and believe that Defendant, Olin Corporation, is a Virginia corporation with its corporate headquarters located in Clayton, Missouri. Plaintiffs are informed and believe that Defendant, Olin Corporation, is a plan sponsor and plan administrator for the Olin Medical/Dental Plan.

433.   Plaintiffs are informed and believe that Defendant, Olin Medical/Dental Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

434.   Plaintiffs are informed and believe that Defendant, Orix USA Corporation, is a Delaware corporation with its corporate headquarters located in Dallas, Texas.  Plaintiffs are informed and believe that Defendant, Orix USA Corporation, is a plan sponsor and plan administrator for the Orix USA Corporation Welfare Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1    435.   Plaintiffs are informed and believe that Defendant, Orix USA
2    Corporation Welfare Plan, is an ERISA plan and a proper defendant pursuant to
3    ERISA § 502(d), 29 U.S.C. § 1132(d).

4    436.   Plaintiffs are informed and believe that Defendant, Osram Sylvania,
5    Inc., is a Delaware corporation with its corporate headquarters located in Danvers,
6    Massachusetts.  Plaintiffs are informed and believe that Defendant, Osram Sylvania,
7    Inc., is a plan sponsor and plan administrator for the Osram Sylvania, Inc. Health and
8    Welfare Benefits Plan.

9    437.   Plaintiffs are informed and believe that Defendant, Osram Sylvania, Inc.
10   Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant
11   to ERISA § 502(d), 29 U.S.C. § 1132(d).

12   438.   Plaintiffs are informed and believe that Defendant, Windstream
13   Corporation, is a Delaware corporation with its corporate headquarters located in
14   Little Rock, Arkansas.  Plaintiffs are informed and believe that Defendant,
15   Windstream Corporation, is a plan sponsor and plan administrator for the
16   Windstream Comprehensive Plan of Group Insurance.

17   439.   Plaintiffs are informed and believe that Defendant, Windstream
18   Comprehensive Plan of Group Insurance, is an ERISA plan and a proper defendant
19   pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20   440.   Plaintiffs are informed and believe that Defendant, Panalpina, Inc., is a
21   New York corporation with its corporate headquarters located in Morristown, New
22   Jersey.  Plaintiffs are informed and believe that Defendant, Panalpina, Inc., is a plan
23   sponsor and plan administrator for the Panalpina, Inc. Welfare Benefits Plan.

24   441.   Plaintiffs are informed and believe that Defendant, Panalpina, Inc.
25   Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA
26   § 502(d), 29 U.S.C. § 1132(d).

27   442.   Plaintiffs are informed and believe that Defendant, Parker-Hannifin
28   Corporation, is an Ohio corporation with its corporate headquarters located in

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   Cleveland, Ohio.  Plaintiffs are informed and believe that Defendant, Parker-Hannifin

2   Corporation, is a plan sponsor and plan administrator for the Group Insurance Plan

3   Hourly and Salaried Employees of Parker Hannifin Corp.

4       443.   Plaintiffs are informed and believe that Defendant, Group Insurance

5   Plan Hourly and Salaried Employees of Parker Hannifin Corp., is an ERISA plan and

6   a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7       444.   Plaintiffs are informed and believe that Defendant, Parsons Corporation,

8   is a Delaware corporation with its corporate headquarters located in Houston, Texas.

9   Plaintiffs are informed and believe that Defendant, Parsons Corporation, is a plan

10  sponsor and plan administrator for the Group Benefits Plan For Employees of

11  Parsons Corporation & Designated Subsidiaries.

12      445.   Plaintiffs are informed and believe that Defendant, Group Benefits Plan

13  For Employees of Parsons Corporation & Designated Subsidiaries, is an ERISA plan

14  and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15      446.   Plaintiffs are informed and believe that Defendant, Payless Shoesource,

16  Inc., is a Missouri corporation with its corporate headquarters located in Topeka,

17  Kansas.  Plaintiffs are informed and believe that Defendant, Payless Shoesource, Inc.,

18  is a plan sponsor and plan administrator for the Payless Shoesource, Inc. Medical

19  Plan.

20      447.   Plaintiffs are informed and believe that Defendant, Payless Shoesource,

21  Inc. Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA

22  § 502(d), 29 U.S.C. § 1132(d).

23      448.   Plaintiffs are informed and believe that Defendant, Pechiney Plastic

24  Packaging, Inc., is a Delaware corporation with its corporate headquarters located in

25  South Jordan, Utah.  Plaintiffs are informed and believe that Defendant, Pechiney

26  Plastic Packaging, Inc., is a plan sponsor and plan administrator for the Alcan

27  Salaried Welfare Benefits Program.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

449.   Plaintiffs are informed and believe that Defendant, Alcan Salaried Welfare Benefits Program, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

450.   Plaintiffs are informed and believe that Defendant, Pentair, Inc., is a Minnesota corporation with its corporate headquarters located in Golden Valley, Minnesota.  Plaintiffs are informed and believe that Defendant, Pentair, Inc., is a plan sponsor and plan administrator for the Pentair, Inc. Active Employee Welfare Plan.

451.   Plaintiffs are informed and believe that Defendant, Pentair, Inc. Active Employee Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

452.   Plaintiffs are informed and believe that Defendant, Performance Food Group, Inc., is a Colorado corporation with its corporate headquarters located in Richmond, Virginia.  Plaintiffs are informed and believe that Defendant, Performance Food Group, Inc., is a plan sponsor and plan administrator for the Performance Food Group Inc. Employee Benefits Plan.

453.   Plaintiffs are informed and believe that Defendant, Performance Food Group Inc. Employee Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

454.   Plaintiffs are informed and believe that Defendant, Perkins Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

455.   Plaintiffs are informed and believe that Defendant, Dell, Inc., is a Delaware corporation with its corporate headquarters located in Round Rock, Texas. Plaintiffs are informed and believe that Defendant, Dell, Inc., is a plan sponsor and plan administrator for the Dell, Inc. Comprehensive Health & Welfare Plan.

456.   Plaintiffs are informed and believe that Defendant, Dell, Inc. Comprehensive Health & Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

457.   Plaintiffs are informed and believe that Defendant, Petco Animal Supplies, Inc., is a Delaware corporation with its corporate headquarters located in San Diego, California.  Plaintiffs are informed and believe that Defendant, Petco Animal Supplies, Inc., is a plan sponsor and plan administrator for the Petco Animal Supplies Inc. Group Benefit Plan and Trust.

458.   Plaintiffs are informed and believe that Defendant, Petco Animal Supplies Inc. Group Benefit Plan and Trust, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

459.   Plaintiffs are informed and believe that Defendant, Peter Kiewit Sons', Inc., is a Delaware corporation with its corporate headquarters located in Omaha, Nebraska.  Plaintiffs are informed and believe that Defendant, Peter Kiewit Sons', Inc., is a plan sponsor and plan administrator for the Peter Kiewit Sons', Inc. Health and Welfare Plan.

460.   Plaintiffs are informed and believe that Defendant, Peter Kiewit Sons', Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

461.   Plaintiffs are informed and believe that Defendant, Petsmart, Inc., is a Delaware corporation with its corporate headquarters located in Phoenix, Arizona. Plaintiffs are informed and believe that Defendant, Petsmart, Inc., is a plan sponsor and plan administrator for the Petsmart Smartchoices Benefit Plan.

462.   Plaintiffs are informed and believe that Defendant, Petsmart Smartchoices Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

463.   Plaintiffs are informed and believe that Defendant, Pfizer, Inc., is a Delaware corporation with its corporate headquarters located in Memphis, Tennessee.  Plaintiffs are informed and believe that Defendant, Pfizer, Inc., is a plan sponsor and plan administrator for the Pfizer Medical Plan.

464.   Plaintiffs are informed and believe that Defendant, Pfizer Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

465.   Plaintiffs are informed and believe that Defendant, Pharmaceutical Product Development, LLC, is a Florida limited liability company with its corporate headquarters located in North Miami Beach, Florida.  Plaintiffs are informed and believe that Defendant, Pharmaceutical Product Development, LLC, is a plan sponsor and plan administrator for the Pharmaceutical Product Development, LLC Welfare Benefit Plan.

466.   Plaintiffs are informed and believe that, Defendant, Pharmaceutical Product Development, LLC Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

467.   Plaintiffs are informed and believe that Defendant, Plains All American GP, LLC, is a Delaware limited liability company with its corporate headquarters located in Houston, Texas.  Plaintiffs are informed and believe that Defendant, Plains All American GP, LLC, is a plan sponsor and plan administrator for the Plains All American GP LLC Employee Health Benefit Plan.

468.   Plaintiffs are informed and believe that Defendant, Plains All American GP LLC Employee Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

469.   Plaintiffs are informed and believe that Defendant, Playboy Enterprises International, Inc., is a Delaware corporation with its corporate headquarters located in Beverly Hills, California.  Plaintiffs are informed and believe that Defendant, Playboy Enterprises International, Inc., is a plan sponsor and plan administrator for the Playboy Health Benefit Plan.

470.   Plaintiffs are informed and believe that Defendant, Playboy Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    471.   Plaintiffs are informed and believe that Defendant, PPS Holdings, Inc.,

2    is a Tennessee corporation with its corporate headquarters located in Memphis,

3    Tennessee.  Plaintiffs are informed and believe that Defendant, PPS Holdings, Inc., is

4    a plan sponsor and plan administrator for the PPS Holdings, Inc. Employee Benefit

5    Plan.

6    472.   Plaintiffs are informed and believe that Defendant, PPS Holdings, Inc.

7    Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA

8    § 502(d), 29 U.S.C. § 1132(d).

9    473.   Plaintiffs are informed and believe that Defendant, Prime

10   Administration, LLC, is a Delaware limited liability company with its corporate

11   headquarters located in San Francisco, California.  Plaintiffs are informed and believe

12   that Defendant, Prime Administration, LLC, is a plan sponsor and plan administrator

13   for the Prime Administration LLC Consolidated Health & Welfare Plan.

14   474.   Plaintiffs are informed and believe that Defendant, Prime

15   Administration LLC Consolidated Health & Welfare Plan, is an ERISA plan and a

16   proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

17   475.   Plaintiffs are informed and believe that Defendant, Probuild Holdings,

18   Inc., is a Delaware corporation with its corporate headquarters located in Denver,

19   Colorado.  Plaintiffs are informed and believe that Defendant, Probuild Holdings,

20   Inc., is a plan sponsor and plan administrator for the Probuild Holdings, Inc. Welfare

21   Benefit Plan.

22   476.   Plaintiffs are informed and believe that Defendant, Probuild Holdings,

23   Inc. Welfare Benefit plan, is an ERISA plan and a proper defendant pursuant to

24   ERISA § 502(d), 29 U.S.C. § 1132(d).

25   477.   Plaintiffs are informed and believe that Defendant, The Procter &

26   Gamble Company, is an Ohio corporation with its corporate headquarters located in

27   Cincinnati, Ohio.  Plaintiffs are informed and believe that Defendant, The Procter &

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

111

1  Gamble Company, is a plan sponsor and plan administrator for The Procter &

2  Gamble Health Care Plan.

3    478. Plaintiffs are informed and believe that Defendant, The Procter &

4  Gamble Health Care Plan, is an ERISA plan and a proper defendant pursuant to

5  ERISA § 502(d), 29 U.S.C. § 1132(d).

6    479. Plaintiffs are informed and believe that Defendant, Progressive Logistics

7  Services, LLC, is a Georgia limited liability company with its corporate headquarters

8  located in Norcross, Georgia.  Plaintiffs are informed and believe that Defendant,

9  Progressive Logistics Services, LLC, is a plan sponsor and plan administrator for the

10 Progressive Logistics Services, LLC Medical & Life Insurance Benefits Plan.

11   480. Plaintiffs are informed and believe that Defendant, Progressive Logistics

12 Services, LLC Medical & Life Insurance Benefits Plan, is an ERISA plan and a

13 proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

14   481. Plaintiffs are informed and believe that Defendant, PSC Environmental

15 Services, LLC, is a Delaware limited liability company with its corporate

16 headquarters located in Houston, Texas.  Plaintiffs are informed and believe that

17 Defendant, PSC Environmental Services, LLC, is a plan sponsor and plan

18 administrator for the PSC, LLC Group Welfare Benefits Plan.

19   482. Plaintiffs are informed and believe that Defendant, PSC, LLC Group

20 Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

21 § 502(d), 29 U.S.C. § 1132(d).

22   483. Plaintiffs are informed and believe that Defendant, Wood Group PSN,

23 Inc., is a Nevada corporation with its corporate headquarters located in Houston,

24 Texas.  Plaintiffs are informed and believe that Defendant, Wood Group PSN, Inc. is

25 the corporate successor of the plan sponsor and plan administrator for what was

26 formerly the PSN USA Holdings, Inc. Welfare Benefits Plan.  Further, counsel for

27 Wood Group PSN, Inc. has represented that it is now the financially responsible party

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   for all claims for health benefits that under the former PSN USA Holdings, Inc.

2   Welfare Benefits Plan.

3       484.   Plaintiffs are informed and believe that Defendant, Quantum

4   Corporation, is a Delaware corporation with its corporate headquarters located in San

5   Jose, California.  Plaintiffs are informed and believe that Defendant, Quantum

6   Corporation, is a plan sponsor and plan administrator for the Quantum Corporation

7   Welfare Benefit Plan.

8       485.   Plaintiffs are informed and believe that Defendant, Quantum

9   Corporation Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

10   to ERISA § 502(d), 29 U.S.C. § 1132(d).

11       486.   Plaintiffs are informed and believe that Defendant, Rainbow USA, Inc.,

12   is a New York corporation with its corporate headquarters located in Brooklyn, New

13   York.  Plaintiffs are informed and believe that Defendant, Rainbow USA, Inc., is a

14   plan sponsor and plan administrator for the Rainbow USA, Inc. Medical Plan.

15       487.   Plaintiffs are informed and believe that Defendant, Rainbow USA, Inc.

16   Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

17   29 U.S.C. § 1132(d).

18       488.   Plaintiffs are informed and believe that Defendant, Raytheon Company,

19   is a Delaware corporation with its corporate headquarters located in Waltham,

20   Massachusetts.  Plaintiffs are informed and believe that Defendant, Raytheon

21   Company, is a plan sponsor and plan administrator for the Raytheon Health Benefits

22   Plan.

23       489.   Plaintiffs are informed and believe that Defendant, Raytheon Health

24   Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

25   29 U.S.C. § 1132(d).

26       490.   Plaintiffs are informed and believe that Defendant, Red Wing Shoe

27   Company, Inc., is a Minnesota corporation with its corporate headquarters located in

28   Minneapolis, Minnesota.  Plaintiffs are informed and believe that Defendant, Red

1  Wing Shoe Company, Inc., is a plan sponsor and plan administrator for the Red Wing

2  Shoe Company Health Plan.

3    491. Plaintiffs are informed and believe that Defendant, Red Wing Shoe

4  Company Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA

5  § 502(d), 29 U.S.C. § 1132(d).

6    492. Plaintiffs are informed and believe that Defendant, Rexam, Inc., is a

7  Delaware corporation with its corporate headquarters located in Charlotte, North

8  Carolina.  Plaintiffs are informed and believe that Defendant, Rexam, Inc., is a plan

9  sponsor and plan administrator for the Group Insurance Plan for Employees of

10  Rexam, Inc.

11    493. Plaintiffs are informed and believe that Defendant, Group Insurance

12  Plan for Employees of Rexam, Inc., is an ERISA plan and a proper defendant

13  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

14    494. Plaintiffs are informed and believe that Defendant, Rexnord Industries,

15  LLC, is a Delaware limited liability company with its corporate headquarters located

16  in Milwaukee, Wisconsin.  Plaintiffs are informed and believe that Defendant,

17  Rexnord Industries, LLC, is a plan sponsor and plan administrator for the Rexnord

18  Welfare Plan.

19    495. Plaintiffs are informed and believe that Defendant, Rexnord Welfare

20  Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29

21  U.S.C. § 1132(d).

22    496. Plaintiffs are informed and believe that Defendant, Reyes Holdings,

23  LLC, is a Delaware limited liability company with its corporate headquarters located

24  in Rosemont, Illinois.  Plaintiffs are informed and believe that Defendant, Reyes

25  Holdings, LLC, is a plan sponsor and plan administrator for The Reyes Holdings

26  Flexible Benefits Plan.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

114

1    497.   Plaintiffs are informed and believe that Defendant, The Reyes Holdings

2  Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

3  § 502(d), 29 U.S.C. § 1132(d).

4    498.   Plaintiffs are informed and believe that Defendant, Rite Aid

5  Corporation, is a Delaware corporation with its corporate headquarters located in

6  Camp Hill, Pennsylvania.  Plaintiffs are informed and believe that Defendant, Rite

7  Aid Corporation, is a plan sponsor and plan administrator for the Rite Aid

8  Corporation Health Insurance Plan.

9    499.   Plaintiffs are informed and believe that Defendant, Rite Aid Corporation

10  Health Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA

11  § 502(d), 29 U.S.C. § 1132(d).

12    500.   Plaintiffs are informed and believe that Defendant, Rural/Metro

13  Corporation, is an Arizona corporation with its corporate headquarters located in

14  Scottsdale, Arizona.  Plaintiffs are informed and believe that Defendant, Rural/Metro

15  Corporation, is a plan sponsor and plan administrator for the Rural Metro

16  Corporation Employee Benefit Plan.

17    501.   Plaintiffs are informed and believe that Defendant, Rural Metro

18  Corporation Employee Benefit Plan, is an ERISA plan and a proper defendant

19  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

20    502.   Plaintiffs are informed and believe that Defendant, Rush Truck Centers

21  of California, Inc., is a Delaware corporation with its corporate headquarters located

22  in Pico Rivera, California.  Plaintiffs are informed and believe that Defendant, Rush

23  Truck Centers of California, Inc., is a plan sponsor and plan administrator for the

24  Rush Enterprises Medical Plan.

25    503.   Plaintiffs are informed and believe that Defendant, Rush Enterprises

26  Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

27  29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

504.   Plaintiffs are informed and believe that Defendant, Ryder Services Corporation, is a Florida corporation with its corporate headquarters located in Miami, Florida.  Plaintiffs are informed and believe that Defendant, Ryder Services Corporation, is a plan sponsor and plan administrator for the Ryder System, Inc. Flexible Benefits Plan.

505.   Plaintiffs are informed and believe that Defendant, Ryder System, Inc. Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

506.   Plaintiffs are informed and believe that Defendant, Safran USA, Inc., is a Delaware corporation with its corporate headquarters located in Grand Prairie, Texas.  Plaintiffs are informed and believe that Defendant, Safran USA, Inc., is a plan sponsor and plan administrator for the Safran USA, Inc. Cafeteria Plan.

507.   Plaintiffs are informed and believe that Defendant, Safran USA, Inc. Cafeteria Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

508.   Plaintiffs are informed and believe that Defendant, Saia Motor Freight Line, LLC, is a Louisiana limited liability company with its corporate headquarters located in Johns Creek, Georgia.  Plaintiffs are informed and believe that Defendant, Saia Motor Freight Line, LLC, is a plan sponsor and plan administrator for the Saia Motor Freight Line LLC Employee Preferred Provider Plan.

509.   Plaintiffs are informed and believe that Defendant, Saia Motor Freight Line LLC Employee Preferred Provider Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

510.   Plaintiffs are informed and believe that Defendant, Sally Beauty Holdings, Inc., is a Delaware corporation with its corporate headquarters located in Denton, Texas.  Plaintiffs are informed and believe that Defendant, Sally Beauty Holdings, Inc., is a plan sponsor and plan administrator for the Sally Beauty Holdings Inc. Health and Welfare Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

511.   Plaintiffs are informed and believe that Defendant, Sally Beauty Holdings Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

512.   Plaintiffs are informed and believe that Defendant, Santander Consumer USA, Inc., is an Illinois corporation with its corporate headquarters located in North Richland Hills, Texas.  Plaintiffs are informed and believe that Defendant Santander Consumer USA, Inc., is a plan sponsor and plan administrator for the Santander Consumer USA Inc. Welfare Benefit Plan.

513.   Plaintiffs are informed and believe that Defendant, Santander Consumer USA Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

514.    Plaintiffs are informed and believe that Defendant, Schneider National, Inc., is a Wisconsin corporation with its corporate headquarters located in Green Bay, Wisconsin.  Plaintiffs are informed and believe that Defendant, Schneider National, Inc., is a plan sponsor and plan administrator for the Schneider National, Inc. Flexible Benefits Plan.

515.   Plaintiffs are informed and believe that Defendant, Schneider National, Inc. Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

516.   Plaintiffs are informed and believe that Defendant, Sedgwick Claims Management Services, Inc., is an Illinois corporation with its corporate headquarters located in Memphis, Tennessee.  Plaintiffs are informed and believe that Defendant, Sedgwick Claims Management Services, Inc., is a plan sponsor and plan administrator for the Sedgwick Claims Management Services, Inc. Welfare Benefit Plan.

517.   Plaintiffs are informed and believe that Defendant, Sedgwick Claims Management Services, Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

518.   Plaintiffs are informed and believe that Defendant, Select Specialized Staffing, Inc., is a California corporation with its corporate headquarters located in Santa Barbara, California.  Plaintiffs are informed and believe that Defendant, Select Specialized Staffing, Inc., is a plan sponsor and plan administrator for the Select Staffing – Flexible Benefits Plan.

519.   Plaintiffs are informed and believe that Defendants Select Staffing – Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

520.   Plaintiffs are informed and believe that Defendant, Shell Oil Company, is a Delaware corporation with its corporate headquarters located in Houston, Texas. Plaintiffs are informed and believe that Defendant, Shell Oil Company, is a plan sponsor and plan administrator for the Shell Oil Company Comprehensive Welfare Benefits Plan.

521.   Plaintiffs are informed and believe that Defendant, Shell Oil Company Comprehensive Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

522.   Plaintiffs are informed and believe that Defendant, Siemens Corporation, is a Delaware corporation with its corporate headquarters located in Orlando, Florida.  Plaintiffs are informed and believe that Defendant, Siemens Corporation, is a plan sponsor and plan administrator for the Siemens Corporation Group Life, Medical, Dental, Vision, Hearing and Long Term Disability Income Plan.

523.   Plaintiffs are informed and believe that Defendant, Siemens Corporation Group Life, Medical, Dental, Vision, Hearing and Long term Disability Income Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

524.   Plaintiffs are informed and believe that Defendant, Silverado Senior Living Holdings, Inc., is a Delaware corporation with its corporate headquarters

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  located in Irvine, California.  Plaintiffs are informed and believe that Defendant,

2  Silverado Senior Living Holdings, Inc., is a plan sponsor and plan administrator for

3  the Silverado Senior Living Holdings, Inc. Welfare Benefits Plan.

4  525.   Plaintiffs are informed and believe that Defendant, Silverado Senior

5  Living Holdings, Inc. Welfare Benefits Plan, is an ERISA plan and a proper

6  defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

7  526.   Plaintiffs are informed and believe that Defendant, Skywest Airlines,

8  Inc., is a Utah corporation with its corporate headquarters located in St. George,

9  Utah.  Plaintiffs are informed and believe that Defendant, Skywest Airlines, Inc., is a

10  plan sponsor and plan administrator for the Skywest, Inc. Cafeteria Plan.

11  527.   Plaintiffs are informed and believe that Defendant, Skywest, Inc.

12  Cafeteria Plan, is an ERISA plan and a proper defendant pursuant to ERISA

13  § 502(d), 29 U.S.C. § 1132(d).

14  528.   Plaintiffs are informed and believe that Defendant, Sleep Innovations,

15  Inc., is a New Jersey corporation with its corporate headquarters located in West

16  Long Branch, New Jersey.  Plaintiffs are informed and believe that Defendant, Sleep

17  Innovations, Inc., is a plan sponsor and plan administrator for the Sleep Innovations,

18  Inc. Welfare Benefit Plan.

19  529.   Plaintiffs are informed and believe that Defendant, Sleep Innovations,

20  Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to

21  ERISA § 502(d), 29 U.S.C. § 1132(d).

22  530.   Plaintiffs are informed and believe that Defendant, Smurfit Kappa

23  Orange County, LLC, is a Delaware limited liability company, f/k/a Orange County

24  Container Group, LLC, with its corporate headquarters located in City of Industry,

25  California.  Plaintiffs are informed and believe that Defendant, Smurfit Kappa

26  Orange County, LLC, is a plan sponsor and plan administrator for the Orange County

27  Containers Group Medical Plan.

28

1201369.1

1    531.   Plaintiffs are informed and believe that Defendant, Orange County

2  Containers Group Medical Plan, is an ERISA plan and a proper defendant pursuant to

3  ERISA § 502(d), 29 U.S.C. § 1132(d).

4

5    532.   Plaintiffs are informed and believe that Defendant, SourceHov, LLC, is

6  a Delaware limited liability company with its corporate headquarters located in

7  Dallas, Texas.  Plaintiffs are informed and believe that Defendant, SourceHov, LLC,

8  is a plan sponsor and plan administrator for the SourceHov, LLC Health and Welfare

9  Benefit Plan.

10    533.   Plaintiffs are informed and believe that Defendant, SourceHov, LLC

11  Health and Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

12  to ERISA § 502(d), 29 U.S.C. § 1132(d).

13    534.   Plaintiffs are informed and believe that Defendant, Southwest Airlines

14  Co., is a Texas corporation with its corporate headquarters located in Dallas, Texas.

15  Plaintiffs are informed and believe that Defendant, Southwest Airlines Co., is a plan

16  sponsor and plan administrator for the Southwest Airlines Co. Welfare Benefit Plan.

17    535.   Plaintiffs are informed and believe that Defendant, Southwest Airlines

18  Co. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to

19  ERISA § 502(d), 29 U.S.C. § 1132(d).

20    536.   Plaintiffs are informed and believe that Defendant, Southwest Gas

21  Corporation, is a California corporation with its corporate headquarters located in Las

22  Vegas, Nevada.  Plaintiffs are informed and believe that Defendant, Southwest Gas

23  Corporation, is a plan sponsor and plan administrator for the Southwest Gas

24  Corporation Life Insurance & Health Plan.

25    537.   Plaintiffs are informed and believe that Defendant, Southwest Gas

26  Corporation Life Insurance & Health Plan, is an ERISA plan and a proper defendant

27  pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

538.   Plaintiffs are informed and believe that Defendant, Stein Mart, Inc., is a Florida corporation with its corporate headquarters located in Jacksonville, Florida. Plaintiffs are informed and believe that Defendant, Stein Mart, Inc., is a plan sponsor and plan administrator for the Stein Mart, Inc. & Subsidiaries Health Benefit Plan.

5

6

7

539.   Plaintiffs are informed and believe that Defendant, Stein Mart, Inc. & Subsidiaries Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

8

9

10

11

12

540.   Plaintiffs are informed and believe that Defendant, Sunburst Hospitality Corporation, is a Delaware corporation with its corporate headquarters located in Wilmington, District of Columbia.  Plaintiffs are informed and believe that Defendant, Sunburst Hospitality Corporation, is a plan sponsor and plan administrator for the Sunburst Hospitality Corporation Employee Welfare Plan.

13

14

15

541.   Plaintiffs are informed and believe that Defendant, Sunburst Hospitality Corporation Employee Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

16

17

18

19

20

542.   Plaintiffs are informed and believe that Defendant, Systems Application & Technologies, Inc., is a Delaware corporation with its corporate headquarters located in Largo, Maryland.  Plaintiffs are informed and believe that Defendant, Systems Application & Technologies, Inc., is a plan sponsor and plan administrator for the Systems Application and Technologies, Inc. Health and Welfare Plan.

21

22

23

543.   Plaintiffs are informed and believe that Defendant, Systems Application and Technologies, Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

24

25

26

27

28

544.   Plaintiffs are informed and believe that Defendant, Target Corporation, is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota.  Plaintiffs are informed and believe that Defendant, Target Corporation, is a plan sponsor and plan administrator for the Target Corporation Employee Umbrella Trusteed Benefit Plan.

545.   Plaintiffs are informed and believe that Defendant, Target Corporation Employee Umbrella Trusteed Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

546.   Plaintiffs are informed and believe that Defendant, Tech Data Corporation, is a Florida corporation with its corporate headquarters located in Clearwater, Florida.  Plaintiffs are informed and believe that Defendant, Tech Data Corporation, is a plan sponsor and plan administrator for the Tech Data Corporation Employee Welfare Benefits Plan.

547.   Plaintiffs are informed and believe that Defendant, Tech Data Corporation Employee Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

548.   Plaintiffs are informed and believe that Defendant, Telaid Industries, Inc., is a Connecticut corporation with its corporate headquarters located in Niantic, Connecticut.  Plaintiffs are informed and believe that Defendant, Telaid Industries, Inc., is a plan sponsor and plan administrator for the Telaid Group Health Plan.

549.   Plaintiffs are informed and believe that Defendant, Telaid Group Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

550.   Plaintiffs are informed and believe that Defendant, TestAmerica Laboratories, Inc., is a Delaware corporation with offices in North Canton, Ohio. Plaintiffs are informed and believe that Defendant, TestAmerica Laboratories, Inc., is a plan sponsor and plan administrator for the TestAmerica Employee Benefits Plan.

551.   Plaintiffs are informed and believe that Defendant, TestAmerica Employee Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

552.   Plaintiffs are informed and believe that Defendant, Textron, Inc., is a Delaware corporation with its corporate headquarters located in Providence, Rhode

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1   Island.  Plaintiffs are informed and believe that Defendant, Textron, Inc., is a plan

2   sponsor and plan administrator for the Textron Bargained Insured Benefits Plan.

3       553.   Plaintiffs are informed and believe that Defendant, Textron Bargained

4   Insured Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA

5   § 502(d), 29 U.S.C. § 1132(d).

6       554.   Plaintiffs are informed and believe that Defendant, TGI Friday's, Inc., is

7   a New York corporation with its corporate headquarters located in Carrollton, Texas.

8   Plaintiffs are informed and believe that Defendant, TGI Friday's, Inc., is now the

9   financially responsible party for all claims for health benefits under the health benefit

10  plans previously sponsored by Carlson Restaurants Worldwide.

11      555.   Plaintiffs are informed and believe that Defendant, The Boeing

12  Company, is a Delaware corporation with its corporate headquarters located in

13  Chicago, Illinois.  Plaintiffs are informed and believe that Defendant, The Boeing

14  Company, is a plan sponsor and plan administrator for the Boeing North American

15  Employee Health Plan.

16      556.   Plaintiffs are informed and believe that Defendant, Boeing North

17  American Employee Health Plan, is an ERISA plan and a proper defendant pursuant

18  to ERISA § 502(d), 29 U.S.C. § 1132(d).

19      557.   Plaintiffs are informed and believe that Defendant, The Children's

20  Place, Inc., is a Delaware corporation with its corporate headquarters located in

21  Secaucus, New Jersey.  Plaintiffs are informed and believe that Defendant, The

22  Children's Place, Inc., is a plan sponsor and plan administrator for The Children's

23  Place Health Care, Short Term Disability & Life Insurance Plan.

24      558.   Plaintiffs are informed and believe that Defendant, The Children's Place

25  Health Care, Short Term Disability & Life Insurance Plan, is an ERISA plan and a

26  proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

27      559.   Plaintiffs are informed and believe that Defendant, The Clorox

28  Company, is a Delaware corporation with its corporate headquarters located in

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 Oakland, California.  Plaintiffs are informed and believe that Defendant, The Clorox
2 Company, is a plan sponsor and plan administrator for the The Clorox Company
3 Group Insurance Plan.

4      560.   Plaintiffs are informed and believe that Defendant, The Clorox
5 Company Group Insurance Plan, is an ERISA plan and a proper defendant pursuant
6 to ERISA § 502(d), 29 U.S.C. § 1132(d).

7      561.   Plaintiffs are informed and believe that Defendant, The Coca-Cola
8 Company, is a Delaware corporation with its corporate headquarters located in
9 Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant, The Coca-Cola
10 Company, is a plan sponsor and plan administrator for The Coca-Cola Company
11 Health and Welfare Benefits Plan.

12      562.   Plaintiffs are informed and believe that Defendant, The Coca-Cola
13 Company Health and Welfare Benefits Plan, is an ERISA plan and a proper
14 defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

15      563.   Plaintiffs are informed and believe that Defendant, The Guardian Life
16 Insurance Company of America, is a New York corporation with its corporate
17 headquarters located in New York, New York.  Plaintiffs are informed and believe
18 that Defendant, The Guardian Life Insurance Company of America, is a plan sponsor
19 and plan administrator for The Guardian High Deductible Health Plan Through
20 UnitedHealthcare Home Office.

21      564.   Plaintiffs are informed and believe that Defendant, The Guardian High
22 Deductible Health Plan Through UnitedHealthcare Home Office, is an ERISA plan
23 and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

24      565.   Plaintiffs are informed and believe that Defendant, The Hain Celestial
25 Group, Inc., is a Delaware corporation with its corporate headquarters located in
26 Lake Success, New York.  Plaintiffs are informed and believe that Defendant, The
27 Hain Celestial Group, Inc., is a plan sponsor and plan administrator for the The Hain
28 Celestial Group, Inc. Benefits Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

566.   Plaintiffs are informed and believe that Defendant, The Hain Celestial Group, Inc. Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

567.   Plaintiffs are informed and believe that Defendant, The Hertz Corporation, is a Delaware corporation with its corporate headquarters located in Park Ridge, New Jersey.  Plaintiffs are informed and believe that Defendant, The Hertz Corporation, is a plan sponsor and plan administrator for the Hertz Custom Benefit Program.

568.   Plaintiffs are informed and believe that Defendant, Hertz Custom Benefit Program, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

569.   Plaintiffs are informed and believe that Defendant, The Interpublic Group of Companies, Inc., is a Delaware corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, The Interpublic Group of Companies, Inc., is a plan sponsor and plan administrator for The Interpublic Group of Companies, Inc. Health and Welfare Plan.

570.   Plaintiffs are informed and believe that Defendant, The Interpublic Group of Companies, Inc. Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

571.   Plaintiffs are informed and believe that Defendant, The McGraw-Hill Financial, Inc., is a New York corporation, f/k/a The McGraw-Hill Companies, Inc., with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, The McGraw-Hill Financial, Inc., is a plan sponsor and plan administrator for The McGraw-Hill Companies, Inc. Group Health Plan.

572.   Plaintiffs are informed and believe that Defendant, The McGraw-Hill Companies, Inc. Group Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

573.   Plaintiffs are informed and believe that Defendant, The ServiceMaster Company, LLC, is a Delaware limited liability company with its corporate headquarters located in Memphis, Tennessee.  Plaintiffs are informed and believe that Defendant, The ServiceMaster Company, LLC, is a plan sponsor and plan administrator for the The Servicemaster Health & Welfare Benefits Plan.

574.   Plaintiffs are informed and believe that Defendant, The ServiceMaster Health & Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

575.   Plaintiffs are informed and believe that Defendant, The Travelers Companies, Inc., is a Minnesota corporation with its corporate headquarters located in St. Paul, Minnesota.  Plaintiffs are informed and believe that Defendant, The Travelers Companies, Inc., is a plan sponsor and plan administrator for The Travelers Trusteed Employee Benefit Plan and The Travelers Non-Trusteed Employee Benefit Plan.

576.   Plaintiffs are informed and believe that Defendant, The Travelers Trusteed Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

577.   Plaintiffs are informed and believe that Defendant, The Travelers Non-Trusteed Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

578.   Plaintiffs are informed and believe that Defendant, The Turner Corporation, is a New York corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, The Turner Corporation, is a plan sponsor and plan administrator for the The Turner Corporation Welfare Benefits Plan.

579.   Plaintiffs are informed and believe that Defendant, The Turner Corporation Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

580.   Plaintiffs are informed and believe that Defendant, Thermo Fisher Scientific, Inc., is a Delaware corporation with its corporate headquarters located in Waltham, Massachusetts.  Plaintiffs are informed and believe that Defendant, Thermo Fisher Scientific, Inc., is a plan sponsor and plan administrator for the Thermo Fisher Scientific Inc. Group Insurance Plan.

581.   Plaintiffs are informed and believe that Defendant, Thermo Fisher Scientific Inc. Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

582.   Plaintiffs are informed and believe that Defendant, Time Warner Cable, Inc., is a Delaware corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, Time Warner Cable, Inc., is a plan sponsor and plan administrator for the Time Warner Cable Benefits Plan.

583.   Plaintiffs are informed and believe that Defendant, Time Warner Cable Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

584.   Plaintiffs are informed and believe that Defendant, Tire Centers, LLC, is a California limited liability company with its corporate headquarters located in Duncan, South Carolina.  Plaintiffs are informed and believe that Defendant, Tire Centers, LLC, is a plan sponsor and plan administrator for the Tire Centers, LLC Employee Benefit Plan.

585.   Plaintiffs are informed and believe that Defendant, Tire Centers, LLC Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

586.   Plaintiffs are informed and believe that Defendant, T-Mobile USA, Inc., is a Delaware corporation with its corporate headquarters located in Bellevue, Washington.  Plaintiffs are informed and believe that Defendant, T-Mobile USA,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  Inc., is a plan sponsor and plan administrator for the T-Mobile USA, Inc. Employee

2  Benefit Plan.

3       587.   Plaintiffs are informed and believe that Defendant, T-Mobile USA, Inc.

4  Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA

5  § 502(d), 29 U.S.C. § 1132(d).

6       588.   Plaintiffs are informed and believe that Defendant, Toshiba America,

7  Inc., is a Delaware corporation with its corporate headquarters located in New York,

8  New York.  Plaintiffs are informed and believe that Defendant, Toshiba America,

9  Inc., is a plan sponsor and plan administrator for the Toshiba America Inc. Group

10  Welfare Benefit Plan.

11       589.   Plaintiffs are informed and believe that Defendant, Toshiba America

12  Inc. Group Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant

13  to ERISA § 502(d), 29 U.S.C. § 1132(d).

14       590.   Plaintiffs are informed and believe that Defendant, Towers Watson &

15  Co., is a Delaware corporation with its corporate headquarters located in Arlington,

16  Virginia.  Plaintiffs are informed and believe that Defendant, Towers Watson & Co.,

17  is a plan sponsor and plan administrator for the Towers Watson Medical Plan.

18       591.   Plaintiffs are informed and believe that Defendant, Towers Watson

19  Medical Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

20  29 U.S.C. § 1132(d).

21       592.   Plaintiffs are informed and believe that Defendant, Tribune Company, is

22  a Delaware corporation with its corporate headquarters located in Chicago, Illinois.

23  Plaintiffs are informed and believe that Defendant, Tribune Company, is a plan

24  sponsor and plan administrator for the Tribune Company Benefit Program.

25       593.   Plaintiffs are informed and believe that Defendant, Tribune Company

26  Benefit Program, is an ERISA plan and a proper defendant pursuant to ERISA §

27  502(d), 29 U.S.C. § 1132(d).

28

1201369.1

594.   Plaintiffs are informed and believe that Defendant, Trinet HR Corporation, is a California corporation, f/k/a Gevity HR, Inc., with its corporate headquarters located in San Leandro, California.  Plaintiffs are informed and believe that Defendant, Trinet HR Corporation, is a plan sponsor and plan administrator for the Trinet Employee Benefit Insurance Plan.

595.   Plaintiffs are informed and believe that Defendant, Trinet Employee Benefit Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

596.   Plaintiffs are informed and believe that Defendant, TTX Company, is a Delaware corporation with its corporate headquarters located in Chicago, Illinois. Plaintiffs are informed and believe that Defendant, TTX Company, is a plan sponsor and plan administrator for the TTX Company Group and Health Plan.

597.   Plaintiffs are informed and believe that Defendant, TTX Company Group and Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

598.   Plaintiffs are informed and believe that Defendant, Union Bank, N.A., is a California corporation with its corporate headquarters located in San Francisco, California.  Plaintiffs are informed and believe that Defendant, Union Bank, N.A., is a plan sponsor and plan administrator for the Union Bank Health Benefit Plan.

599.   Plaintiffs are informed and believe that Defendant, Union Bank Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

600.   Plaintiffs are informed and believe that Defendant, United Airlines, Inc., is a Delaware corporation with its corporate headquarters located in Chicago, Illinois. Plaintiffs are informed and believe that Defendant, United Airlines, Inc., is a plan sponsor and plan administrator for the United Airlines Consolidated Welfare Benefit Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

1    601.   Plaintiffs are informed and believe that Defendant, United Airlines

2    Consolidated Welfare Benefit Plan, is an ERISA plan and a proper defendant

3    pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4        602.   Plaintiffs are informed and believe that Defendant, UnitedHealth Group

5    Employee Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to

6    ERISA § 502(d), 29 U.S.C. § 1132(d).

7        603.   Plaintiffs are informed and believe that Defendant, Univision

8    Communications, Inc., is a Delaware corporation with its corporate headquarters

9    located in Teaneck, New Jersey.  Plaintiffs are informed and believe that Defendant,

10   Univision Communications, Inc., is a plan sponsor and plan administrator for the

11   Univision Welfare Benefits Plan.

12       604.   Plaintiffs are informed and believe that Defendant, Univision Welfare

13   Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

14   29 U.S.C. § 1132(d).

15       605.   Plaintiffs are informed and believe that Defendant, US Airways Group,

16   Inc., is a Delaware corporation with its corporate headquarters located in Tempe,

17   Arizona.  Plaintiffs are informed and believe that Defendant, US Airways Group,

18   Inc., is a plan sponsor and plan administrator for the US Airways, Inc. Health Benefit

19   Plan.

20       606.   Plaintiffs are informed and believe that Defendant, US Airways, Inc.

21   Health Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA §

22   502(d), 29 U.S.C. § 1132(d).

23       607.    Plaintiffs are informed and believe that Defendant, U.S. Nursing

24   Corporation, is a Colorado corporation with its corporate headquarters located in

25   Greenwood Village, Colorado.  Plaintiffs are informed and believe that Defendant,

26   U.S. Nursing Corporation, is a plan sponsor and plan administrator for the US

27   Nursing Corp. Employee Benefit Plan.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

608.   Plaintiffs are informed and believe that Defendant, US Nursing Corp. Employee Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

609.   Plaintiffs are informed and believe that Defendant, USA Truck, Inc., is a Delaware corporation with its corporate headquarters located in Van Buren, Arkansas.  Plaintiffs are informed and believe that Defendant, USA Truck, Inc., is a plan sponsor and plan administrator for the USA Truck Inc. Welfare Benefit Plan.

610.   Plaintiffs are informed and believe that Defendant, USA Truck Inc. Welfare Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

611.   Plaintiffs are informed and believe that Defendant, UTI Services, Inc., is a California corporation with its corporate headquarters located in Long Beach, California.  Plaintiffs are informed and believe that Defendant, UTI Services, Inc., is a plan sponsor and plan administrator for the UTI Services, Inc. Welfare Benefits Plan.

612.   Plaintiffs are informed and believe that Defendant, UTI Services, Inc. Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

613.   Plaintiffs are informed and believe that Defendant, Valeant Pharmaceuticals International, is a Delaware corporation with its corporate headquarters located in Bridgewater, New Jersey.  Plaintiffs are informed and believe that Defendant, Valeant Pharmaceuticals International, is a plan sponsor and plan administrator for the Valeant Pharmaceuticals International Group Welfare Plan.

614.   Plaintiffs are informed and believe that Defendant, Valeant Pharmaceuticals International Group Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

615.   Plaintiffs are informed and believe that Defendant, Velocity Express, LLC, is a Delaware limited liability company with its corporate headquarters located

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

131

THIRD AMENDED COMPLAINT

1   in Westport, Connecticut.  Plaintiffs are informed and believe that Defendant,

2   Velocity Express, LLC, is a plan sponsor and plan administrator for the Velocity

3   Express, LLC Flexible Benefits Plan.

4       616.   Plaintiffs are informed and believe that Defendant, Velocity Express,

5   LLC Flexible Benefits Plan, is an ERISA plan and a proper defendant pursuant to

6   ERISA § 502(d), 29 U.S.C. § 1132(d).

7       617.   Plaintiffs are informed and believe that Defendant, Veolia

8   Environmental Services North America, LLC, is a Delaware limited liability

9   company with its corporate headquarters located in Madison, Wisconsin.  Plaintiffs

10   are informed and believe that Defendant, Veolia Environmental Services North

11   America, LLC, is a plan sponsor and plan administrator for the Veolia Environmental

12   Services North America Corp. Employee Health Benefit Plan.

13       618.   Plaintiffs are informed and believe that Defendant, Veolia

14   Environmental Services North America Corp. Employee Health Benefit Plan, is an

15   ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. §

16   1132(d).

17       619.   Plaintiffs are informed and believe that Defendant, Verizon

18   Communications, Inc., is a Delaware corporation with its corporate headquarters

19   located in Basking Ridge, New Jersey.  Plaintiffs are informed and believe that

20   Defendant, Verizon Communications, Inc., is a plan sponsor and plan administrator

21   for the Verizon Plan 550.

22       620.   Plaintiffs are informed and believe that Defendant, Verizon Plan 550, is

23   an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. §

24   1132(d).

25       621.   Plaintiffs are informed and believe that Defendant, Viacom, Inc., is a

26   Delaware corporation with its corporate headquarters located in New York, New

27   York.  Plaintiffs are informed and believe that Defendant, Viacom, Inc., is the plan

28   sponsor and plan administrator for the Viacom Health and Welfare Plan.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

622.   Plaintiffs are informed and believe that Defendant, Viacom Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

623.   Plaintiffs are informed and believe that Defendant, Volt Information Sciences, Inc., is a New York corporation with its corporate headquarters located in New York, New York.  Plaintiffs are informed and believe that Defendant, Volt Information Sciences, Inc., is a plan sponsor and plan administrator for the Volt Information Sciences, Inc. and Affiliates Employee Welfare Benefits Plan.

624.   Plaintiffs are informed and believe that Defendant, Volt Information Sciences, Inc. and Affiliates Employee Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

625.   Plaintiffs are informed and believe that Defendant, Vulcan Materials Company, is a New Jersey corporation with its corporate headquarters located in Birmingham, Alabama.  Plaintiffs are informed and believe that Defendant, Vulcan Materials Company, is a plan sponsor and plan administrator for the Health & Welfare Benefit Plans of Vulcan Materials Company.

626.   Plaintiffs are informed and believe that Defendant, Health & Welfare Benefit Plans of Vulcan Materials Company, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

627.   Plaintiffs are informed and believe that Defendant, W.W. Grainger, Inc., is an Illinois corporation with its corporate headquarters located in Lake Forest, Illinois.  Plaintiffs are informed and believe that Defendant, W.W. Grainger, Inc., is a plan sponsor and plan administrator for the W.W. Grainger Inc. Group Benefit Plan I and W.W. Grainger Inc. Group Benefit Plan II.

628.   Plaintiffs are informed and believe that Defendant, W.W. Grainger Inc. Group Benefit Plan I, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

629.   Plaintiffs are informed and believe that Defendant, W.W. Grainger Inc. Group Benefit Plan II, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

630.   Plaintiffs are informed and believe that Defendant, Wal-Mart Stores, Inc., is a Delaware corporation with its corporate headquarters located in Bentonville, Arkansas.  Plaintiffs are informed and believe that Defendant, Wal-Mart Stores, Inc., is a plan sponsor and plan administrator for the Wal-Mart Stores, Inc. Associates Health and Welfare Plan.

631.   Plaintiffs are informed and believe that Defendant, Wal-Mart Stores, Inc. Associates Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

632.   Plaintiffs are informed and believe that Defendant, Wells Fargo & Company, is a Delaware corporation with its corporate headquarters located in San Francisco, California.  Plaintiffs are informed and believe that Defendant, Wells Fargo & Company, is a plan sponsor and plan administrator for the Wells Fargo & Co. Health Plan.

633.   Plaintiffs are informed and believe that Defendant, Wells Fargo & Co. Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

634.   Plaintiffs are informed and believe that Defendant, We're Ready To Assemble, Inc., a Texas corporation, formerly known as National Product Services, Inc., currently doing business as Impact Resource Group, with its corporate headquarters located in Irving, Texas.  Plaintiffs are informed and believe that Defendant, We're Ready to Assemble, Inc., is a plan sponsor and plan administrator for the We're Ready To Assemble dba Impact Resource Group Benefit Plan.

635.   Plaintiffs are informed and believe that Defendant, We're Ready To Assemble dba Impact Resource Group Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

1201369.1

636. Plaintiffs are informed and believe that Defendant, Whole Foods Market California, Inc., is a California corporation with its corporate headquarters located in Austin, Texas. Plaintiffs are informed and believe that Defendant, Whole Foods Market California, Inc., is a plan sponsor and plan administrator for the Whole Foods Market, Inc. Group Benefit Plan.

637. Plaintiffs are informed and believe that Defendant, Whole Foods Market, Inc. Group Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

638. Plaintiffs are informed and believe that Defendant, Williams-Sonoma Stores, Inc., is a California corporation with its corporate headquarters located in San Francisco, California. Plaintiffs are informed and believe that Defendant, Williams-Sonoma Stores, Inc., is a plan sponsor and plan administrator for the Williams-Sonoma, Inc. Health & Welfare Plan.

639. Plaintiffs are informed and believe that Defendant, Williams-Sonoma, Inc. Health & Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

640. Plaintiffs are informed and believe that Defendant, Wipro Limited, is an India corporation with its corporate headquarters located in East Brunswick, New Jersey. Plaintiffs are informed and believe that Defendant, Wipro Limited, is a plan sponsor and plan administrator for the Wipro Health and Welfare Plan.

641. Plaintiffs are informed and believe that Defendant, Wipro Health and Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

642. Plaintiffs are informed and believe that Defendant, Wolverine World Wide, Inc., is a Delaware corporation with its corporate headquarters located in Rockford, Michigan. Plaintiffs are informed and believe that Defendant, Wolverine World Wide, Inc., is a plan sponsor and plan administrator for the Group Insurance Plan Wolverine & Retail.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

643.   Plaintiffs are informed and believe that Defendant, Group Insurance Plan Wolverine & Retail, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

644.   Plaintiffs are informed and believe that Defendant, World Travel Holdings, Inc., is a Delaware corporation with its corporate headquarters located in Wilmington, Massachusetts.  Plaintiffs are informed and believe that Defendant, World Travel Holdings, Inc., is a plan sponsor and plan administrator for the World Travel Holdings, Inc. Flexible Benefit Plan.

645.   Plaintiffs are informed and believe that Defendant, World Travel Holdings, Inc. Flexible Benefit Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

646.   Plaintiffs are informed and believe that Defendant, WorleyParsons Corporation, is a Delaware corporation with its corporate headquarters located in Houston, Texas.  Plaintiffs are informed and believe that Defendant, WorleyParsons Corporation, is a plan sponsor and plan administrator for the Group Benefits Plan for Employees of WorleyParsons Corporation.

647.   Plaintiffs are informed and believe that Defendant, Group Benefits Plan for Employees of WorleyParsons Corporation, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

648.   Plaintiffs are informed and believe that Defendant, Yum! Brands, Inc., is a North Carolina corporation with its corporate headquarters located in Louisville, Kentucky.  Plaintiffs are informed and believe that Defendant, Yum! Brands, Inc., is a plan sponsor and plan administrator for the Yum! Brands, Inc. Restaurant Employees Group Insurance Plan.

649.   Plaintiffs are informed and believe that Defendant, Yum! Brands, Inc. Restaurant Employees Group Insurance Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

THIRD AMENDED COMPLAINT

650.   Plaintiffs are informed and believe that Defendant, Zale Corporation, is a Texas corporation with its corporate headquarters located in Albany, New York. Plaintiffs are informed and believe that Defendant, Zale Corporation, is a plan sponsor and plan administrator for the Zale Corporation Benefits Plan.

651.   Plaintiffs are informed and believe that Defendant, Zale Corporation Benefits Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

652.   Plaintiffs are informed and believe that Defendant, Buckeye Technologies, Inc., is a Delaware corporation with its corporate headquarters located in Atlanta, Georgia.  Plaintiffs are informed and believe that Defendant Buckeye Technologies, Inc., is a plan sponsor and plan administrator for the Buckeye Technologies Comprehensive Health Care Plan.

653.   Plaintiffs are informed and believe that Defendant, Buckeye Technologies Comprehensive Health Care Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

654.   Plaintiffs are informed and believe that Defendant, Calibre Inc., is a Wisconsin corporation with its corporate headquarters located in Grafton, Wisconsin. Plaintiffs are informed and believe that Defendant, Calibre Inc., is a plan sponsor and plan administrator for the Calibre Inc. Employee Health Plan.

655.   Plaintiffs are informed and believe that Defendant, Calibre Inc. Employee Health Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

656.   Plaintiffs are informed and believe that Defendant, Edgewood Management Corporation, is a Maryland corporation, doing business as Maryland Edgewood Management Corporation, with its corporate headquarters located in Germantown, Maryland.  Plaintiffs are informed and believe that Defendant, Mid City Financial/Edgewood Management Corporation, is a plan sponsor and plan

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   administrator for the Mid-City Financial/Edgewood Management Employee Benefit

2   Trust.

3       657.   Plaintiffs are informed and believe that Defendant, Mid-City

4   Financial/Edgewood Management Employee Benefit Trust, is an ERISA plan and a

5   proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

6       658.   Plaintiffs are informed and believe that Defendant, Polyair Corporation,

7   is a Delaware corporation with its corporate headquarters located in Toronto, Ontario.

8   Plaintiffs are informed and believe that Defendant, Polyair Corporation, is a plan

9   sponsor and plan administrator for the Polyair Corporation Flexible Benefits Plan.

10      659.   Plaintiffs are informed and believe that Defendant Polyair Corporation

11  Flexible Benefits Plan is an ERISA plan and a proper defendant pursuant to ERISA §

12  502(d), 29 U.S.C. § 1132(d).

13      660.   Plaintiffs are informed and believe that Defendant, PSI Services, LLC, is

14  a California limited liability company with its corporate headquarters located in

15  Burbank, California.  Plaintiffs are informed and believe that Defendant, PSI

16  Services, LLC, is a plan sponsor and plan administrator for the PSI Services, LLC

17  Health and Welfare Benefits Plan.

18      661.   Plaintiffs are informed and believe that Defendant, PSI Services, LLC

19  Health and Welfare Benefits Plan, is an ERISA plan and a proper defendant pursuant

20  to ERISA § 502(d), 29 U.S.C. § 1132(d).

21      662.   Plaintiffs are informed and believe that Defendant, Global Mail, Inc., is

22  a Delaware corporation, doing business as DHL Global Mail with its corporate

23  headquarters located in Weston, Florida.  Plaintiffs are informed and believe that

24  Defendant, Global Mail, Inc. is a plan sponsor and plan administrator for the Global

25  Mail, Inc. Welfare Plan.

26      663.   Plaintiffs are informed and believe that Defendant, Global Mail, Inc.

27  Welfare Plan, is an ERISA plan and a proper defendant pursuant to ERISA § 502(d),

28  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

664.   Plaintiffs are informed and believe that Defendant, The Railroad Employees National Health & Welfare Plan is a multiple employer welfare arrangement (MEWA) plan that is governed by ERISA, and is therefore a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).  Plaintiffs are further informed and believe that The Railroad Employees National Health & Welfare Plan is governed by a Joint Plan Committee consisting of the National Carriers' Conference Committee, whose place of business is Washington, D.C.; and the Health and Welfare Committee of the Cooperating Railway Labor Organizations, whose place of business is in Rockville, Maryland.  Plaintiffs are further informed and believe that Defendant Union Pacific Railroad Company and BNSF Railway Company are among the plan sponsors for the Railroad Employees National Health & Welfare Plan.

665.   Plaintiffs are informed and believe that Defendant, National Railway Carriers and United Transportation Union Health & Welfare Plan, is a Multiple Employer Welfare Arrangements under the ERISA plan and is therefore a a proper defendant pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).  Plaintiffs are further informed and believe that the National Railway Carriers and United Transportation Union Health & Welfare Plan is governed by a Joint Plan Committee consisting of the National Carriers' Conference Committee, whose place of business is Washington, D.C.; and the United Transportation Union Health and Welfare Committee, whose place of business is in Cleveland, Ohio.  Plaintiffs are further informed and believe that Defendant Union Pacific Railroad Company and BNSF Railway Company are among the plan sponsors for the National Railway Carriers and United Transportation Union Health & Welfare Plan.

666.   The employers who sponsor the ERISA Plans, the Administrators of the ERISA Plans, and the ERISA Plans will be referred to herein as the "ERISA Plan Defendants."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

E.    **DOE Defendants**

667.   The true names and capacities of the defendants sued herein as DOES are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such defendants by such fictitious names.  Plaintiffs are informed and believe that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, were the agents, representatives, or employees of the other defendants, and may be financially responsible to Plaintiffs for the services they have provided, as alleged herein.  The Complaint will be amended to allege the DOES' true names and capacities when they have been ascertained.

668.   The United Defendants, the ERISA Plan Defendants and the DOES will be collectively referred to herein as the "Defendants."

F.    **Agency**

669.   Plaintiffs are informed and believe that the United Defendants are the agents of each other, and of the ERISA Plan Defendants, and the DOE Defendants, and have actual or ostensible authority, to act on each other's behalf, and on behalf of the ERISA Plan and Doe Defendants for:  (a) certifying or authorizing Plaintiffs' provision of services to members; (b) receiving Plaintiffs' claims; (c) pricing the claims; (d) processing and administering the claims and appeals; (e) approving or denying the claims; (f) interpreting ERISA plan documents; (g) directing whether and how to pay the claims; (h) issuing remittance advices and explanations of benefits; (i) communicating with Plaintiffs regarding the claims and services; (j) communicating with members regarding the claims and services; (k) handling appeals of claims; and (l) in many instances issuing payment.  With respect to every claim at issue in this case, Plaintiffs requested authorizations from United, submitted reimbursement claims to United, communicated about the claims with United, and received payments from United.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

# IV.   GENERAL ALLEGATIONS

## A.   United's Health Insurance Business

670.   United is one of the nation's largest health insurers.  It underwrites and issues thousands of health insurance plans.  It also contracts with other entities that provide health benefits in order to provide administrative services for those entities' health plans, such as claim pricing.

671.   Individuals who do not receive employer-sponsored health insurance often purchase health insurance policies directly from United, who typically has sole responsibility and discretion to administer and pay claims submitted under such policies.

672.   Other individuals receive their health insurance through a private employer-sponsored benefit plan.  These individuals are typically participants or beneficiaries of plans governed by the Employee Retirement Income Security Act ("ERISA").  Sometimes the ERISA plans are fully insured by health insurers like United, and sometimes they are self-funded.  In both cases, United generally makes its "network" of providers, all of whom are contracted with United, available to the ERISA plans.

### 1.   United Administered ERISA Plans

673.   When the ERISA plan is fully insured by United, United not only is responsible for administering a claim brought under the plan, but is also financially responsible for the payment of the claim.  United is the Plan Administrator, and an ERISA fiduciary, for such ERISA plans.  United provides plan members with plan documents, interprets and applies the plan terms, makes coverage and benefits decisions, handles appeals of coverage and benefits decisions, and provides for payment in the form of medical reimbursements.

674.   In contrast, when the ERISA plan is self-funded, the plan typically will enter into an "administrative service agreement" with a health insurer like United to perform certain administrative responsibilities, such as providing plan members with

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

plan documents, interpreting and applying the plan terms, making coverage and benefits decisions, handling appeals of coverage and benefits decisions, and providing for payment in the form of medical reimbursements.  The administrative services agreements delegate to United authority and responsibility to administer claims and make final benefits decisions, based on claim procedures and standards that United develops.  Pursuant to this delegation of authority, United has primary responsibility for communicating benefits decisions and other claims-related information to plan participants and beneficiaries.  The plans further instruct their participants and beneficiaries to direct all communications to United.

675.   In return for performing these delegated duties, United collects administrative services fees from the ERISA Plans.  Plaintiffs are informed and believe that, under the administrative services agreements, the ERISA Plans remain responsible for funding the plans and the payment of benefits.

676.   Regardless of whether the ERISA plan is self-funded, United is the designated Plan Administrator and/or the designated Claims Administrator and therefore has fiduciary duties to ensure that out-of-network claims are properly priced and paid according to the terms of the members' plans.

677.   In addition, with respect to certain ERISA Plans that are self-funded, but which do not specifically designate a Plan Administrator, Plaintiffs are informed and believe that United has functioned as the *de facto* Plan Administrator.  Moreover, with respect to those plans, Plaintiffs are informed and believe that United was specifically designated by the plan sponsor as the Claims Administrator.

678.   United functions as a Plan Administrator and/or a Claims Administrator insofar as it exercised a delegated authority to provide plan documents to participants and beneficiaries, receive benefit claims, evaluate and process those claims, review the terms of the plan, make initial benefit determinations, make and administer benefit payments, handle appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

benefit determinations.  In carrying out its duties as Plan Administrator and/or Claims Administrator, United possessed authority and fiduciary discretion to manage and administer the ERISA Plans.

### 2. Out-Of-Network UCR Reimbursement

679.   Various ambulatory surgery centers in the industry, other than the Provider Plaintiffs, have written contracts with United under which they agree to accept United's set and scheduled reimbursement that is discounted from the centers' total billed charges.  In exchange, these "in network" providers receive referrals of patients from United and the associated benefits of being a participating or "in-network" provider.  These benefits typically include an increased volume of business that results because the health plans provide financial incentives to their members to utilize the services of "in-network" providers, such as reduced co-insurance payments and/or deductibles.

680.   Conversely, some surgery centers and physicians, such as the Plaintiffs, do not have written contracts with United.  They are "out-of-network."  As a result, these surgery centers and physicians receive less volume of patients from the plans, but they are not governed by any contractual requirements of defendants' plans and they are not required to accept reduced amounts as payment in full for their charges for the services rendered.  They are free to charge whatever amounts they deem appropriate for their services.

681.   Typically, United pays benefits pursuant to an ERISA health benefits plan to in-network surgery centers at the lower, in-network contract amount charged by those centers.  However, ERISA plans, whether fully-insured or self-funded, typically (though not always) contain provisions for paying out-of-network surgery centers and physicians at an UCR rate or a percentage of the UCR rate.  The language varies from plan to plan, and may variously be described as the "Usual, Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   Fee," the "Competitive Fee," or some other similar phrase.  In the context of the

2   healthcare industry, and in United's own parlance, these phrases are all synonymous

3   with UCR.

4       682.   On information and belief, a small minority of United-administered

5   benefit plans do not pay at UCR.  For instance, some of the plans expressly specify

6   that they will pay out-of-network providers' billed charges, and not just the

7   prevailing UCR rate.  Other plans pay at a multiple of Medicare rates, or at some

8   other rate.  However, for the vast majority of claims, when Plaintiffs' representatives

9   called United Healthcare to confirm their patients' medical benefits, they were told

10  that United would pay the Providers' reasonable and customary rates.

### 3.   Payment Authorizations and UCR Industry Standards

12      683.   When an out of network surgery center or health care provider has a

13  patient who is insured by United, the standard practice is to request authorization

14  from United to provide out-of-network services to that patient.  United has developed

15  a general practice and standard in the industry to grant such authorizations.  United

16  does not impose its plan terms on such out-of-network surgery centers and providers,

17  but rather as a standard of custom and industry practice commits to paying UCR no

18  matter what the actual billed amount might be from the surgery center or provider.

19      684.   Whether the claims are from out-of-network or in-network surgery

20  centers or providers, when the claims are submitted to United, they reflect the actual

21  billed charges for the claim.  Even though in-network surgery centers and providers

22  are sometimes reimbursed according to contracted rates that include discounts, they

23  still submit their full billed charges on the claim.  This is industry standard for all

24  providers, and reflects the well-established fact that charges are not the same as the

25  discounted contract rates.  Therefore, United has for many years acquired a wealth of

26  charge data from which it can use to price claims by comparing the prevailing

27  charges for similar healthcare services by similar types of surgery centers within the

28  same geographical market at the time.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

685.   No provisions in the operative documents that governed those benefit plans justified the failure to pay the benefits provided by those plans, and to instead pay nothing.  It was arbitrary, capricious and improper for United to do so.  Again, during the telephonic insurance verification process for hundreds of the patients whose benefits are at issue, United represented that it would pay the Plaintiff Providers' usual and customary fees.  Plaintiffs sought information during this process about potential limitations on the reimbursement of Plaintiffs fee each time prior to providing services, and specifically inquired each time prior to providing services as to how United's fee provisions would apply to their situation.  Defendants withheld information in response to such requests, and therefore misled Plaintiffs into thinking that the entire Plaintiffs' usual and customary fees would be paid.

686.   Likewise, no provisions anywhere in those plans justified the delay of, and later, the ultimate denial of, Plaintiffs' claims based on pretextual excuses unrelated to the language of the governing plan documents.  This was therefore arbitrary, capricious, and a breach of United's fiduciary duties to plan participants and fiduciaries.  It was also a violation of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (e.g., United) within 90 days after receipt of the claim, and further require that claim denials specify the precise reasons for denial, with citations to particular provisions of the operative plan documents.

687.   Even in those rare instances where Defendants paid Plaintiffs' claims, they paid far less than Plaintiffs' usual and customary fees.  On information and belief, United did not uniformly apply UCR to all service providers in the same geographic area, and in fact, discriminated against the Plaintiffs.

**B.**   **The Medical Services that Plaintiffs Provided Were Covered Under the Terms of the Relevant Benefit Plans**

688.   On information and belief, all of the medical services at issue that were provided by Plaintiffs that are in this litigation were covered under the terms of the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1   patients' health benefits plans.  These covered services included office visits;

2   psychiatric and nutritional consultations; diagnostic procedures, such as EGDs and

3   ultrasounds; blood, laboratory, and pathology testing; polysomnography; various

4   kinds of outpatient surgery; and in some cases, laparascopic gastric banding and

5   related services.

6        689.   Further, at the time that Plaintiffs performed these services, they

7   confirmed that the medical services that they sought to perform for patients were

8   covered.  Plaintiffs had to rely on telephonic verification, of course, because had very

9   little to no access to the plan documents, which is explained in more detail below.

10  When the Providers called United to verify each patient's benefits, United's

11  representatives confirmed the benefits available under the patient's plan, and during

12  the vast majority of calls, confirmed that United and the plan would pay the

13  Providers' usual and customary fees for the covered services.

14       690.   More recently, when Plaintiffs gained access to the Summary Plan

15  Descriptions ("SPDs") and the operative benefit plan documents that are at issue in

16  this case (largely in response to the order of this Court requiring Defendants to finally

17  produce such documents), Plaintiffs were able to confirm that the plans covered the

18  services provided by Plaintiffs.

19       691.   For instance, many, though not all, of the benefit plans offered to their

20  patients a SPD that followed a standard template, which Plaintiffs are informed and

21  believe was generated by United.  The first (or one of the first) section in United's

22  standard template is always "What's Covered—Benefits."  United's template

23  specifically states that "Outpatient Surgery, Diagnostic and Therapeutic Services" are

24  covered, and gives examples of the kinds of procedures that are covered, such as

25  "Lab and radiology/X-Ray" and "Colonoscopy."  United's template also specifies the

26  benefit levels for in-network and out-of-network services, respectively.  Plaintiffs are

27  informed and believe that this standard template covers all of the diagnostic

28  procedures and treatment that they performed for their patients, as well as for both

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

1    the facility and professional components of routine surgical and non-surgical

2    procedures that were Plaintiffs, consistent with what they were informed orally by

3    United representatives.

4        692.   Virtually all of the plans also cover polysomnography (e.g., overnight

5    sleep studies), though in some cases, the plan specifies that such procedure must be

6    performed in connection with the patient's sleep apnea.  The sleep studies provided

7    by Plaintiffs were always performed in order to diagnose and/or treat their patients'

8    sleep apnea condition, which involves snoring and/or the interrupted flow of oxygen

9    to the brain during sleep – a condition that scientists recognize is experienced by the

10   vast majority of Plaintiffs' obese and morbidly obese patients.

11       693.   Many of the plans also cover the Lap-Band surgery and associated

12   procedures, either outright, or in cases of medical necessity.  The requirements for

13   coverage vary from plan to plan.  Plaintiffs largely believe that the hurdles imposed

14   by United and the other Defendants on patients seeking Lap-Band coverage were

15   unnecessary, and ultimately, discriminatory – as explained later in this Third

16   Amended Complaint.

17       694.   To the extent that documents that the various Defendants have

18   represented to be the operative benefit plans have recently been provided to

19   Plaintiffs, the allegations in Appendix A, *infra*, set forth specific categories of

20   benefits that covered the medical services that Plaintiffs provided to each example

21   patient.

22   **C.**   **Plaintiffs Lacked Virtually All Access to the Governing Plan Documents**

23       695.   Despite making thousands of requests for plan documents and

24   information about United's UCR methodology over the past 5-7 years, both United

25   and the vast majority of the Plan Defendants consistently failed to provide any of the

26   requested documents or information to Plaintiffs.  Therefore, Plaintiffs have been

27   unable to confirm whether the manner in which United administers the terms of the

28   benefit plans' is consistent with the stated terms of the plans as set forth in the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   governing plan documents.  At all relevant times, both before and after this lawsuit

2   commenecd, Plaintiffs virtually never had access to the operative plan documents –

3   until this Court ordered all the Defendants in this case to produce them.

4       696.   United essentially ignored each of the tens of thousands of letter

5   requests for operative plan documents submitted by the Providers over the past five

6   to six years.  While each of Plaintiffs' letters demanded that United inform the

7   relevant plan sponsors of Plaintiffs' concerns, Plaintiffs are informed and believed

8   that United never did so.  United never provided plan documents in response to

9   Plaintiffs' requests, nor did United ever provide Plaintiffs with information about

10  how to contact the relevant plan administrators who could provide such documents.

11  Further, United affirmatively decided not to forward Plaintiffs' requests for plan

12  documents onto to the relevant plan administrators.

13      697.   Plaintiffs had no other way of contacting the plans or plan

14  administrators, and had no information about where they could be found.  If Plaintiffs

15  wanted to contact someone regarding the administration of their patients' health

16  benefits claims, their only choice was to contact United.

17      698.   While new patients to the Providers' Surgery Centers would typically

18  present their insurance cards during their initial visits, those cards list contact

19  information for United Healthcare only.  At best, the insurance cards contained a

20  short-hand name for the employer (for instance, "Best Buy"), but no contact

21  information.  It is impossible to discern the identity of any plan administrator based

22  on the insurance card, or based on any other source of insurance documentation

23  available to the Providers at the time patients were seen.

24      699.   Likewise, the Providers could not reliably obtain the plan documents by

25  asking their patients.   Either the patients would not know what documents the

26  Providers were referring to, or, when asked, they represented that they did not have

27  access to the plan documents.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

700.   Thus, for all intents and purposes, at all times relevant to this lawsuit, Plaintiffs had no access to the operative plan documents.

## D.   Plaintiffs Were Entitled to Payment on their Patients' Behalf

701.   Plaintiffs have standing to pursue these claims as assignees of their patient's benefits.  Prior to receiving treatment, every patient of the Plaintiffs signs an "Assignments of Rights and Benefits" form agreeing to, *inter alia*, assign his or her health insurance benefits, as well as broad array of related rights, to their providers, who are the Plaintiffs in this case.  Each assignment of benefits provides for Plaintiffs to be paid directly by the patient's insurance for the services provided to the patient, and authorizes Plaintiffs to obtain plan documents on the patient's behalf and to take all action necessary to pursue benefit claims on the patient's behalf.

702.   Plaintiffs received an assignment of benefits for every ERISA cause of action at issue in this litigation.  This enables Plaintiffs not only to pursue benefits on behalf of their patients, but also ancillary claims that their patients are entitled to assert under ERISA.  Plaintiffs maintain each patient's assignment of benefits as part of the patient's records.

703.   This form, which was titled "Assignment of Rights and Benefits," contained an exhaustive list of the rights that each patient conveyed to Plaintiffs.  In relevant part, the form states:

> I authorize my insurance company and/or my healthcare contract with my employer (collectively, the "INSURANCE COMPANY") to direct all payments for all professional and medical benefits under my current policy as payment for services rendered directly to PROVIDER(s) and/or FACILITY(s) providing services or their designated associates or assignee(s) (collectively "PROVIDERS"). I assign, whether signing as patient or patient's agent, **all rights and benefits under my contract with my INSURANCE COMPANY**, to any and all PROVIDERS. **I give express right to PROVIDERS to obtain the insurance and benefits policy booklet, and ALL policy information from INSURANCE COMPANY, employer or any of their associates or agents**. I also provide express consent and give full rights to PROVIDERS to appeal on my behalf to INSURANCE COMPANY or my employer or any of their associates or agents for any reason. I also authorize the release of any information pertinent to my case to any

insurance company, adjuster, attorney or other party(s) involved in this case.

I authorize PROVIDERS to initiate complaint(s) to the Insurance Commissioner or any other agency for any reason on my behalf.

**The assignment further permits PROVIDERS to obtain from INSURANCE COMPANY and employer or any of their agents or associates all information necessary for the determination of benefits allowed under the contract and permits the direct disclosure to PROVIDERS of all information including benefits provided including benefits & payments made on my behalf, limits and exclusions of benefits and reasons for denial of benefits or reduction in charges for services rendered**.

**The assignment shall allow PROVIDERS to take all action necessary to obtain the benefits I have, in good faith, been promised by INSURANCE COMPANY and/or employer on my behalf.** All benefits are to be paid directly to PROVIDERS and mailed directly to 269 S. Beverly Drive, Suite 353, Beverly Hills, CA 90212. A photocopy of this assignment shall be considered as effective and valid as the original.

I understand that my insurance carrier may disallow certain diagnoses or services as medically uncovered, medically unnecessary, cosmetic or excluded. I agree to be responsible for payment of all such services rendered to the patient.

...

**This is a direct assignment of my rights and benefits under this policy**.

704.   Plaintiffs, through their assignments of benefits, therefore have the right to sue and the right to demand plan documents from United on the claims at issue in this litigation, as well as the right to assert any and all ancillary causes of action under ERISA, including, but not limited to, the right to seek penalties from the administrators of the plans for failure to produce plan documents, and the right to seek redress breaches of those administrators' fiduciary duties to plan beneficiaries.

705.   To Plaintiffs' knowledge, not a single one of Plaintiffs' patients has filed a suit seeking to assert any ancillary claim under ERISA (for instance, for breach of fiduciary duty) against United Healthcare or any of the other Defendants in this case. This again confirms that the patients intended to assign all rights to Plaintiffs, and to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   permit Plaintiffs to step into their shoes, as that phrase is understood under ERISA

2   federal common law.

3       706.   Recently, hundreds of Plaintiffs' patients affirmatively and emphatically

4   confirmed that they had, in fact, assigned and intended to assign all of their ERISA

5   rights to Plaintiffs.

6       707.   To resolve any doubt over the scope of Plaintiffs' assignments, Plaintiffs

7   recently contacted many of their patients, asking them to sign a follow-up assignment

8   of benefits that would transfer all remaining rights under ERISA and other federal

9   and state statutes that were still possessed by the patients, to the extent that those

10   rights had not already been assigned to the Plaintiffs.

11      708.   In relevant part, this "supplemental" assignment of benefits states:

12   This assignment is in addition to the prior assignment(s) in which I
     intended to assign without limitation all rights, claims, causes of action
13   of whatsoever nature relating to the medical care that I received or will
     receive from the medical providers, health care facilities, and other
14   providers, or their designated associates, affiliates or assignee(s)
     (collectively "PROVIDERS") . . . .

15
     **Thus, to the extent I have not already done so,** I hereby expressly
16   transfer, assign, and convey **all rights, causes of action, claims, titles,
     interests and demands of whatsoever nature relating to medical**
17   **services I received from the PROVIDERS**, including but not limited
     to: all claims for benefits to include those under my insurance and health
18   plan(s) for medical services; all my statutory rights; ERISA rights,
     statutory and otherwise; and to pursue relief of any kind to include those
19   against my insurer and health plan(s).

20   The express rights that I hereby assign (to the extent I have not assigned
     them to the PROVIDERS, as I previously intended) shall include, but
21   are not limited to: the right to initiate any legal proceeding or complaint
     to include those against my insurance company and/or health plan(s); to
22   make any request for disclosure from any party to include governing
     plan documents from the plan/claims administrator(s) for my insurance
23   and/or health plan(s); to seek penalties including those under ERISA for
     failures by the administrator(s) of my health plan(s) to promptly provide
24   such documents; to pursue all claims and causes of action in connection
     with federal or state laws, including the antitrust laws, and including all
25   claims and causes of action for class action relief; to pursue or sue for
     breaches of fiduciary duty by any party to include my insurance
26   company and/or health plan(s); to pursue or sue for any form of
     equitable relief to include those under ERISA, including, but not limited
27   to, equitable estoppel, equitable surcharge, and reformation; and to
     pursue and collect attorney's fees. In asserting any of the above rights
28   that I expressly assign, **the PROVIDERS shall "stand in my shoes,"**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

**as that phrase is understood under assignment law, such that my transfer of rights is complete, and I retain no interest in them**.  In the event that any of the above rights is deemed not transferable or assignable under applicable law, I authorize PROVIDERS to assert such matters as my representatives and collection agents in my name as they deem appropriate.

709.   To date, *over three hundred* of Plaintiffs' patients – patients who were insured under both United and non-United health plans – have knowingly, willingly, and promptly signed these supplemental assignments of benefit forms.  Plaintiffs continue to maintain these forms in their records.  The patients signed these forms of their own free will, and under no conceivable threat of coercion or misunderstanding.  This confirms beyond any doubt that Plaintiffs stand in their patients' shoes for all intents and purposes in this lwasuit.

710.   Appendix "B" to this Third Amended Complaint identifies the Plan Defendants for whom at least one patient signed and returned a supplemental assignment of benefits form as described above.  It also identifies whether the patient who signed and returned the form is the exemplar patient described in Appendix 1, and/or whether other, non-exemplar defendants insured under the same plans signed the supplemental assignment of benefits forms.

## E.    Plaintiffs Proceeded At All Times In their Capacity as their Patients' Assignees

711.   Plaintiffs did not keep their patient assignments of benefits a secret from Defendants.  Rather, at all times during the administrative process for each of the patient claims at issue in this lawsuit, Plaintiffs openly proceeded in their capacity as assignees of their patients' rights under ERISA, and under the reasonable believe that the assignments of benefits that they had obtained from their patients were valid.  At no point did Plaintiffs purport to proceed solely as their patients' authorized representatives.

712.   For instance, Plaintiffs expressly informed Defendants of their assignee status in writing when they submitted benefit claims for reimbursement.  Each and

THIRD AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1   every reimbursement claim submitted by Plaintiffs was submitted on industry-

2   standard claims forms – UB-04 forms for facility claims, and HICF-1500 forms for

3   professional (physician) claims.  Both the UB-04 form and the HICF-1500 form

4   specifically have a box that indicates that the submitting healthcare provider is

5   proceeding on the claim pursuant to an assignment of benefits from their patient.

6   **Plaintiffs checked this box on every single one of the claim forms that they**

7   **submitted to Defendants for reimbursement**.

8       713.   Box 27 on the HICF-1500 form, which is near the bottom of the page,

9   reads: "Accept Assignment?"  There are checkboxes for "YES" and "NO."  When

10  Plaintiffs submitted claims for medical reimbursement on HICF-1500 forms, always

11  checked the "YES" checkbox in box 27.  An example of a HICF-1500 claim form

12  submitted by Plaintiff Independent Medical Services, which is representative of the

13  claim forms submitted by all of the Plaintiffs, is attached as **Exhibit C** to this

14  Complaint.

15      714.   Similarly, on the standard UB-04 form, box 53 reads "Asg. Ben.," which

16  is short for Assignment of Benefits.  When Plaintiffs submitted claims for medical

17  reimbursement on UB-04 forms, Plaintiffs always put  "Y" in box 53.  An example of

18  an UB-04 claim form submitted by Plaintiff Valencia Ambulatory Surgery Center,

19  which is representative of the claim forms submitted by all of the Plaintiffs, is

20  attached as **Exhibit D** to this Complaint.[6]

21      715.   The Official UB-04 Manual, relevant excerpts of which are attached as

22  **Exhibit E** to the Complaint, provides the following instructions concerning Box 53:

| Data Element | Assignment of Benefits Certification Indicator |
|---|---|
| **Definition:** | Code indicates provider has a signed form authorizing the third party payer to remit payment directly to the provider. |
| **Reporting Notes** | UB-04: Required. |
| | Health plans that have arrangements with affiliate health plans in |

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

---

[6] The predecessor to the UB-04 form, called the UB-92 form, also has the same Assignment of Benefits indicator box.

1201369.1

> different states may utilize this code to make payments to the provider rather than the insured individual.  The element answers the question whether or not the insured has authorized the plan to remit payment directly to the provider.

716.   The use of these industry-standard claim forms is very widely accepted in the healthcare industry.  Out-of-network providers virtually always use these industry-standard forms when seeking reimbursement from health insurance sources, whether those sources are fully-insured or self-funded.  Thus, there can be no reasonable doubt that United (or any other Defendant who received this form, though United was typically the claims administrator for each of the other Defendants) would know and understand the meaning of each part of these industry-standard forms, and particular, would know and understand that the Plaintiffs were proceeding pursuant to a claimed assignment of benefits with respect to their claim for reimbursement.

717.   Moreover, in connection with their collection efforts and appeals, Plaintiffs informed Defendants that they had received assignments of benefits from their patients.  The following language is typical of the the appeals letters that Plaintiffs submitted for tens of thousands of benefits claims:

> "[W]e received a letter that requested additional medical records.  Please accept this letter as a formal appeal of this inappropriate request according to federal laws and ERISA.  Please be advised that according to ERISA, § 502, 29 U.S.C § 1132(a)(1)(B), "a civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." **My client [e.g., the Provider who submitted the claim] holds a valid assignment of benefits for this claim.**

> Specifically, the patient for this claim is part of a group health insurance policy issued through the insured's employer.  . . . Based upon [] written approval [and pre-authorization from the Plan], our office provided the patient with the required necessary medical services.  Thereafter, my client provided your company with a claim requesting payment for the services rendered. . . .

(Exhibit B to Complaint, at p. 1.)  Thus, Plaintiffs' tens of thousands of appeal letters all expressly affirmed that Plaintiffs were proceeding as assignees of the patients.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Similarly, during telephone calls, Plaintiffs informed Defendants that Plaintiffs were pursuing payment on Plaintiffs' own behalf based upon their assignments of benefits. Further, Plaintiffs' records indicate that during telephone calls made to verify the patients' benefits, Defendants represented a very large majority of the time that they would accept provider assignments of benefits.

718.   Despite this, neither United nor any other Defendant ever informed Plaintiffs, prior to this lawsuit, that Plaintiffs could not proceed pursuant to their assignments of benefits due to an anti-assignment clause contained in any plan, or for any other reason.

719.   Further, based upon the course of dealings between Plaintiffs and Defendants, Plaintiffs believed that no provisions existed in Defendants' administered plans which preclude the assignment of claims which the insureds gave to Plaintiffs.  Throughout the entire administrative process for thousands of claims, and over many years, neither United nor Defendants ever referenced any anti-assignment provisions of any plan, ever refused to communicate with Plaintiffs based on any such anti-assignment provisions, ever refused to process any of Plaintiffs' claims based on any such anti-assignment provisions, or ever refused to pay any of Plaintiffs' claims for the reason that any benefit plan contained any such anti-assignment provision.

720.   Likewise, Defendants were aware that Plaintiffs were providing medical treatment to their beneficiaries and insureds at no upfront cost, as is typical in the market for out-of-network healthcare services in the United States.  Defendants were either aware, or should have been aware, that Plaintiffs subsequently intended to seek reimbursement from the Defendants for providing those services.  It would have been unreasonable and absurd for Defendants to believe that, during their interactions with the Providers, those Providers were acting solely as the authorized representatives of their patients, rather than acting on their own behalf; or that Providers sought to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1 obtain health benefits that would be paid directly to the patients, rather than to

2 themselves.

3      721.   The ERISA regulations required Defendants, *inter alia*, to state (i) the

4 specific reason or reasons for the adverse determination, and (ii) reference to the

5 specific plan provisions on which the determination is based.  29 C.F.R. § 2560.503-

6 1(g)(1).  At no time during the administrative process did Defendants ever state that

7 the specific reason for the adverse benefit determination was due to an anti-

8 assignment provision, nor did they reference a specific anti-assignment provision in

9 any plan document.

10      722.   Moreover, the ERISA statute and regulations require Defendants to

11 provide relevant plan documents.  29 U.S.C. § 1104, 1024 and 1132; 29 C.F.R.

12 § 2560.503-1.  At no time during the administrative process did any of the

13 Defendants ever send any plan documents containing any anti-assignment provision

14 to Plaintiffs, despite tens of thousands of requests for such documents.

15      723.   Plaintiffs' actions and entire course of conduct over the administrative

16 process for thousands of benefit claims were more than sufficient to put Defendants

17 on notice that Plaintiffs were acting at all times pursuant to their assignments of

18 benefits and further, that Plaintiffs had a reasonable belief that those assignments of

19 benefits were valid.  Thus, Defendants were on notice that if they sought to rely upon

20 their anti-assignment clauses in later litigation, they were required to assert them

21 during the administrative process.  Yet, Plaintiffs only learned that Defendants

22 intended to rely upon anti-assignment clauses when Defendants asserted them for the

23 first time in this lawsuit.  By their silence and their inaction, Defendants have waived

24 their ability to do so.

25      724.   When Plaintiffs have spoken to Defendants to verify patient eligibility

26 for out of network services and receive authorization for the procedures the patients

27 had asked patients to perform, Defendants at no time claimed the patients were not

28 eligible to assign claims to Plaintiffs, and at no time informed Plaintiffs of any such

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   provision of the plans.  In fact, during each telephone call, Plaintiffs directly asked

2   whether Defendants would accept provider assignments of benefits.  The large

3   majority of the time, Defendants' representatives affirmed that they would accept

4   such assignment.  Records that Plaintiffs maintain in connection with each patient's

5   files confirm this express representation by Defendants with respect to the individual

6   plans and plan beneficiaries at issue in this lawsuit.

7       725.   Plaintiffs' investigation is still continuing, but to date, Plaintiffs have

8   identified hundreds of Defendants for whom one or more representatives affirmed

9   that assignments of benefits would be accepted.  These Defendants for whom

10  Plaintiffs are aware such representations were made are identified in Appendix A.

11      726.   Further, the very fact that Plaintiffs had asked whether Defendants

12  accepted assignments of benefits was another factor that put those Defendants on

13  notice that Plaintiffs were acting pursuant to their assignments of benefits, and on

14  their own behalf.

15      727.   Therefore, to the extent that any plan documents have any anti-

16  assignment provisions, Defendants have waived their right to assert such anti-

17  assignment provisions as a defense to paying Plaintiffs' claims, and/or are estopped

18  from doing so.

19  **F.**    **Defendants' Systematic, Surreptitious, and Unlawful Withholding of**

20          **Payment For Services Rendered**

21      728.   Defendants did not intend not to pay for the services rendered by

22  Plaintiffs.  Rather than inform Plaintiffs directly of this fact, however, Defendants

23  chose to carry out their intentions through subterfuge and deceit.  Specifically, United

24  manufactured various pretextual rationales unrelated to the actual benefits available

25  under the plans in order to unlawfully prolong the claims administration process and

26  ultimately deny Plaintiffs' claims outright on grounds not justified by the terms of the

27  benefit plans.  As explained above, there is no question that the medical services

28  provided by Plaintiffs were fully covered by the ERISA plans.  The ERISA Plans

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    Defendants knew or should have known about such practices by United, who acted as

2    their agent, and had a duty to prevent such behavior; instead they ratified and/or

3    participated in these illegal acts.

4        729.   Defendants knew full well that the terms of Plaintiffs' benefit plans

5    obligated it to pay Plaintiffs for the valuable medical services they had provided to

6    beneficiaries and participants of those plans.  As the claims administrator, the plans

7    delegated to United the discretion to interpret and apply the terms of the plans.

8    However, United did not have the ability to substantively change the terms of the

9    plans, or to create hurdles for beneficiaries to obtain such benefits, or new reasons for

10   denial of such benefits that were contrary to, or inconsistent with, plan terms.  Thus,

11   in making up false reasons to withhold and deny payment from the Plaintiffs, United

12   was acting beyond the scope of its authority, abused its discretion as the claims

13   administrator for the plans, and through its unlawful handling of tens of thousands of

14   benefit claims, violated a whole host of civil and criminal statutes.

15       730.   In many cases, United conveyed these fabricated rationales to Plaintiffs

16   by issuing Explanation of Benefits ("EOBs") forms, which United typically issues

17   when a claims decision is made, or through appeal denial letters.  Though these forms

18   and letters purported to be claim denials, they contained no actual reasons explaining

19   why the claim was being denied according to the terms of the applicable benefit plan,

20   as required by ERISA and/or applicable state regulations.  Instead, they merely

21   requested additional documentation or suggested that further review was required.

22       731.   For instance, after pretending to ask for medical records as a way of

23   prolonging the claims process, United subsequently denied Plaintiffs' claims for

24   precisely the same reason: because United supposedly did not have all the medical

25   records, even though it could not specific which records were missing.

26       732.   United's typical, boilerplate claims denial letter denying the claims for

27   the supposed failure to provide records read as follows:

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

158

Dear [Provider]:

UnitedHealthcare has received and reviewed your claim and supporting documentation for reimbursement on the above date(s) of service under [Name of Plan] benefit plan.

[Plan Sponsor] pays for required services and supplies provided for the purpose of preventing, diagnosing or treating a sickness, injury, disease or symptoms. The plan authorizes UnitedHealthcare to determine whether benefits are payable according to reimbursement policies and the terms, conditions and exclusions of your patient's Summary Plan Description.

After careful review of the submitted documentation, coverage was denied based on the rationale detailed below:

The following information is needed in order to complete the review: 1 The patients designation of any authorized representative to file an appeal on their behalf. 2 Previous medical records related to the procedure. (Records that describe or document the onset, severity of symptoms, conservative treatments, or other surgical treatments rendered including office visits and consultations) 3 Preoperative History & Physical 4 Surgical Consent Form 5 Anesthesia Record and Pre-Op Anesthesia Evaluation Form 6 Intraoperative/Perioperative Nursing Record 7 Recovery Room Record 8 Pathology Reports 9 Admission and Discharge Nurses Notes 10 Discharge Instructions 11 Physicians Orders 12 Laboratory and X-Ray Reports including MRI, CT, Ultrasound, etc. Once the above information is received, further review of medical records will be performed to confirm appropriate coding and documentation of the billed services.

**Therefore, benefits are not available under the plan and the claim is denied.**

The patient may initiate an appeal of this determination as outlined in the Summary Plan Description or explanation of benefits. . . .

. . .

**You may have the right to file a civil action under ERISA if all required reviews of your claims have been completed.**

Thank you for the care you provide to your patients who are UnitedHealthcare members.

Sincerely,

[Name of United representative]

733.   An exemplar of this denial letter, which was an exceedingly common basis on which Plaintiffs' claims were denied, is attached as **Exhibit F**.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

734.   Beyond a doubt, these denial letters represent outright claim denials, and the sole basis set forth in these letters for the denial of the claims is the purported failure to provide numerous, irrelevant categories of medical records, many of which did not likely exist.  There are no references in these letters to any provisions in the plan establishing that benefits are not available for the medical services that the Providers performed in good faith.

735.   This and other denial letters and EOB's routinely violated ERISA 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 by:

- failing to state the specific reasons for the benefit termination;
- failing to state the plan provisions upon which the decision was based;
- failing to state what, if any, additional information or documents could perfect Plaintiff's claim;
- failing to state why such documents or information were necessary; and
- failing to state Plaintiffs' right to file suit under ERISA.

736.   Instead of responding to Plaintiffs' requests by providing access to the material that the regulations entitle Plaintiffs to review, Defendants elected to completely ignore and reject the requests, and make spurious and pretextual reasons for refusing to process and pay the claims.

737.   In addition to the repeated and redundant requests for medical records, which ignored the actual records provided by Plaintiffs, the illegitimate tactics utilized by United included, but were not limited to, the following:

- Routinely requesting physician's orders approving the use of Durable Medical Equipment that Plaintiffs did not use or provide in connection with the medical services at issue;
- Forwarding all or nearly all of Plaintiffs' claims for "further review" by United's wholly owned subsidiary, Ingenix (also known as OptumInsight), and promising that review by Ingenix / OptumInsight

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

would take 15-30 days, while in fact causing the so-called review to last for months or even years with no payment resulting from the "review";

- Requiring Plaintiffs to separately submit medical records or other documentation to Ingenix / OptumInsight when Plaintiffs had already submitted such documentation directly to United, on the pretextual ground that Ingenix / OptumInsight did not have access to the records that had already been submitted to United;

- Denying claims solely because the patients on whose behalf reimbursement was sought had allegedly failed to "authorize" Plaintiffs to appeal on their behalf, even though Plaintiffs always submitted a proper assignment of benefits demonstrating such authority, and even though Defendants in practice acknowledged that assignment had occurred by dealing directly with Plaintiffs, rather than with the patients;

- Claiming that one or more of the surgical facilities where the surgery was performed was not listed in United's database of health providers as a reason for non-payment, even though claims had previously been paid to those same facilities and even though United sometimes paid the surgeon who selected the facility;

- Demanding surgery center licenses, even though California does not require any such license (surgery centers are "certified" by one or more entities, such as the Joint Commission on Accreditation for Health Care Organizations under Health & Safety Code § 1248 *et. seq.*);

- Denying claims for containing procedures with incorrect "modifier" codes, even though the claims that Plaintiffs submitted never included or required such codes;

- Denying claims because the patient purportedly did not have coverage, for instance, because of a pre-existing condition, when such coverage in fact existed;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

THIRD AMENDED COMPLAINT

- Denying claims on the basis that they were not timely filed, though Plaintiffs' submissions were timely.

738.   While the rationale for denying any given claim varied, the outcome was always the same: the complete denial of nearly all payment for surgeries and procedures performed by Plaintiffs.  When examined closely, none of United's rationales hold up to scrutiny.  Yet they were repeatedly used to withhold payment to Plaintiffs, without informing Plaintiffs at any time of United's true intent to do so.

739.   This sort of gamesmanship by the Defendants is unlawful, inconsistent with the mandate of 29 U.S.C. § 1133, and frustrates the policy interests underlying the requirement of administrative exhaustion.  As the Ninth Circuit explained in *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997), the ERISA regulations are designed to ensure a "meaningful dialogue" between administrators and beneficiaries (or their representatives):

> "The ERISA plan administrators do not have unbounded discretion. Under federal law, an ERISA plan 'shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons for the denial; (2) Specific reference to pertinent plan provisions on which the denial is based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.' 29 C.F.R. § 2560.503-1(f). **In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries**. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. **There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters**."

740.   The telephonic exchanges that occurred between representatives for Plaintiffs and representatives of Defendants illustrate Defendants' singular lack of candor to Plaintiffs' reasonable inquiries in this regard.  In call after call, Defendants provided evasive responses to Plaintiffs' simple and straightforward requests.  It was

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

as if Defendants felt as if they were not required to share pertinent information with its own beneficiaries.

741.   The subject of the following call was a claim that United had referred to OptumInsight (then Ingenix) for review.  Ingenix's representative would not explain why additional medical records were necessary to process the claim, even though he acknowledged that key medical records for the claim had already been received:

CALLER: Okay.  Do you also have the one for $14,140 in your system which is also under review too, correct?

INGENIX: Yes sir.  And, as I can check your, this [claim was] denied.

CALLER: Okay.  Now why was this claim denied?

INGENIX: Let me check.

CALLER: Sure.

INGENIX: **And sir, I can check your claim was denied due to incomplete medical notes.**

CALLER: Okay.  What medical documentation do you have there?

INGENIX: Sir as I can check **we have received 9 pages from your side as medical notes and... the first 2 pages contained the claim form... your 4th page contains preoperative report, your 5th, 6th page contains anesthesia pre and post-operative [reports] and next page contain operating room records and after that is preop pending order and your last page contain 4 clinical surgical room records**.

CALLER: **Okay, now can you explain to me why that isn't sufficient enough or what other medical documentation that you are needing?**

INGENIX: **Sir I don't have exact reason what you need to submit. There is a general reason given** ... that they need the complete medical notes like ... finding on examination, lab, radiology results, and [] test results, consult report, operative procedure report and daily progress treatment notes.  So you can check your medical notes and you can submit these medical notes... which are missing.

CALLER: Okay now we have sent complete medical records for this claim so why [are] you guys not paying this claim because of unrelated medical records, like ultrasounds, [which have] nothing to do with this patient's EGD [procedure]?

INGENIX: I can understand that but according to the review team, the medical notes submitted by you is not sufficient for your claim.  You need to submit some additional documentation.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

742.   When asked, the Ingenix representative would not explain why so many of Plaintiffs' claims were referred to Ingenix:

> CALLER: Can you explain to me why every claim that we have for this provider has been sent to Ingenix from United Healthcare?  Why are they sending all these claims to [Ingenix]?
>
> INGENIX: **I don't have a reason why United has kept sending these to Ingenix** but we are the team of United Healthcare or maybe they sending these claims for audit so we can work on it and review the claim.  That's how the provider is billing and what is the criteria.
>
> CALLER: Okay.  Is it Ingenix policy to ask for additional information from the providers for every claim that United Healthcare sends in to you?
>
> INGENIX: Yes.  We've got some guidelines from United Healthcare [and from] Ingenix too.  Ingenix and [OptumHealth] you so we need the complete medical notes to review the claim  to support that specific code and procedure code included in it.  So without complete medical notes we are not able to process that claim.
>
> CALLER: **So it is your policy to ask for additional information for every claim that United Healthcare sends in to you?**
>
> INGENIX: **Yes.**  When we pull the claim from United Healthcare we need the medical notes and you have sent the medical notes but they're not complete so that's why your claim was denied [with respect to the patient's 10/30 visit].  When you send the complete medical notes we can process this claim or review the claim.

743.   Plaintiffs have asked again and again for clarification as to what specific medical records United considers necessary to process the claims, but were rebuffed repeatedly.  United's responses offered no guidance as to how plaintiffs could perfect their claims.  For example, United representatives have responded as follows in response to questions regarding what additional documents United requires to process the Patients' claims:

> •   "I do show that it was submitted multiple times,... I'm showing that [Optum Insight, a.k.a. Ingenix] received the information but they're still needing additional information.  They said they received it and are unable to process it, meaning that one or more items are missing, history and physical, um findings, meaning labs, radiology, pathology, anesthesia, just things of that nature.  Any op note, procedure report, daily progress treatment records, medication notes, physician orders, um, anything of that nature.... [M]aybe they'll be able to give you more, um, elaborate information."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

• "Um, actually, it's not [Optum Insight, a.k.a. Ingenix]... the request actually would be the United Healthcare since technically it's them who has the right to request those records, and then it would be routed to us [at Optum Insight/Ingenix]."

• "[T]he thing is, we just need those medical records.  I know you have submitted them perhaps to a different department of United Healthcare, but as you can see here, whatever goes to us are the only ones that was reviewed, and I do see here a one page of lap band follow up visits, office visits."

• "The thing is, um, this one, actually, **we are not even communicating directly to them**.  We only have, um, certain departments who are handling this and they're located in the United States, okay....  **[Optum Insight is located] in the Philippines, for your commercial account**."

• "Okay, so it initially shows that the claim was denied for incomplete medical records.  Then it is being indicated here that it was filed for an appeal.  But um that was received on 8/14 but basically that appeal is being closed out because there's no patient authorization here.... So I just checked on the records here one by one and I'm going to have it sent back again to the appeals department about this information because I can see that, um the... [assignment of] benefits as indicated there.  **Also the op notes are also indicated there."**

• "[I]t looks like what they're stating is that information was received but some of the **information was still missing that we needed**.  Um, and it **doesn't tell me specifically**, just that it's – the information may have included the history and physical findings upon examination, labs, radiology, pathology and anesthesia test results, consult report."

744.   Contrary to what the United representatives promised, Defendants had no intention of processing or paying the claim even if Plaintiffs re-submitted the requested medical records.

745.   Clearly, Defendant Ingenix/OptumInsight, to whom the United Defendants delegated their responsibility for administering Plaintiffs' claims in a timely and accurate manner, was unqualified to do so. The delegation of the United Defendants' responsibilities to its wholly owned subsidiary was not in order to facilitate the processing of Plaintiffs' claims, but to delay it indefinitely, and to obscure from Plaintiffs the real reasons why Plaintiffs' claims were not being paid.

746.   United's repeated requests for additional records, in which United refused to specify what particular records were missing, provided no meaningful

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

1  guidance on what specific further evidence might be required, and prevented

2  ERISA's procedural requirement for meaningful dialogue between the plan

3  administrator and beneficiary.  The procedural violations, alone, are so extreme as to

4  require a *de novo* review.

5         747.   Defendants also ignored the fundamental aspect of due process that

6  requires an appeal to be considered by a different decision-maker, and ignored

7  material evidence submitted such as all the medical records. Like a structural conflict

8  of interest, these procedural violations have tainted the entire administrative decision

9  making process.

10        748.   The United Defendants delegated the determination of payment and

11  calculation of provider compensation rates (which had been delegated to them by the

12  Plans themselves) to its wholly owned subsidiary Ingenix/OptumInsight.  This was

13  done solely to provide cover for the improper denial of payment to the providers

14  Plaintiffs and to thereby generate revenue for the United Defendants.  The delegation

15  thus constituted a "transaction involving the plan on behalf of a party... whose

16  interests are adverse to the interests of the plan or the interests of its participants or

17  beneficiaries" and thus was a prohibited transaction under 29 U.S.C. § 1106(b)(2).

18  Further, United Defendants are liable for the prohibited transactions as co-fiduciaries

19  under 29 U.S.C. § 1105 (ERISA Section 405.)

20  **G.    United's Conflict of Interest.**

21        749.   Plaintiffs are informed and believe that the United Defendants had an

22  unusually strong motivation to come up with excuses to delay and ultimately deny

23  Plaintiffs' claims.  This is because United's actions were tainted by an actual conflict

24  of interest, and in particular, the prospect of self-dealing and financial gain:

25        **1.    United Provided Stop-Loss Insurance to Many ERISA Plans.**

26        750.   Plaintiffs are informed and believe that some of the ERISA Plans that

27  United administered were fully-funded plans, meaning that they were insured directly

28  by United.  It was clear that United had a conflict of interest as to such plans, because

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

THIRD AMENDED COMPLAINT

1201369.1

1  United stood to lose financially when it paid claims for reimbursement that were

2  submitted to such plans.  A conflict exists when a plan is both funded and

3  administered by an insurer.

4      751.   Others of the Plans administered by United were "self-funded," meaning

5  that claims were paid, at least in part, by the plan sponsor or employer.  However,

6  Plaintiffs are informed and believed that United similarly stood to lose financially

7  with respect to the claims paid out by many of the self-funded plans.  This was

8  because, on information and belief, United provided "stop-loss" insurance to many of

9  the self-insured plans that United administered.

10     752.   Stop-loss insurance is a form of re-insurance that self-insured plans

11  frequently can and do purchase to help absorb the cost of providing health benefits to

12  their beneficiaries.

13     753.   United offers stop-loss insurance to self-funded plans via its subsidiary,

14  OptumHealth Financial, including to the plans it administers.  Publicly available

15  information demonstrates that United's deductibles for "specific" Stop-Loss coverage

16  are as low as $20,000.[7]  In other words, at the $20,000 deductible level, United would

17  pay the claim for any given beneficiary whose medical bills exceed $20,000.

18     754.   On information and belief, United, through its subsidiary, provides such

19  stop-loss insurance at low deductible levels to many of the self-funded plans for

20  which it also functions as the administrator, which is at issue in this case.

21     755.   This results in an actual conflict of interest on United's part, because

22  United, as an insurer for a significant portion of the claims for which United was the

23  administrator, was therefore incentivized to come up with reasons not to pay the

24  claims, or at least not to pay claims at a level that would exceed the stop-loss

25  deductible.

26  ───────────────

27  [7] UnitedHealthcare Specialty Benefits, Stop Loss Insurance Quick Reference Guide, available at https://www.unimerica.com/presence/documents/100-

28  5837_Stop_Loss_QRG_9-07.pdf

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

756.   In fact, in publicly available documents, Optum (which, on information and belief, is now the same entity as Defendant OptumInsight, and is United's subsidiary for stop-loss insurance) itself has recognized that an arrangement in which a national insurer like United provides "both... administrative services and the Stop Loss [insurance]" necessarily results in a "[p]ossible conflict of interest."[8]

757.   Therefore, with both the fully insured and self-insured plans, United, as the claims and plan administrator, had an economic incentive to deny benefits to the beneficiaries and thereby reduce its liability.

2.   **United Received Illegal Commissions In Return For Improperly Denying Plaintiffs' Claims.**

758.   Furthermore, and as explained in detail above, Plaintiffs strongly suspect that another primary motivation that United had for denying Plaintiffs' claims is that United is substantially compensated by the Plans for doing so.  Plaintiffs are informed and believe that when United refuses to pay the Plaintiffs for the services that they have rendered, it is paid a commission by the Plans, that is based upon a percentage of how much money the Plans "save" by not having to pay Plaintiffs their usual and customary fees.  Thus, United effectively sets its own commission by determining how much the "savings" would be.  This not only violates ERISA, but also violates the terms of the plans, which require usual and customary payment, as these artificial "savings," which are determined arbitrarily by United, bear no relation to a proper determination of Usual and Customary fees.

759.   Plaintiffs are informed and believed that the Plans make these kickbacks to United pursuant to programs called the "Shared Savings Program"  and/or the "Facility Reasonable Charge Determination Program," ""which some Plans agree to as part of their agreements with United by which United provides claims adjudication

---

[8] Optum, An Introduction to Stop Loss Coverage, at slide 32, *available at* http://www.consultbb.dreamhosters.com/docs/Optum_Health_-_An_Introduction_to_Stop_Loss_Coverage.pdf

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

services for those Plans.  The goal of the Shared Savings Program and/or Facility Reasonable Charge Determination Program is to underpay, or even reject outright, claims made by ASCs such as the Plaintiff providers.

760.   United is compensated under the Facility Reasonable Charge Determination Program at a specific percentage of the money that Defendants would otherwise have had to pay to Plaintiffs, had United correctly paid Plaintiffs' claims. On information and belief, this percentage is usually, but not always, around 30-35% of the "savings" that result from not having to pay Plaintiffs' reasonble and customary charges, and instead paying a lesser amount.  These payments provided a major incentive for United to find ways not to pay Plaintiffs' claims, and to deny those claims on pretextual grounds, such as repeated and unfounded requests for irrelevant and nonexistent medical records.

761.   United's receipt of kickbacks and/or commissions is an egregious instance of self-dealing and a breach of fiduciary duties it owes to the beneficiaries and participants of the ERISA plans.  United's behavior violates, at a minimum, 29 U.S.C. § 1106(b)(2), which states that "A fiduciary with respect to a plan shall not— (1) deal with the assets of the plan in his own interest or for his own account...." United, therefore, has a structural conflict of interest in its administration of the Plans which used United's Shared Savings Program and/or Facility Reasonable Charge Determination Program.

3.    **United's Inconsistent and Thinly Justified Excuses Provide Material, Probative Evidence of an Actual Conflict.**

762.   As detailed throughout this complaint, United's false excuses for delaying and ultimately denying payment to the Provider Plaintiffs was not based on any principled justification, or rooted in the language of the benefit plans that United was supposed to administer.  Rather, United's unending requests for irrelevant or non-existent medical records; its routine referrals to Ingenix for purported further review; its frequent demands for provider W-9 forms which are already in United's

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  possession, and its other thinly veiled excuses were just a means to an ends: to deny

2  payment to the Provider Plaintiffs at any cost.

3      763.   United's inconsistent and pretextual actions with respect to the

4  Plaintiffs' claims provide material, probative evidence that United possessed an

5  actual, not just potential, conflict of interest.  For this reason, United's decisions and

6  rationales are not entitled to any deference upon review.

7  **H.   United and the Plan Defendants Retaliated Against Plaintiffs and their**

8  **Patients.**

9      764.   Further, United and the Plans have retaliated against Plaintiffs, as the

10  assignees of ERISA participants and beneficiaries, because Plaintiffs exercised the

11  rights to which those participants and beneficiaries were entitled under ERISA, in

12  violation of ERISA Section 510, codified at 29 U.S.C. § 1140. ("It shall be unlawful

13  for any person to... discriminate against a participant or beneficiary... for the purpose

14  of interfering with the attainment of any right to which such participant may become

15  entitled under the plan").

16      765.   Specifically, the ERISA participants and beneficiaries who were treated

17  by Plaintiffs lawfully attempted to exercise their rights and benefits under their

18  respective plans to receive out-of-network payment.

19      766.   However, for the sole reason that those participants and beneficiaries

20  chose to receive care from the Plaintiffs at the Surgery Centers, United retaliated

21  against the participants and beneficiaries, and by extension, against Plaintiffs.

22      767.   Moreover, Defendants also retaliated against Plaintiffs because Plaintiffs

23  sought to appeal United's determinations denying payment, and because Plaintiffs

24  sought to challenge the unfair, irrational, and discriminatory hurdles to obtaining

25  benefits for Plaintiffs' morbidly obese patients that were imposed by United and the

26  other Defendants.

27      768.   Among other retaliatory measures, United, with the Defendants' actual

28  knowledge, directed the vast majority of Plaintiffs' claims to its Special

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Investigations Unit, known variously as Ingenix and/or OptumInsight.  The United

2   Defendants, including but not limited to Defendant Ingenix/OptumInsight, further

3   retaliated against the Plaintiffs by generating various pretextual, unsupported,

4   unwarranted and fraudulent reasons for prolonging the claims review process,

5   including by repeatedly asking for medical records that did not exist and/or were not

6   necessary to adjudicate the claims submitted by Plaintiffs.

7          769.   After this litigation commenced, United and many of the Plan

8   Defendants retaliated yet further by contending – for the first time – that basic

9   benefits (whether for doctors' visits, EGDs, sleep studies, or outpatient surgery) are

10   not available obese patients' health plans, even though such benefits are available for

11   beneficiaries or participants who are not obese.  Defendants' position is not only

12   discriminatory, in violation of the ADA and FEHA, and arbitrary and capricious, but

13   constitutes retaliation against Plaintiffs for providing medical benefits for their obese

14   patient population.  Furthermore, the Defendant retaliated by making new pretextual

15   reasons for non-payment that they never made during the administrative process.

16          770.   As a result, Plaintiffs were unable to assert the ERISA rights that were

17   lawfully assigned to them by their patients.

18          771.   Plaintiffs are expressly permitted by ERISA to bring these claims by

19   assignment, as Section 510 states that "The provisions of section 1132 of this title

20   [*i.e.* 29 U.S.C. § 1132] shall be applicable in the enforcement of this section."

21   **I.**     **United and the ERISA Plans Failed to Provide Documents Relating to**

22            **Their Adjudication of the Claims**

23          772.   Section 502(c)(1) of ERISA imposes a fine of up to $110 per day upon a

24   plan administrator who "fails or refuses to comply with a request for any information

25   which such administrator is required by this subchapter to furnish to a participant or

26   beneficiary." 29 U.S.C. §§ 1132(c)(1); see also *id.* § 1133, 29 C.F.R. §§ 2650.503-1,

27   2575.512c-3.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

171

1201369.1

773.   29 U.S.C. § 1024(b), in turn, requires Defendants to produce the "summary plan description... or other instruments under which the plan is established or operated."

774.   In an appeal letter that Plaintiffs sent to United in United's capacity as both the Claims Administrator and Plan Administrator with respect to many thousands of the patient claims in this case, Plaintiffs explicitly demanded that:

> If you believe that the Claim was previously correctly paid or paid in accordance with the guidelines of the participant's plan, **we demand that you immediately provide the plan, internal policies, guidelines, formulas, procedures, methodologies and/or schedules on how you calculated the payment.**  According to ERISA § 104(b)(2) you must provide this information upon request.

> If the Claim was denied, then we demand you provide in detail with **reference to the terms of the Plan, internal policies, guidelines, formulas, procedures, methodologies and/or... the grounds for the denial.**  According to ERISA § 104(b)(2) you must provide this information upon request.

> In response to this request, you must provide exact and detailed reasons of payment or non-payment.  **Your response must include what you relied on in the Plan, internal policies, guidelines, formulas, procedures, methodologies and/or schedules...**

775.   Similarly, with respect to thousands more of the patient claims in this case, Plaintiffs made the following set of requests for documents to the ERISA Plan Administrators, through the Claim Administrators:

> 29 C.F.R. §2560.503-1(g)(1)(i)-(iv) requires your company to provide documentation that you relied on for any adverse benefit determination "in a manner calculated to be understood by claimant."  Thus, if you continue to refuse to pay this benefit claim in full, this benefit claim will be deemed to be an "adverse benefit determination" under ERISA §503, **and you will be required to send the provider the following information "in a manner calculated to be understood by claimant" within thirty days:**
>
> 1) **a full and complete copy of the Medical Plan for this patient;**
>
> 2) specific and detailed reasons for the adverse determination;
>
> 3) **the internal "claims file" that you have for this claim, including internal memos and notes;**
>
> 4) **any contracts and/or agreements that you have with the employer of this patient;**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

5) **detailed and the exact methodology that was used to calculate the payment**;

6) **references to the specific plan provisions on which the determination is based**;

7) a description of any additional material or information necessary for the provider to perfect the claim and a detailed explanation of why such material or information is necessary; and

8) **a copy and a detailed description of your internal review procedures and the time limits applicable to such procedures**;

9) a detailed log and an electronic audio copy of the recorded phone conversation between your company and the provider.

776.    An exemplar of these letters that were sent to United are attached as Exhibit "B" to this complaint.

777.    These letters constituted formal written requests to the ERISA Plan Administrator Defendants for plan documents as well as other instruments under which the plans were operated.

778.    Plaintiffs maintained detailed records of the thousands of requests for records that they have sent to United.  Since 2010, Plaintiffs have mailed approximately 25,000 letters to United.  As demonstrated above, each of these letters contained multiple requests for multiple kinds of plan documents.  In each instance, the United Defendants ignored these letters, and declined to provide the documents requested therein.  Many of the letters were sent by certified mail.

779.    As referenced in these letters, the ERISA Plans Administrator Defendants (and United, to the extent that United was the plan administrator) were legally obligated by ERISA to provide this information to Plaintiffs.  Pursuant to the assignments of benefits, Plaintiffs step into the shoes of the "participant" or "beneficiary" and obtain, among other things, the same rights to demand plan documents as a participant or beneficiary would.

780.    United, who was in all instances the Claims Administrator and in some instances, the designated Plan Administrator, failed to provide any of the plan

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  documentation that was demanded, despite its clear legal obligation to do so, and

2  despite Plaintiffs' clear need for the documentation.

3      781.   Likewise, the ERISA Plan Administrator Defendants, who were

4  designated as the Plan Administrators under the terms of the plans, failed to provide

5  any of the plan documentation that was demanded, despite their clear legal obligation

6  to do so in response to Plaintiffs' requests, and despite Plaintiffs' clear need for the

7  documentation.

8      782.   Moreover, after this lawsuit was commenced, Plaintiffs issued follow-up

9  document demands to nearly all of the Employer Defendants in this case.  Plaintiffs'

10  follow-up letters expressly demanded all documents to which they were entitled

11  under 29 U.S.C. § 1024.  Plaintiffs' follow-up letters expressly identified the plan

12  beneficiaries and/or participants on whose behalf plan documents were requested,

13  and included the actual Assignments of Benefits forms that Plaintiffs had obtained

14  from the patients at issue.

15      783.   Despite this, the vast majority of the Employer Defendants ignored

16  Plaintiffs' requests.  A number of the Employer Defendants sent responses to

17  Plaintiffs, but refused to produce documents.  Only a small number of Employer

18  Defendants produced SPDs, Administrative Service Agreements (ASAs) between the

19  Employers and United, and/or operative plan documents in response to Plaintiffs'

20  formal document requests, or otherwise provided such documents in the course of

21  informal dealings with Plaintiffs.

22      784.   Also, when Plaintiffs dealt informally with the counsel for various

23  Defendants in this litigation, they always asked for plan documents.  Most

24  Defendants declined to do so.  As a result, Plaintiffs did not receive the vast majority

25  of plan documents for the relevant benefit plans in this case until after this Court

26  ordered Defendants to do so.

27      785.   Plaintiffs' need for plan documents was heightened because United's

28  EOBs and appeal letters consistently failed to identify any provisions in any benefit

plan that United relied upon to deny a claim.  Likewise, United's EOBs, denial letters and appeal letters consistently failed to identify any time limits that were supposedly applicable to the filing of claims and appeals, in violation of the ERISA claims processing regulations.

786.   Plaintiffs were further prejudiced because Plaintiffs lacked and continue to lack access to documents explaining or justifying United's internal claims review procedure, and the time limits applicable to such procedures, and had no practical means to access such documents.

787.   Without any clear explanation as to why United failed to pay, Plaintiffs were powerless to combat Defendants' arbitrary and pretextual requests for documentation, and the other spurious reasons they provided.  Plaintiffs' problems were compounded by the fact that, despite repeated requests, the Defendants refused to provide Plaintiffs with the relevant plan documents.

788.   Not surprisingly, the relationship between the Provider Plaintiffs and their patients has been adversely affected by Defendants' refusal to meet their statutory obligations and provided the needed documents.  Because of the uncertainty as to whether medical services that United authorized will ever be paid for, many of the Providers' patients have elected not to have medical procedures necessary to alleviate the serious symptoms associated with their morbid obesity.  For instance, a number of patients who have received Lap-Band surgeries have decided not to go to follow-up visits with their physicians, or have adjustments made to their Lap-Bands, because United has refused to pay for the original Lap-Band surgery or any of the other associated tests or procedures, even though United authorized those procedures and deemed them medically necessary.  In fact, many patients were unable to follow through with the Lap-Band procedure because United denied payment for the pre-operative testing.

789.   In such situations, because the Provider Plaintiffs are out-of-network with United, United's failure to pay the benefits to which the patients are entitled

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  under their plan means that the patients will incur further personal liability if they see

2  their physicians again, and will ultimately be financially responsible.  This threat of

3  liability, which is effectively created by United's behavior and the Plaintiffs' inability

4  to adequately challenge United's payment decisions, is therefore adversely affecting

5  patient care, destroying the peace of mind to which insured patients are entitled, and

6  effectively inhibiting patients' freedom to make medical decisions.

7  790.   Defendants' actions during the claims process up to the current action in

8  failing to produce documents and in mischaracterizing the administrative record

9  demonstrate bad faith.

10  791.   Through their bad faith failures to provide the requested plan

11  documents, United and/or the ERISA Plan Administrators have incurred, and

12  continue to incur, statutory relief in the amount of $110 per day, per request for

13  which Plaintiffs demanded, but failed to receive, such documentation.  As explained

14  above, each letter to United contained multiple requests for documents.  United and

15  the ERISA Plan Administrators have therefore incurred, and continue to incur, relief

16  for each of the individual requests to which they failed to respond.

17  792.   Defendants have also extensively violated their fiduciary duty to provide

18  the requested documents.

19  **J.    Plaintiffs Have Exhausted All Appeals and Administrative Remedies.**

20  793.   Plaintiffs have exhausted all administrative remedies available to them.

21  They appealed virtually every adverse claim determination made by United, at least

22  in those cases in which United rendered an actual adverse benefit decision.  Plaintiffs

23  have literally sent out **tens of thousands** of appeal letters on unpaid claims.  These

24  letters address each and every one of the reasons for denial provided by United.

25  794.   The following excerpt from one appeal letter sent by Plaintiffs addresses

26  several separate grounds that United commonly asserted for denying claims:

27          [T]he patient for this claim is part of a group health insurance
           policy issued through the insured's employer.  Pursuant to the terms of

28         the Plan, my client was required, and in fact, obtained written approval

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

and pre-authorization prior to the performance of the procedure of this claim.  Based upon this written approval, our office provided the patient with the required necessary medical services.  Thereafter, my client provided your company with a claim requesting payment for the services rendered.

However, your company has improperly refused to process this claim and is withholding and refusing to pay the claim.  Although your letter states that your refusal to process and pay this pending claim is based upon a request for further documentation in support of the claim, we hereby notify you that your failure to pay this claim is a breach of the written approval, a violation of ERISA, and forms the basis for other legal causes of actions, including but not limited to Intentional Misrepresentation.

...

When you initially received my client's claim, if you truly believed at that time that the claim was incomplete, you should have requested additional information within this mandated 15 day time period.  In the alternative, prior to the expiration of the 15 day period, your company could have requested an extension upon showing of good cause as defined by ERISA.  No request for any extension has been received by this office [29 C.F.R. § 2560.503-1(f)(2), (4)].

Therefore, according to ERISA, which regulates this plan, you cannot refuse to process this claim based on the lack of additional information because your 15 days to request the additional information has lapsed.  ERISA makes it clear that you do NOT have any right to request any additional information for the processing of this claim after the 15 day period has expired.  Your withholding of full payment of this pre-service claim is a direct violation of ERISA, among other things.

Your failure to follow the mandatory ERISA claims procedures automatically deems the claimant to have exhausted all internal review/administrative remedies.  As such our office is allowed to immediately pursue all civil causes of actions under ERISA and/or applicable California law. [29 C.F.R. § 2560.503-1(l)].

795.   Plaintiffs' diligent, persistent and thorough efforts to appeal have resulted in virtually no additional payment from United.  United was demonstrably determined not to render claims decisions and not to pay benefits, and additional appeals would therefore have been futile.

796.   In many cases, Defendants have held Plaintiffs' claims submissions in limbo without allowing or denying the claims.  Defendants' continuous course of conduct was intended to withhold all payment from Plaintiffs.  Given that Defendants

1  were demonstrably determined not to pay benefits, no matter what actions were taken

2  by Plaintiffs, additional appeals would have been futile.

3       797.   Where adverse benefit determinations <u>have</u> been made by Defendants,

4  Plaintiffs have expended significant time and resources in trying to appeal those

5  decisions.  Moreover, Defendants failed to process Plaintiffs' claims in a manner

6  consistent or substantially in compliance with the ERISA regulations.  These failures

7  deprive Plaintiffs of the information and due process necessary to effectively appeal

8  Defendants' arbitrary denials.  But just as importantly, because of these failures,

9  Plaintiffs' obligation to pursue further administrative remedies are "deemed

10  exhausted" under the ERISA regulations at 29 C.F.R. § 2560.503-1.

11       798.   Specifically, Section 2560.503-1(f) requires that plan administrators

12  notify Plaintiffs of adverse benefit determinations within 90 days of receipt of the

13  claim by the plan.  Defendants, as the Plan Administrators, or as the delegees of the

14  Plan Administrators' responsibilities to adjudicate claims, were required to render

15  adverse benefit determinations within this allowed time frame.  However, Defendants

16  failed to do so; and in many cases, failed to render an adverse benefit determination

17  at all.

18       799.   Moreover, Section 2560.503-1(g) requires that each adverse benefit

19  determination contain the following information in order that beneficiaries and

20  participants have sufficient information to appeal a claim:

21       (i)     The specific reason or reasons for the adverse determination;

22       (ii)    Reference to the specific plan provisions on which the determination is

23  based;

24       (iii)   A description of any additional material or information necessary for the

25  claimant to perfect the claim and an explanation of why such material or information

26  is necessary;

27       (iv)    A description of the plan's review procedures and the time limits

28  applicable to such procedures, including a statement of the claimant's right to bring a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1    civil action under section 502(a) of the Act following an adverse benefit

2    determination on review;

3        (v)    In the case of an adverse benefit determination by a group health plan or

4    a plan providing disability benefits,

5            (A)    If an internal rule, guideline, protocol, or other similar criterion

6    was relied upon in making the adverse determination, either the specific rule,

7    guideline, protocol, or other similar criterion; or a statement that such a rule,

8    guideline, protocol, or other similar criterion was relied upon in making the

9    adverse determination and that a copy of such rule, guideline, protocol, or

10   other criterion will be provided free of charge to the claimant upon request; or

11           (B)    If the adverse benefit determination is based on a medical

12   necessity or experimental treatment or similar exclusion or limit, either an

13   explanation of the scientific or clinical judgment for the determination,

14   applying the terms of the plan to the claimant's medical circumstances, or a

15   statement that such explanation will be provided free of charge upon request.

16       (vi)    In the case of an adverse benefit determination by a group health plan

17   concerning a claim involving urgent care, a description of the expedited review

18   process applicable to such claims.

19       800.    Despite the clear requirements imposed by these regulations, the EOBs

20   issued by Defendants:

21       • failed to provide *the specific reason or reasons* for their adverse benefit

22           determinations (aside from pretextual reasons such as the supposed

23           inadequacy of medical records submitted);

24       • failed to make reference to *specific plan provisions* on which their

25           benefit determinations or review determinations were based;

26       • failed to describe any *internal rules, guidelines or protocols* relied

27           upon by Defendants in making the adverse benefit determinations,

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

further failed to state that such internal rules, guidelines or protocols were available upon request;

- failed to provide Plaintiffs with a sufficient description of each plan's *review procedures* and the *time limits* applicable to those procedures, even after repeated requests;

- failed to describe any specific additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

801.   Rather, the EOBs issued by the Defendants (when they actually issued EOBs) were nearly devoid of information about the benefit plans, the reason a claim was being partially or fully denied, and the plan provisions and any internal rules or guidelines that were being used to deny the claim.

802.   The EOBs contained a section, titled "Remarks," that included cryptic comments such as, "payment of benefits has been made in accordance with the terms of the managed care system."  In some cases, the EOB represented, without further explanation, that the plan had paid a "reasonable charge" for "covered" health services, yet did not explain how Defendants had calculated which services were covered.  Nor did the EOBs explain how Defendants had calculated the "reasonable" charge.  At best, they stated – without any further explanation of Defendants' methodology, or any reference to operative internal plan documents or guidelines – that the "reasonable" charge was "based on amounts charged by other physicians or health care professionals in the area for similar services or supplies."

803.   The EOBs issued by Defendants frequently did not even explain that the beneficiary or participant of the plan had the right to appeal; what the plan's review procedures were; or what the applicable time limits were.  Moreover, they did not describe what information would be required to make a proper appeal, nor did it explain why such information was necessary.  Thus, United's EOBs were

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

substantively deficient and failed to comply with any of the key requirements of Section 2560.503-1(g) of the ERISA regulations.

804.   The ERISA regulations also govern appeals of adverse benefit determination, and Defendants were also obligated to comply with these regulations. Specifically, Section 2560.503-1(h) requires that every employee benefit plan "shall establish and maintain" a reasonable appeals procedure that affords beneficiaries of the plan a "full and fair review."  This includes "an opportunity to submit written comments, documents, records, and other information relating to the claim for benefits," and that the plan provide "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

805.   Moreover, group health plans administered by the Defendants were required to provide for a review that "does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual." *Id.* (h)(3)(ii).

806.   The ERISA regulations further require that the plan's decision on appeal be rendered "within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan." *Id.* (i)(1)(i).

807.   Yet, when Plaintiffs attempted to appeal Defendants' cryptic claim denials, the Defendants:

- denied Plaintiffs the right to appeal adverse benefit determinations despite clear proof that Plaintiffs possessed valid assignments of benefits to do so on patients' behalf;

- failed to notify Plaintiffs of benefit determinations and review determinations within the reasonable amount of time required after receipt of the claim or appeal;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

- failed to provide review of appeals that did not afford deference to the initial benefit determination, and that was conducted by an appropriate named fiduciary of the plan who is independent of the person who made the initial benefit determination;

- uniformly ignored all requests for documents, records, and other information relevant to the claim for benefits, and failed to provide reasonable access to such information;

- denied efforts on the part of Plaintiffs to its right to become sufficiently acquainted with the terms of the ERISA plans, thereby rendering the administrative appeal a futile and meaningless endeavor.

**K.    Example Patient Claims.**

808.   The following examples amply illustrate why Plaintiffs' claims must be deemed exhausted and that substantive remedies are warranted.  They illustrate the consistency with which United raises, in each example, disingenuous grounds for denial manufactured by United, as well as the ineffectiveness of Plaintiffs' appeals. (To comply with rules regarding protected health information and patient confidentiality, patients' actual names have not been used.

809.   These examples leave no doubt that any further exhaustion of administrative remedies would have been futile.  On information and belief, United's consistent course of conduct reflected a secret agenda by United to deny all payment to Plaintiffs' network of clinics and providers.  No matter what the rationale for the denial, and no matter what efforts were made to appeal, United simply would not allow payment on the overwhelming majority of Plaintiffs' claims.

810.   To comply with rules regarding protected health information and patient confidentiality, patients' actual names have not been used.  A list of all the patient claims at issue will be provided to United:

**Patient 1 - Defendants Time Warner Cable, Inc., and Time Warner Cable Benefits Plan.**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

(A)     Patient 1, a morbidly obese individual, came to Plaintiff New Life Surgery Center's facility complaining of urinary incontinence and pain in the pelvic area.  As treatment for her incontinence, she received abdominal sling surgery at the facilities of Plaintiff New Life Surgery Center in late 2010 and early 2011.  She also received an Esophagogastroduodenoscopy (EGD) and underwent polysomnography (a sleep study) in connection with her morbid obesity.  On information and belief, Patient 1 was covered under a self-funded ERISA health benefits plan administered by United.  In violation of the ERISA regulations as described above, United arbitrarily withheld payment on at least four separate reimbursement claims submitted by Plaintiffs.  United did so by issuing a string of equally baseless denials on each claim.  In response, Plaintiffs sent detailed appeal letters explaining why the reasons relied upon by United failed to stand up to scrutiny.  Yet United failed to change course and pay any of the claims.  United at no point identified actual language in the member's benefit plan justifying any of its denials – because it could not.

(B)     The 2010 Summary Plan Description for this Plan specifically states that "Diagnostic, X-ray and lab tests," "Physicians' Services," "Professional Fees for Surgical and Medical Services," "Surgical Procedures," and "X-ray and lab services," are covered under the Plan.  Furthermore, the SPD states that the fees for these services will be paid at reasonable and customary rates.

(C)     United declined to pay either the surgeon (whose claim was submitted by Plaintiff IMS, through a billing intermediary) or the facility for the abdominal sling surgery, which was performed on January 15, 2011 at the New Life Surgery Center.  United confirmed over the telephone that it received Plaintiffs' facility claim for $35,200 on April 29, 2011.  It also informed Plaintiffs that the claim had been sent to Ingenix for auditing.  United then issued an EOB dated May 23, 2011 that requested a copy of the plan member's ID card.  It issued another EOB dated the following day, May 24, that requested medical records, but provided no other reason

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   for denial.  Plaintiffs provided all the requested information, but United did not

2   process the claim correctly or issue payment.  Rather, the excuses continued: United

3   denied the same claim on the grounds that a related procedure had already been

4   billed.  In an appeal letter on August 24, 2011, Plaintiffs pointed out that the CPT

5   code for this procedure was not related to prior claims, and was in fact a different

6   CPT code.  United then informed Plaintiffs that they could not appeal on behalf of

7   the member because they were not an authorized representative.  In response,

8   Plaintiffs mailed a further appeal letter on September 2, 2011 explaining that

9   Plaintiffs had proof of an adequate assignment of benefits that authorized Plaintiffs to

10  make an appeal on the patient's behalf.  United then responded in a letter dated

11  October 24, 2011 that acknowledged the receipt of the medical records, but claimed

12  without further explanation that eight separate categories of medical records were

13  still required.  However, all of the requested records had either already been

14  provided, or were not relevant to the claim.  To this day, United has declined to pay

15  the claim.

16       (D)     United utilized similar methods in denying and refusing to pay Plaintiffs

17  for the surgeon's claim for the abdominal sling surgery, in the amount of $21,470.

18  United represented to Plaintiffs that the claim had been untimely filed, when it had

19  not; and that medical records were not provided, when they had been; and that

20  Plaintiffs were not authorized to appeal, when in fact they had proof of a valid

21  assignment of benefits from the patient.  Putting the lie to these excuses, United paid

22  Plaintiffs for a claim submitted for the anesthesiologist's services on the exact same

23  surgery, based on the exact same set of medical records provided.  Plaintiffs mailed

24  appeal letters on at least June 10, 2011, August 24, 2011, and September 2, 2011

25  explaining these finer points of claim processing to United.  None of them had any

26  effect and to this date, United has declined to pay this claim.

27       (E)     Similarly, United issued denial after denial for Plaintiffs' facility claim

28  for the EGD, in the amount of $4,590.  On March 18, 2011, United issued an EOB

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   that put the claim on "hold" until medical records were provided, including "[d]aily

2   progress notes," "[m]edication records relative to the treatment, and "[d]urable

3   medical equipment records that include copies of the physicians orders" –

4   information clearly not necessary to process a facility claim.  The EOB promised to

5   "process your claim within 15 days" after the requested records were received.  But

6   once Plaintiff had sent out the claims, the claim was not in fact processed.  Instead,

7   United issued a new EOB that now stated that the claim was denied because

8   Plaintiffs had failed to obtain pre-authorization for the procedure.  On July 19, 2011,

9   Plaintiffs mailed out an appeal noting that no pre-authorization was required under

10  the patient's plan prior to the EGD being performed.  After taking the remainder of

11  the year to "re-process" the claim, United ultimately issued an EOB dated December

12  12, 2011 that purportedly denied the surgeon's claim in its entirety as being "in

13  excess of allowed expense," without explaining what the allowed expense was or

14  identifying any provisions in the plan supporting United's interpretation.  To this day,

15  United has declined to pay the claim.

16        (F)     Likewise, United declined to pay Plaintiffs' $16,525 claim for the sleep

17  study, even though the study required the patient to stay overnight for monitoring.

18  On March 18, 2011, roughly four to five months after the claim was submitted,

19  United issued an EOB that put the claim on hold because medical records purportedly

20  had not been provided.  Plaintiffs sent the requested records out on May 2, 2011, and

21  United later confirmed via telephone that it received the records on May 6, 2011.

22  United, however, failed to process the claim within the 15 days, as the EOB had

23  promised.  Instead, it referred the claim to Ingenix, and directed Plaintiffs to follow

24  up with Ingenix.  Plaintiffs were then told by Ingenix that further medical records

25  were required.  On June 23, 2011, Plaintiffs mailed out an appeal letter that explained

26  that medical records had already been provided.  That same week, United responded

27  by issuing an EOB dated June 29, 2011 denying the claim for yet another reason: that

28  the facility where the sleep study had occurred was not accredited or licensed by the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   state of California.  On August 26, 2011, Plaintiffs mailed out another appeal letter

2   contesting this new reason for denial that explained that United had already paid the

3   same provider on previous occasions, and provided a W-9 and other documentation

4   for the facility.  The appeal had no effect.  To this day, United has declined to pay the

5   claim.

6   **Patient 2 - Defendants Target Corporation and Target Corporation Employee**

7   **Umbrella Trusteed Benefit Plan.**

8          (A)    Patient 2 is a beneficiary under the Target Corporation Employee

9   Umbrella Trusteed Benefit Plan.  Patient 2 received services between November 13,

10  2010, and August 30, 2012, from New Life Surgery Center, Modern Institute of

11  Plastic Surgery, and various other healthcare providers under the auspices of

12  Independent Medical Services, Inc., the medical group for Provider Plaintiffs.  These

13  medical services included a new patient comprehensive consultation and initial

14  evaluation, an endoscopy with anesthesia, an ultrasound, laboratory and pathology

15  testing, a polysomnography, CPAP titration, and a laparoscopic gastric banding

16  procedure with subsequent adjustments.  For each of the procedures, United

17  authorized Patient 2 to receive these pre-operative tests and surgeries at Plaintiffs'

18  surgery centers and/or United informed Plaintiffs that no authorization was necessary

19  for Plaintiffs to provide the services to Patient 2.

20         (B)    Plaintiffs timely submitted claims for the services they provided to

21  Patient 2.  On every claim form that was submitted to United for Patient 2, Plaintiffs

22  expressly informed United that they were proceeding pursuant to their assignment of

23  benefits from Patient 2.  United accepted Plaintiffs' industry-standard claim form

24  submissions.  Yet at no time prior to this lawsuit did United inform Plaintiffs of the

25  existence of any anti-assignment clause; or state that United or any other plan

26  administrator had withheld their consent to Plaintiffs' assignment; or state that any

27  payments being made to Plaintiffs were being made solely on the basis of

28  "discretion" or "convenience."  To the contrary, United's consistent and direct course

1    of dealing with Plaintiffs reflects that Defendants expressly consented to Plaintiffs'

2    assignment of benefits.  Further, Plaintiffs are informed and believed that United was

3    authorized to act as the agent of the administrator of the Plan, such that United was

4    authorized to consent to assignment on behalf of the Plan.

5        (C)    On information and belief, Patient 2's Plan provides benefits for all of

6    the services listed above including diagnostic and therapeutic services, anesthesia

7    services, scopic procedures, laboratory and pathology testing, CPAP titration, sleep

8    studies, doctor's office visits, and laparoscopic gastric banding procedures with

9    subsequent adjustments.  The 2010 SPD for this Plan specifically states that

10   "Outpatient Surgery, Diagnostic and Therapeutic Services," "Physician's Office

11   Services," and "Professional Fees for Surgical and Medical Services," are covered

12   under the Plan.  Additionally, the SPD also states that "Obesity Surgery," is covered

13   under the Plan.  Furthermore, the SPD states that fees for these services will be paid

14   at MNRP rates.

15       (D)    During the verification process, Plaintiffs called United to verify Patient

16   2's benefits under the Plan.  On at least one such telephone call, United confirmed

17   that the Plan would pay the Providers' reasonable and customary charges, and

18   further, confirmed that the Plan would accept provider assignments of benefits.  The

19   Providers provided services to Patient 2 in reasonable reliance on these statements.

20   However, United and the Plan failed to pay the Providers' reasonable and customary

21   charges.

22       (E)    United has paid for some of the services provided by Plaintiffs to Patient

23   2, but has refused to pay for the other services provided.  United has issued final

24   denials on all of Plaintiffs' claims.

25       (F)    United issued Explanations of Benefits ("EOBs") denying the claims on

26   the following grounds:

27       •    "Unable to process [the claim] at this time. Please refer to our
             correspondence indicating the additional information necessary to

28           complete the processing of your claim."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

- "[United] asked provider to send us more information" and that it would "process the claim when [it] receive[d] this information." This EOB did not, however, indicate what specific additional information was required for processing that had not previously been submitted with the claim.

- "The medical documentation that was submitted with this claim has been forwarded for review. We will process this claim when the review has been completed."

- "Your claim was not submitted within the time frame specified in your plan documents or contract.  Consequently, we are unable to consider it for payment.  Please refer to your plan document or contract specific requirements for additional information on permissible timeframes for submitting claims."

- "submitted information was received, however we are unable to process the claim, as one or more of the following items are missing: History and physical; findings on examination; lab, radiology, pathology, and anesthesia test results; consult reports; operative/procedure report; daily progress/treatment/medication notes; physician orders for DME along with a copy of invoice and delivery statement."

- "Our records show we have already processed this charge.  If this is a corrected claim, the Provider resubmit with all original services and charges indicating the correction being made."

(G)    Plaintiffs have submitted all the medical records for the services provided to Patient 2.  In addition medical records were sent with appeals when the denial reason was lack of records and/or incomplete records.

(H)    Plaintiffs have also appealed most or all of the denial of the claims within the time limits set forth in the Plan for such appeals, if any.  In connection with each of those appeals, Plaintiffs made nine requests for documents that the Plan was obligated to provide under ERISA, including requests for a full and complete copy of the Medical Plan for Patient 2 and other instruments under which the Plan is established or operated, including, but not limited to, the internal policies, guidelines, formulas, procedures, methodologies, and/or schedules upon which payment was calculated.  The sample letters that are attached as Exhibits A and Exhibit B to this Complaint sets forth the specific document requests that were made on behalf of Patient 2.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   (I)     To date, United and the Plan Defendants continue to fail to comply with

2   their obligations under ERISA.

3   **Patient 3 - Defendant Apple, Inc., and Apple, Inc. Health and Welfare Benefit**

4   **Plan.**

5   (A)     Patient 3 is a beneficiary under the Apple, Inc. Health and Welfare

6   Benefit Plan.  Patient 3 received services between March 1, 2012, and May 11, 2012,

7   from various healthcare providers under the auspices of Independent Medical

8   Services, Inc., the medical group for Provider Plaintiffs.  These medical services

9   included laboratory and pathology testing, an endoscopy with anesthesia, a

10  polysomnography, and CPAP titration.  For each of the procedures, United

11  authorized Patient 3 to receive these pre-operative tests and surgeries at Plaintiffs'

12  surgery centers and/or United informed Plaintiffs that no authorization was necessary

13  for Plaintiffs to provide the services to Patient 3.

14  (B)     On every claim form that was submitted to United for Patient 3,

15  Plaintiffs expressly informed United that they were proceeding pursuant to their

16  assignment of benefits from Patient 3.  United accepted Plaintiffs' industry-standard

17  claim form submissions.  Yet at no time prior to this lawsuit did United inform

18  Plaintiffs of the existence of any anti-assignment clause; or state that United or any

19  other plan administrator had withheld their consent to Plaintiffs' assignment; or state

20  that any payments being made to Plaintiffs were being made solely on the basis of

21  "discretion" or "convenience."  To the contrary, United's consistent and direct course

22  of dealing with Plaintiffs reflects that Defendants expressly consented to Plaintiffs'

23  assignment of benefits.  Further, Plaintiffs are informed and believed that United was

24  authorized to act as the agent of the administrator of the Plan, such that United was

25  authorized to consent to assignment on behalf of the Plan.

26  (C)     On information and belief, Patient 3's Plan provides benefits for all of

27  the services listed above including laboratory and pathology testing, scopic

28  procedures, anesthesia services, sleep studies, and CPAP titration.  The 2012 SPD for

1   this Plan specifically states that "Doctor's office visit[s]," and "Nonhospital x-ray

2   and lab services," are covered under the Plan.  Furthermore, the SPD states that the

3   fees for these services will be paid at usual and customary rates.

4   (D)     During the verification process, Plaintiffs called United to verify Patient

5   3's benefits under the Plan.  On at least one such telephone call, United confirmed

6   that the Plan would pay the Providers' reasonable and customary charges, and

7   further, confirmed that the Plan would accept provider assignments of benefits.  The

8   Providers provided services to Patient 3 in reasonable reliance on these statements.

9   However, United and the Plan failed to pay the Providers' reasonable and customary

10  charges.

11  (E)     United has refused to pay for any of the services provided to Patient 3.

12  United has issued final denials on all of Plaintiffs' claims.

13  (F)     Plaintiffs have submitted all the medical records for the services

14  provided to Patient 3.  In addition medical records were sent with appeals when the

15  denial reason was lack of records and/or incomplete records.

16  (G)     Plaintiffs have also appealed most or all of the denial of the claims

17  within the time limits set forth in the Plan for such appeals, if any.  In connection

18  with each of those appeals, Plaintiffs made requests for documents that the Plan was

19  obligated to provide under ERISA, including requests for a full and complete copy of

20  the Medical Plan for Patient 3 and other instruments under which the Plan is

21  established or operated, including, but not limited to, the internal policies, guidelines,

22  formulas, procedures, methodologies, and/or schedules upon which payment was

23  calculated.  The sample letters that are attached as Exhibits A and Exhibit B to this

24  Complaint sets forth the specific document requests that were made on behalf of

25  Patient 3.

26  (H)     To date, United and the Plan Defendants continue to fail to comply with

27  their obligations under ERISA.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

**Patient 4 - Defendants Danaher Corporation and Danaher Corporation & Subsidiaries Medical Plan.**

(A)      Patient 4 is a beneficiary under the Danaher Corporation & Subsidiaries Medical Plan.  Patient 4 received services between February 5, 2011, and October 4, 2011, from various healthcare providers under the auspices of Independent Medical Services, Inc., the medical group for Provider Plaintiffs.  These services included a new patient comprehensive consultation, an ultrasound, an endoscopy with anesthesia, a polysomnography, laboratory and pathology testing, a laparoscopic cholecystectomy, and a laparoscopic gastric banding procedure with subsequent adjustments.  For each of the procedures, United authorized Patient 4 to receive these pre-operative tests at Plaintiffs' surgery centers and/or United informed Plaintiffs that no authorization was necessary for Plaintiffs to provide the services to Patient 4.

(B)      Plaintiffs timely submitted claims for the services they provided to Patient 4.  On every claim form that was submitted to United for Patient 4, Plaintiffs expressly informed United that they were proceeding pursuant to their assignment of benefits from Patient 4.  United accepted Plaintiffs' industry-standard claim form submissions.  At no time prior to this lawsuit did United inform Plaintiffs of the existence of any anti-assignment clause; or state that United or any other plan administrator had withheld their consent to Plaintiffs' assignment; or state that any payments being made to Plaintiffs were being made solely on the basis of "discretion" or "convenience."  To the contrary, United's consistent and direct course of dealing with Plaintiffs reflects that Defendants expressly consented to Plaintiffs' assignment of benefits.  Further, Plaintiffs are informed and believed that United was authorized to act as the agent of the administrator of the Plan, such that United was authorized to consent to assignment on behalf of the Plan.

(C)      On information and belief, Patient 4's Plan provides benefits for all of the services listed above including anesthesia services, laparoscopic gastric banding procedures with subsequent adjustments, other laparoscopic procedures, diagnostic

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

1   and therapeutic services, scopic procedures, doctor's office visits, and laboratory and

2   pathology testing.  The 2011 SPD for this Plan specifically states that "Lab, X-Ray

3   and Diagnostics – Outpatient," "Lab, X-Ray and Major Diagnostics – CT, PET

4   Scans, MRI, MRA and Nuclear Medicine – Outpatient," "Physician Fees for Surgical

5   and Medical Services," "Scopic Procedures – Outpatient Diagnostic and

6   Therapeutic," and "Therapeutic Treatments – Outpatient," are covered under the

7   Plan.  Additionally, the SPD also states that "Bariatric Surgery," is covered under the

8   Plan.  Furthermore, the SPD states that fees for these services will be paid at

9   reasonable and customary rates.

10        (D)    During the verification process, Plaintiffs called United to verify Patient

11   4's benefits under the Plan.   The Providers provided services to Patient 4 in

12   reasonable reliance on these statements.   However, United and the Plan failed to pay

13   the Providers' reasonable and customary charges.

14        (E)    United has paid for some of the services provided by Plaintiffs to Patient

15   4 but has refused to pay for the other services provided to Patient 4.  United has

16   issued final denials on all of Plaintiffs' claims.

17        (F)    United issued Explanations of Benefits ("EOBs") denying the claims on

18   the following grounds:

19   •    "[United] asked provider to send us more information" and that it
     would "process the claim when [it] receive[d] this information." This
20   EOB did not, however, indicate what specific additional information
     was required for processing that had not previously been submitted with
21   the claim.

22   •    "The medical documentation that was submitted with this claim
     has been forwarded for review.  We will process this claim when the
23   review has been completed."

24   •    "submitted information was received, however we are unable to
     process the claim, as one or more of the following items are missing:
25   History and physical; findings on examination; lab, radiology,
     pathology, and anesthesia test results; consult reports;
26   operative/procedure report; daily progress/treatment/medication notes;
     physician orders for DME along with a copy of invoice and delivery
27   statement."

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

192

THIRD AMENDED COMPLAINT

(G)   Plaintiffs have submitted all the medical records for the services provided to Patient 4.  In addition medical records were sent with appeals when the denial reason was lack of and/or incomplete records.

(H)   Plaintiffs have also appealed most or all of the denial of the claims within the time limits set forth in the Plan for such appeals, if any.  In connection with those appeals, Plaintiffs made nine requests for documents that the Plan was obligated to provide under ERISA, including requests for a full and complete copy of the Medical Plan for Patient 4 and other instruments under which the Plan is established or operated, including, but not limited to, the internal policies, guidelines, formulas, procedures, methodologies, and/or schedules upon which payment was calculated.  The sample letters that are attached as Exhibits A and Exhibit B to this Complaint sets forth the specific document requests that were made on behalf of Patient 4.

(I)   To date, United and the Plan Defendants continue to fail to comply with their obligations under ERISA.

**Patient 5 - Defendants AT&T Corp., and AT&T Umbrella Benefit Plan.**

(A)   Patient 5 is a beneficiary under the AT&T Umbrella Benefit Plan. Patient 5 received services between March 7, 2011, and December 17, 2011, from New Life Surgery Center, Modern Institute Of Plastic Surgery, and various healthcare providers under the auspices of Independent Medical Services, Inc., the medical group for Provider Plaintiffs.  These services included an endoscopy with anesthesia, a consultation, laboratory and pathology testing, a laparoscopic cholecystectomy, a polysomnography, an ultrasound, an echocardiography, and a laparoscopic gastric banding procedure with subsequent adjustments.  For each of the procedures, United authorized Patient 5 to receive these pre-operative tests and surgeries at Plaintiffs' surgery centers and/or United informed Plaintiffs that no authorization was necessary for Plaintiffs to provide the services to Patient 5.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1      (B)     Plaintiffs timely submitted claims for the services they provided to

2  Patient 5.  On every claim form that was submitted to United for Patient 5, Plaintiffs

3  expressly informed United that they were proceeding pursuant to their assignment of

4  benefits from Patient 5.  United accepted Plaintiffs' industry-standard claim form

5  submissions.  Yet at no time prior to this lawsuit did United inform Plaintiffs of the

6  existence of any anti-assignment clause; or state that United or any other plan

7  administrator had withheld their consent to Plaintiffs' assignment; or state that any

8  payments being made to Plaintiffs were being made solely on the basis of

9  "discretion" or "convenience."  To the contrary, United's consistent and direct course

10  of dealing with Plaintiffs reflects that Defendants expressly consented to Plaintiffs'

11  assignment of benefits.  Further, Plaintiffs are informed and believed that United was

12  authorized to act as the agent of the administrator of the Plan, such that United was

13  authorized to consent to assignment on behalf of the Plan.

14      (C)     On information and belief, Patient 5's Plan provides benefits for all of

15  the services listed above including laboratory and pathology testing, laparoscopic

16  gastric banding procedures with subsequent adjustments, other laparoscopic

17  procedures, anesthesia services, scopic procedures, diagnostic and therapeutic

18  services, sleep studies, and doctor's office visits.  The 2007 SPD for this Plan

19  specifically states that "Outpatient Surgical Facilities," "Physician Services,"

20  "Surgery," and "X-Rays and Lab Tests," are covered under the Plan.  Furthermore,

21  the SPD states that fees for these services will be paid at reasonable and customary

22  rates.

23      (D)     During the verification process, Plaintiffs called United to verify Patient

24  5's benefits under the Plan.  On at least one such telephone call, United confirmed

25  that the Plan would accept provider assignments of benefits.  The Providers provided

26  services to Patient 5 in reasonable reliance on these statements.   However, United

27  and the Plan failed to pay the Providers' reasonable and customary charges.

28

(E)   United has paid for some of the services provided by Plaintiffs to Patient 5 but has refused to pay for the other services provided to Patient 5.  United has issued final denials on all of Plaintiffs' claims.

(F)   United issued Explanations of Benefits ("EOBs") denying the claims on the following grounds:

- "[United] asked provider to send us more information" and would "process the claim when [it] receive[d] this information."  This EOB did not, however, indicate what specific additional information was required for processing that had not previously been submitted with the claim.

- "submitted information was received, however we are unable to process the claim, as one or more of the following items are missing: History and physical; findings on examination; lab, radiology, pathology, and anesthesia test results; consult reports; operative/procedure report; daily progress/treatment/medication notes; physician orders for DME along with a copy of invoice and delivery statement."

- "The medical documentation that was submitted with this claim has been forwarded for review. We will process this claim when the review has been completed."

(G)   Plaintiffs have submitted all the medical records for the services provided to Patient 5.  In addition medical records were sent with appeals when the denial reason was lack of and/or incomplete records.

(H)   Plaintiffs have also appealed most or all of the denial of the claims within the time limits set forth in the Plan for such appeals, if any.  In connection with each of those appeals, Plaintiffs made multiple requests for documents that the Plan was obligated to provide under ERISA, including requests for a full and complete copy of the Medical Plan for Patient 5 and other instruments under which the Plan is established or operated, including, but not limited to, the internal policies, guidelines, formulas, procedures, methodologies, and/or schedules upon which payment was calculated.  The sample letters that are attached as Exhibits A and Exhibit B to this Complaint sets forth the specific document requests that were made on behalf of Patient 5.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1   (I)   To date, United and the Plan Defendants continue to fail to comply with

2   their obligations under ERISA.

3   (J)   United denied at least some of the claims, such as the claims for the

4   April 14, 2011 date of service that submitted on behalf of Patient 5, on the grounds

5   that "the billed services were not supported."  By this statement, United meant that it

6   was denying the claim for the purported failure to provide all medical records, even

7   though all medical records had, in fact, been received – nothing more and nothing

8   less.  This was confirmed when United affirmed its denial of claims on appeal.  In an

9   appeal denial letter dated January 31, 2012, United concluded that "charges remain

10  not supported."  Its sole justification was that:

> •    "The following information is needed in order to complete the review: 1 Previous medical records related to the procedure.  (Records that describe or document the onset, severity of symptoms, conservative treatments, or other surgical treatments rendered including office visits and consultations) 2 Preoperative History & Physical 3 Surgical Consent Form 4 Intraoperative/Perioperative Nursing Record 5 Recovery Room Record 6 Pathology Reports 7 Admission and Discharge Nurses Notes 8 Discharge Instructions 9 Physicians orders 10 Laboratory and X-Ray Reports including MRI, CT, Ultrasound, etc. 11 Itemized Facility Statement.  Once the above information is received, further review of medical records will be performed to confirm appropriate coding and documentation of the billed services."

18  (K)   United's letter further clarified that "[t]his decision does not reflect any

19  view about the medical appropriateness of these services" – i.e., that its denial (and

20  affirmance of the same) was not based upon an evaluation of medical necessity, but

21  rather, only upon the fact that records were purportedly missing.  But United had

22  moved the ball: the records that United now claimed were missing were different

23  from the lengthy list that it previously claimed were missing (see subparagraph (F)

24  above, second bullet).  Of course, Plaintiffs had already submitted all relevant

25  medical records on multiple occasions, and the remaining records requested did not

26  exist and/or were completely irrelevant to United's evaluation of the claim.

27  **Patient 6 - Defendants Aegis Media Americas, Inc., and Aegis Media Americas,**

28  **Inc. Benefitplus Flexible Benefits Plan.**

(A)    Patient 6 is a beneficiary under the Aegis Media Americas, Inc. Benefitplus Flexible Benefits Plan.  Patient 6 received services between January 29, 2011, and August 27, 2011, from Beverly Hills Surgery Center, LLC, Modern Institute of Plastic Surgery, and various other healthcare providers under the auspices of Independent Medical Services, Inc., the medical group for Provider Plaintiffs. These medical services included a laparoscopic gastric banding procedure with subsequent adjustments, anesthesia services, pathology and laboratory testing, a polysomnography, an ultrasound, an endoscopy, and a new patient comprehensive consultation and evaluation.  For each of the procedures, United authorized Patient 6 to receive these pre-operative tests and Surgeries at Plaintiffs' surgery centers and/or United informed Plaintiffs that no authorization was necessary for Plaintiffs to provide the services to Patient 6.

(B)    Plaintiffs timely submitted claims for the services they provided to Patient 6.  On every claim form that was submitted to United for Patient 6, Plaintiffs expressly informed United that they were proceeding pursuant to their assignment of benefits from Patient 6.  United accepted Plaintiffs' industry-standard claim form submissions.  Yet at no time prior to this lawsuit did United inform Plaintiffs of the existence of any anti-assignment clause; or state that United or any other plan administrator had withheld their consent to Plaintiffs' assignment; or state that any payments being made to Plaintiffs were being made solely on the basis of "discretion" or "convenience."  To the contrary, United's consistent and direct course of dealing with Plaintiffs reflects that Defendants expressly consented to Plaintiffs' assignment of benefits.  Further, Plaintiffs are informed and believed that United was authorized to act as the agent of the administrator of the Plan, such that United was authorized to consent to assignment on behalf of the Plan.

(C)    On information and belief, Patient 6's Plan provides benefits for all of the services listed above including laparoscopic gastric banding procedures with subsequent adjustments, sleep studies, laboratory and pathology testing, diagnostic

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

197

1   and therapeutic services, doctor's office visits, anesthesia services, and scopic

2   procedures.  The 2011 SPD for this Plan specifically states that "Outpatient Surgery,

3   Diagnostic and Therapeutic Services," "Physician's Office Services," and

4   "Professional Fees for Surgical and Medical Services," are covered under the Plan.

5   Furthermore, the SPD states that fees for these services will be paid at reasonable and

6   customary rates.

7        (D)     During the verification process, Plaintiffs called United to verify Patient

8   6's benefits under the Plan.  On at least one such telephone call, United confirmed

9   that the Plan would pay the Providers' reasonable and customary charges, and

10  further, confirmed that the Plan would accept provider assignments of benefits.  The

11  Providers provided services to Patient 6 in reasonable reliance on these statements.

12  However, United and the Plan failed to pay the Providers' reasonable and customary

13  charges.

14       (E)     United has paid for some of the services provided by Plaintiffs but has

15  refused to pay for the other services provided to Patient 6.  United has issued final

16  denials on all of Plaintiffs' claims.

17       (F)     United issued Explanations of Benefits ("EOBs") denying the claims on

18  the following grounds:

19       •      "submitted information was received, however we are unable to
        process the claim, as one or more of the following items are missing:
20      history and physical findings on examination; lab, radiology, pathology,
        and anesthesia test results; consult reports; operative/procedure report;
21      daily progress/treatment/medication notes; physician order for DME
        along with copy of invoice and delivery statement."
22
        •      "[United] asked provider to send us more information" and that it
23      would "process the claim when [it] receive[d] this information." This
        EOB did not, however, indicate what specific additional information
24      was required for processing that had not previously been submitted with
        the claim.
25
        •      "The medical documentation that was submitted with this claim
26      has been forwarded for review.  We will process this claim when the
        review has been completed."

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    (G)    Plaintiffs have submitted all the medical records for the services

2  provided to Patient 6.  In addition medical records were sent with appeals when the

3  denial reason was lack of and/or incomplete records.

4    (H)    Plaintiffs have also appealed most or all of the denial of the claims

5  within the time limits set forth in the Plan for such appeals, if any.  In connection

6  with those appeals, Plaintiffs made multiple requests for documents that the Plan was

7  obligated to provide under ERISA, including requests for a full and complete copy of

8  the Medical Plan for Tammy and other instruments under which the Plan is

9  established or operated, including, but not limited to, the internal policies, guidelines,

10 formulas, procedures, methodologies, and/or schedules upon which payment was

11 calculated.  The sample letters that are attached as Exhibits A and Exhibit B to this

12 Complaint sets forth the specific document requests that were made on behalf of

13 Patient 6.

14    (I)    To date, United and the Plan Defendants continue to fail to comply with

15 their obligations under ERISA.

16    811.   Further examples of instances where United and the other Defendants

17 have failed to pay for authorized medical services provided by Plaintiffs to

18 Defendants' beneficiaries, and where Defendants have created pretextual reasons for

19 denial of the claims which is attached hereto as "Appendix A."

20 **L.    Defendants Have Discriminated Against Plaintiffs' Morbidly Obese**

21     **Patients.**

22    812.   In addition to arbitrarily and capriciously withholding and/or denying

23 payment, Defendants have actively discriminated against Plaintiffs' other potential

24 patients who were morbidly obese, thus violating both the ADA and FEHA.  Since

25 passage of the Americans with Disabilities Act Amendments Act of 2008, which

26 expanded the definition of disability, the EEOC has made clear that "severe" or

27 "morbid" obesity is a recognized disability under the ADA.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

813.   Title I of the ADA expressly prohibits employers from discriminating against a "qualified individual" (e.g., employee) on the basis of disability, including through "<u>participating in a contractual... relationship</u> that has the effect of subjecting a covered entity's... employee with a disability to the discrimination prohibited by this subchapter (<u>such relationship includes a relationship with</u> an employment or referral agency, labor union, <u>an organization providing fringe benefits to an employee</u> <u>of the covered entity</u>, or an organization providing training and apprenticeship programs)." 42 U.S.C. § 12112 (emphasis added).  Therefore, Title I encompasses discrimination as to the provision of benefits to employees pursuant to ERISA-regulated benefits plans.

814.   Likewise, California's Fair Employment and Housing Act (FEHA) prohibits discrimination in the provision of such benefits on the basis of "physical disability" except where the discrimination is based upon a "bona fide occupational qualification."  Cal. Gov't Code § 12940(a).

815.   Moreover, employers, such as the Plans and their sponsors, must attempt to make good faith, reasonable accommodations for their employees' disabilities, and the failure to do so is discriminatory.  42 U.S.C. § 12112(b)(5)(A); Cal. Gov't Code § 12940(m).  By not even attempting to accommodate morbidly obese individuals in their attempt to receive health benefits through their employers, Defendants have therefore discriminated against Plaintiffs' patients who were morbidly obese, and/or aided and abetted employers in discriminating against their morbidly obese employees, by arbitrarily denying authorization and/or payment for Lap-Band surgery and related services, even though the employees' plans clearly covered these procedures or should have covered those procedures in order to be considered non-discriminatory.  Defendants did not deny authorizations or payment for other, non-morbidly obese patients.

**1.    <u>Defendants Targeted the Morbidly Obese for Discrimination.</u>**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

816.   The requirement that patients participate in, and certify compliance with, a preoperative weight loss and diet regimen further constituted a prohibited "examination and inquiry" under the ADA "as to the nature or severity of the [patients'] disability."  *See* 42 U.S.C. § 12112(d)(4)(A).  This is because monitoring compliance with the regimen necessarily requires inquiry into the "nature or severity" of the patients' morbid obesity.

817.   Similarly, the requirement that patients provide proof from a doctor's office of their weight or BMI for the each of the past five years also presents an unreasonable barrier to the morbidly obese.  It is unreasonable to demand that a morbidly patient must have documented his or her weight and BMI in each of the five preceding years before he or she can be approved for treatment.

818.   Indeed, on information and belief, Defendants were fully aware that the overwhelming majority of Plaintiffs' patients were morbidly obese, and that, more likely than not, these patients had come to Plaintiffs seeking treatment for their disability.  Nonetheless, in violation of the ADA and FEHA, Defendants elected to apply these heightened and unreasonable tests to Plaintiffs' patients – even though Plaintiffs are informed and believed that other beneficiaries and participants of the plans administered by United were not subjected to this heightened level of scrutiny.

819.   Moreover, as alleged above, many of the Defendants now contend that there were no benefits for any of the medically necessary services provided by Plaintiffs to their patients, on the grounds that the patients were obese or morbidly obese.  Despite not having raised this reason for denial during the administrative process, these Defendants have begun to argue for the first time in this litigation that there are no benefits for medically necessary diagnostic and treatment services for such conditions as hernias, sleep apnea, and GERD – but only for Plaintiffs' morbidly obese patients.  Plaintiffs are informed and believe that Defendants do not deny such covered services if the patients were not obese.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

2. **Defendants Imposed Scientifically Unjustified Requirements on Morbidly Obese Patients Prior to Surgery.**

820.   Numerous of scientific studies and formal reviews of the scientific literature have found that insurance-mandated weight loss and diet plans of the sort imposed by Defendants, through United, fail to improve patient outcomes and are less effective than bariatric surgery alone.

821.   For instance, a 2011 study published in the peer-reviewed journal Surgery for Obesity and Related Diseases reviewed outcomes for 440 patients who underwent gastric surgery by the same surgeon.  *See* Kuwada TS, Richardson S, El Chaar M, Norton HJ, Cleek J, Tomcho J, Stefanidis D., Insurance-mandated medical programs before bariatric surgery: do good things come to those who wait?, Surg Obes Relat Dis. 2011 Jul-Aug;7(4):526-30.  The study concluded: "Patients who underwent a standardized MMP [insurance-mandated medical program] had a significant delay in their time to surgery **and did not experience significant benefit in their preoperative or postoperative weight loss**.  Insurance companies should abandon the policy of mandating preoperative medical weight loss programs."

822.   Likewise, a 2012 meta-analysis of the scientific literature on pre-surgery weight loss programs required by insurance companies concluded that "the insurance-mandated preoperative requirements **confer no appreciable benefit** to bariatric patients.  The ultimate goal of such requirements is questionable, particularly considering that no actual weight loss is required."  Ochner CN, Dambkowski CL, Yeomans BL, Teixeira J, Xavier Pi-Sunyer F, Pre-bariatric surgery weight loss requirements and the effect of preoperative weight loss on postoperative outcome, International Journal of Obesity (2012) 36, 1380-1387.  The article found that requiring a preoperative plan might even be associated with "less-positive postoperative outcomes."  It also concluded that preoperative weight loss requirements would have the perverse effect of rendering patients "ineligible to receive a surgical procedure that would have likely improved their health and quality

1    of life."  Even if enforcing such a policy might have some small benefit to *some*

2    patients, it might be still "unethical" because it would "exclude otherwise eligible

3    candidates from a beneficial surgical procedure in the hopes of improving the

4    postoperative outcomes of others."

5        823.   Other sources are in accord.  For instance, on March 23, 2011, the

6    American Society for Metabolic & Bariatric Surgery (ASMBS), the largest and most

7    prestigious association of bariatric surgeons, released a Position Statement on

8    Preoperative Supervised Weight Loss Requirements which also reviewed the

9    scientific literature and came to similar conclusions.  The scientific evidence, it

10   concluded, simply does not show that preoperative diet and weight loss programs

11   have any effect: "[t]here are no Class I large, adequately powered randomized,

12   prospective trials or meta-analyses to validate the hypothesis that preoperative diet

13   attempts improve bariatric surgery outcomes."  ASMBS Position Statement at 5.[9]

14   Based on its review of the literature, the ASMBS concluded that it is "inappropriate,

15   capricious, and counter-productive given the **complete absence of a reasonable**

16   **level of medical evidence to support such practice**."  *Id*. at 6.

17       824.   Likewise, California's Department of Managed Health Care recently

18   commissioned its own review of the literature on this subject, and concluded quite

19   bluntly that "[m]andated weight loss prior to indicated bariatric surgery *is without*

20   *evidence-based support*."  Department of Managed Health Care, Review of Weight

21   Loss Prior to Bariatric Surgery, at 2.[10]  The DMHC found that the practice was "not

22   medically necessary" and that [t]he risks of delaying bariatric surgery... are real and

23   can be measured."  *Id*.

24

25   [9] At the time of filing of this Complaint, this document was available at:

26   http://asmbs.org/2012/01/preoperative-supervised-weight-loss-requirements/.

27   [10] At the time of filing of this Complaint, this document was available at:

28   http://www.hmohelp.ca.gov/aboutthedmhc/org/boards/cap/BariatricREV.pdf

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

825.   Nor is there any doubt that the benefits of bariatric surgery for morbidly obese individuals are also real, measurable, and significant.  A 2004 meta-analysis published in the prestigious Journal of the American Medical Association, for instance, concluded that "bariatric surgery in morbidly obese individuals reverses, eliminates, or significantly ameliorates diabetes, hyperlipidemia, hypertension, and obstructive sleep apnea. These benefits occur in the majority of patients who undergo surgery."  Henry Buchwald, Yoav Avidor, Eugene Braunwald, et al., Bariatric Surgery: A Systematic Review and Meta-analysis, JAMA, 2004; 292(14):1724-1737. Conversely, "diet therapy, with and without support organizations, is relatively ineffective in treating obesity in the long term."  Id.  In addition, "there are currently no truly effective pharmaceutical agents to treat obesity, especially morbid obesity."

826.   At least two other studies have found similar results.  One is the long-term, Swedish Obese Subjects Study, a longitudinal study which tracks 2,000 subjects who underwent Lap-Band surgery and other kinds of bariatric surgery, along with 2,000 contemporaneously matched obese control subjects receiving usual care, and is still ongoing.  L. Sjöström, Review of the key results from the Swedish Obese Subjects (SOS) trial – a prospective controlled intervention study of bariatric surgery, J Intern Med 2013; 273: 219–234.  This study is in agreement with the results of the JAMA meta-analysis, and in particular, concludes that current drug-only treatments are insufficient and that "[u]ntil more efficient antiobesity drugs are available, surgical treatment of obesity must be more universally accessible."  Results from 2004 to 2012 from the SOS study have demonstrated that "maintained effects on risk factors over 10 years require 10%–30% maintained weight loss."[11]  The SOS concluded that "Surgery is the only treatment for obesity resulting in an average of more than 15% documented weight loss over 10 years." Id at 8.  Similar to the JAMA

---

[11] At the time of filing of this Complaint, this document was available at: http://onlinelibrary.wiley.com/doi/10.1111/joim.12012/pdf.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   analysis, a 2010 review of roughly eight hundred patients in a single Wisconsin

2   hospital during a seven-year span who had either received bariatric surgery, or been

3   denied such surgery by their insurance companies found that those denied obesity

4   surgery had strongly increased incidence of hypertension, diabetes, sleep apnea, and

5   acid reflux, among other disorders.  Harakeh A, Burkhamer K, Kallies K, Mathiason

6   M, Kothari S, <u>Natural history and metabolic consequences of morbid obesity for</u>

7   <u>patients denied coverage for bariatric surgery</u>.  Surgery for Obesity and Related

8   Diseases 6 (2010) 591–596.

9          **3.     <u>Defendants' Conduct is a Subterfuge for Discrimination.</u>**

10          827.   The overwhelming scientific evidence drives home the reality that

11   Defendants' denial of the Lap-Band procedure to morbidly obese individuals is

12   outright discrimination which has nothing to do with underwriting risks.  Instead,

13   Defendants' conduct has everything to do with denying benefits to which those

14   individuals were rightfully entitled.  Thus, Defendants' denials, in addition to being a

15   breach of their fiduciary duties to the plans, were nothing more than subterfuge in

16   order to circumvent the policy goals of the ADA and FEHA and discriminate against

17   individuals who participated in various employer-sponsored health benefit plans or

18   other plans that offered both out-of-network benefits and coverage for bariatric

19   surgery.  *See* 42 U.S.C. § 12201(c).

20          828.   Plaintiffs are also informed and believe that in certain situations,

21   Defendants denied payment for bariatric surgery and related services based upon the

22   purported terms of the patient's benefit plan, which Defendants represented did not

23   cover bariatric surgery, such as the Lap-Band surgery or other procedures.  To the

24   extent that the applicable benefit plans themselves in fact denied coverage for the

25   treatment of obesity, including Lap-Band surgery, however, the design of those plans

26   themselves was discriminatory and violated the ADA and FEHA.

27          829.   Further, and as noted above, numerous Defendants in this lawsuit argue

28   that certain benefit plans that exclude coverage for the Lap-Band surgery (such as

1201369.1

1   exclusions for surgical or nonsurgical treatment of obesity) **also** defeat all coverage

2   for all services under the morbidly obese patients' plans, including diagnostic

3   services (even though diagnosis is separate from treatment), sleep studies (which are

4   intended to diagnose and treat sleep apnea, not morbid obesity), and surgical

5   procedures that have nothing to do with obesity – but only for the obese patients

6   whose claims Defendants have refused to pay.  Defendants' attempt to apply

7   coverage exclusions far more broadly to the morbidly obese than to non-obese plan

8   beneficiaries is another clear and obvious form of discrimination that violates the

9   ADA and FEHA.

10      830.   Likewise, the Lap-Band is sometimes used to treat other medical

11   problems, such as sleep apnea, diabetes, or hypertension.  To the extent that the

12   Providers' patients sought and obtained the Lap-Band for such reasons, such medical

13   treatment would not fall within the scope of such purported coverage-exclusions.

14   Plaintiffs intend to develop facts relating to such medical justifications through

15   discovery.

16      831.   Moreover, to the extent that the applicable benefit plans themselves in

17   fact denied coverage, Defendants failed to make any reasonable accommodation for

18   morbidly obese patients under these plans, and failed to have any discussions with

19   the affected individuals and/or with any plan sponsors or employers about making

20   such accommodations.  Defendants are thus, at the very least, guilty of aiding and

21   abetting the violation of the ADA and FEHA in this respect.

22      **4.   Plaintiffs Have Suffered Injury In Fact.**

23      832.   As a result of Defendants' violations of FEHA and the ADA, Plaintiffs

24   have suffered injury in fact, because the potential patients who came to them seeking

25   Lap-Band surgery for their disability were directly or indirectly denied that

26   opportunity as a result of Defendants' discrimination.  Likewise, Plaintiffs have lost

27   money and/or property as a result of Defendants' denials as alleged above.  Indeed,

28   Defendants' outright refusal to pay any claim submitted by any of the Plaintiffs has

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   impaired their ability to carry out their business affairs, to the point that Plaintiffs

2   may be forced to close their doors and cease providing needed medical services to

3   their morbidly obese patient population.

4       833.   The Defendants have unlawfully shifted the full liability of payment for

5   medical services rendered onto the patients, who have been billed for those services.

6   Defendants' unlawful denial of benefits for those services thereby results in injury in-

7   fact to both the patients and to the Plaintiffs.

8       834.   Moreover, Defendants' denials for the various professional and facility

9   claims at issue in this case has interfered with Plaintiffs' physician-patient

10  relationships and the ability of physicians to care for their patients, such as those

11  needing follow-up appointments for adjustments to their Lap-Band (which are

12  necessary after the band is implanted).  Defendants' conduct resulted in injuries to its

13  insureds' safety and wellbeing and violated their rights to "security" and "peace of

14  mind," which are protected rights for those who maintain insurance.  Defendants'

15  persistent discrimination and failure to pay benefits injured Plaintiffs because it made

16  it impossible for the patients to receive weight loss treatment at Plaintiff's facilities,

17  violated ERISA's implementing regulations, violated ERISA's criminal provisions,

18  violated the ADA and FEHA, and constituted unfair competition against Plaintiffs.

19  Defendants' actions also inflict injury on both its insureds and Plaintiffs because they

20  violate fiduciary responsibilities to the beneficiaries in both their role as an insurer

21  and a third party administrator.

## COUNT ONE

### (By All Plaintiffs for Enforcement Under 29 U.S.C. § 1132(a)(1)(B) For Failure to Pay ERISA Plan Benefits Against All Defendants)

25      835.   Plaintiffs incorporate the prior paragraphs as thought set forth herein.

26      836.   Plaintiffs allege this claim for relief in connection with claims for

27  treatment rendered by their clinics to patients covered by a health benefits plan

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

governed by ERISA.  This is a claim to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).

**A.**     **Plaintiffs are Valid Assignees of Plan Benefits, And Openly Proceeded As Assignees At All Relevant Times.**

837.   Plaintiffs have standing to pursue these claims as assignees of their patient's benefits under the ERISA plans.  As alleged above, as a condition of admission, every patient of the Plaintiff providers signed an Assignment of Rights and Benefits form agreeing to, *inter alia*, assign his or her health insurance benefits to Plaintiffs and their assigns.  Each assignment of benefits provides for Plaintiffs to be paid directly by the patient's insurance for the services provided to the patient and granted them the right to make claims, collect, benefits, appeal, and "take all action necessary to obtain the benefits I have, in good faith, been promised by INSURANCE COMPANY and/or employer on my behalf."

838.   In *Misic v. Building Services Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986), the Ninth Circuit determined that a provider who is "an assignee of [ERISA plan] beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors" against their health plan.  Therefore, Plaintiffs have standing to pursue these claims as an assignee of its patients' benefits under health benefit plans governed by ERISA.

**B.**     **Defendants Violated ERISA's Full and Fair Review Requirements**

839.   ERISA actions under 29 U.S.C. § 1132(a)(1)(B) may be brought not only against plans, plan fiduciaries, and plan administrators, but also against any individual or entity that effectively controls the decision whether to honor or to deny a claim.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. Nov. 5, 2014).  Plaintiffs are informed and believe that Defendants are proper defendants under this definition.

840.   Defendants have breached ERISA plan provisions for benefits by:

a.      arbitrarily preventing claims for reimbursement from being processed and paid;

b.      failing to render a benefits determination at all;

c.      failing to pay Plaintiffs the out-of-network benefits covered under the ERISA plans;

d.      fabricating improper rationales for denial;

e.      refusing to authorize medically necessary out-of-network Lap-Band surgery and related services; and

f.      imposing heightened and discriminatory requirements, in the form of three-and six-months weight loss plans, which were not required by the terms of any of the ERISA plans and had the effect of deterring morbidly obese individuals who were members of the self-insured plans from receiving effective treatment for their condition.

**C.    Plaintiffs Have Exhausted Administrative Remedies and Further Appeals Would Be Futile.**

841.   As alleged above, Plaintiffs have exhausted all administrative remedies available to them.  They appealed virtually every adverse claim determination made by Defendants, at least in those cases in which Defendants rendered an actual adverse benefit decision, as opposed to those cases in which Defendants have merely held Plaintiffs' claims submissions in limbo without allowing or denying the claims. However, Plaintiffs' efforts have not resulted in any payment from Defendants, or in most cases, even a final decision on their claims.  As alleged above, Defendants' continuous course of conduct is intended to withhold all payment from Plaintiffs. Given that Defendants were demonstrably determined not to pay benefits, no matter what actions were taken by Plaintiffs, additional appeals would have been futile.

**D.    Defendants' Adverse Benefit Decisions Must Be Reviewed _De Novo._**

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

842.   As detailed above, United has significant incentives to deny the Provider Plaintiffs' claims outright, as it stands to lose financially if Plaintiffs' claims are allowed.  These structural considerations give rise to an apparent conflict of interest.

843.   As alleged above, United is the same entity that both funds and administers the ERISA plans. United's self-interest and self-dealing has caused a breach of its fiduciary obligations.

844.   Moreover, as alleged above, United has made and continues to make decisions with respect to its own self-interest rather than in the best interests of the Plans and their beneficiaries, as required by law.  As demonstrated herein, United's pretextual rationales, unlawful excuses, and repeated baseless requests for documents evidenced a secret agenda on United's part to deny the claims of the Provider Plaintiffs at any cost.  Further, Defendants concealed their actions by not providing any documents regarding the Plan, how claims are administered etc.  failing to engage in an ongoing, good faith exchange of information.

845.   In light of this material and probative evidence, a *de novo* standard must be applied that does not afford any deference to Defendants' actions in handling these claims.

**E.**     **Plaintiffs are Entitled to Relief under ERISA.**

846.   The Defendants' denial of claims should be reversed because the decisions were wrong, incorrect, improper, unlawful, not based on any evidence, contrary to the plain language of the Plan, an abuse of discretion, and/or arbitrary and capricious.  By reason of the foregoing, Plaintiffs are entitled to past due benefits, future benefits, declaratory relief, prejudgment interest, and attorneys' fees.  The Court should specifically order the Defendants:

    1)    to immediately and timely process the claims in accordance with ERISA, and to cease withholding payment on pretextual, procedural grounds;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

2) to calculate the past and future benefits pursuant to the terms of the plans, utilizing, where applicable, a valid database that takes into account valid data and the UCR factors of the rates charged by the provider and other surgery centers in the same geographic area at the time;

3) to pay the Plaintiff providers' usual and customary fees; and/or to determine the UCR rate at which Plaintiffs should be paid without reference to contracted rates for in-network providers;

4) to properly pay future claims at the usual and customary rate; and

5) to issue new EOBs for past claims, and correct EOBs for future claims, that are in compliance with applicable regulatory notice standards.

## **COUNT TWO**

### **(Enforcement Under 29 U.S.C. § 1132(a)(2) For Breach of Fiduciary Duty Against the United Defendants and the Employer Defendants in Appendix "B")**

847. Plaintiffs incorporates the above paragraphs as though fully set forth herein.

848. Plaintiffs assert this cause of action solely against the United Defendants and the Employer Defendants who are identified in Appendix "B" to this Third Amended Complaint.

849. This cause of action is alleged by Plaintiffs on behalf of all ERISA plan members who received out-of-network services from Plaintiffs, and on behalf of the ERISA plans themselves.  This is a claim pursuant to ERISA § 502(a)(2), 29 U.S.C. §1132(a)(2), which authorizes ERISA beneficiaries to bring a suit for appropriate relief under 29 U.S.C. § 1109.  Section 29 U.S.C. § 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

850.   Plaintiffs have standing to pursue this claim as assignee of the members' benefits under the ERISA plans.  As the assignee of benefits under the ERISA Plans, Plaintiffs step into the shoes of the "beneficiary" and are also the "claimants" for purposes of the ERISA statute and regulations.

851.   United, Optum and each of the ERISA Plan Defendants served as a fiduciary for the ERISA plans at issue.  As fiduciaries, United, Optum and the ERISA Plan Defendants owed the ERISA Plans and the plan members and beneficiaries duties to act with undivided loyalty and prudence in the administration of the plans and to act "solely in the interests of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).

852.   Plaintiffs assert this claim on behalf of the ERISA Plans themselves.

853.   Plaintiffs are informed and believe that the Employer Defendants are usually (though not always) the designated plan administrators for their respective ERISA Plans.

854.   United failed to "act solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104, when it purposely create false and pretextual reasons for delaying the processing of, and denying payment on, the claims of providers for the participants and beneficiaries of the various benefit plans – especially where the plans were fully funded and/or partially funded through the use of stop loss insurance.

855.   Further, even though the Employer Defendants delegated the discretion to adjudicate benefits claims under their respective plans to United, those Defendants retained fundamental fiduciary duties to the beneficiaries, participants, and to the plans.  In particular, those Defendants retained a continuing duty to monitor the actions of their co-fiduciaries.  *Cf. Tibble v. Edison International, et al.*, 135 S.Ct. 1823 (2015).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

856.   Furthermore, Plaintiffs strongly suspect that a primary motivation that United had for denying Plaintiffs' claims is that United is substantially compensated by the Plans denying or underpaying claims. Plaintiffs are informed and believe that when United refuses to pay the Plaintiffs for the services that they have rendered, it is paid a commission by the Plans that is based upon a percentage of how much money the Plans "save" by not having to pay Plaintiffs their usual and customary fees. Thus, United effectively sets its own commission. This not only violates ERISA, but also violates the terms of the plans, which require usual and customary payment, as these artificial "savings," which are determined arbitrarily by United, bear no relation to a proper determination of Usual and Customary fees.

857.   Plaintiffs are informed and believed that the Plans make these kickbacks to United pursuant to programs called the "Shared Savings Program" and/or the "Facility Reasonable Charge Determination Program," which the Plans agree to as part of their agreements with United by which United provides claims adjudication services for the Plans. The goal of the Shared Savings Program and/or the Facility Reasonable Charge Determination Program is to underpay claims made by ASCs such as the Plaintiff providers.

858.   United is compensated under the Shared Savings Program and/or the Facility Reasonable Charge Determination Program at a specific percentage of the money that Defendants would otherwise have had to pay to Plaintiffs, had United correctly paid Plaintiffs' claims. On information and belief, this percentage is usually, but not always, between 30-35% of the amount that is "saved" by failing to pay Plaintiffs' reasonable and customary charges. This provided a major incentive for United to find ways not to pay Plaintiffs' claims, and to deny those claims on pretextual grounds, such as repeated and unfounded requests for irrelevant and nonexistent medical records.

859.   Likewise, United's receipt of kickbacks and/or commissions is an egregious instance of self-dealing and a breach of fiduciary duties it owes to the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

beneficiaries and participants of the ERISA plans.  United's behavior violates, at a minimum, 29 U.S.C. § 1106(b)(2), which states that "A fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account...."

860.   Moreover, United's receipt of kickbacks and/or commissions violates United's duty to "act solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104.

861.   United's receipt of kickbacks and/or commissions also harms the ERISA Plans because United is using Plan funds to pay itself the commissions, rather than using the money to pay legitimate claims for medical services.

862.   Defendants breached their fiduciary duties by (a) failing to properly determine Plan benefits and fairly administer beneficiaries' benefit claims; (b) failing to provide participants and beneficiaries with requested information as required under ERISA statutes and regulations; and (c) improperly delegating Plan administrative duties, and failing to properly supervise to ensure compliance with Plan provisions and ERISA requirements.

863.   Defendants willfully and systematically breached their fiduciary duties of loyalty and prudence by failing to disburse benefits rightfully payable to plan participants and beneficiaries.  Defendants further breached those fiduciary duties by creating improper and spurious reasons and excuses for beneficiaries to obtain their Plan benefits, even though such reasons and excuses were not based on any provisions in the Plans.

864.   Defendants further and willfully breached their fiduciary duties of loyalty and prudence by failing systematically to provide valid reasons for denials of beneficiary claims, by systematically failing to comply with ERISA requirements for identifying the bases for adverse benefits, and by systematically failing to provide documents and information requested by Plaintiffs to perfect their appeals.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

865.   Defendants also breached their duty to process Plaintiffs' claim for benefits diligently and in good faith.

866.   United further breached its fiduciary duty of care by misrepresenting through its preapprovals that the procedures would be covered services when in fact they would ultimately be denied payment.  Similarly, to the extent United represented to Plaintiffs that it would pay Plaintiffs' usual and customary fees and subsequently did not, it has violated its fiduciary duties for which equitable relief is requested.

867.   The ERISA Plan Defendants breached their fiduciary duties by continuing to delegate their duties to administer the plans to the United Defendants even when it became apparent that the United Defendants were failing to administer claims in accordance with the Plan provisions, and was not managing the respective ERISA Plans for the benefit of plan participants and beneficiaries.  The ERISA Plan Defendants also failed to supervise and review the actions of United to ensure that they complied with the Plan documents and ERISA requirements.

868.   United further breached its fiduciary duties by delegating its duties as the Plan Administrator and/or Claims Administrator for each plan to an unqualified third party, Ingenix.  Ingenix was not qualified to review Plaintiffs' claims, and United's reason for delegating such claims to Ingenix was not only to benefit itself but also for the purpose of inducing delay into the claims process and to avoid complying with United's fiduciary duties towards plan participants and beneficiaries.  By delegating to Ingenix, United thus enabled the further breaches of its fiduciary duties described in the above paragraphs.

869.   Pursuant to 29 U.S.C. §1105, named fiduciaries such as the ERISA Plan Defendants are liable for the fiduciary breaches of the United Defendants because the ERISA Plan Defendants continued to improperly delegate their duties to the United Defendants.

870.   Also pursuant to Section 1105, the ERISA Plan Defendants are liable for the breach of their co-fiduciaries, the United Defendants, because they were aware of

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   the breaches being committed by the United Defendants, yet made no reasonable

2   efforts under the circumstances to remedy the breaches, and in some instances,

3   participated knowingly in, or knowingly undertook to conceal, the improper acts or

4   omissions of the United Defendants, knowing those acts or omissions were breaches

5   of fiduciary duty.

6       871.   Section 1105(a) effectively imposes on every ERISA fiduciary an

7   affirmative duty to prevent other fiduciaries from breaching their duties for which

8   they are jointly and severally liable.

9       872.   By knowingly applying inappropriate criteria in order to improperly

10  deny benefits for medical services to ERISA plan participants and beneficiaries, in

11  violation of the terms of the plan documents, for the benefit of United and the plan

12  sponsors, United and the Plan sponsors jointly violated their fiduciary duties set forth

13  in 29 U.S.C. §§ 1105(a)(1), (a)(2) and (a)(3).

14      873.   United violated 29 U.S.C. § 1105(a)(1) by knowingly participating in

15  the Defendants' failure to provide the relevant plan documents that ERISA requires

16  Plan Administrators to provide in response to Plaintiffs' repeated requests.

17      874.   In connection with these same failures, United and Ingenix further

18  breached their fiduciary duties of prudence and loyalty to plan beneficiaries and

19  participants, and thereby enabled further breaches of the fiduciary duties owed by the

20  Plans and Plan Sponsors.  The Defendants instituted United as (1) claims

21  administrator, and (2) the entity in charge of providing plan documents to

22  beneficiaries upon request.  The Plans and Plan Administrators failed to properly

23  train the United entities, including but not limited to Ingenix, concerning its

24  disclosure obligations and failed to make sure United was conversant with all plan

25  provisions, definitions and procedures with respect to Claims Administration. The

26  breach of these duties gives rise to liability pursuant to § 1105(a)(2) & (3).

27      875.   Further, United failed to properly train its employees concerning its

28  disclosure obligations and failed to make sure its employees and Ingenix were

1201369.1

1  conversant with all plan provisions, definitions and procedures.  The breach of these

2  duties also gives rise to liability for United's breach pursuant to § 1105(a)(2) & (3).

3       876.   In light of all Defendants' systematic and willful violations of their

4  fiduciary duties to plan beneficiaries and participants, Plaintiffs, as assignee of the

5  members' benefits, on behalf of the members of the ERISA Plans, and on behalf of

6  the ERISA Plans themselves, seek an injunction to remove United from acting as the

7  Plan Administrator and/or Claims Administrator for each of the ERISA plans at

8  issue; and an injunction against the Employer Defendants to cease willful and

9  systematic breaches of their fiduciary duties, and specifically to cease the improper

10 delegation of those fiduciary duties to United.

## COUNT FOUR

### (By All Plaintiffs for Estoppel Under 29 U.S.C. § 1132(a)(3) Against All Defendants Who Assert Anti-Assignment Clauses In This Litigation)

15      877.   Plaintiffs incorporate the prior paragraphs as though fully set forth

16 herein.

17      878.   This is a cause of action pursuant to 29 U.S.C. § 1132(a)(3) to estop all

18 Defendants from asserting previously hidden and undisclosed anti-assignment

19 clauses as an impediment to Plaintiffs' standing to assert its patients' rights and

20 causes of action under ERISA.  This is not a cause of action for plan benefits, but

21 rather, is only asserted as a defense to the extent that particular Defendants seek to

22 assert anti-assignment clauses to deprive Plaintiffs of standing under ERISA, despite

23 previously assuring Plaintiffs that they could rely on their valid assignments of

24 benefits from their patients.

25      879.   In the Court's February 3, 2016 Order Granting In Part and Denying In

26 Part Defendants' Motion to Dismiss, the Court dismissed Count Four as it relates to

27 the ambiguous UCR provisions found in the plans, without leave to amend.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

However, the Court did not rule upon Count Four as it relates to anti-assignment clauses, nor did it examine the *Care First* framework, which permits the pleading of an estoppel claim under ERISA in the specific context of anti-assignment clauses. *See Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, Case No. No. CV 14-01480 MMM AGRx, 2014 WL 6603761, at *13 (C.D. Cal. July 28, 2014) ("*Care First I*"); *Care First Surgical Center v. ILWU-PMA Welfare Plan*, Case No. 14-CV-01480 MMM, Dkt. #46 (C.D. Cal. December 26, 2014) ("*Care First II*") (Morrow, J.). Accordingly, because the Court's dismissal of Count Four related only to the use of estoppel to seek plan benefits, Plaintiffs reassert the portion of Count Four that does not relate to benefits, and only relates to anti-assignment clauses.

880. The Court has previously held that Plaintiffs have standing under their original assignments of benefits to assert a cause of action for estoppel under ERISA.

881. No alleged anti-assignment clauses have yet been asserted against Plaintiffs with respect to the Third Amended Complaint, so Plaintiffs cannot yet identify the specific clauses that they seek Defendants from asserting. To the extent that Defendants will, in the future, assert the same anti-assignment clauses that they have asserted in connection with the prior motions to dismiss the Second Amended Complaint or the First Amended Complaint, then this cause of action is directed towards those specific clauses, which are incorporated herein by reference.

882. As explained above, Plaintiffs' pre-suit activities made clear to at least the United Defendants that Plaintiffs were proceeding solely pursuant to their assignments of benefits Defendants therefore had an obligation to speak up and identify the relevant anti-assignment clauses upon which they now attempt to rely. In spite of this, Defendants never mentioned any of their anti-assignment clauses until after this litigation had commenced.

883. Moreover, in hundreds of instances, the United Defendants affirmatively represented, when asked, that the relevant plans would accept provider assignments of benefits. In response to the question regarding whether each given plan accepted

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

provider assignments of benefits, United never referenced any anti-assignment clauses that would prevent any of the Plan Defendants from accepting Plaintiffs' assignments of benefits.

884.   Plaintiffs reasonably and actually relied upon the statements made by the United Defendants that hundreds of the relevant benefit plans would accept provider assignments of benefits, as well as upon Defendants' overall course of conduct in which they dealt directly with Plaintiffs for years, but failed to identify any anti-assignment clauses even though they were aware that Plaintiffs were acting pursuant to their assignments of benefits, and not solely as their patients' authorized representatives.

885.   During the same calls in which Plaintiffs sought to verify benefits, Plaintiffs also inquired whether the relevant plan at issue accepted provider assignment of benefits.  A very large majority of the time, the United representative responded that such assignments of benefits would be accepted.  Further, despite the opportunity to do so, United's representatives never identified any anti-assignment clauses that would supposedly prevent the plans from accepting the Providers' assignments of benefits.  Nor did the representatives ever inform Plaintiffs that if Plaintiffs would be paid at all, it would be purely for the convenience of the applicable benefit plan (as Defendants now contend in litigation).

886.   Again, in reliance on these representations, Plaintiffs in good faith rendered medical services to the patients.  Having provided these valuable medical services, Plaintiffs have now been harmed because Defendants have not only failed to pay, but now contend for the first time in this lawsuit that Plaintiffs do not have standing to seek benefits due to the existence of supposed, and previously undisclosed, anti-assignment clauses in many of the benefit plans.  Plaintiffs relied on Defendants' representations and course of conduct to their detriment, because they provided medical care up front to the patients, and are now supposedly unable to recover payment.

887.   Prior to bringing this lawsuit, Plaintiffs at all times acted pursuant to their assignments of benefits from the patients.  For instance, Plaintiffs checked a box on every single claims reimbursement form submitted to the Defendants that indicated that Plaintiffs were acting pursuant to their assignments of benefits.  Likewise, Plaintiffs routinely submitted proof of their signed assignment of benefits forms from their patients to United.  And Plaintiffs' appeal letters expressly informed Defendants that their appeals were being made pursuant to Plaintiffs' valid assignments of benefits.

888.   At no time did Plaintiffs indicate to United or to anyone else that they were proceeding purely as authorized representatives, or that they sought to secure the payment of benefits that would be paid directly to the patients, rather than to the Plaintiffs as compensation for the medical care that Plaintiffs provided to the patients at no upfront cost.

889.   At all relevant times, Plaintiffs reasonably believed that the language of the plans as they pertained to provider assignment were ambiguous.  Plaintiffs' belief was reasonable, because as described in detail above, Plaintiffs effectively lacked all access to the plan documents containing such terms.

890.   Plaintiffs relied on Defendants' course of conduct and affirmative representations to their detriment.  Had Plaintiffs known that Defendants intended to rely upon undisclosed anti-assignment clauses, Plaintiffs' behavior would have been very different.  For instance, if Plaintiffs knew that there was no guarantee of getting paid due to the existence of an anti-assignment clause, and that any payments to them would supposedly been have made only for "convenience," Plaintiffs simply could have declined to provide free upfront medical care to Defendants' beneficiaries or participants.  It was certainly never Plaintiffs' intent to provide free care.  Again, the Plaintiffs at all times made clear that they were seeking payment of benefits for the care that they provided <u>on their own behalf</u> – not on behalf of patients who were already being provided with free upfront medical care.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

891.   Plaintiffs likewise relied on the representations made by United during hundreds of phone calls.  A large majority of the time, when Plaintiffs asked United directly about whether assignments would be accepted, United confirmed that they would.  Again, had Plaintiffs known that their assignments would not be accepted, they would have acted very differently.

892.   Extraordinary circumstances exist because of the breathtaking scope of Defendants' willful and systematic breaches of the fiduciary duties they owed to the beneficiaries and participants of the ERISA Plans, and the resulting non-payment of millions of dollars' of reasonable and customary charges for medical services that the Provider Plaintiffs provided to beneficiaries, participants and insureds of benefit plans administered and/or funded by the United Defendants, to the severe detriment of Plaintiffs.  It would be extraordinarily *unfair* for Defendants to benefit from the much-needed medical services that Plaintiffs provided to their patients, yet have no corresponding obligation to pay, because of an undisclosed technicality in certain benefit plans.

893.   Accordingly, Defendants should be estopped from asserting any anti-assignment clauses that Defendants claim are contained in the operative documents governing certain benefit plans in this litigation, to defeat Plaintiffs' standing under the ERISA statute.

## COUNT SEVEN

**(By All Plaintiffs against the United Defendants and the ERISA Plan Administrator Defendants Identified in Appendix "B" for Failure to Produce Documents Under 29 U.S.C. §§ 1024(b), 1104, and 1133(2), and for Statutory Relief Under 29 U.S.C. § 1132(c)(1), injunction relief under 29 U.S.C. § 1132(c)(1) and equitable relief under 29 U.S.C. § 1132(a)(3))**

894.   Plaintiffs incorporate the prior paragraphs as though fully set forth herein.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

895.   Plaintiffs assert this cause of action solely against the ERISA Plan Administrator Defendants who are identified in Appendix "B" to this Third Amended Complaint.

**A.**   **Plaintiffs Were (And Are) Entitled to Plan Documents Under 29 U.S.C. § 1024(c).**

896.   29 U.S.C. § 1024(b) requires the plan administrator to produce the "summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

897.   Similarly, "it is the view of the Department of Labor that for purposes of section 104(b)(2) and 104(b)(4), any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement under an employee benefit plan would constitute an instrument under which the plan is established or operated, regardless of whether such information is contained in a document designated as the 'plan document' " Dep't of Labor Adv. Op. Letter 96-14a (July 31, 1996).

898.   The documents sought by Plaintiffs fall within the ambit of this section. As this Court, and the Ninth Circuit, have noted:

> The relevant documents are those documents that provide individual participants with information about the plan and benefits.  As the legislative history bears out, the documents contemplated by § 104(b)(4) are those that allow "the individual participant [to] know[] exactly where he stands with respect to the plan – what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted. S. Rep. No. 127, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863.

*Eden Surgical Center v. Budco Group, Inc.*, No. CV-09-3991 AHM (Ex), 2010 WL 2180360, at *6 (May 27, 2010) (citing *Hughes Salaried Retirees Action Committee v.*

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1201369.1

1   *Administrator of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th

2   Cir. 1995)).

3   899.   The documents sought by Plaintiffs, but which were not provided by

4   Defendants for years, if at all, are "instruments under which the plan is established

5   and operated."  Plaintiffs have requested in writing all documents and instruments

6   relied upon by defendants to determine what claims and amounts were reimbursable

7   under the plans.  Those documents and instruments govern the operation of the plan.

8   *Mondry v. Am. Family Mut. Ins. Co.,* 557 F.3d 781,801 (7th Cir. 2009).

9   900.   The purpose of the disclosure provisions of 29 U.S.C. § 1132 is to

10   ensure that "the individual knows exactly where he stands with respect to the plan[.]"

11   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989). Without these

12   documents, plaintiffs do not know exactly where they stand with respect to the plan.

13   Without the information, plaintiffs do not have all of the information they need in

14   order to know how claims are processed and reimbursements (or lack thereof) were

15   calculated.

16   901.   As instructed by the ERISA Plan Defendants, Plaintiffs directed all

17   requests and appeals for documents relating to the operation of the plans to United.

18   On information and belief, United was the designated Plan Administrator for certain

19   plans, such as certain fully-insured plans.

20   902.   As set forth in detail above, United and the ERISA plan defendants,

21   have repeatedly, in bad faith, refused to produce any of the documents requested by

22   Plaintiffs, despite tens of thousands of requests to United.  Even though Plaintiffs'

23   letters demanded that United inform the plan sponsors about Plaintiffs' concerns,

24   many of whom were the administrators of their respective benefit plans, United

25   deliberately chose not to forward those letters onto the plans.

26   903.   Further, and as also set forth above, Plaintiffs issued follow-up

27   document demands to nearly all of the Employer Defendants in this case after this

28   lawsuit started.  Plaintiffs' follow-up letters expressly demanded all documents to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   which they were entitled under 29 U.S.C. § 1024.  Only a small number of Employer

2   Defendants produced plan documents in response to Plaintiffs' requests.[12]

3       904.   There are two possible reasons for United's and most of the Employer

4   Defendants' refusal to even respond to the requests for governing plan documents.

5   The first possibility is that Defendants lacked administrative processes and

6   safeguards to ensure claim determinations were made in accordance with plan

7   documents and that similarly situated claimants were treated similarly, and that no

8   statements of policy or guidance existed to guide Defendants' representatives in

9   evaluating Plaintiffs' claims.  The second reason is that Defendants had such

10  processes, safeguards, and policies, but refused to share them with Plaintiffs during

11  the claims process.  Either situation would violate ERISA regulations, either directly,

12  under 29 U.S.C. § 1132(c)(1), or indirectly, as a breach of fiduciary duty, under 29

13  U.S.C. § 1104(a)(1)(A).

14      The Defendants' refusal to produce ERISA-mandated documents continued

15  into this action, and in some cases, to the present day, to the extent that ERISA plans

---

17  [12] Employers Defendants who provided plan documents in response to Plaintiffs'
18  request include, though perhaps are not limited to, the Accenture Defendants, Best
    Buy Defendants, Experian Defendants, Informa USA Defendants, NEC Defendants,
19  Parsons Defendants, Pfizer Defendants, Rexam Defendants, TGI Friday's
    Defendants, Textron Defendants, The Children's Place Defendants, The Clorox
20  Defendants, The Travelers Defendants, The Turner Defendants, Time Warner
21  Defendants, TTX Defendants and Verizon Defendants.  Employer Defendants who
    provided plan documents to Plaintiffs after the start of this lawsuit include, but
22  perhaps are not limited to, APL Limited Defendants, Aptco Defendants, BMW
23  Defendants, Baker Hughes Defendants, Building Materials Defendants, CommScope
    Defendants, Crowley Holdings Defendants, Gap Defendants, GlaxoSmithKline
24  Defendants, Global Mail Defendants, Maersk Defendants, Pentair Defendants,
    Quantum Defendants, Southern California Edison Defendants, Southwest Airlines
25  Defendants, The Guardian Defendants, The Tribune Defendants, Wal-Mart and
26  Whirlpool Defendants.  Other than these Employer Defendants (and perhaps a few
    others), no Defendants bothered to produce documents to Plaintiffs, and many
27  outright refused to do so.

1  still have not produced the operative plan documents that the Court ordered them to

2  produce in April 2015.

3    905.   Under 29 U.S.C. § 1132(c)(1), "the court may in its discretion order

4  such other relief as it deems proper."  Plaintiffs request relief in the amount of $110

5  per day for Defendants' failure to produce the legally required documents that the

6  Defendants expressly and repeatedly refused to produce over a period of many years.

7    **B.**    **Plaintiffs Were (And Are) Entitled to Plan Documents Under 29**

8         **U.S.C. § 1104.**

9    906.   29 U.S.C. § 1104(a)(1)(A) imposes a duty upon plan fiduciaries to

10  provide to beneficiaries and participants all information requested by those

11  beneficiaries and participants that "relates to the provision of benefits or the

12  defrayment of expenses [of administering the plan]."  *Hughes Salaried Retirees*

13  *Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 693 (9th

14  Cir. 1995).

15    907.   Despite over 25,000 requests by Plaintiffs, Defendants failed to produce

16  any documents relating at least to "the provision of benefits" under the applicable

17  ERISA benefit plans.

18    908.   Defendants have therefore breached their fiduciary duties to administer

19  the Plans "with the care, skill, prudence, and diligence under the circumstances then

20  prevailing that a prudent man acting in a like capacity and familiar with such matters

21  would use in the conduct of an enterprise of a like character and with like aims," 29

22  U.S.C. § 1104(a)(1)(B).

23    **C.**    **Plaintiffs Were (And Are) Entitled to Plan Documents Under 29**

24         **U.S.C. § 1133(2)**

25    909.   29 U.S.C. § 1133(2), as implemented by 29 C.F.R. 2560.503-1, specifies

26  that

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

"… the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 C.F.R. 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—

(i)   The specific reason or reasons for the adverse determination;

**(ii)   Reference to the specific plan provisions on which the determination is based;**

(iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)   A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v)   In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits;

**(A)   If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request;** or

(B)   If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(vi)  In the case of an adverse benefit determination by a group health plan concerning a claim involving urgent care, a description of the expedited review process applicable to such claims.

910.  ERISA's claims regulations identify precisely the documents requested by plaintiffs from defendants in writing, including plan provisions upon which the Defendants supposedly relied to deny the claims, and any internal rules, guidelines, or protocols they used to deny the claims.  As instructed by the ERISA Plan defendants, the Provider Plaintiffs made such requests of the plans' agent, United. United was in all instances the Claim Administrator, and in some instances, the designated Plan Administrator, to whom administrative duties were expressly delegated by the plans, and/or plan sponsors.

911.  In thousands of appeals letters that Plaintiffs sent to United in United's capacity as both the Claims Administrator and Plan Administrator with respect to many thousands of the patient claims in this case, Plaintiffs explicitly demanded that:

If you believe that the Claim was previously correctly paid or paid in accordance with the guidelines of the participant's plan, **we demand that you immediately provide the plan, internal policies, guidelines, formulas, procedures, methodologies and/or schedules on how you calculated the payment.**  According to ERISA § 104(b)(2) you must provide this information upon request.

If the Claim was denied, then we demand you provide in detail with **reference to the terms of the Plan, internal policies, guidelines, formulas, procedures, methodologies and/or... the grounds for the denial.**  According to ERISA § 104(b)(2) you must provide this information upon request.

In response to this request, you must provide exact and detailed reasons of payment or non-payment.  **Your response must include what you relied on in the Plan, internal policies, guidelines, formulas, procedures, methodologies and/or schedules...**

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

912.   Similarly, with respect to thousands more of the patient claims in this case, Plaintiffs made the following set of requests for documents to United in United's capacity as both the Claims Administrator and Plan Administrator:

29 C.F.R. §2560.503-1(g)(1)(i)-(iv) requires your company to provide documentation that you relied on for any adverse benefit determination "in a manner calculated to be understood by claimant."  Thus, if you continue to refuse to pay this benefit claim in full, this benefit claim will be deemed to be an "adverse benefit determination" under ERISA §503, **and you will be required to send the provider the following information "in a manner calculated to be understood by claimant" within thirty days:**

1) **a full and complete copy of the Medical Plan for this patient**;

2) specific and detailed reasons for the adverse determination;

3) **the internal "claims file" that you have for this claim, including internal memos and notes**;

4) **any contracts and/or agreements that you have with the employer of this patient**;

5) **detailed and the exact methodology that was used to calculate the payment**;

6) **references to the specific plan provisions on which the determination is based**;

7) a description of any additional material or information necessary for the provider to perfect the claim and a detailed explanation of why such material or information is necessary; and

8) **a copy and a detailed description of your internal review procedures and the time limits applicable to such procedures**;

9) a detailed log and an electronic audio copy of the recorded phone conversation between your company and the provider.

913.   Plaintiffs maintained detailed records of the thousands of requests for records that they have sent to United.  As demonstrated above, each of these letters contained multiple requests for multiple kinds of plan documents.

914.   Despite plaintiffs repeated requests, United and the ERISA plan defendants have failed and refused to respond to the requests, and have failed and refused to produce any such documents.  As this Court in *Eden Surgical Center* held, plaintiffs are entitled to such documents.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

D.   **ERISA Provides for Statutory Relief**

915.   Section 502(c)(1) of ERISA imposes a fine of up to $110 per day upon a plan administrator who "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1); 29 C.F.R. 2575.512c-3.

916.   In *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 90 (2d Cir. 2001), the court listed the factors to consider in determining whether to impose relief "including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and the documents withheld, and the existence of any prejudice to the participant or beneficiary."  Every one of these factors is present in this case.

917.   This case involves thousands of patients.  Over the course of many years, Plaintiffs sent letters to United requesting the documents upon which it relied in either denying or underpaying the claims.  For many patients, multiple letters were sent requesting the information that ERISA requires plans to provide.  Since 2010, plaintiffs have mailed in excess of document request letter 25,000 letters and **none** have been answered.  Many of the letters were sent by certified mail.

918.   Likewise, Plaintiffs issued follow-up document demands to all of the Defendants in this action.  As alleged above, the majority Defendants continued to ignore Plaintiffs' requests.  Even if they responded to those requests, they declined to produce any of the documents sought by Plaintiffs.  Only a limited number of Defendants bothered to provide Plaintiffs with complete versions of relevant plan documents, whether in response to Plaintiffs' formal document demands or otherwise, before the Court finally ordered Defendants to do so two months ago.

919.   United and the ERISA Plan Defendants have intentionally, and in bad faith, refused to even respond to the letters.  Moreover, United and the plan defendants have intentionally, and in bad faith, refused to produce any documents in response to the letters.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

920.   The failure of the Defendants to produce the documents in response to Plaintiffs' repeated requests for information, which the Defendants were required to furnish under at least Sections 1024, 1104, and 1133 of ERISA, severely prejudiced plaintiffs and their patients.  As a result of defendants' refusal respond to the document requests, plaintiffs and their patients were unable to know where they stand with respect to the plan benefits, whether the authorized, medically necessary services would be paid according to the terms of their plans, what information and documents are needed to obtain the plan benefits to which they are entitled, or what procedures to follow to obtain such benefits.  As a result of the uncertainty as to whether their United-authorized medical services will ever be paid for, many patients have chosen not to have medical procedures necessary to alleviate their serious symptoms.  For example, some patients who have received Lap-Band surgeries have chosen not to go to follow up visits with their physicians, or have adjustments to the Lap-Bands, because of their uncertainty of their situations.  Other patients who have undergone pre-operative testing and have qualified for Lap-Band surgery, have not had the Lap-Band procedures done because of defendants' actions.  Other patients have not had some pre-operative tests performed, or other medically necessary surgeries performed, because of defendants' bad faith actions.  Thus, Defendants have purposely interfered with the patient-physician relationship and compromised the health and thousands of patients.

921.   Plaintiffs have suffered prejudice due to Defendants' failure to provide the documents requested because Plaintiffs were unable to identify the specific plan provisions upon which the Defendants purportedly based their denials.  Thus, because Plaintiffs lacked access to the plan documents for many years, Plaintiffs were unable to effectively appeal Defendants' denials of their claims.  Moreover, Plaintiffs lacked access, and continue to lack access to, documents explaining or justifying United's internal claims review procedure, and the time limits applicable to such procedures.  Thus, Plaintiffs were powerless to combat the Defendants'

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

1201369.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   apparently arbitrary and pretextual requests for documentation and ultimately, their

2   unexplained denials of Plaintiffs' claims.

3       922.   The relationship between the physicians and their patients has been

4   adversely affected by Defendants' actions and/or inaction.  Many providers have

5   been unable to provide the medically necessary surgeries or services to their patients

6   because of the uncertainty created by Defendants' actions.  Plaintiffs' practices and

7   businesses have evaporated, and many employees have had to be terminated, because

8   of Defendants' bad faith actions.

9       923.   United and the ERISA Plan Defendants have no justification for refusing

10  to comply with their statutory obligations to provide the necessary information to

11  Plaintiffs.  Therefore, United and/or the ERISA Plan Defendants have incurred, and

12  continue to incur, statutory relief in the amount of $110 per day, per each request for

13  which Plaintiffs demanded, but failed to receive, such documentation.  The maximum

14  amount of restitution is appropriate in this case due to 1) the administrator's bad faith

15  and/or intentional conduct; 2) the length of the delay; 3) the number of requests

16  made; 4) the extent and importance of the documents withheld; and 5) the existence

17  of prejudice to the participants and beneficiaries.

18      924.   United, as Claims Administrator, and the Defendant Plans breached the

19  fiduciary and statutory duty to disclose documents requested by Plaintiffs.  Under the

20  express terms of 29 U.S.C. § 1024(b), Plaintiffs were entitled to copies of plan

21  documents.  Plaintiffs could not effectively challenge United's decisions to deny their

22  claims which must be based on these documents without knowing their contents.  Yet

23  Defendants failed to discharge their fiduciary duty as the claims/plan administrators

24  to provide Plaintiffs with the plan documents.

25

26      **WHEREFORE**, Plaintiffs pray for and demand judgment against the

27  Defendants as set forth above and as follows:

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

A.      On the First Claim for Relief under ERISA, the Court should specifically order the Defendants:

1.      to immediately and timely process the claims in accordance with ERISA, and to cease withholding payment on pretextual, procedural grounds;

2.      to calculate the past and future benefits pursuant to the terms of the plans, utilizing, where applicable, a valid database that takes into account valid data and the UCR factors of the rates charged by the provider and other surgery centers in the same geographic area at the time;

3.      to pay the Plaintiff providers' usual and customary fees, as United promised; and/or to determine the UCR rate at which Plaintiffs should be paid without reference to contracted rates for in-network providers;

4.      to properly pay future claims at the usual and customary rate; and

5.      to issue new EOBs for past claims, and correct EOBs for future claims, that are in compliance with applicable regulatory notice standards.

B.      On the Second Claim for Relief under ERISA, an injunction to prevent United from acting as the Plan Administrator and/or Claims Administrator for certain of the ERISA plans at issue, and an injunction against certain Employer Defendants to cease willful and systematic breaches of their fiduciary duties, and specifically to cease the improper delegation of those fiduciary duties to United;

C.      On the Fourth Claim for Relief under ERISA, a determination that any and all Defendants who seek in the future to assert previously undisclosed anti-assignment provisions are estopped from doing so;

D.      On the Seventh Claim for Relief under ERISA, recovery of the statutory relief of $110 per day per day, per request, that have been incurred by certain Defendants, and continue to be incurred, on those claims for which Plaintiffs demanded, but did not receive, the documentation they were entitled to receive under ERISA;

1       E.      Awarding prejudgment interest and costs, including attorneys' fees; and

2       F.      Awarding such other relief as the Court deems just and proper.

3

4   DATED: February 29, 2016       HOOPER, LUNDY & BOOKMAN, P.C.

5

6

7                    By:   */s/ Daron L. Tooch*

8                        DARON L. TOOCH
                   Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1201369.1

THIRD AMENDED COMPLAINT